IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-3630

PARENTS DEFENDING EDUCATION,

*Plaintiff-Appellant*,

v.

OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION;
MARK T. RAIFF, in his official capacity as Superintendent of Olentangy Local
School District; RANDY WRIGHT, in his official capacity as Olentangy's Chief of
Administrative Services; PETER STERN, in his official capacity as Olentangy's
Assistant Director of Equity and Inclusion; KEVIN DABERKOW, BRANDON
LESTER, KEVIN O'BRIEN, LIBBY WALLICK, and LAKESHA WYSE, in their
official capacities as members of the Olentangy Board of Education

*Defendants-Appellees*,

On Appeal from the United States District Court
for the Southern District of Ohio, No. 2:23-cv-01595

**Brief of *Amicus Curiae* Hamilton Lincoln Law Institute
in Support of Plaintiff-Appellant and Reversal**

HAMILTON LINCOLN LAW INSTITUTE
Adam E. Schulman
John M. Andren
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for* Amicus Curiae
*Hamilton Lincoln Law Institute*

## Corporate Disclosures

Under 6th Cir. R. 26.1, Amicus Curiae Hamilton Lincoln Law Institute ("HLLI") makes the following disclosures:

HLLI is a nonprofit law firm incorporated under the laws of the District of Columbia. HLLI does not issue stock and is neither owned by nor is the owner of any other corporate entity, in part or in whole. HLLI is operated by a volunteer Board of Directors. To amicus's knowledge, there is no publicly owned corporation, not a party to the appeal, that has a significant financial interest in the outcome.

# Table of Contents

Corporate Disclosures ......................................................................................... ii

Table of Contents............................................................................................... iii

Table of Authorities ........................................................................................... iv

Interest of Amicus Curiae ................................................................................... 1

Federal Rule of Appellate Procedure 29 Statement .......................................... 2

Introduction ........................................................................................................ 2

Argument............................................................................................................. 3

I.      The decision below disfigures *Meriwether*. ................................................ 3

      A.     Government employee speech rights are more circumscribed than student speech rights.......................................................................... 4

      B.     The further removed from the classroom, the more diminished the school's authority to regulate speech. ........................................... 8

Conclusion......................................................................................................... 11

Certificate of Compliance of Fed. R. App. P. 32(g) .......................................... 12

Proof of Service ................................................................................................. 13

# Table of Authorities

<u>Cases</u>

*Agency for Int'l Development v. Alliance for Open Soc'y Int'l.*,
570 U.S. 205 (2013) ................................................................................................ 9

*B.L. v. Mahanoy Area Sch. Dist.*,
964 F.3d 170 (3d Cir. 2020) ..............................................................1-2, 5, 6

*Connick v. Myers*,
461 U.S. 138 (1983) ................................................................................................ 5

*Dambrot v. Cent. Mich. Univ.*,
55 F.3d 1177 (6th Cir. 1995) .......................................................................... 10

*Friend v. Gasparino*,
61 F.4th 77 (2d Cir. 2023) ................................................................................ 5

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) ................................................................................................ 7

*Garcia v. SUNY Health Scis. Ctr.*,
280 F.3d 98 (2d Cir. 2001) ................................................................................ 5

*George v. Youngstown State Univ.*,
966 F.3d 446 (6th Cir. 2004) .......................................................................... 4

*Greenberg v. Haggerty*,
491 F. Supp. 3d 12 (E.D. Pa. 2020) .......................................................... 1

*Jenkins v. Rock Hill Local Sch. Dist.*,
513 F.3d 580 (6th Cir. 2008) ...............................................................2, 5, 6

*Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*,
141 S. Ct. 2038 (2021) ..............................................................2, 4, 5, 7, 8-9

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) .............................................................*passim*

*McElhaney v. Williams.*,
__F.4th__, 2023 WL 5492473, 2023 U.S. App. LEXIS 22466 (6th Cir.
Aug. 25, 2023)............................................................................................................ 10

*Morse v. Frederick*,
    551 U.S. 393 (2007)...................................................................................... 9

*Munroe v. Cent. Bucks Sch. Dist.*,
    805 F.3d 454 (3d Cir. 2015) ...................................................................... 5

