No. 23-3630

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PARENTS DEFENDING EDUCATION,

Plaintiff-Appellant,

v.

OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Ohio

## REPLY BRIEF OF APPELLANT PARENTS DEFENDING EDUCATION

Emmett E. Robinson
ROBINSON LAW FIRM LLC
6600 Lorain Ave. #731
Cleveland, OH 44102
Telephone: (216) 505-6900
Facsimile: (216) 649-0508
erobinson@robinsonlegal.org

J. Michael Connolly
Taylor A.R. Meehan
Cameron T. Norris
James F. Hasson
Thomas S. Vaseliou
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
mike@consovoymccarthy.com

*Counsel for Appellant*

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................iii

Introduction ....................................................................................................1

Argument ........................................................................................................2

    I.      PDE is likely to succeed on the merits. ................................................2

          A.      The Policies unconstitutionally compel speech. ....................2

          B.      The Policies discriminate based on viewpoint. .....................7

          C.      The Policies are content-based restrictions that cannot withstand *Tinker*'s demanding standard. ..........................9

          D.      The Policies are overbroad. ..................................................12

    II.     The remaining preliminary-injunction criteria favor PDE. ............15

Conclusion ....................................................................................................17

Certificate of Compliance .........................................................................19

Certificate of Service ..................................................................................19

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) .................................................................... 4, 14

*ACLU Fund of Mich. v. Livingston Cnty.,*
   796 F.3d 636 (6th Cir. 2015) ................................................... 16

*Armstrong v. City of Melvindale,*
   432 F.3d 695 (6th Cir. 2006) ................................................... 10

*Bannister v. Knox Cnty. Bd. of Educ.,*
   49 F.4th 1000 (6th Cir. 2022) .................................................. 11

*Barr v. Lafon,*
   538 F.3d 554 (6th Cir. 2008) ........................................ 2, 7, 8, 9, 13

*C.N. v. Ridgewood Bd. of Educ.,*
   430 F.3d 159 (3d Cir. 2005) ........................................................ 3

*C.R. v. Eugene Sch. Dist. 4J,*
   835 F.3d 1142 (9th Cir. 2016) .................................................. 12

*Castorina ex rel. Rewt v. Madison Cnty. Sch. Bd.,*
   246 F.3d 536 (6th Cir. 2001) ............................................... 7, 8, 9

*Chen v. Albany Unified Sch. Dist.,*
   56 F.4th 708 (9th Cir. 2022) .................................................... 12

*City of Houston v. Hill,*
   482 U.S. 451 (1987) ................................................................. 13

*Dahl v. Bd. of Trustees of W. Mich. Univ.,*
   15 F.4th 728 (6th Cir. 2021) .................................................... 17

*Dambrot v. Cent. Mich. Univ.,*
   55 F.3d 1177 (6th Cir. 1995) ................................................... 14

*Davis v. Monroe Cnty. Bd. of Educ.,*
   526 U.S. 629 (1999) ................................................................. 15

*Defoe ex rel. Defoe v. Spiva,*
   625 F.3d 324 (6th Cir. 2010) .............................................. 7, 9, 13

*Doe v. Marshall,*
   367 F.Supp.3d 1310 (M.D. Ala. 2019) ......................................... 6, 7

*Doe v. Pittsylvania Cnty.*,
    842 F.Supp.2d 927 (W.D. Va. 2012) ............................................................ 17

*Elrod v. Burns*,
    427 U.S. 347 (1976)............................................................................................ 16

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*,
    624 F.3d 332 (6th Cir. 2010) ............................................................................ 6

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th Cir. 2023) ............................................................................ 14

*Fulton v. City of Philadelphia*,
    141 S.Ct. 1868 (2021) ........................................................................................ 13

*G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*,
    23 F.3d 1071 (6th Cir. 1994) ............................................................................ 16

*Glowacki ex rel. D.K.G. v. Howell Pub. Sch. Dist.*,
    2013 WL 3148272 (E.D. Mich. June 19, 2013) ............................................ 9

*Gooding v. Wilson*,
    405 U.S. 518 (1972)............................................................................................ 14

