No. 23-3630

# In the United States Court of Appeals for the Sixth Circuit

PARENTS DEFENDING EDUCATION,
*Plaintiff-Appellant*,
v.
OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,
*Defendants-Appellees*.

On Appeal from the U.S. District Court for the Southern District of Ohio,
No. 2:23-cv-01595 (Hon. Algenon Marbley)

# BRIEF OF *AMICI CURIAE* JEWISH COALITION FOR RELIGIOUS LIBERTY, AMERICAN HINDU COALITION, AND ISLAM AND RELIGIOUS FREEDOM ACTION TEAM IN SUPPORT OF PETITION FOR REHEARING EN BANC

Sue Ghosh Stricklett
American Hindu Coalition
42618 Trade West Drive
Sterling, VA 20166
(301) 785-1041
sueghosh@stricklettgroup.com

*Counsel for American Hindu Coalition*

Jeffrey C. Mateer
David J. Hacker
First Liberty Institute
2001 West Plano Parkway, Ste 1600
Plano, TX 75075
jmateer@firstliberty.org
dhacker@firstliberty.org

Kayla A. Toney
  *Counsel of Record*
First Liberty Institute
1331 Pennsylvania Ave. NW, Ste 1410
Washington, DC 20004
(202) 918-1554
ktoney@firstliberty.org

*Counsel for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and 29(a)(4)(A), and 6th Cir. R. 26.1, there is no parent corporation or publicly held corporation that owns 10% or more of stock of any *amici curiae* described herein.

September 3, 2024

/s/ *Kayla A. Toney*
_____

Kayla A. Toney
  *Counsel of Record*
First Liberty Institute
1331 Pennsylvania Ave. NW, Ste 1410
Washington, DC 20004
(202) 918-1554
ktoney@firstliberty.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTERESTS OF *AMICI CURIAE* ...................................................................... 1

INTRODUCTION .................................................................................................. 2

ARGUMENT .......................................................................................................... 3

I.      The District's speech code violates the First Amendment by compelling students to use pronouns that conflict their beliefs ...................................... 3

      A.      The First Amendment provides students double protection for speech motivated by sincerely held religious beliefs…………………………...3

      B.      By approving the mandated use of preferred names and pronouns, the panel took sides in an ideological debate and marginalized religious students …..……..………………………………………………………6

II.     The panel opinion disproportionately impacts families from minority faith backgrounds ................................................................................................ 8

      A.      Minority faiths are most likely to be misunderstood and targeted by hostile government officials .............................................................. 8

      B.      Families from minority faith backgrounds often lack educational alternatives ................................................................................... 10

CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*,
   611 F.3d 248 (5th Cir. 2010).................................................................................. 8

*Boy Scouts of America v. Dale*,
   530 U.S. 640 (2000)………………………………………………………………4, 7

*Coalition for TJ v. Fairfax Cnty. Sch. Bd.*,
   218 L.Ed.2d 71 (Feb. 20, 2024)………………………………………………………11

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
   82 F.4th 664 (9th Cir. 2023)………………………………………………………..5, 6

*Frankel v. Regents of Univ. of California*,
   No. 2:24-CV-04702-MCS-PD (C.D. Cal. Aug. 13, 2024)……………………….8, 9

*Gonzales v. Mathis Indep. Sch. Dist.*,
   No. 2:18-cv-43 (S.D. Tex. Dec. 27, 2018) ........................................................... 8

*Healy v. James*,
   408 U.S. 169 (1972)………………………………………………………………..4, 5

*Hertzel v. Logger's Run*,
   No. 9:24-cv-80640 (S.D. Fla. filed May 17, 2024)……………………………...9

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc*,
   515 U.S. 557 (1995) …………………………………………….………..4, 7

*Islamic Soc'y of Basking Ridge v. Township of Bernards*,
   226 F. Supp. 3d 320 (D.N.J. 2016) ...................................................................... 9

*Kennedy v. Bremerton School District*,
   597 U.S. 507 (2022) ................................................................................... 2, 3, 4

