No. 23-3630

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

PARENTS DEFENDING EDUCATION,

*Plaintiff-Appellant,*

v.

OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Ohio
Case No. 2:23-cv-01595-ALM-KAJ

**Brief of Alliance Defending Freedom as Amicus Curiae in Support of Rehearing En Banc**

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street NW
Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@adflegal.org

TYSON C. LANGHOFER
MATHEW W. HOFFMANN
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
tlanghofer@adflegal.org
mhoffmann@adflegal.org

*Attorneys for Amicus Curiae*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 23-3630     Case Name: Parents Defending Educ. v. Olentangy

Name of counsel: Mathew W. Hoffmann

Pursuant to 6th Cir. R. 26.1, Alliance Defending Freedom
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

## CERTIFICATE OF SERVICE

I certify that on August 30, 2024 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Mathew W. Hoffmann

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................. i

Table of Authorities ................................................................................... iii

Identity and Interest of Amicus Curiae ...................................................... 1

Introduction ................................................................................................ 2

Argument ................................................................................................... 4

I.   ADF's educator-clients believe that sex is immutable and have faced discipline for refusing to speak the opposite message by using pronouns inconsistent with sex. ......................... 4

    A.   Dr. Nicholas Meriwether ........................................................ 5

    B.   Vivian Geraghty ...................................................................... 7

II.  The panel's opinion allows Olentangy Local School District to compel students to speak pronouns inconsistent with sex. ............ 8

III. Students and educators can't avoid using pronouns altogether, so the district's policies are unconstitutional. ............ 10

Conclusion ............................................................................................... 12

Rule 32(g)(1) Certificate of Compliance ................................................ 13

Certificate of Service .............................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023) ................................................................. 1, 12

*Geraghty v. Jackson Local School District Board of Education*,
    2024 WL 3758499 (N.D. Ohio Aug. 12, 2024) .............................. 1, 8

*Janus v. American Federation of State, County & Municipal Employees, Council 31*,
    585 U.S. 878 (2018) ........................................................................ 2

*Mahanoy Area School District v. B.L. ex rel. Levy*,
    594 U.S. 180 (2021) ...................................................................... 12

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ......................................... 1, 5, 6, 7, 10

*Parents Defending Education v. Olentangy Local School District Board of Education*,
    109 F.4th 453 (6th Cir. 2024) ............................................... 9, 10, 11

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
    487 U.S. 781 (1988) ...................................................................... 10

*Tennessee v. Cardona*,
    2024 WL 3019146 (E.D. Ky. June 17, 2024) ................................. 10

*Vlaming v. West Point School Board*,
    895 S.E.2d 705 (Va. 2023) .............................................................. 1

*Wilkins v. Daniels*,
    744 F.3d 409 (6th Cir. 2014) ..................................................... 9, 11

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ............................................................... 10, 11

**Other Authorities**

Alliance Defending Freedom, *Victory: Shawnee State agrees professors can't be forced to speak contrary to their beliefs* (Apr. 14, 2022) ................................................................................. 7

## IDENTITY AND INTEREST OF AMICUS CURIAE[1]

Alliance Defending Freedom (ADF) is a not-for-profit, public interest legal organization protecting religious freedom, free speech, the sanctity of life, parental rights, and marriage and family. ADF regularly defends students, adults, and organizations in cases across the country involving the right to free speech. *E.g.*, *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023); *Vlaming v. W. Point Sch. Bd.*, 895 S.E.2d 705 (Va. 2023).

For example, ADF has defended clients, like Dr. Nicholas Meriwether and Vivian Geraghty, targeted by government policies that force them to use pronouns inconsistent with sex. *E.g.*, *Meriwether*, 992 F.3d at 501; *Geraghty v. Jackson Loc. Sch. Dist. Bd. of Educ.*, No. 5:22-cv-02237, 2024 WL 3758499 (N.D. Ohio Aug. 12, 2024). For these educators, declining to use pronouns inconsistent with sex conveys their deepest convictions on the nature of males and females; it communicates their belief that sex is immutable. ADF therefore has a strong interest in presenting the views of its clients on (1) how pronoun usage conveys a message, and (2) how damaging compelling them to speak the opposite message is.

---

[1] No counsel for a party authored this brief in whole or in part, and no person other than amicus and its counsel made any monetary contribution intended to fund the preparation or submission of this brief. Counsel for plaintiff-appellant consented to the filing of this brief, but counsel for defendants-appellees withheld consent without explanation.

## INTRODUCTION

When faced with a request to use feeling-based pronouns, the choice of pronouns communicates a message on a fundamental issue of human nature. "He" conveys that the person referred to is a male, while "she" denotes a female. For educators like Dr. Nicholas Meriwether and Vivian Geraghty, the choice of pronouns communicates their belief that sex is immutable. Referring to a female as "he" conveys that a person's sex depends not on objective biology but on a person's subjective feeling about what it means to be stereotypically male or female.