*Nuxoll v. Indian Prairie Sch. Dist.*,
    523 F.3d 668 (7th Cir. 2008)...................................................................... 9

*Peck v. McCann*,
    43 F.4th 1116 (10th Cir. 2022)................................................................. 5

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968).................................................................................. 5

*Pinard v. Clatskanie Sch. Dist.*,
    467 F.3d 755 (9th Cir. 2006)..................................................................... 5

*Stock v. Gray*,
    2023 WL 2601218, 2023 U.S. Dist. LEXIS 48300 (W.D. Mo. Mar. 22,
    2023) ......................................................................................................... 1

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969)............................................................................3, 7, 8

*Ward v. Polite*,
    667 F.3d 727 (6th Cir. 2012) ................................................................ 8, 9

*Waters v. Churchill*,
    511 U.S. 661 (1994).................................................................................. 6

*W. Va. State Bd. of Educ. v. Barnette*,
    318 U.S. 624 (1943)............................................................................2, 3, 6

Constitutional Provisions

U.S. Const. Amend I.....................................................................................*passim*

Rules and Statutes

Fed. R. App. P. 29(a)(4)(E).............................................................................. 2

**Interest of Amicus Curiae**

Hamilton Lincoln Law Institute ("HLLI") is a public interest organization dedicated to protecting free markets, free speech, limited government, and separation of powers against regulatory abuse and rent-seeking. *See, e.g., Stock v. Gray*, 2023 WL 2601218, 2023 U.S. Dist. LEXIS 48300 (W.D. Mo. Mar. 22, 2023) (preliminarily enjoining enforcement of law that restricts pharmacist speech based on viewpoint); *Greenberg v. Haggerty*, 491 F. Supp. 3d 12 (E.D. Pa. 2020) (same; attorney speech).

HLLI finds troubling much of the district court's reasoning below, which constricts the free speech rights of students beyond the bounds set by this Circuit and the Supreme Court. Chief among those concerns, the opinion below misreads *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021) as affording greater expressive rights to public employees than to students. Opinion & Order, RE 28, PageID # 843. And it misinterprets *Meriwether* as affording greater leeway for schools to restrict speech in "everyday situations" outside the classroom than "in the classroom setting" itself. Opinion & Order, RE 28, PageID # 840. Both conclusions are diametrically backwards. As a recognition of the state's interest as a proprietor and educator, the First Amendment accepts some constraints on the speech rights of teachers, professors, and other public employees in the course of their official duties or when they speak about private matters. But these limitations don't apply to non-employee students, who attend school under compulsory state laws. *E.g., B.L. v. Mahanoy Area Sch. Dist.*, 964 F.3d 170,

1

183 (3d Cir. 2020), *aff'd,* 141 S. Ct. 2038 (2021); *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 586-87 (6th Cir. 2008). Likewise, even within the scope of the school's general authority to regulate disruptive student speech, the further removed from the classroom, the less the school's legitimate interest in regulation. *E.g., Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021).

HLLI submits this brief in support of reversal of the district court's decision. Counsel for the plaintiff has consented to the filing of this brief. Defendants have not and thus a motion for leave accompanies this filing.

### Federal Rule of Appellate Procedure 29 Statement

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), Amicus affirms that no counsel for a party authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparing or submitting the brief, and no person other than amicus, its members, or its counsel has made any monetary contributions intended to fund the preparation or submission of this brief.

### Introduction

Boards of education must provide "scrupulous protection of Constitutional freedom of the individual" lest they "strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." *W. Va. State Bd. of Educ. v. Barnette*, 318 U.S. 624, 637 (1943). That includes "ensuring that future generations understand the workings in practice of the well-known aphorism, 'I disapprove of what you say, but I will defend to the death your right to say it.'" *Mahanoy*, 141 S. Ct. at 2046. "Our nation's future depends upon" students getting "wide exposure

to [a] robust exchange of ideas—not through the authoritative compulsion of orthodox speech." *Meriwether*, 992 F.3d at 505 (internal quotation omitted).

Olentangy's policies—mandating that students use the preferred pronouns of other students, any place, at any time—betray this civic duty.