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*,
    515 U.S. 557 (1995)......................................................................................... 2, 4

*Iancu v. Brunetti*,
    139 S.Ct. 2294 (2019) ........................................................................................ 9

*Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*,
    3 F.4th 887 (6th Cir. 2021) ................................................................................ 9

*Kennedy v. Bremerton Sch. Dist.*,
    142 S.Ct. 2407 (2022) ........................................................................................ 11

*Kutchinski as next friend to H.K. v. Freeland Cmty. Sch. Dist.*,
    69 F.4th 350 (6th Cir. 2023) ............................................................................ 10

*M.A.L. ex rel. M.L. v. Kinsland*,
    543 F.3d 841 (6th Cir. 2008) ..................................................................... 7, 8, 9

*Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*,
    141 S.Ct. 2038 (2021) ........................................................................................ 15

*McGlone v. Bell*,
    681 F.3d 718 (6th Cir. 2012) ............................................................................ 16

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ..................................................................... 3, 5, 6

*Miller v. City of Cincinnati*,
622 F.3d 524 (6th Cir. 2010) ................................................................. 16

*Minn. Voters All. v. Mansky*,
138 S.Ct. 1876 (2018) ............................................................................9

*NAACP v. Button*,
371 U.S. 415 (1963)............................................................................. 14

*Otto v. City of Boca Raton*,
981 F.3d 854 (11th Cir. 2020) ............................................................ 17

*Parents Defending Education v. Linn Mar Cmty. Sch. Dist.*,
83 F.4th 658 (8th Cir. 2023) .......................................................... 11, 12

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992)...............................................................................9

*Saxe v. State Coll. Area Sch. Dist.*,
240 F.3d 200 (3d Cir. 2001)...................................................... 2, 11, 15

*Speech First, Inc. v. Cartwright*,
32 F.4th 1110 (11th Cir. 2022) ...............................................................9

*Sypniewski v. Warren Hills Regional Bd. of Educ.*,
307 F.3d 243 (3d Cir. 2002) ................................................................ 13

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969)........................................................................ 1, 10

*Turkiye Halk Bankasi A.S. v. United States*,
598 U.S. 264 (2023)...............................................................................8

*United States v. Jarvis*,
999 F.3d 442 (6th Cir. 2021) .................................................................9

*Wilkins v. Daniels*,
744 F.3d 409 (6th Cir. 2014) .................................................................3

*Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trustees*,
2023 WL 4297186 (D. Wyo. June 30, 2023) .........................................6

*Wooley v. Maynard*,
430 U.S. 705 (1977)...............................................................................6

## Other Authorities

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) ............................................. 15

## INTRODUCTION

The District has abandoned the district court's opinion. The district court recognized that the Policies compel speech, but found the compulsion constitutional because forcing students to "use preferred gender pronouns" is "'reasonably related to legitimate pedagogical concerns.'" Op., R.28, PageID#839. The District doesn't rely on this rationale, arguing instead that the Policies don't compel speech at all. Dist.-Br.9-10. The district court held that the Policies did not restrict speech based on viewpoint because they "prohibit all derogatory speech that targets individuals on the basis of gender identity." Op., R.28, PageID#842. The District doesn't dispute that the Policies restrict speech based on viewpoint; it instead argues that viewpoint-based restrictions are permissible under *Tinker*. Dist.-Br.18-20. The district court relied on extra-record sources to conclude that the Policies were necessary to prevent "substantial disruption" under *Tinker*. Op., R.28, PageID#836. The District doesn't defend its Policies under this standard or rely on any of the district court's law-review and newspaper articles; it instead conjures a new "invasion of the rights of others" argument that it raises for the first time on appeal. Dist.-Br.10-17.

The District walked away from the opinion below because the district court's reasoning is indefensible. Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Whatever its motivations, the District cannot force

students to use classmates' "preferred pronouns" and punish students who use pronouns that correspond with biological sex.