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy*,
   594 U.S. 180 (2021) ............................................................................................ 11

*Mirabelli v. Olson*,
    691 F.Supp.3d 1197 (S.D. Cal. 2023)……………………………………..……10

*Morse v. Frederick*,
    551 U.S. 393 (2007) ................................................................................ 10, 11

*Tatel v. Mt. Lebanon School District*,
    637 F.Supp.3d 295 (W.D. Pa. 2022) ............................................................. 10

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969)………………………………………………….……....2, 4, 5, 6

*Ward v. Polite*,
    667 F.3d 727 (6th Cir. 2012)……………………………………………..5, 7, 8

*West Virginia Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ................................................................................*passim*

*303 Creative v. Elenis*,
    600 U.S. 570 (2023)……………………………………………………… 4, 6, 7

# INTERESTS OF *AMICI CURIAE*[1]

***The Jewish Coalition for Religious Liberty (JCRL)*** is a cross-denominational organization of Jewish rabbis, lawyers, and professionals committed to defending religious liberty. Representing a minority faith that adheres to practices that many may not know or understand, JCRL has an interest in ensuring that government actors cannot evaluate the validity of religious objectors' sincerely held beliefs. JCRL is also interested in ensuring that parents' and students' First Amendment free exercise rights are protected.

***The American Hindu Coalition (AHC)*** is an apolitical national advocacy organization representing Hindus, Buddhists, Jains, Sikhs, and related members of minority religions that frequently face discrimination and misunderstanding in public schools, as their religious practices and beliefs are unfamiliar to mainstream America. For Hindus, pursuing high-quality education is a core religious practice toward enlightenment. Thus, AHC members have advocated for parent-partnered public education in various local and state-wide school boards. AHC joins this brief to defend religious parents and children against discriminatory practices in public schools that violate the Constitution. AHC further endeavors to protect students' and

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person—other than *Amici* or their counsel—contributed money that was intended to fund preparing or submitting the brief.

parents' First Amendment rights to freely exercise their religion and not be compelled to act against their sincerely held religious beliefs.

***The Islam and Religious Freedom Action Team (IRF)*** of the Religious Freedom Institute amplifies Muslim voices on religious freedom, seeks deeper understanding of the support for religious freedom inside Islamic teachings, and protects the religious freedom of Muslims. The IRF engages in research, education, and advocacy on core issues including freedom from coercion in religion and equal citizenship for people of diverse faiths. The IRF explores and supports religious freedom by translating resources by Muslims about religious freedom, fostering inclusion of Muslims in religious freedom work both where Muslims are a majority and a minority, and partnering with the Institute's other teams in advocacy. The IRF has an interest in protecting the ability of parents to raise their children according to their sincerely held religious beliefs.

## INTRODUCTION

As the Supreme Court held in *Kennedy v. Bremerton School District*, suppressing religious expression in public schools "would undermine a long constitutional tradition under which learning how to tolerate diverse expressive activities has always been 'part of learning how to live in a pluralistic society.'" 597 U.S. 507, 541 (2022). Yet the panel ignored that warning, overreading *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), to invoke

severe limitations on student speech although *Tinker* requires the opposite. This Court should grant rehearing en banc to apply Supreme Court precedent correctly.

Under the panel opinion, a Muslim student who follows the Quran's teachings on gender will be disciplined if she objects to sharing a restroom with a biological male. Jewish students learning Torah commandments at home will be compelled to use classmates' preferred pronouns in violation of their faith, or else face discipline for "harassment." And Hindu families with no choice but public school will face additional pressure as their children affirm concepts about gender that conflict with their beliefs. Because the panel failed to protect these students' and parents' First Amendment rights, the full Court must step in.

The First Amendment provides robust protection for religious exercise, which includes students' ability to speak or refrain from speaking in accordance with their faith. *Amici* urge the Court to grant rehearing en banc, given the impact of Olentangy's speech code on diverse religious families.