Policies that compel the use of pronouns inconsistent with sex coerce students and educators into speaking contrary to their deeply held beliefs. Forced affirmation inflicts "additional damage" over forced silence. *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 585 U.S. 878, 893 (2018). Compelled use of pronouns inconsistent with sex "coerce[s]" educators like Dr. Meriwether and Ms. Geraghty and the students in this case into "betraying their convictions." *Id*. It forces them to engage in "social transition"—affirmation of a gender identity inconsistent with sex—which they believe is a lie and will harm students. These educators have faced discipline, including reprimand and forced resignation, all for not abiding by policies that require using feeling-based pronouns rather than sex-reflective pronouns.

The panel opinion skated by the compelled-speech problem by suggesting that the objecting students could simply refrain from using feeling-based "pronouns at all."[2] Despite recognizing that "pronouns matter" and that using pronouns inconsistent with sex violated the students' "deeply held beliefs," the Court concluded that avoiding pronouns altogether imposed no "tangible, material sacrifice."

The panel opinion exemplifies the dangers of compelled speech. The First Amendment protects each individual's right to express his *own* message, not a message the government mandates. As Judge Batchelder recognized in dissent, pronouns are ubiquitous. Avoiding their use is a practical impossibility that presents no real alternative. So the school district's policies require the use of feeling-based pronouns. And the use of those pronouns forces educators and students to affirm a set of beliefs not their own—that sex is mutable and dependent on a person's subjective perception of self and how it feels to be male or female.

Accordingly, this Court should grant rehearing en banc and reverse and remand with instructions to enter a preliminary injunction on at least the compelled-speech claim.

---

[2] The panel made other rulings inconsistent with First Amendment law, but this brief addresses only the compelled speech holding.

# ARGUMENT

As the examples of ADF's educator-clients and Parents Defending Education's student-members here show, declining to use feeling-based pronouns communicates a speaker's deeply held beliefs. Contrary to the panel's assumption, educators and students cannot reasonably avoid using pronouns, and the school district's policies here compel using pronouns inconsistent with sex. They cannot pass muster under the First Amendment.

## I.   ADF's educator-clients believe that sex is immutable and have faced discipline for refusing to speak the opposite message by using pronouns inconsistent with sex.

Dr. Nicholas Meriwether and Vivian Geraghty are practicing Christian educators who believe that God creates each person with immutable sex as male or female, and that rejection of one's biological sex is a rejection of the image of God within that person. They also believe that the pronouns they use convey an important message. In recent years, they have seen an increase in students asking to be addressed by different names consistent with new asserted gender identities and by pronouns inconsistent with their sex.

Those requests are part of "social transition." As Ms. Geraghty understands it, social transition includes the use of a new name and pronouns to "validate" students' asserted gender identities inconsistent with their sex. V. Compl. ¶ 52, *Geraghty v. Jackson Loc. Sch. Dist. Bd. of Educ.*, No. 5:22-cv-02237 (N.D. Ohio Dec. 12, 2022). Social transition

4

is an "active intervention" that can have a "significant effect[ ]" on a student's "psychological functioning." *Id.* It can start children—who have limited ability to assess long-term consequences and who often suffer from past trauma or other mental health issues—on the road to irreversible medical interventions, such as puberty blockers and genital-mutilating surgery. *Id.* ¶¶ 53–55. Participating in that social transition thus communicates a message—that what makes a child a boy or a girl is that child's personal sense of being a boy or girl rather than the child's sex. *Id.* ¶ 59. And it also forces the speaker to advocate for something she believes harms children. *Id.* ¶ 60.

These educators have faced discipline for seeking to preserve their freedom from uttering a message that contradicts their deeply held beliefs. Their stories show the additional damage inflicted by compelled speech here.

### A.   Dr. Nicholas Meriwether

For nearly three decades, Dr. Meriwether has served as philosophy professor at Shawnee State University. *Meriwether*, 992 F.3d at 498. Dr. Meriwether is a campus "fixture." *Id.* He designed a bachelor's degree program in Philosophy and Religion, taught "countless students in classes ranging from Ethics to the History of Christian Thought," and was a member of the faculty senate. *Id.* When teaching political philosophy, Dr. Meriwether employs the Socratic method and addresses students either by "Mr." or "Ms." *Id.* at 499. He

finds that the formal address helps students "view the academic enterprise as a serious, weighty endeavor and fosters an atmosphere of seriousness and mutual respect." *Id.* (cleaned up).