## Argument

### I.    The decision below disfigures *Meriwether.*

In *Meriwether v. Hartop*, this Court addresses whether a school may constitutionally mandate that an employee professor use the preferred pronouns of his students during classroom instruction. 992 F.3d 492 (2021). *Meriwether* "start[s] with the basics." *Id.* at 503. Government officials may not compel citizens to affirm officially approved "orthodox" views; students and professors do not "shed" this right at the schoolhouse gate. *Id.* (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *Barnette*, 319 U.S. at 642). Then it turns to the thorny question: does the plaintiff professor lose anyway because the "rules apply differently" "when a government employee is doing the talking?" *Id.* at 503-04. *Meriwether* answers no: employee speech doctrines do not abrogate the professor's speech rights in this context. *Id.* at 504-12.

But the decision below gets *Meriwether* backward. It understands *Meriwether* to *extend* speech rights to employee professors that ordinary students do not have, even at home on their own time. No, *Meriwether* does not work an expansion from the default full panoply of First Amendment rights. To the contrary, it considers whether the public employee context requires a *contraction* from the foundational "basics." It asks whether

professors cede or "retain" their speech rights when discharging job responsibilities in the classroom. *Id.* at 505. Similarly, the district court reads *Meriwether* to privilege speech or expression that occurs "in the classroom setting" while more readily permitting school restrictions outside that setting. Opinion & Order, RE 28, PageID # 840

Again, this reading is untenable. School authority wanes, not waxes, the farther away the speech is from the classroom itself. *E.g., Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021) (observing schools' "diminished" "leeway" to regulate off-campus speech); *Id.* at 2049 (Alito, J., concurring) (observing schools' "more limited" "authority" outside school grounds).

The district court's apparent disagreement with *Meriwether*[1] offers no license to deviate from that binding precedent. *George v. Youngstown State Univ.*, 966 F.3d 446, 469 (6th Cir. 2020). Nor does it offer a license to mangle *Meriwether*'s reasoning and holding. Plaintiff's claims here follow *a fortiori* from *Meriwether*.

### A. Government employee speech rights are more circumscribed than student speech rights.

According to the district court, a professor teaching is one thing, a student greeting classmates or joking with friends is quite another. Opinion & Order, RE 28, PageID # 843. The student uses pronouns "because it is required by the English language," but only as a "mechanical exercise," not as a matter of "reflection." *Id.* Indeed, the district court pondered whether student-used pronouns were even sensibly

---

[1] Opinion & Order, RE 28, PageID # 840 (citing faculty blog post arguing that *Meriwether* "erred for several reasons").

understood as "content-based speech rather than essentially conduct-infused interactions." Opinion & Order, RE 28, PageID # 840 (quoting same faculty blog post criticizing *Meriwether*); *contra Meriwether*, 992 F.3d at 507 ("pronouns carry a message").

First Amendment caselaw does recognize a distinction between the speech rights of professors and students. But the distinction is almost the opposite of that conceived by the district court. As a condition of paid public employment, teachers are subject to *greater* speech regulation from their employer (the school) than are ordinary citizens, parents, or students. Thus, for example, while students have the free speech right to criticize their teachers on social media, teachers lack the right to do the reverse. *Contrast Mahanoy*, 141 S. Ct. 2038 (recognizing student's right to disparage her coaches and cheerleading team), *with Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454 (3d Cir. 2015) (denying teacher's right to disparage her students online).

A public employee asserting free speech rights must first show that his speech covers a matter of public concern. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983). Yet courts uniformly recognize that this public concern test does not apply to government attempts to restrict the speech of ordinary citizens, parents, or students. *Friend v. Gasparino*, 61 F.4th 77, 88 (2d Cir. 2023); *Peck v. McCann*, 43 F.4th 1116, 1135 n.11 (10th Cir. 2022); *B.L. v. Mahanoy Area Sch. Dist.*, 964 F.3d 170, 183 (3d Cir. 2020), *aff'd*, 141 S. Ct. 2038 (2021); *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 586-87 (6th Cir. 2008); *Pinard v. Clatskanie Sch. Dist.*, 467 F.3d 755, 765 (9th Cir. 2006); *Garcia v. SUNY Health Scis. Ctr.*, 280 F.3d 98, 106 (2d Cir. 2001).