The District's new arguments fare no better. The Policies compel speech because they "compel the speaker[s] to alter [their] message by [making it] more acceptable to others." *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557, 581 (1995). Schools *cannot* restrict speech based on viewpoint, regardless of whether any *Tinker* exception applies. *Barr v. Lafon*, 538 F.3d 554, 571 (6th Cir. 2008). The District has forfeited its new argument that the Policies protect against the "invasion of the rights of others," *Tinker*, 393 U.S. at 513, and, even if it hadn't, a student's speech doesn't interfere with others' rights merely because it "offen[ds] [the] listener," *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 217 (3d Cir. 2001) (Alito, J.). And the Policies are wildly overbroad because they prohibit a broad swath of protected speech, including speech that occurs off schoolgrounds.

PDE is likely to prevail on the merits of its claims and the remaining preliminary-injunction factors can be resolved only in PDE's favor. This Court thus should reverse the decision below and enter an injunction itself or remand with instructions for the district court to do so.

## ARGUMENT

### I. PDE is likely to succeed on the merits.

#### A. The Policies unconstitutionally compel speech.

The District doesn't deny that the Policies prohibit students from using biologically correct pronouns. *See* PDE-Br.9. It doesn't deny that pronouns convey a viewpoint

on an issue that has produced a passionate political and social debate across this country. *See* PDE-Br.22-23, 26. And it doesn't deny that the speech being prohibited by the Policies is neither school sponsored nor related to curriculum. *See* PDE-Br.21.

The District instead argues that the Policies don't compel speech because there is "no actual compulsion." Dist.-Br.9 (citing *Wilkins v. Daniels*, 744 F.3d 409, 415 (6th Cir. 2014); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 189 (3d Cir. 2005)). But not even the district court accepted this argument. *See* Op., R.28, PageID#841. Compulsion occurs when the governmental measure "punish[es], or threaten[s] to punish, protected speech by governmental action that is regulatory, proscriptive, or compulsory in nature." *Wilkins*, 744 F.3d at 415 (cleaned up); *C.N.*, 430 F.3d at 189 (same). And students who violate the Policies will be punished (*e.g.*, suspended from school). *See* PDE-Br.7-10; *e.g.*, Policy 5517, R.7-1, PageID#121-22; Policy 5136, R.7-1, PageID#133-34.

To the extent the District is arguing that the Policies don't compel speech because they do not literally command students to speak, that argument was addressed in PDE's opening brief—with no meaningful response from the District. *See* PDE-Br.20-21. As the district court recognized, pronouns are "required by the English language." Op., R.28, PageID#843; *see Meriwether v. Hartop*, 992 F.3d 492, 517 (6th Cir. 2021) (trying not to "use any pronouns" would be "impossible to comply with"); *see also* ADF-Br.22-23; States-Br.3-4. Most important, even if pronouns could be avoided, the Students' speech would necessarily be altered by the Policies (*e.g.*, "George went to George's locker to get the book that George borrowed from Sarah"). The government cannot

3

"compel [a] speaker to alter the message by [making it] more acceptable to others." *Hurley*, 515 U.S. at 581; *see 303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023) ("[N]o government … may affect a speaker's message by forcing her to accommodate other views; no government may alter the expressive content of her message; and no government may interfere with her desired message." (cleaned up)). That is a classic form of compelled speech. *Id.*; *see* PDE-Br.18-23; *see also* JCRL-Br.5-13; ADF-Br.15-23; FIRE-Br.15-20; IFF-Br.4-19; SELF-Br.12-17; States-Br.2-12.

The District's purported "accommodation" doesn't eliminate the compulsion. *See* Dist.-Br.9-10. For starters, the District has never actually said that students are free to use biologically correct pronouns when dictated by their religious beliefs. *See* Philemond Email, R.7-2, PageID#355. The District, in an email to a parent, offered "to discuss accommodations *to avoid using pronouns* where doing so would be contrary to [the child's] religious beliefs." *Id.* (emphasis added). But the Students don't want to "avoid using pronouns," *id.*; they want to use biologically correct pronouns, PDE-Br.10-13, 31-32. Nor would any "accommodation" even apply. PDE has not brought a Free Exercise claim. The Students want to use biologically correct pronouns irrespective of their religious beliefs. *See, e.g.*, Parent C Decl., R.7-5, PageID#380 ¶15 (opinions not tied to religious beliefs); Parent D Decl., R.7-6, PageID#387 ¶21 (intending to "expres[s] an opinion about the nature of biological sex (whether based on *science* or religion)" (emphasis added)); *see also* Op., R.28, PageID#817 (describing the Students' speech as

motivated by "sincerely-held religious *or scientific* beliefs that biological sex is immutable" (emphasis added)).