## ARGUMENT

I. **The District's speech code violates the First Amendment by compelling students to use pronouns that conflict with their beliefs.**

   A. **The First Amendment provides students double protection for speech motivated by sincere religious beliefs.**

In *Kennedy*, the Supreme Court rejected the "'modified heckler's veto, in which . . . religious activity can be proscribed' based on 'perceptions' or

3

'discomfort.'" 597 U.S. at 534, 514 (citation omitted) ("Both the Free Exercise and Free Speech Clauses of the First Amendment protect expressions like Mr. Kennedy's."). The Court reaffirmed the compelled speech doctrine in *303 Creative v. Elenis*, finding that Colorado violated the Free Speech Clause by compelling a Christian web designer to create wedding websites that affirm concepts about marriage contrary to her faith. 600 U.S. 570 (2023). Drawing on decades of jurisprudence including *West Virginia v. Barnette*, 319 U.S. 624 (1943), *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557 (1995), and *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), the Court held that "the First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply 'misguided,' and likely to cause 'anguish' or 'incalculable grief.'" *Id.* at 2312 (citations omitted). And "the government may not compel a person to speak its own preferred messages." *Id*. (citing *Tinker*, 393 U.S. at 505-06).

These bedrock speech protections extend to students in myriad contexts. In *Tinker*, which the panel applied incorrectly to limit students' speech rights, the Supreme Court held: "in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right of freedom of expression . . . our Constitution says we must take this risk." 393 U.S. at 508. In *Healy v. James*, the Court found that unsubstantiated fear of "disruption" was not a valid reason for

4

denying official recognition to Students for a Democratic Society. 408 U.S. 169, 189–90 (1972).

This Court upheld similar principles in *Ward v. Polite*, finding "the most aggressive form of viewpoint discrimination" is "compelling an individual 'to utter what is not in [her] mind' and indeed what she might find deeply offensive—and the Court has enforced that prohibition, too, in the public school setting." 667 F.3d 727, 733 (6th Cir. 2012) (quoting *Barnette,* 319 U.S. at 634). Here, the panel briefly mentioned *Ward* but ignored its thrust: "discriminating against the religious views of a student is not a legitimate end of a public school.*" Ward*, 667 F.3d at 734; *see id*. ("[T]he ban on discrimination against clients based on their religion . . . does not require a Muslim counselor to tell a Jewish client that his religious beliefs are correct if the conversation takes a turn in that direction . . . . Tolerance is a two-way street. Otherwise, the rule mandates orthodoxy, not anti-discrimination.")

The en banc Ninth Circuit protected religious student speech in *Fellowship of Christian Athletes v. San Jose Unified School District*, holding that the school district violated Christian students' free exercise, free speech, and free association rights when it derecognized their student ministry club because of their beliefs about sexuality. 82 F.4th 664, 695 (9th Cir. 2023) (en banc) ("[T]he First Amendment's Free Exercise Clause guarantees protection of those religious viewpoints even if they

may not be found by many to 'be acceptable, logical, consistent, or comprehensible.'").

The panel opinion flouts these constitutional principles, permitting the District to discipline students based on content and viewpoint of their speech. Since compelling an adult to speak messages that violate her faith violates the Free Speech Clause (*303 Creative*), how much more when those compelled are minor students in the coercive atmosphere of school administrators controlling their grades, records, and college admissions chances. *FCA*, 82 F.4th at 692 n.11 ("the power dynamic of the student-teacher relationship is not lost upon us"). This Court should ensure that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker*, 393 U.S. at 506.

**B. By approving the mandated use of preferred names and pronouns, the panel took sides in an ideological debate and marginalized religious students.**

The panel acknowledged that "pronouns matter," and that these students have "'deeply held beliefs' about the immutability of sex." Maj.Op.13. Yet the court disrespected those beliefs by forcing religious students into a Hobson's choice: either don't refer to classmates at all (nearly impossible), or use classmates' first names – *even if those names conflict with biological sex.* Maj.Op.14. If biologically female Jenny identifies as male Tom, a Muslim student will have the same conscientious objection to referring to this classmate either as "Tom" or "he." Both

words communicate that biological sex can change, and both force the Muslim student to affirm something contrary to his faith. Unlike the last-name compromise in *Meriwether*, first names carry gender-specific connotations, so this "compromise" is not at all "respecting both sides' deeply held beliefs." Maj.Op.14.