On the first day of his 2018 political philosophy class, Dr. Meriwether answered a student's question with "Yes, sir." *Id.* After class, that male student, "Doe," approached Dr. Meriwether and "demanded" he "refer to [Doe] as a woman." *Id.* Dr. Meriwether responded that "his sincerely held religious beliefs prevented him from communicating messages about gender identity that he believes are false." *Id.* Doe then became "hostile" and "promised that Meriwether would be fired if he did not give in to Doe's demands." *Id.*

The next day, Dr. Meriwether's dean "advised" him to "eliminate all sex-based references from his expression"—no "Mr." or "Ms." and no "he" or "she." *Id.* Dr. Meriwether objected "that eliminating pronouns altogether was next to impossible, especially when teaching." *Id.* So the dean initially accepted the proposed compromise of retaining sex-based references to students, while using only Doe's name. *Id.* But after Doe protested, the dean changed course and required Dr. Meriwether to address Doe as a woman. *Id.* at 500.

At the same time, the University's Title IX office investigated Dr. Meriwether. *Id.* It found he had discriminated based on gender identity and created a hostile environment because Doe "perceive[d] them self as a female," and because Dr. Meriwether "'refuse[d] to recognize' that

6

identity by using female pronouns." *Id.* at 501. The university reprimanded Dr. Meriwether and required him to either sacrifice his beliefs by referring to Doe as a female or suffer "further corrective actions," *id.*, forcing Dr. Meriwether to file suit. This Court held Dr. Meriwether stated a First Amendment claim, *id.* at 518, and he later favorably settled his case, preserving his freedom from compelled speech.[3]

### B. Vivian Geraghty

For two years, Vivian Geraghty taught middle school English without violating her religious beliefs. V. Compl. ¶¶ 37–38, *Geraghty*, No. 5:22-cv-02237 (N.D. Ohio Dec. 12, 2022). She had never received any complaint about her performance or disciplinary action. *Id.* ¶ 38. That all changed when two students requested Ms. Geraghty address them by "names associated with their new gender identities," with one student requesting to be addressed by "pronouns inconsistent with the student's sex." *Id.* ¶ 66.

Ms. Geraghty went to her principal to seek a solution that would allow her to continue to teach without violating her conscience, for example, by refraining from using pronouns inconsistent with the student's sex and by addressing the student by last name. *Id.* ¶¶ 65, 68.

---

[3] Alliance Defending Freedom, *Victory: Shawnee State agrees professors can't be forced to speak contrary to their beliefs* (Apr. 14, 2022), https://perma.cc/B9HZ-NRJH.

Less than an hour later, the principal, now joined by his supervisor, inquired into Ms. Geraghty's religious beliefs and told her that "she would be required to put her beliefs aside as a public servant." *Id.* ¶¶ 70–73. The officials threatened that refusing to participate in social transition would amount to "insubordination." *Id.* ¶ 75. Ms. Geraghty held her ground, and the officials forced her to resign. *Id.* ¶¶ 78–83.

The district court recently granted Ms. Geraghty summary judgment on her argument that the school district's policy compelled her speech. *Geraghty*, 2024 WL 3758499, at *13. The court rejected as too "sanitized," the school district's argument (citing the district court's decision here) that "use of preferred names and pronouns" simply represented the "standard back-and-forth ritual of greeting without any meaning." *Id.* at *12 (cleaned up). Relying on *Meriwether*, the court ruled that "titles and pronouns carry a message"—affirming something about the person—and that using feeling-based pronouns forced Ms. Geraghty to utter a message inconsistent with her beliefs. *Id.*

## II. The panel's opinion allows Olentangy Local School District to compel students to speak pronouns inconsistent with sex.

Olentangy Local School District admittedly compels speech. Order, R.28, Page ID# 837. As the district court recognized, its policies "require students to use the preferred pronouns of other students"—no matter whether those pronouns reflect the students' sex. *Id.*

But the panel elided the compelled-speech issue. It rightly acknowledged that "pronouns matter," and that using feeling-based pronouns would violate "deeply held beliefs about the immutability of sex" of the student-members of Parents Defending Education. *Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 109 F.4th 453, 466 (6th Cir. 2024) (*PDE*) (cleaned up). Yet it rejected the compelled-speech challenge because the students would not suffer "a tangible, material sacrifice" by using "no pronouns at all" to refer to transgender-identifying students. *Id.* at 466–67. Relying on a case not involving compulsory government action, the panel held that avoiding pronouns did not present a "sham option." *Id.* at 466 (quoting *Wilkins v. Daniels*, 744 F.3d 409, 416 (6th Cir. 2014)).