Extending the public concern test to these non-employment contexts, would "rend it from its animating rationale and original context." *Jenkins*, 513 F.3d at 587 (internal quotation omitted). The Supreme Court has described the "key" rationale for the enhanced authority itself: "The government's interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." *Waters v. Churchill*, 511 U.S. 661, 675 (1994) (plurality op.). "The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate." *Id.* Employees have consented to on-the-clock speech restrictions by accepting a job with a certain function. Public school students—for whom "attendance is not optional"—have not. *Barnette*, 319 U.S. at 632.

It is error to "'graft[] a public concern requirement onto' student speech doctrine." *B.L.*, 964 F.3d at 183 (quoting *Lowery v. Euverard*, 497 F.3d 584, 598 n.5 (6th Cir. 2007)). And no federal appellate court has made the mistake. *Id.* But the district court did when it distinguished the speech involved in students "carry[ing] out the standard back-and-forth ritual of greeting and acknowledging friends" from professors "explaining and provoking debate about different belief systems, about morality and ethics, and about the role of nature versus nurture." Opinion & Order, RE 28, PageID ## 840, 843. Putting aside that the district court's description disregards Plaintiff's complaint (which specifically describes the students' strongly held views on matters of

social concern[2]), the district court's analysis amounts to erroneously grafting a public concern test onto student speech doctrine.

*Garcetti v. Ceballos* holds that when public employees speak pursuant to their official duties, the First Amendment does not normally insulate their speech from employer discipline. *Meriwether*, 992 F.3d at 504 (quoting 547 U.S. 410 (2006)). That rule made *Meriwether* a difficult case, for this Court had to determine whether public employee professors nonetheless "retain" their First Amendment rights while teaching. *Id.* at 505. *Meriwether* decided that, as a matter of academic freedom, they do. *Id.* at 505-07.

Importantly, *Meriwether* also decided that nothing suggests a professor using non-preferred pronouns would "hamper[] the operation of the school" or "den[y] [students] any educational benefits." *Id.* at 511. Although *Meriwether* couches that conclusion in *Pickering* balancing, it very much parallels the *Tinker* standard for restricting student speech that "substantially interfere[s] with the work of the school or impinge[s] the rights of other students." *Mahanoy*, 141 S. Ct. at 2041 (quoting *Tinker*).

---

[2] Complaint, RE 1, PageID # 22 ("Parent A's child wants to speak about these topics and wants to repeatedly state their belief that biological sex is immutable."), 27 ("[Parent B's children] wish to use pronouns consistent with a classmate's biological sex and to explain to their classmates why they believe that all human beings are created male or female by God."), 36 ("Parent D's children wish to use the pronouns that are consistent with their classmates' biological sex repeatedly and at all times, including inside and outside of the classroom, in the classmates' presence, and when referring to the classmates outside of their presence…Parent D's children have no ill will against these students. Parent D's children just want to express their deeply held views.")

*Tinker* sets a "demanding standard." *Id.* at 2048. If a teacher refusing to use his students' preferred pronouns while teaching cannot satisfy the *Tinker* standard, a student refusing to use classmates' preferred pronouns cannot satisfy it either. Worse still, the Olentangy policies have no temporal or geographic limits. A student's refusal to use a classmate's preferred pronouns on social media on the weekend cannot possibly "creat[e] a hostile environment" with "severely negative effects" "on the orderly operation of the school and its mission" if the same speech from a teacher in the classroom does not. *Contra* Opinion & Order, RE 28, PageID ## 833-36.

At bottom, a teacher's speech in the course of his employment comes closer to school-sponsored speech than does a student's speech, in the hallway or otherwise. And "[t]he closer expression comes to school-sponsored speech, the less likely the First Amendment protects it." *Ward v. Polite*, 667 F.3d 727, 734 (6th Cir. 2012). Given *Meriwether*, the Olentangy policies compelling students to use preferred pronouns are deeply unconstitutional.