That relevant cases occurred "outside the realm of the K-12 context" doesn't matter. Dist.-Br.20. According to the District, *Meriwether* is "distinguishable" because it involved "employee speech" of "university professors." Dist.-Br.21-22. But the District misses the point of *Meriwether*. This Court held that pronoun usage "communicate[s] a message." *Meriwether*, 992 F.3d at 507. Using preferred pronouns conveys a belief that "[p]eople can have a gender identity inconsistent with their sex at birth." *Id.* And declining to use preferred pronouns "[takes] a side in that debate" and "advance[s] a viewpoint on gender identity" too: that "'sex is fixed in each person from the moment of conception, and that it cannot be changed, regardless of an individual's feelings or desires.'" *Id.* at 509. None of those conclusions turned on the university context or the professor context, so they all apply equally here. In fact, the District conceded below that a preferred-pronoun policy compels a viewpoint under *Meriwether. See* PI Hearing Tr., R.33, PageID#907 at 39:13-21 (Q: "Under *Meriwether*, which kind of articulates the compelled speech doctrine, do the [P]olicies require the speaker to affirm a certain belief … that is, that I recognize you as trans?" A: "The Sixth Circuit in *Meriwether* said it did. I think that that follows from *Meriwether*.").[1]

---

[1] The District claims that *Meriwether* "made th[e] important distinction" between colleges and the K-12 school environment. Dist.-Br.22. *Meriwether* did make a distinction—but not for *student speech*. This Court clarified that *Evans-Marshall v. Bd. of Educ. of*

Similarly, *Wooley v. Maynard*, 430 U.S. 705 (1977), and *Doe v. Marshall*, 367 F.Supp.3d 1310 (M.D. Ala. 2019), show that the government cannot skirt the First Amendment's compelled-speech restrictions by saying that a person need not participate in a certain activity, especially when that activity is a "virtual necessity" for participating in society. In *Wooley*, the Supreme Court held that a state law requiring license plates to display "Live Free or Die" unconstitutionally compelled speech. 430 U.S. at 715. Such a requirement, the Court explained, "in effect requires that appellees use their private property as a 'mobile billboard' for the State's ideological message or suffer a penalty." *Id.* The Court concluded that was compelled speech, even though someone theoretically could not speak by simply not owning a vehicle. *Id.* That's because "driving an automobile" was "a *virtual necessity* for most Americans." *Id.* (emphasis added). Likewise, in *Marshall*, the court concluded that a state law requiring certain individuals to have "Criminal Sex Offender" printed on their "state-issued identification cards" unconstitutionally compelled speech. 367 F.Supp.3d at 1324. The State had argued that the ID requirement didn't compel speech because the individuals could simply get a

---

*Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332 (6th Cir. 2010), was "limited to [K-12] *schoolteachers*" and those teachers' "'*in-class curricular* speech.'" *Meriwether*, 992 F.3d at 505 n.1 (emphases added). For similar reasons, the District's reliance on *Willey v. Sweetwater Cnty. Sch. Dist. No. 1 Bd. of Trustees*, 2023 WL 4297186 (D. Wyo. June 30, 2023), fails. Dist.-Br.22-23. *Willey* declined to extend *Meriwether* to K-12 *teachers*, not students, because of the unique aspects of employee speech. 2023 WL 4297186, at *23; *see* Hamilton-Br.4-8 (explaining how student speech enjoys *greater* protection than employee speech).

"passport" to carry around or not get an ID at all. *Id.* at 1325. But the court rejected that argument because a "[s]tate-issued photo ID is a *virtual necessity* these days." *Id.* (emphasis added). The same principles apply here.