The panel also erred in elevating the compelled speech doctrine to require a "tangible, material sacrifice." Maj.Op.14. That phrase appears nowhere in *303 Creative, Hurley, Dale,* or *Barnette*, for good reason – forcing religious claimants to quantify the cost to their conscience fundamentally misunderstands First Amendment protections. The panel further tipped the scales against religious students when it decided that not "any students are similarly debilitated" "when some students use preferred pronouns to refer to their classmates." Maj.Op.17. *Amici* disagree. For Jewish, Muslim, Hindu, and other religious students to be forced to speak against their beliefs by using pronouns and names conflicting with biological sex, or disrespect their classmates by not speaking to them at all, this is an irreparable First Amendment harm. Maj.Op.17. As Judge Batchelder's stirring dissent made clear, Olentangy's policy would essentially "compel students to state that Mormon students are just as Christian as Baptist, Methodist, or Catholic students," Dissent.40, forcing students to take a position on a controversial issue on which many Americans disagree. That is the precise harm recognized in *Barnette* and *Ward*: "compelling an

individual 'to utter what is not in [her] mind' and indeed what she might find deeply offensive." 667 F.3d at 733 (quoting *Barnette,* 319 U.S. at 643).

The Constitution demands more: that "[f]ree public education . . . will not be partisan or enemy of any class, creed, party, or faction." *Barnette*, 319 U.S. at 637.

### III. The panel opinion disproportionately impacts families from minority faith backgrounds.

#### A. Minority faiths are most likely to be misunderstood and targeted by hostile government officials.

Public-school officials are more likely to misunderstand minority faiths because their beliefs and practices are unfamiliar. *See, e.g., A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 260–61 (5th Cir. 2010) (school officials questioned Native American student's belief in "keep[ing his] hair long and in braids as a tenet of [his] sincere religious beliefs"); *Gonzales v. Mathis Indep. Sch. Dist.*, No. 2:18-cv-43, 2018 WL 6804595, at *4 (S.D. Tex. Dec. 27, 2018) (school officials mistakenly argued that students' traditional religious promesa (promise) was not "religious" or "an established tenet of their Catholic faith").

For the most part, America has been an incredibly welcoming and gracious home that has allowed Jewish people to flourish. Unfortunately, in recent years, anti-Semitism has continued to spread, especially in the school context and toward Orthodox Jews who adhere to traditional Torah values and practices. *See, e.g., Frankel v. Regents of Univ. of California*, No. 2:24-CV-04702-MCS-PD, 2024 WL

3811250, at *3 (C.D. Cal. Aug. 13, 2024) (ordering UCLA to stop allowing and assisting antisemitic agitators to ban Jewish students from portions of campus); *Hertzel v. Logger's Run*, No. 9:24-cv-80640 (S.D. Fla. filed May 17, 2024) (local HOA refused to consider synagogue request because they "didn't want Jews," and rabbi faced vandalism and violent threats for hosting in-home religious gatherings).

As an unwelcome minority in many American communities, Muslims are likely to face hostility from government officials who do not afford them the same presumption of good faith that other religious groups may enjoy. *See, e.g.,* ASMA UDDIN, WHEN ISLAM IS NOT A RELIGION: INSIDE AMERICA'S FIGHT FOR RELIGIOUS FREEDOM 116–117 (2019); *see also Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 226 F. Supp. 3d 320, 327–28 (D.N.J. 2016) (documenting destruction of property, government hostility, and false accusations regarding Islamic beliefs and practices following proposal to build local Mosque).

Given these realities, children in minority religious traditions face the greatest pressure to conform to school administrators' orthodoxy. The students here already face such pressure. R.7-4, PageID#374 ("being disciplined for stating their fundamental beliefs will inflict mental and psychological harm on Parent D's children by forcing them to 'choose' between expressing the beliefs they have been taught at home and following the instructions of teachers and other Olentangy authority figures"). A Muslim student wearing a hijab or a Jewish student wearing a

9

yarmulke will experience additional pressure because their appearance demonstrates sincere religious beliefs that will attract the ire of school administrators enforcing the District's speech code.