Judge Batchelder dissented. She recognized that "[p]ronouns are ubiquitous in everyday speech." *Id.* at 484 (Batchelder, J., dissenting). Forgoing pronouns makes sentences "read awkwardly and sound unnatural." *Id.* What's more, the panel's option to avoid pronouns altogether really presents no option at all: it "still compels students to send a message they do not wish to send—under the hypothetical accommodation, remaining silent instead of affirming their belief that biological gender is immutable." *Id.* But "[n]o government may affect a speaker's message by forcing her to accommodate other views." *Id.* (cleaned up).

9

## III. Students and educators can't avoid using pronouns altogether, so the district's policies are unconstitutional.

School district policies requiring the use of asserted pronouns—like the ones here—do not escape the compelled-speech analysis because their terms may not literally require speaking those pronouns. School districts cannot put students and educators to the "Hobson's Choice" of choosing whether to remain silent or to speak the government's message. *Meriwether*, 992 F.3d at 517. Freedom of speech "necessarily compris[es] the decision of both what to say and what *not* to say." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 797 (1988).

As Judge Batchelder, the district court here, and other courts have recognized, students and teachers can't avoid pronouns: their use "in daily conversation is ever-present." Order, R.28, Page ID# 843; *PDE*, 109 F.4th at 484 (Batchelder, J., dissenting); *Tennessee v. Cardona*, No. 2:24-072-DCR, 2024 WL 3019146, at *25 (E.D. Ky. June 17, 2024). Using pronouns is "a virtual necessity for most Americans," just like driving a car. *See Wooley v. Maynard*, 430 U.S. 705, 715 (1977). In *Wooley*, the Supreme Court held that New Hampshire could not compel its residents to display the state motto "Live Free or Die" on their license plates. *Id.* at 717. Residents could choose not to drive and thus avoid speaking the state's message. But that didn't factor into the Supreme Court's analysis. New Hampshire "condition[ed] . . . driving"

10

on becoming "a mobile billboard for the State's ideological message." *Id.* at 715 (cleaned up).

Compelled speech comes from "governmental action that is regulatory, proscriptive, or compulsory in nature." *Wilkins*, 744 F.3d at 415 (cleaned up). In *Wilkins*, relied on by the panel, this Court rejected a compelled-speech challenge because the law at issue regulated exotic animals (not speech) and provided 14 exemptions to its mandate. *Id.* One of those provisions exempted members of two associations. *Id.* The law didn't require anyone to join the associations and didn't compel speech in the form of forced association because it presented a plethora of other ways to comply and the plaintiffs couldn't show the other exemptions presented "sham option[s]." *Id.* at 416.

No question exists here that the district's policies are compulsory. The policies directly regulate speech and threaten discipline for any student who doesn't comply. *See PDE*, 109 F.4th at 459–60. *Wilkins*'s sham-option rule thus has no application. PDE's student-members have no other viable option to comply with the district's mandatory policies. Using pronouns is a virtual necessity in schools. And it doesn't matter that the students *could* avoid pronouns by artificially altering their language. That "accommodation still compels students to send a message they do not wish to send": "remaining silent instead of affirming their belief that biological gender is immutable." *PDE*, 109 F.4th at 484 (Batchelder, J., dissenting). But "no government may

11

interfere with" a speaker's "desired message." *303 Creative*, 600 U.S. at 596 (cleaned up).

## CONCLUSION

Our "public schools are the nurseries of democracy" that must preserve the "marketplace of ideas" for our "representative democracy" to work. *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 190 (2021). But compelled speech transforms that marketplace into a monopoly by making the government the sole arbiter of acceptable ideas. And that is equally true of compelled silence.

Policies like the ones here force educators and students alike to betray their convictions. This Court should grant rehearing en banc and reverse and remand with instructions to enter a preliminary injunction on at least the compelled-speech claim.

Dated: August 30, 2024

Respectfully submitted,

*/s/ Mathew W. Hoffmann*

| | |
|---|---|
| JOHN J. BURSCH | TYSON C. LANGHOFER |
| ALLIANCE DEFENDING FREEDOM | MATHEW W. HOFFMANN |
| 440 First Street NW | ALLIANCE DEFENDING FREEDOM |
| Suite 600 | 44180 Riverside Parkway |
| Washington, DC 20001 | Lansdowne, VA 20176 |
| (616) 450-4235 | (571) 707-4655 |
| jbursch@adflegal.org | tlanghofer@adflegal.org |
| | mhoffmann@adflegal.org |

*Attorneys for Amicus Curiae*

## RULE 32(g)(1) CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rules of Appellate Procedure 32(a)(7)(B) and 29(b)(4) because it contains 2,594 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and 6th Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: August 30, 2024

*/s/ Mathew W. Hoffmann*
Mathew W. Hoffmann
*Attorney for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Mathew W. Hoffmann*
Mathew W. Hoffmann
*Attorney for Amicus Curiae*