### B. The further removed from the classroom, the more diminished the school's authority to regulate speech.

It is not just the identity of the speakers here (students rather than employees) that makes this an easy case after *Meriwether*. It is also the fact that the policies compel speech with no temporal or geographic limitation. *See* Br. of Appellant Parents Defending Education at 8-9. *Mahanoy* provides three reasons that schools have diminished authority to regulate student speech off campus. *First*, off campus a school "will rarely stand *in loco parentis*." 141 S. Ct. 2038, 2046. Thus, allowing schools to dictate

what students must or must not say off campus may invade the parental sphere of authority. *Second*, from the student's perspective, a regulation that extends off campus allows no outlet for certain speech at all; it covers "the full 24-hour day." *Id. Third*, as "nurseries of democracy," schools should cultivate (or at least not obliterate) the marketplace of ideas, and that includes teaching young people that they can and should participate in it. *Id.*; *accord Barnette*, 318 U.S. at 637.

*Mahanoy* did not invent the on-campus/off-campus distinction either. As this Court had recognized, schools have no authority to invade the private zone of a student's life "as the price for obtaining a degree." *Ward*, 667 F.3d at 738 (citing *Barnette*, 319 U.S. at 642); *cf. also Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l*, 570 U.S. 205, 218 (2013) (government conditions go too far when they "go[] beyond defining the limits of the federally funded program to defining the recipient"). Likewise, before *Mahanoy*, it was already well-established that a school's special authority to restrict vulgar speech ended at the campus gates. *Morse v. Frederick*, 551 U.S. 393, 405 (2007); *B.L.*, 964 F.3d at 181. In the end, because off-campus speech is typically not curricular or school sponsored, a school is less likely to have a legitimate pedagogical interest in regulating it. *Ward*, 667 F.3d at 734; *see also Nuxoll v. Indian Prairie Sch. Dist.*, 523 F.3d 668, 674 (7th Cir. 2008) (reasoning that school rule against "derogatory comments" "probably would not wash if it were extended to students when they are outside of the school, where students who would be hurt by the remarks could avoid exposure to them").

Conversely, a school's interest in regulating in-classroom speech—especially speech of an employee that bears the imprimatur of the school—is substantially higher.

*See Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1190-91 (6th Cir. 1995); *see also* Br. of Appellant Parents Defending Education at 19 (citing cases relating to classroom instruction). "In that setting, the school is standing in the place of the students' parents, assuming their role to preserve the educational experience." *McElhaney v. Williams*, __F.4th__, 2023 WL 5492473, 2023 U.S. App. LEXIS 22466, at \*14 (6th Cir. Aug. 25, 2023). Thus, if a school cannot compel professors to use preferred pronouns when administering class (*Meriwether*), it cannot compel students to do so when chatting with friends on the weekend.

The district court failed to draw that straightforward conclusion. Though it paid lip service to the *Mahanoy* principle that "the authority of public schools to restrict students' speech off-campus is far more limited," it incongruously distinguished *Meriwether* as involving curricular speech in the classroom. *Compare* Opinion & Order, RE 28, PageID ## 827, 845, *with* Opinion & Order, RE 28, PageID ## 840, 843. Again, that is backwards and irreconcilable with the student speech principles described above.

In sum, when students step foot on school campus, they surrender only the minimum sliver of their First Amendments necessary to allow the school to exercise its authority in providing education and physical safety. When students step off campus and the school's responsibility to provide either diminishes, students are returned their full First Amendment rights. Olentangy and the district court failed to grasp this fundamental concept.

## Conclusion

For these reasons, this Court should reverse the district court and enter a preliminary injunction.

Dated:  September 29, 2023        Respectfully submitted,

*/s/  Adam E. Schulman*

Adam E. Schulman
John M. Andren
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email:  adam.schulman@hlli.org

*Attorneys for* Amicus Curiae *Hamilton Lincoln Law Institute*

## Certificate of Compliance of Fed. R. App. P. 32(g)

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 2,701 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as counted by Microsoft Word 2019.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Garamond font.

Executed on September 29, 2023.

/s/ Adam E. Schulman
Adam E. Schulman

## Proof of Service

I hereby certify that on September 29, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.

Executed on September 29, 2023.

/s/ *Adam E. Schulman*
Adam E. Schulman
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorney for* Amicus Curiae
*Hamilton Lincoln Law Institute*