### B.    The Policies discriminate based on viewpoint.

The District doesn't deny that the Policies restrict speech based on viewpoint. Instead, the District argues that *Tinker* authorizes schools to "restrict student speech *on the basis of viewpoint*" under certain conditions. Dist.-Br.12 (emphasis in original). But that argument is squarely foreclosed by this Court's precedent. PDE-Br.2-4, 23-28. In *Barr v. Lafon*, this Court examined *Tinker* and other Supreme Court and Sixth Circuit precedent and held that "schools' regulation of student speech must be consistent with *both* the *Tinker* standard *and Rosenberger*'s prohibition on viewpoint discrimination." 538 F.3d at 571 (emphases added); *see Castorina ex rel. Rewt v. Madison Cnty. Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001) ("[E]ven if there has been racial violence that necessitates a ban on racially divisive symbols, the school does not have the authority to enforce a viewpoint-specific ban on racially sensitive symbols and not others."); *Defoe ex rel. Defoe v. Spiva*, 625 F.3d 324, 336 (6th Cir. 2010) (same); *see also* SELF-Br.11 & n.2.

Contra the District, *M.A.L. ex rel. M.L. v. Kinsland*, 543 F.3d 841 (6th Cir. 2008), doesn't license schools to restrict speech based on viewpoint. There, this Court reviewed "whether it is constitutional for a public middle school to regulate the time, place, and manner of a student's speech by preventing him from handing out leaflets in school hallways between classes and instead allowing him to post his leaflets on hallway

bulletin boards and to distribute them during lunch hours from a cafeteria table." *Id.* at 843. The Court refused to apply *Tinker*'s "heightened 'material and substantial interference'" standard because the school had "merely sought to regulate the time, place, and manner of [the student's] speech irrespective of its content or his viewpoint." *Id.* at 849.

The District points to dicta in *M.A.L.* to argue that the *Tinker* standard would apply to viewpoint restrictions on speech. *See id.* at 850 ("While *Tinker* requires schools to demonstrate a 'material and substantial interference' with the educational process in order constitutionally to silence a student on the basis of the student's particular viewpoint, Jefferson School District certainly need not satisfy this demanding standard merely to impose a viewpoint-neutral regulation of the manner of Michael's speech to prevent hallway clutter and congestion."). But whether a school could restrict speech based on viewpoint wasn't at issue in *M.A.L.* "'[G]eneral language in judicial opinions' should be read 'as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering.'" *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023). *Barr* and *Castorina*, by contrast, directly held that viewpoint-based restrictions violate the First Amendment and that *Tinker* applies only to viewpoint-neutral, content-based restrictions. *Barr*, 538 F.3d at 571; *Castorina*, 246 F.3d at 541-44.[2]

---

[2] Even if there were a conflict between the cases, *Barr* and *Castorina* would control because they were decided earlier. *See United States v. Jarvis*, 999 F.3d 442, 445-46 (6th Cir. 2021); *see also Defoe*, 625 F.3d at 336 (applying after *M.A.L.*, the *Barr*-*Castorina* standard to student speech).

Nor should the Court deviate from *Barr* and *Castorina*, even if it had the authority to do so. Viewpoint discrimination is an "'egregious form of content discrimination,'" *Iancu v. Brunetti*, 139 S.Ct. 2294, 2299 (2019), and is "poison to a free society," *id.* at 2302 (Alito, J., concurring). For this reason, "[t]he Supreme Court has consistently held that the government may not regulate on the basis of viewpoint even within a category of otherwise proscribable speech." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1127 n.6 (11th Cir. 2022) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383-90 (1992)); *see Glowacki ex rel. D.K.G. v. Howell Pub. Sch. Dist.*, 2013 WL 3148272, at *7 (E.D. Mich. June 19, 2013) (school policies restricting speech "must not discriminate on the basis of student viewpoints"). Viewpoint discrimination is always prohibited. *Minn. Voters All. v. Mansky*, 138 S.Ct. 1876, 1885 (2018); *Iancu*, 139 S.Ct. at 2302; *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021); *see* PDE-Br.23-24 (collecting cases).