### B. Families from minority faith backgrounds often lack educational alternatives.

Parental rights do not evaporate when parents send their children to public school. *Morse v. Frederick*, 551 U.S. 393, 424 (2007) (Alito, J., concurring) ("It is a dangerous fiction to pretend that parents simply delegate their authority—including their authority to determine what their children may say and hear—to public school authorities."). Indeed, such an approach would "be fundamentally unfair to parents who in reality do not have that choice." *Tatel v. Mt. Lebanon Sch. Dist*, 637 F. Supp. 3d 295, 324-25 (W.D. Pa. 2022). As Justice Alito observed, "[m]ost parents, realistically, have no choice but to send their children to a public school and little ability to influence what occurs in the school." *Morse*, 551 U.S. at 424. And "[c]onstitutional rights should not be analyzed in a way that benefits only socially and economically advantaged persons," that is, parents who can afford private school or homeschooling on a single income. *Tatel*, 637 F. Supp. 3d at 325. While "[s]ome parents who do not want such barriers may have the wherewithal to place their children in private schools or homeschool, or to move to a different public school district," "[f]amilies in middle or lower socio-economic circumstances have no such options." *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1222 (S.D. Cal. 2023).

Even for parents who could afford private school, members of minority faiths have very few options that would not conflict with their beliefs. A Muslim family may choose Catholic school over public school in order to avoid speech codes like the District's, but that would cause a different conflict as the student would learn one faith at home and another at school. Many Jewish parents, especially the most Orthodox, do choose to send their children to religious schools, but large geographical areas lack Jewish day schools altogether, or the schools are under attack by hostile governments for allegedly not complying with local regulations. The Hindu-American community lacks educational alternatives and also faces racial and religious discrimination limiting school choice. *Coalition for TJ v. Fairfax Cnty. Sch. Bd.*, 218 L.Ed.2d 71 (Feb. 20, 2024) (Alito, J., dissenting from denial of certiorari) (recognizing overt discrimination against Asian-American students applying to magnet school, 75% of whom were Hindu-American).

As the Supreme Court recently observed, "America's public schools are the nurseries of democracy," which "only works if we protect the 'marketplace of ideas.'" *Mahanoy Area Sch. Dist. v. B. L. by & through Levy,* 594 U.S. 180, 190 (2021). Especially for members of minority faiths, "[t]hat protection must include the protection of unpopular ideas." *Id.* Here, families from a wide variety of religious, cultural, and political backgrounds are coming together to express deeply

11

concerned opposition to the District's speech code. The Court should heed their concerns and take action to protect the constitutional rights of students and parents.

## CONCLUSION

For all these reasons, the Court should grant rehearing en banc.

Dated: September 3, 2024

Respectfully submitted,

Sue Ghosh Stricklett
American Hindu Coalition
42618 Trade West Drive
Sterling, VA 20166
(301) 785-1041
sueghosh@stricklettgroup.com

*Counsel for American Hindu Coalition*

/s/ *Kayla A. Toney*

Kayla A. Toney
   *Counsel of Record*
First Liberty Institute
1331 Pennsylvania Ave. NW, Suite 1410
Washington, DC 20004
(202) 918-1554
ktoney@firstliberty.org

Jeffrey C. Mateer
David J. Hacker
First Liberty Institute
2001 West Plano Parkway, Ste 1600
Plano, TX 75075
(972) 941-4444

*Counsel for Amici Curiae*

# CERTIFICATES OF COMPLIANCE

I, Kayla A. Toney, hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2599 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f);

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, size 14.

September 3, 2024

/s/ *Kayla A. Toney*

Kayla A. Toney

**CERTIFICATE OF SERVICE**

I certify that on the date indicated below, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send notification and a copy of the brief to the counsel of record for the parties.

September 3, 2024

/s/ *Kayla A. Toney*

Kayla A. Toney