## C.    The Policies are content-based restrictions that cannot withstand *Tinker*'s demanding standard.

The District abandons the district court's main justification for upholding the Policies. Below, the district court found the Policies constitutional on the ground that the "intentional misgendering of students" causes "substantial disruption" under *Tinker*. Op., R.28, PageID#836. But, as PDE explained, the District can't satisfy *Tinker*'s "'demanding standard,'" *Kutchinski as next friend to H.K. v. Freeland Cmty. Sch. Dist.*, 69 F.4th 350, 359 (6th Cir. 2023), because it put forth no evidence that the Policies were

necessary to prevent substantial disruption, PDE-Br.29-30. And none of the district court's outside research—even if it were in the record—could fill the gap. PDE-Br.31-33.

The District appears to agree with PDE. Before this Court, the District *never* argues that the Policies are necessary to prevent substantial disruption. *See* Dist.-Br.10-17. Instead, the District makes a new argument for the first time on appeal: that the Policies don't violate the First Amendment because they protect against the invasion of "'the rights of other students'" under *Tinker*. Dist.-Br.12 (quoting *Tinker*, 393 U.S. at 508). But the District never made this argument below, *see generally* District PI Opp., R.13, PageID#423-42, and the district court didn't rule on this basis, *see* Op., R.28, PageID#826-27. The District's new argument is thus forfeited and cannot be made for the first time on appeal. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal."); *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1016 (6th Cir. 2022) ("[Plaintiffs] forfeited this theory because they did not develop it in the district court.").

The District's new justification fails in any event. Whatever the meaning of "'interference with the rights of others,'"[3] it is "certainly not enough that the speech is

_____

[3] The district court correctly recognized that *Tinker*'s "invasion of the rights of others" language is "'unclear'" and that "[v]ery few courts have analyzed the scope of this language." Op., R.28, PageID#827; *see Saxe*, 240 F.3d at 217 (noting that "at least

merely offensive to some listener." *Saxe*, 240 F.3d at 217; *see* Dist.-Br.12 (same); *PDE v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 667 (8th Cir. 2023) (same); States-Br.11. And that is all the District has ever shown. Again, the District put forth no evidence below to show that its speech restrictions were necessary to prevent an invasion of the rights of others. PDE-Br.28-29; *see Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421 (2022) (a defendant infringing speech rights has the burden "to show that its actions were nonetheless justifed and tailored consistent with the demands of our case law").

The District asserts that students cannot "*directly* and *personally* haras[s]" other students or engage in "direct, targeted bullying and harassment." Dist.-Br.14, 23 (emphasis in original). But the Students have no intention to do that. They have "no ill will against [transgender] students" and will be "respectful to others." Parent A Decl., R.7-3, PageID#363 ¶8; *see* Parent B Decl., R.7-4, PageID#370 ¶8; Parent C Decl., R.7-5, PageID#378 ¶7; Parent D Decl., R.7-6, PageID#384 ¶8. They merely "wish to use pronouns that are consistent with a classmate's biological sex." Parent A Decl., R.7-3, PageID#363-64 ¶11; *see* Parent B Decl., R.7-4, PageID#371 ¶11; Parent C Decl., R.7-5, PageID#379 ¶10; Parent D Decl., R.7-6, PageID#385 ¶11; *see also* FIRE-Br.18. "A school district cannot avoid the strictures of the First Amendment simply by defining

_____

one court has opined that it covers only independently tortious speech like libel, slander or intentional infliction of emotional distress"); FIRE-Br.10-14 (explaining how the invasion exception is "extremely narrow").

certain speech as 'bullying' or 'harassment'" or discrimination. *Linn Mar*, 83 F.4th at 667.

The District's other cases are plainly inapposite, as they involve extreme facts absent here. *See, e.g.*, *Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 711-12, 716-19 (9th Cir. 2022) (upholding the punishment of a student who "targeted vicious invective with racist and violent themes against specific Black classmates," including a photograph in which a Black student and Black coach had "nooses [drawn] around both their necks"); *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1146-47, 1152 (9th Cir. 2016) (upholding the punishment of a student who repeatedly followed two disabled female students home from elementary school and targeted them with graphic and profane "sexual comments directed at the victims," including "questions about sex acts and whether [the two girls] were dating"). Unlike the Students' speech here, these words and images "contribute nothing to the 'marketplace of ideas.'" *Chen*, 56 F.4th at 718. Nor do the Students have any intention of engaging in such awful behavior. The District's apparent "lumping [of] those who hold traditional beliefs about [sex] together with racial bigots [and sexual harassers] is insulting to those who retain such beliefs." *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1925 (2021) (Alito, J., concurring in the judgment).

### D.    The Policies are overbroad.

The District barely grapples with PDE's overbreadth arguments, PDE-Br.33-40, making only a handful of arguments. The District suggests that a laxer overbreadth standard applies for schools. Dist.-Br.17-18 (citing *Sypniewski v. Warren Hills Regional Bd.*

*of Educ.*, 307 F.3d 243, 259 (3d Cir. 2002)). But the Third Circuit's discussion of a more "hesitant application" of the overbreadth doctrine was merely a recognition that schools can sometimes regulate speech that could not be prohibited otherwise. *Sypniewski*, 307 F.3d at 259; *see id.* at 265 (finding a school policy prohibiting speech that "'creates ill will'" to be unconstitutionally overbroad). Indeed, this Court has never applied a lower standard in its overbreadth analysis. *See, e.g.*, *Barr*, 538 F.3d at 569 n.7 (distinguishing *Sypniewski*); *Defoe*, 625 F.3d at 335 n.6 (same). As explained, the overbreadth doctrine applies no differently in schools. *See* PDE-Br.33.

The District identifies various laws and policies and argues that they require "the District [to] maintai[n] an environment for its students free from bullying and harassment." Dist.-Br.18-20. As an initial matter, none of these legal sources authorize the capacious prohibitions contained in the Policies. The whole point of the overbreadth doctrine is that the government cannot punish a "substantial amount of constitutionally protected speech" just because it has the power to regulate *some* conduct. *City of Houston v. Hill*, 482 U.S. 451, 466-67 (1987); *see, e.g.*, *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1183 (6th Cir. 1995) (finding a "discriminatory harassment policy" overbroad because it "sweeps within its ambit both constitutionally protected activity and unprotected conduct" (cleaned up)). Speech restrictions "must be carefully drawn … to punish only unprotected speech and not be susceptible of application to protected expression. 'Because First Amendment freedoms need breathing space to survive, government may

regulate in the area only with narrow specificity.'" *Gooding v. Wilson*, 405 U.S. 518, 522 (1972) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

Regardless, state policies and federal statutes cannot trump the First Amendment. When an anti-discrimination or harassment "law and the Constitution collide, there can be no question which must prevail": the Constitution. *303 Creative*, 600 U.S. at 592; *see, e.g.*, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc) ("Anti-discrimination laws and policies serve undeniably admirable goals, but when those goals collide with the protections of the Constitution, they must yield—no matter how well-intentioned.").

Contra the District, *Davis* is relevant to the overbreadth analysis. *See* FIRE-Br.20-27. The District rejects any need to comply with *Davis* because, it asserts, *Davis* "is not a First Amendment case." Dist.-Br.23. Not so. Although the plaintiff in *Davis* didn't bring a cause of action under the First Amendment, the Court had the First Amendment in mind when it defined "harassment" under Title IX. In response to "the dissent" from Justice Kennedy, which raised First Amendment concerns about campus speech codes, the Court expressly "acknowledged" that schools face "legal constraints on their disciplinary authority." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649, 652-53 (1999). Citing the dissent four times, the Court insisted that "it would be entirely reasonable for a [school] to refrain from a form of disciplinary action that would expose it to *constitutional* … claims." *Id.* (emphasis added). And the Court "repeated the 'severe and pervasive' formulation five times" to make clear the speech-protective line it was

drawing. *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026, 30,149 (May 19, 2020). Here, the Policies prohibit more speech than is allowed by *Davis*, as the District essentially concedes. *See* Dist.-Br.25; *see also Saxe*, 240 F.3d at 205-06; FIRE-Br.20-27.

Finally, the District does not dispute that the Code of Conduct and Policy 5136 apply off schoolgrounds, even when there is no (or little) connection to a school-sponsored activity. Nor does the District engage with any of PDE's arguments specific to these policies, including that these policies prohibit a broad range of protected speech. PDE-Br.39-40. Indeed, the District does not even cite *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S.Ct. 2038 (2021)—the applicable Supreme Court precedent on the issue of off-schoolgrounds speech. The District's silence is telling. The Code of Conduct and Policy 5136 are especially overbroad because they prohibit speech occurring off schoolgrounds. PDE-Br.39-40; ACLU-Br.12-22.

## II.     The remaining preliminary-injunction criteria favor PDE.

"Because [PDE] is likely to succeed on its constitutional claims, there is 'no issue as to the existence of the remaining preliminary injunction factors.'" *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015). The district court understood as much. *See* Op., R.28, PageID#848. The District disagrees, but its arguments fail.

***Irreparable Harm.*** The District argues that there's no irreparable harm because no "student has been disciplined" yet. Dist.-Br.26. But "'[i]t is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.'" *McGlone v. Bell*,

681 F.3d 718, 729 (6th Cir. 2012); *see G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994) (same). As the district court noted, "Defendants do not deny" that the Students' speech is being chilled by the Policies right now. Op., R.7-2, PageID#821. That injury is irreparable and ongoing. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *ACLU Fund of Mich.*, 796 F.3d at 649 ("Because the ACLU is likely to succeed on its constitutional claims, there is 'no issue as to the existence of the remaining preliminary injunction factors…. [E]ven minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.'" (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010))).

**Balance of Harms and Public Interest.** The District agrees that these two criteria "'merge'" when the government opposes a preliminary injunction. Dist.-Br.27; PDE-Br.41. The District claims these factors cut against injunctive relief because "PDE seeks to completely enjoin enforcement of the District's policies," which will "open students and staff up to harassment and discrimination in violation of federal laws" and "the District up to civil liability." Dist.-Br.27-28 (emphasis omitted). But PDE seeks only to preliminarily enjoin the policies that are infringing students' constitutional rights. That is hardly unusual in First Amendment cases. The District has no "legitimate interest" in stripping students of their constitutional rights, *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020), and it does not contest the well-established principle that "it

16

is 'always in the public interest to prevent the violation of a party's constitutional rights,'" PDE-Br.41 (quoting *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 15 F.4th 728, 736 (6th Cir. 2021)).

Moreover, an injunction will not keep the District from preventing harassment and discrimination in a constitutional manner. If the policies are enjoined, the District could draft new ones that are "consistent with the [First Amendment]" the next day. *Doe v. Pittsylvania Cnty.*, 842 F.Supp.2d 927, 935-36 (W.D. Va. 2012). And if the District believed that PDE's requested injunction was too broad, it could have argued for a narrower one before the district court, but it never did. In sum, there is no basis for leaving the District's unconstitutional policies in place.

## CONCLUSION

The Court should reverse the district court and enter a preliminary injunction.

Dated: November 14, 2023

Respectfully submitted,

*/s/ J. Michael Connolly*

Emmett E. Robinson (OH Bar No. 88537)
Trial Attorney
ROBINSON LAW FIRM LLC
6600 Lorain Ave. #731
Cleveland, OH 44102
Telephone: (216) 505-6900
Facsimile: (216) 649-0508
erobinson@robinsonlegal.org

J. Michael Connolly
Taylor A.R. Meehan
Cameron T. Norris
James F. Hasson
Thomas S. Vaseliou
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
mike@consovoymccarthy.com
taylor@consovoymccarthy.com
cam@consovoymccarthy.com
james@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) because it contains 4,344 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Garamond font.

*/s/ J. Michael Connolly*
Counsel for Appellant
Dated: November 14, 2023

## CERTIFICATE OF SERVICE

I filed this brief via ECF, which will email everyone requiring notice.

*/s/ J. Michael Connolly*
Counsel for Appellant
Dated: November 14, 2023