NO. 23-3630

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

## PARENTS DEFENDING EDUCATION,

PLAINTIFF-APPELLANT,

## V.

## OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.

DEFENDANTS-APPELLEES.

*On Appeal from S.D. Ohio Case No. 2:23-CV-01595*

## RESPONSE IN OPPOSITION TO PETITION FOR REHEARING EN BANC BY APPELLEES, OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, MARK T. RAIFF, RANDY WRIGHT, PETER STERN, KEVIN DABERKOW, BRANDON LESTER, KEVIN O'BRIEN, LIBBY WALLICK AND LAKESHA WYSE

*/s/ Bartholomew T. Freeze*

Bartholomew T. Freeze (0086980)
Genevieve M. Hoffman (0089281)
FREUND, FREEZE & ARNOLD
88 E. Broad St. Suite 875
Columbus, OH 43215
Phone: (614) 827-7300
Fax: (614) 827-7303
*Counsel for Defendant-Appellants Olentangy Local School District Board of Education, Mark T. Raiff, Randy Wright, Peter Stern, Kevin Daberkow, Brandon Lester, Kevin O'Brien, Libby Wallick and LaKesha Wyse*

*and*

*/s/ Jessica K. Philemond*

Jessica K. Philemond (0076761)
Sandra R. McIntosh (0077278)
Mitchell L. Stith (0096759)
SCOTT SCRIVEN LLP
250 E. Broad St., Suite 900
Columbus, OH 43215
*Co-Counsel for Defendant-Appellant Olentangy Local School District Board of Education*

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................. iii

**RULE 35 COUNTER-STATEMENT** ...................................................1

**ARGUMENT** .......................................................................................1

**A.**    **En banc rehearing is disfavored, and the burden is high.** .........................4

**B.**    **The panel decision does not conflict with precedent because no on-point precedent exists.** ...............................................................5

    *1.*  No binding precedent requires public schools to permit direct peer-to-peer harassment based on the harasser's "viewpoint." .............................5

    *2.*  *Meriwether* was an as-applied challenge based on different facts in a different setting with different legal arguments and, therefore, is not controlling ...............................................................6

    *3.*  *Tinker* never applied the substantial disruption test to targeted harassment. ...............................................................7

    *4.*  The unconstitutional applications on which PDE bases its overbreadth challenge are a fantasy ...............................................................8

**C.**    **The precedent set was not in error and its application will be limited.** ...9

**D.**    **DESPITE NOT QUALIFYING FOR EN BANC REVIEW, THE CASE IS ALSO NOW MOOT.** ...............................................................11

**CONCLUSION** ...............................................................13

**CERTIFICATE OF COMPLIANCE** ...............................................14

**CERTIFICATE OF SERVICE** ...............................................14

**ADDENDUM** ...............................................................15

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

# TABLE OF AUTHORITIES

*Cases*

Barr v. Lafon, 538 F.3d 554 (6th Cir. 2008)...............................................5

Doe v. Univ. of Mich., 78 F.4th 929, 948 (2023) .....................................13

Defoe v. Spiva, 625 F.3d 324 (6th Cir. 2010) ...........................................5

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.
528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).........................11

Internatl. Union v. Kelsey-Hayes Co., 872 F.3d 388, 389 (6th Cir.2017) ...........5, 9

Mahanoy Area School Dist. v. B.L., ___U.S.___, 141 S.Ct. 2038, 210 L.Ed.2d 403
(2021) .......................................................................................12

Maras v. Mayfield City School Dist. Bd. of Edn.
6th Cir. No. 22-3915, 2024 U.S. App. LEXIS 2895 (Feb. 6, 2024)......................11

Members of City Council of Los Angeles v. Taxpayers for Vincent
466 U.S. 789, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)...........................8

Meriwether v. Hartop, 992 F.3d 492 (6th Cir.2021) ..................................6

New York State Club Assn., Inc. v. City of New York, 487 U.S. 1 (1988)..............8

Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819 (1995) ................5

Tinker v. Des Moines Indep. Community Sch. Dist.,
393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)...................................5

United States v. Hansen, 599 U.S. 762 (2023) ......................................8, 9


*Other Authorities*

Fed. R. App. P. 35(a) .................................................................4

Fed. R. App. P. 40(a)(2).............................................................5

6 Cir. I.O.P. 35(a).....................................................................5

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

## RULE 35 COUNTER-STATEMENT

PDE's Statement describes a case very different than the one the panel decided. The Olentangy Local School District does not have a "speech code" and it does not force students to use preferred pronouns (or any pronouns) of their peers. Rather, for over a decade, the District has maintained policies that protect students from direct *bullying and harassment*, e.g., conduct that is so severe and/or pervasive that it creates an intimidating or hostile environment or unreasonably interferes with another student's education or the operations of the schools. Respect? No, that cannot be forced. Understanding? No, that cannot be forced, either. But targeting a student with conduct that is so severe and/or pervasive that it causes a hostile learning environment for them can simply not be tolerated, whether the conduct is based on any characteristic—gender identity or otherwise. The anonymous students of the Parents represented by PDE have the same protection were they to be bullied or harassed.

PDE's briefing paints a picture where students who claim to have no ill will toward but otherwise disagree with the concept of gender identity will be swiftly and severely punished for any utterance of their viewpoint. PDE depicts an Orwellian scene where students will be disciplined for having civil disagreements in their homes and online after school. PDE portrays the District as Big Brother, covertly

- 1 -

and constantly monitoring personal devices, the students as oppressed, self-censoring out of fear of reprisal. A fantastically terrifying picture, were it true.

In contrast, the case the panel decided was whether the District's policies that prohibit students from engaging in direct bullying and/or harassment of other students are constitutional. The panel did not conflict with binding authority, as PDE alleges. The panel recognized the inherently unique and compulsory nature of the public K-12 environment, just like the panel did in <u>Meriwether</u>, as it relied upon and distinguished appropriate authority. The panel likewise did not make a precedent-setting error of exceptional public importance. The panel did *not* hold that a school can force the use of preferred pronouns; rather, it found that PDE did not meet its burden of proving that speech is compelled.

As the Court knows, this is an appeal over a pre-enforcement argument at the preliminary injunction stage. No one has been disciplined, in over a decade, so we must rely solely on hypotheticals. And it gets weird. How would the anonymous students know the gender identity of their classmates? They may think they can guess a student's birth sex based on appearance, but they won't always be right. Not every transgender student discloses their transgender identity, either. Others transfer to a new school, so peers are unaware. Are we going to make students announce their birth sex? Out themselves as transgender when they don't want to? Wear a badge so there is no confusion? Is it only compelled speech if the anonymous student

FREUND, FREEZE & ARNOLD
A Legal Professional Association

*knew* the student's pronouns were contrary to their birth sex when they used them? We're now well past Orwellian.

Even beyond these mental gymnastics, the missing piece is still the direct, targeted bullying or harassment of an individual student. Let us take the confederate flag t-shirt example —a hypothetical that fits squarely within <u>Tinker</u>. Wearing the t-shirt alone is not harassment. Pretend the same student wears a t-shirt with the confederate flag, but this time with a statement *directed* at a Black student— "Charles should be a slave." Surely the school could not permit this direct harassment, even if the student believes in racial eugenics—a viewpoint, however offensive. The same result applies here. The pseudonymous students are permitted to discuss their religious or other beliefs, and even wear t-shirts expressing such views so long as they do not cause a substantial disruption. Yet, the District could not be forced to allow a student to wear a shirt that says, "Julie is really a boy." The Bible says, "I permit no woman to teach or have authority over men; she is to keep silent." TIMOTHY 2:11. A student may believe that is true, but they cannot harass Joanne into "keeping silent" as section leader of the trumpet section because of their belief that no woman can have authority over men. Must Julie, Charles, and Joanne endure direct, severe, and pervasive harassment at school under the guise of freedom of speech or religion? Surely not. Because PDE brought a pre-enforcement challenge

FREUND, FREEZE & ARNOLD
A Legal Professional Association

of anti-harassment policies, this is the context in which the case must be viewed and there is a dearth of precedent with these facts.

The District recognizes its immense role in celebrating and protecting its students' First Amendment rights while simultaneously protecting its students from the psychological harm of direct, targeted harassment and bullying—a rather delicate balance. In doing so, the District has enacted policies that prohibit students from harassing one another. It does not maintain policies that suppress genuine, civil debate about matters of public concern. The distinctive K-12 context provides the District with latitude not afforded to other governmental officials. The District's use of anti-harassment and anti-bullying policies falls well within this ambit as the policies permit the expression of different viewpoints, even if unpopular, so long as that expression does not rise to the level of bullying or harassment as specifically defined. Preparing its students to participate in a democratic society does not require that the District permit students to bully or harass one another based on their viewpoints.

## **ARGUMENT**

### A.     **En banc rehearing is disfavored, and the burden is high.**

Rehearing en banc "is not favored" and "ordinarily will not be ordered unless" a petitioner demonstrates it "is necessary to secure or maintain uniformity of the court's decisions" or "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). Petitions for panel rehearing "must state with

- 4 -

particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended." Fed. R. App. P. 40(a)(2).

In the Sixth Circuit, petitions are even more heavily disfavored, explaining that such relief is "extraordinary." 6 Cir. I.O.P. 35(a). As this Court has explained, "[a] difference of opinion about whether one case is factually similar to another is not good fodder for en banc review." Internatl. Union v. Kelsey-Hayes Co., 872 F.3d 388, 389 (6th Cir.2017) (Gibbons, concurring).

This is categorically what PDE seeks in its Petition, as there is no factually identical precedent with which the panel's decision conflicts and PDE overwhelmingly relies on cases involving as-applied challenges devoid of peer-to-peer harassment.

**B.    The panel decision does not conflict with precedent because no on-point precedent exists.**

*1.    No binding precedent requires public schools to permit direct peer-to-peer harassment based on the harasser's "viewpoint."*

PDE claims the panel ignored precedent governing viewpoint discrimination in the K-12 environment, while relying on university cases. Yet, the panel affirmed its mandate, stating: "our precedent requires that restrictions on student speech be consistent 'with both the *Tinker* standard and *Rosenberger's* prohibition on viewpoint discrimination." Maj. Op. (Doc. # 89-2) at p. 16, citing Barr v. Lafon, 538 F.3d 554, 571 (6th Cir.2008) and Defoe v. Spiva, 625 F.3d 324, 336-37 (6th Cir.2010). However, the panel therein adequately explained how, in its opinion, the

- 5 -

District is not prohibiting expression of any viewpoint—PDE's members are free to express their beliefs about gender, so long as it is done in a manner that does not rise to the level of harassment. Id., pp. 16-17. The panel's decision does not conflict with precedent in characterizing the policies not as regulating *the viewpoint*, but the *manner* in which it is expressed.

> *2.* Meriwether *was an as-applied challenge based on different facts in a different setting with different legal arguments and, therefore, is not controlling.*

PDE next criticizes the panel for confining Meriwether v. Hartop, 992 F.3d 492 (6th Cir.2021), to its facts despite the patent difference and overall fact-sensitive nature of constitutional challenges. Meriwether was not a case involving a K-12 student, but an employment case involving a university professor. Moreso, the case was predicated on the Free Exercise Clause and, as Meriwether was punished, the Due Process Clause of the Fourteenth Amendment. Additionally, the record revealed patent animosity toward Meriwether's religious beliefs from the university's administration. Finally, the case involved an *as-applied* challenge, not a pre-enforcement challenge. From the outset, the stark contrast in environments and roles makes clear the case is not directly on-point.

Here, no anonymous student has been punished because none of them have violated the policies—they have not severely and pervasively harassed or bullied their transgender peers. No one has been punished for claiming their religion teaches

FREUND, FREEZE & ARNOLD
A Legal Professional Association

them that gender identity is not real. Teachers did not mock their religious beliefs. District leadership did not refuse to engage in the accommodation process.

The panel would have erred had it blindly followed Meriwether based on PDE's insistence that the simple involvement of pronouns renders it controlling. Yet, the panel understood the factual and legal nuances that distinguished the cases and necessitated different results. Therefore, because Meriwether involved vastly different facts and a different setting, the panel's different decision is not a conflict and precedent does not support en banc review on this basis.

>  *3.* Tinker *never applied the substantial disruption test to targeted harassment.*

PDE further reiterates its position that the Tinker standard was not satisfied for a lack of evidence of substantial disruption. Again, PDE relies on factually inapposite cases crying direct conflict. Yet, the panel understood and appreciated the nuance in the combined policies and the pseudonymous members' purported intentions. The panel likewise understood the difference between black armbands and direct peer-to-peer harassment. While evidence to forecast a substantial disruption flowing from the donning of an arm band or a t-shirt or a bracelet is necessary to support an as-applied challenge, the panel distinguished those circumstances with the current factual situation. Specifically, PDE challenges policies prohibiting direct harassment of students via intentional misgendering so long as it rises to the severe and pervasive threshold. The panel believed it was a

FREUND, FREEZE & ARNOLD
A Legal Professional Association

common sense conclusion that conduct which meets the harassment threshold would be substantially disruptive. The panel did not, as PDE claims, find it was common sense that transgender students are "uniquely incapable of tolerating speech they disagree with . . . ." Pet. For Rehearing (Doc # 92), p. 15. In making the foregoing finding, the panel appropriately distinguished—on the facts—the numerous cases upon which PDE relied. The panel did not overrule or directly conflict with any factually-identical precedent, as none exists.

    4. *The unconstitutional applications on which PDE bases its overbreadth challenge are a fantasy.*

PDE next takes issue with the panel's decision as to overbreadth. Again, there exists no factually identical precedent in this regard, and the panel interpreted controlling case law in its application of the instant facts. In doing so, the panel relied upon United States v. Hansen, 599 U.S. 762 (2023). Specifically, the panel focused on the mandate from the Supreme Court that, to strike down a regulation as overbroad, its "unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the [policy's] lawful sweep." Id. at 770, citing New York State Club Assn., Inc. v. City of New York, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988) and Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800-801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). Hansen included another important dictate: [i]n the absence of a lopsided

FREUND, FREEZE & ARNOLD
A Legal Professional Association

ratio, courts must handle unconstitutional applications as they usually do—
**case-by-case**." Id. (emphasis added).

Again, PDE argues the panel's opinion is contradictory, but relies on cases in entirely different contexts with entirely different facts. And while PDE points out that "even the ACLU" supported its overbreadth argument as amici, it should not be ignored that the ACLU has not supported the petition for rehearing en banc. As indicated, PDE's disagreement with the panel's application of different facts is "not good fodder for en banc review." Internatl. Union, 872 F.3d at 389.

## C.    The precedent set was not in error and its application will be limited.

Because the instant dispute is novel, the panel's opinion may very well have set precedent, but it does not follow that it was done so in error.

PDE claims the panel's decision was erroneous because none of the "core legal analysis was tentative or preliminary." Doc. # 92, at p. 19. Perhaps it is PDE's own continued reliance on factually inapposite precedent that leads it to believe the decision will be erroneously applied. It is naïve at best, disingenuous at worst, to insist that courts and counselors will ignore the context in which this decision was made. It is regular practice in briefing motions for attorneys and the court to point out the different contexts and standards—for example, when a motion to dismiss relies on cases decided on summary judgment. So too, here. It is apparent from the decision that the issue being decided was a motion for *preliminary* injunction. The

FREUND, FREEZE & ARNOLD
A Legal Professional Association

standard is restated and discussed at length, the decision rife with references to the stage of the dispute. The panel's decision makes this clear in indicating more than once that the decision is being made at the preliminary injunction stage and that the case may evolve as discovery progresses. It is patent from the decision that the analysis is indeed preliminary.

Finally, PDE inappropriately separates the standard in the Sixth Circuit's I.O.P.35(a). The standard is not separately, "a precedent-setting error" *or* "a question of exceptional public importance," but, rather, "a precedent-setting error **_of_** exceptional public importance." (Emphasis added). Yet, PDE's argument in this separated manner is simply that pronouns themselves are a "hot issue." PDE likewise relies on court challenges to federal Title IX regulations. While "pronouns" may be relevant in both instances, the standards (and the facts) are different. The panel's decision is heavily fact dependent. It is not a one-size-fits-all decision and will have limited application outside similar factual scenarios. Moreover, even *if* the panel "got it wrong," that does not provide PDE with sufficient grounds for en banc review: the Sixth Circuit Rule notes that "[a]lleged errors . . . in the facts of the case (including sufficient evidence), or errors in the application of correct precedent to the facts of the case, are matters for panel rehearing *but not for rehearing en banc"* Id. (emphasis added).

FREUND, FREEZE & ARNOLD
A Legal Professional Association

**D.      Despite not Qualifying for En Banc Review, the case is also now moot.**

Voluntary cessation will moot a request for a future injunction when it is absolutely clear the challenged conduct is not reasonably expected to recur. <u>Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.</u>, 528 U.S. 167, 190, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). The test consists of two elements: (1) the regulation was revised "in a formal 'legislative-like' meeting;" and (2) the rescission or revision was not conducted to avoid judicial review. <u>Maras v. Mayfield City School Dist. Bd. of Edn.</u>, 6th Cir. No. 22-3915, 2024 U.S. App. LEXIS 2895, at *7-8 (Feb. 6, 2024).

Here, the District can meet both elements. On September 26, 2024, the Board of Education, at a legislative-like meeting, voted to enact certain changes to Policy 5517 and Policy 5136. See <u>Addendum</u>.[1] Therefore, the first element is satisfied. Second, the revisions to the policies were not made in bad faith to moot the instant case or to avoid judicial review. Rather, these changes have been enacted over 16 months after PDE filed the underlying lawsuit and after both the district court and the panel determined that PDE's suit would likely fail. <u>Id.</u> at 9. Notwithstanding the District's success in the litigation thus far, the District desired to reconcile the language with its application of its policies in order to clearly express its

---

[1] See also, updated Policy 5136 available at (https://go.boarddocs.com/oh/olenoh/Board.nsf/goto?open&id=D9LQ8G680501) and updated Policy 5517 available at (https://go.boarddocs.com/oh/olenoh/Board.nsf/goto?open&id=D9LQ8H68050B)

FREUND, FREEZE & ARNOLD
A Legal Professional Association

commitment to maintaining students' First Amendment rights and to clarify any confusion as to the policies' reach.

Historically, the District had read the challenged policies *in pari materia*, where violations of the Personal Communications Devices ("PCD") policy were only considered subject to discipline if they also violate the Anti-Harassment policy. Furthermore, the Supreme Court's decision in Mahanoy Area School Dist. v. B.L., ___U.S.___, 141 S.Ct. 2038, 210 L.Ed.2d 403 (2021), echoes this understanding in its holding that: "Circumstances that may implicate a school's regulatory interests for off-campus speech include serious or severe bullying or harassment targeting particular individuals; threats aimed at teachers or other students." The PCD Policy had last been amended in 2017, several years prior to the decision in Mahanoy. Accordingly, revising the PCD Policy was advisable to bring it in line with the Supreme Court's holding in Mahanoy, specifically to include the differing standards for in-school and out-of-school use, as well as the District's commitment to preserving students' free speech rights.

Furthermore, the revisions to the Anti-Harassment Policy were enacted to make it more concise and improve the clarity, specifically as it applied to the definition of bullying. Therein, the bullet-point list of conduct that may qualify as bullying, so long as it met the severe and pervasive standard, was removed as superfluous.

FREUND, FREEZE & ARNOLD
A Legal Professional Association

Finally, the District took to heart the majority's dicta pertaining to the potential shortfalls as the litigation progresses. Truing up the text of the policies with the District's practice offers further proof of its commitment to its students' constitutional rights. Precedent supports regulatory changes in order to comply with precedent. See <u>Doe v. Univ. of Mich.</u>, 78 F.4th 929, 948 (2023).

## <u>CONCLUSION</u>

PDE has failed to meet the demanding standard for a rehearing en banc. Although PDE disagrees with the panel's decision, its argument is simply that—the assertion that the panel "got it wrong." The Court should deny the Petition.

<table>
<tr>
<td>

*/s/ Bartholomew T. Freeze*

Bartholomew T. Freeze (0086980)
Genevieve M. Hoffman (0089281)
FREUND, FREEZE & ARNOLD
88 E. Broad St. Suite 875
Columbus, OH 43215
Phone: (614) 827-7300
Fax: (614) 827-7303
*Counsel for Defendant-Appellants*
*Olentangy Local School District Board*
*of Education, Mark T. Raiff, Randy*
*Wright, Peter Stern, Kevin Daberkow,*
*Brandon Lester, Kevin O'Brien, Libby*
*Wallick and LaKesha Wyse*

</td>
<td>

*and*


*/s/ Jessica K. Philemond*

Jessica K. Philemond (0076761)
Sandra R. McIntosh (0077278)
Mitchell L. Stith (0096759)
SCOTT SCRIVEN LLP
250 E. Broad St., Suite 900
Columbus, OH 43215
*Co-Counsel for Defendant-Appellant*
*Olentangy Local School District Board*
*of Education*

</td>
</tr>
</table>

- 13 -

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7) because it contains 2,977 words, excluding the portions permitted to be excluded.

This document likewise complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally space typeface using Times New Roman in 14 point.

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze (0086980)
October 3, 2024

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served this 3rd day of October 2024 by electronic mail and/or CM/ECF upon the following:

J. Michael Connolly
Cameron T. Norris
Thomas S. Vaseliou
CONSOVOY McCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
cam@consovoymccarthy.com
*Counsel for Appellant*

*/s/ Bartholomew T. Freeze*
Bartholomew T. Freeze (0086980)

- 14 -

## <u>ADDENDUM</u>

1. September 26, 2024 Board Meeting - Agenda

2. FY25 No. 1 Board Exhibit (to September 26, 2024 Board Agenda)

**FREUND, FREEZE & ARNOLD**
**A Legal Professional Association**

Thursday, September 26, 2024
Regular Board Meeting
Olentangy Administrative Offices-Berlin Room
6:30 p.m.
Meeting Purpose: To conduct the regular business of the Olentangy Schools

# 1. Opening Items

| | |
|---|---|
| Subject : | A. Call to Order/Roll Call |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 1. Opening Items |
| Type : | Procedural |
| Subject : | B. Pledge of Allegiance |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 1. Opening Items |
| Type : | Procedural |
| Subject : | C. Approval of Agenda |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 1. Opening Items |
| Type : | Action |
| Recommended Action : | Motion to approve agenda |

**File Attachments**

BOE Master Presentation 9.26.24.pdf (1,734 KB)

# Motion & Voting

Motion to approve agenda

Motion by KEVIN DABERKOW, second by LIZETT SCHREIBER.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

# 2. Board President's Report

| | |
|---|---|
| Subject : | A. Board President's Report |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 2. Board President's Report |
| Type : | Presentation |

# 3. Presentation(s)

| Subject : | A. State Report Card-Ms. Jeanette Kenney, Director of Data and Continuous Improvement |
|---|---|
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 3. Presentation(s) |
| Type : | Information, Presentation |

## 4. Superintendent's Report

| Subject : | A. Superintendent's Report |
|---|---|
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 4. Superintendent's Report |
| Type : | Presentation |

# Public Content

## 5. Treasurer's Report

| Subject : | A. Treasurer's Report |
|---|---|
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 5. Treasurer's Report |
| Type : | Presentation |

## 6. Public Participation Session

| Subject : | A. Public Participation Comments |
|---|---|
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 6. Public Participation Session |
| Type : | Presentation |

# Public Content

Board Policy 0169.1: Public Participation At Board Meetings

Please Note:Public participation at board meetings is intended to allow individual members of the public to address the Board on issues of public concern, and not intended as a forum for extended conversation or two-way dialogue with the Board members or District officials. The Board President, Superintendent or designee may respond to questions either at the end of the session, or at a later time.The public participation session will take place after the Treasurers Report and is for general comments on matters relevant to the school district. Those who will address the board must complete a yellow public participation form and provide it to the Treasurer prior to the beginning of the meeting.

## 7. Executive Session

| Subject : | A. Convene Into Executive Session |
|---|---|

| | |
|---|---|
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 7. Executive Session |
| Type : | Action |
| Recommended Action : | Motion to convene into Executive Session as permitted by ORC 121.22 (G)(3) to discuss disputes involving the public body that are the subject of pending or imminent court action with legal counsel present. |

## Motion & Voting

Motion to convene into Executive Session as permitted by ORC 121.22 (G)(3) to discuss disputes involving the public body that are the subject of pending or imminent court action with legal counsel present.

Motion by ELIZABETH WALLICK, second by LIZETT SCHREIBER.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | B. Reconvene Into Open Session |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 7. Executive Session |
| Type : | Procedural |

## 8. Discussion Item(s)

| | |
|---|---|
| Subject : | A. Board Policy Updates FY25 No. 1 - Dr. Jack Fette, Deputy Superintendent |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 8. Discussion Item(s) |
| Type : | Discussion |

# Public Content

## 9. Board Consent Action Item(s)

## 10. Board Action Item(s)

| | |
|---|---|
| Subject : | A. Recommend Approval of Board Policy Updates FY25 No. 1 |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 10. Board Action Item(s) |
| Type : | Action |
| Recommended Action : | Motion to approve FY25 No. 1 Board Policy Updates |

**File Attachments**

FY25 No. 1 Board Exhibit.pdf (249 KB)

# Motion & Voting

Motion to approve FY25 No. 1 Board Policy Updates

Motion by KEVIN DABERKOW, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | B. Approval of a Compensation Agreement with Orange Township: Non-School TIF Agreement |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 10. Board Action Item(s) |
| Type : | Action |
| Recommended Action : | Approval of a Compensation Agreement with Orange Township: Non-School TIF Resolution and Agreement |

# Public Content

Recommend approval of a Resolution approving a non-school TIF compensation agreement, and a non-school TIF agreement, with Orange Township--school will be paid 100% of any/all tax money due to it TIF notwithstanding

**File Attachments**

SD Resolution Approve Agree.pdf (84 KB)
School Revenue Sharing Agree.pdf (141 KB)

# Motion & Voting

Approval of a Compensation Agreement with Orange Township: Non-School TIF Resolution and Agreement

Motion by KEVIN OBRIEN, second by LIZETT SCHREIBER.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | C. Recommend approval of a Resolution of Intent to not provide Career-Technical Education (CTE) in Grades Seven and Eight During the 2024-2025 School Year |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 10. Board Action Item(s) |
| Type : | Action |

| | |
|---|---|
| Recommended Action : | Motion to approve a Resolution of Intent to not provide Career-Technical Education (CTE) in grades seven and eight during the 2024-2025 school year. |

# Public Content

Motion to approve a Resolution of Intent to not provide Career-Technical Education (CTE) in grades seven and eight during the 2024-2025 school year. *Exhibit*

### File Attachments

Middle school CTE waiver resolution for 2024-2025.pdf (123 KB)

## Motion & Voting

Motion to approve a Resolution of Intent to not provide Career-Technical Education (CTE) in grades seven and eight during the 2024-2025 school year.

Motion by LIZETT SCHREIBER, second by BRANDON LESTER.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

# 11. Treasurer Consent Action Items

| | |
|---|---|
| Subject : | A. Recommend Approval of 9.12.24 minutes |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 11. Treasurer Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to approve 9.12.24 meeting minutes |

### File Attachments

9.12.24 minutes.pdf (701 KB)

## Motion & Voting

Motion to approve 9.12.24 meeting minutes

Motion by KEVIN DABERKOW, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | B. Recommend Approval of the 8.8.24 Revised Minutes |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 11. Treasurer Consent Action Items |

| Type : | Action |
| Recommended Action : | Motion to approve the 8.8.24 revised minutes |

## File Attachments

8.8.24 minutes-revised.pdf (898 KB)

## Motion & Voting

Motion to approve the 8.8.24 revised minutes

Motion by KEVIN DABERKOW, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| Subject : | C. Recommend approval of Acceptance of Donations |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 11. Treasurer Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to approve acceptance of donations |

# Public Content

Donations for September 26, 2024

1) $7,000.00 Relocation of Baseball Outfield Fencing Orange High School

From: Orange High School Baseball boosters

To: Olentangy Local Schools

2) $4,000.00 New front concrete sidewalk Liberty High School

From: Liberty High School Senior Class of 2024

To: Olentangy Local Schools

3) $2,250.00 Pollinator Garden Liberty High School

From: Olentangy Rotary Club and Liberty Garden Club

To: Olentangy Local Schools

## Motion & Voting

Motion to approve acceptance of donations

Motion by KEVIN DABERKOW, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | D. Recommend Approval of FY2025 Permanent Appropriations |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 11. Treasurer Consent Action Items |
| Type : | Action |
| Recommended Action : | Recommend Approval of FY2025 Permanent Appropriations |

## File Attachments

FY25 Permanent Appropriations.pdf (289 KB)

# Motion & Voting

Recommend Approval of FY2025 Permanent Appropriations

Motion by KEVIN DABERKOW, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | E. Recommend Approval of August 2024 Financial Report |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 11. Treasurer Consent Action Items |
| Type : | Action |
| Recommended Action : | Recommend Approval of August 2024 Financial Report |

## File Attachments

August 2024 Board Financials.pdf (4,788 KB)

# Motion & Voting

Recommend Approval of August 2024 Financial Report

Motion by KEVIN DABERKOW, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | F. Recommend Approval of Treasurer Consent Action Items A-E |

| | |
|---|---|
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 11. Treasurer Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to approve Treasurer Action Items A-E |

# Public Content

Recommend Approval of Treasurer Consent Action Items A-E by one single vote. Our adopted rules of Parliamentary Procedure, Roberts Rules, provide for the use of a consent agenda, which is one agenda item that lists several items for Board approval by a single motion. Documentation relevant to these items is generally provided to all Board members and the public by way of published meeting agendas in advance of the meeting to ensure the opportunity for thorough review. Items may be removed from the consent agenda for separate discussion and voting at the request of any board member.

## Motion & Voting

Motion to approve Treasurer Action Items A-E

Motion by KEVIN DABERKOW, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

# 12. Treasurer Action Item(s)

| | |
|---|---|
| Subject : | A. Recommend Approval of Treasurer Action Item(s) |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 12. Treasurer Action Item(s) |
| Type : | Action |
| Recommended Action : | Motion to approve Treasurer Action Item(s) |

# Public Content

Recommend Approval of Treasurer Action Item(s)

# 13. Superintendent Consent Action Items

| | |
|---|---|
| Subject : | A. Specific Human Resource Items-Certified |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 13. Superintendent Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to approve Specific Human Resource |

Items-Certified

# Public Content

### Retirements/Resignations

Accept, with regret, the following certified retirements and/or resignations:

| Last Name | First Name | Location | Position | Reason | Effective Date |
|---|---|---|---|---|---|
| Krupp | Jennifer | OSMS | Grade 6 | Retirement | 05/31/25 |
| Otten | Pamela | OOHS | Intervention Specialist | Retirement | 08/02/25 |

### Memorandum Billings

Approve certified positions paid through memorandum billing:

| Last Name | First Name | Location | Position | Program/Course Name | Courses/ Sessions | Days | Hours | Daily/Hourly Rate | Salary |
|---|---|---|---|---|---|---|---|---|---|
| Certified | | | | | | | | | |
| Abramowitz | Lindsay | OSMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Allen | Rachel | LTES | Attendee | CPI Training | | 1.00 | | $155.00 | $155.00 |
| Arie | Diana | PCES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Beam | Madelyn | OLHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Biddle | Emily | WRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Bloecher | Emma | OOHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Bogner | Kyle | OHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Bosley | Andrew | OBHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Brekke | Lindsey | HES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Burchfield | Amanda | WCES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Burns | Ashley | OSMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Connell | Rebecca | OBKMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Crabbe | Kendra | FTES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Davis | Emily | ISES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Davis | Molly | SRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Dritz | Jennifer | LTES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Duell | Kelly | ACES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Eggleston | Lauren | OLHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Faber | Lisa | TRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Farmer | Samantha | FTES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Garcia | Renee | OMES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Garred | Mallory | LTES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Gilliam | Ami | CES | Attendee | CPI Training | | 1.00 | | $155.00 | $155.00 |
| Green | Renee | PCES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Gutierrez | Jamie | WRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Hamilton | Sara | OHMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Harden | Dana | TRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Hehmeyer | Leslie | CES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Hoffman | Kelly | OOHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Houtz | Emily | AES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Iceman | Olivia | ACES | Attendee | CPI Training | | 1.00 | | $155.00 | $155.00 |
| Jackson | Heather | ACES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Jenney | Amy | TRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Jolliff | Julia | CES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Jordan | Gracie | HES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Kickbusch | Julianna | AES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Kitchen | Jessica | SMES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Klingensmith | Tyler | OHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Knapp | Theresa | HES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Lanning | Hannah | OOMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Litzenberg | Kristi | SMES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Lord | Shannon | JCES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Ma | Bonnie | CES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| McGovern | Kelly | OSMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Merkowitz | Lynne | OOHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Moore | Elizabeth | JCES | Attendee | CPI Training | | 1.00 | | $155.00 | $155.00 |
| Neville | Hallie | OMES | Attendee | CPI Training | | 1.00 | | $155.00 | $155.00 |
| Ownbey | Jenni | ISES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Pettit | Kimberly | GOES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Phelps | Olivia | OHMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Philipps | Lauren | AES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Romer | Catherine | OSMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Russell | Jenna | AES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Scheid | Richard | OHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Schirtzinger | Teresa | OLHS | Attendee | CPI Training | | 1.00 | | $155.00 | $155.00 |
| Schlie | Stephanie | GOES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Serra | Elisa | OCES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Shepherd | Jakob | OBHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Spinosi | Rebecca | PCES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Springfield | Kelly | LTES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| St. Germain | Jennifer | AES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Stackhouse | Laura | WRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Stonerock | Candace | OBLMS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Swan | Stacy | LTES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Swanger | Austin | SMES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Tomilson | Kayla | OCES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Traini | Nathan | SRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Veatch | Bridget | OBHS | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Vermilion | Jennifer | ISES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Walker | Payton | OBLMS | Attendee | CPI Training | | 1.00 | | $155.00 | $155.00 |
| Weber | Rachel | LTES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| White | Jessica | WCES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| White | Matthew | OHS | Attendee | CPI Training | | 1.00 | | $155.00 | $155.00 |
| Wilson | Amanda | OMES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Woods | Taylor | FTES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Yoder-Price | Grace | SRES | Attendee | CPI Training | | 0.50 | | $77.50 | $77.50 |
| Oberroither | Veronika | OBLMS | Interpreter/ Translator | Support for multilingual families at parent/teacher conferences, OLSD events, document translations, etc. | | | 20.00 | $45.00 | $900.00 |

\* "Current Rate" reflects the employee's hourly rate of pay at the time of service based on the current contract year (i.e., July 1 through June 30).

\*\* Instructors are compensated at $45 per hour per occurrence through memorandum billing (administrator to specify total billable hours).

# Motion & Voting

Motion to approve Specific Human Resource Items-Certified

Motion by LIZETT SCHREIBER, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | B. Specific Human Resource Items-Classified |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 13. Superintendent Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to approve Specific Human Resource Items-Classified |

# Public Content

**Retirements/Resignations**

Accept, with regret, the following classified retirements and/or resignations:

| Last Name | First Name | Location | Position | Reason | Effective Date |
|-----------|-----------|----------|----------|--------|----------------|
| Stewart | Tiffany | TRANS | Driver | Resignation | 05/24/24 |
| Vaidyanathan | Jayasree | CES | Aide, Intervention | Resignation | 09/19/24 |
| Sockrider | Julie | WCES | Aide, Cafeteria | Resignation | 09/25/24 |
| Zeoli | Toni | TRANS | Driver | Resignation | 10/05/24 |

**Leaves of Absence**

Approve classified unpaid leaves of absence for the 2024-25 school year:

| Last Name | First Name | Location | Leave Type | Effective Start Date | Effective End Date |
|-----------|-----------|----------|-----------|----------------------|--------------------|
| Rice | Rachael | OCES | Unpaid | 08/19/24 | 09/24/24 |
| Trombetti | Melanie | OOHS | Unpaid | 08/14/24 | 11/14/24 |

**Contracts**

Approve classified employment for the 2024-25 school year, specifically conditioned on and subject to successful background checks, receipt and final administrative review of all application records, and receipt of all other necessary documentation:

| Last Name | First Name | Location | Position | Term | Days | Effective Date | Column | Step | Hourly Rate | Sala |
|-----------|-----------|----------|----------|------|------|----------------|--------|------|-------------|------|
| Armstrong | Amy | OSMS | Aide, Library/Media | 1-Year | 183 | TBD | 10 | 9 | $23.44 | |
| Branscum | Maurice | TRANS | Driver | 1-Year | 186 | 09/17/24 | 1 | 0 | $22.87 | |
| Mothi | Saveetha | HES | Aide, Intervention | 1-Year | 185 | TBD | 1 | 3 | $19.81 | |
| Perumal | Bagavathy | ACES | Aide, Intervention | 1-Year | 185 | TBD | 1 | 0 | $18.26 | |
| Reed | Erin | FTES | Aide, Intervention | 1-Year | 185 | TBD | 1 | 3 | $19.81 | |

**Memorandum Billings**

Approve classified positions paid through memorandum billing:

| | | | | Program/Course | Courses/ Sessions | | Daily/Hourly Rate |
|--|--|--|--|----------------|-------------------|--|-------------------|

| Last Name | First Name | Location | Position | Name | | Days | Hours | | Sal |
|---|---|---|---|---|---|---|---|---|---|
| **Classified** | | | | | | | | | |
| Agouridis | Katheline | ACES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* | |
| Ansari | Faima | JCES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* | |
| Arango | Bibiana | OSMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Bailey | Meagan | ISES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Balaji Karthik | Aishwarya | OSMS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* | |
| Barnhart | Rebecca | OHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Batta | Karen | CES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Beaupre | Tiff | SMES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Bell | Elizabeth | OOHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Bhat | Aditi | OBLMS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* | |
| Bishop | Raelynn | OBHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Bova | Kadeshia | OLMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Bowles | Shaundra | SRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Brady | Monica | OSMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Brennan | Lori | ACES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Brown | Deanna | OA | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Burigana | Hannah | SMES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Cain | Renee | AES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Carberry | Katharine | WRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Carleton | Nicole | OMES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* | |
| Chellapally | Nagavardhini | OMES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Ciliberto | Nicole | OSMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Cohagen | Catherine | CES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Coniglio | Heidi | OOMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Coy | Jennifer | HES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Cummings | Laura | WRES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* | |
| Cutlan | Rebecca | WRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Dave | Vidushi | OCES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Deericks | Sara | ISES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Divaratne | Samanthika | GOES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Donahue | Sean | LTES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Endres | Kalyn | HES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Fausel | Patricia | OMES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Fletcher | Jessica | CES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Fletcher | Makenzie | ACES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Ghantasala | Srividya | OMES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* | |
| Gladman | Jill | OMES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |
| Goffin | Cameron | WRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* | |

| Griffith | Chase | WRES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
|---|---|---|---|---|---|---|---|---|
| Haldeman | Ashleigh | OA | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Hammerstein-Woo | Ellen | OSMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Hansbrough | Nicole | OLHS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Head | Dante | OSMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Herlihy | Ashley | OOMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Hociota | Magdalena | OHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Hrivnak | Pamela | WRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Jones | Michal | OLMS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Jones | Tana | OCES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Kabbara | Lina | OBLMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Kearns | Melinda | OHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Khushalani | Shannon | SMES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Kim | Esther | OLHS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Kleinhans | Amy | ISES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Lahrman | Kathryn | LTES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Lansdale | Heather | OA | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Larkin | Megan | FTES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Layton | Kourtney | OBLMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Lyles | Ashley | PCES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Mack | Sarah | OA | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Matto | Ashlyn | AES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Mazanec | Lori | OCES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| McCandless | Jessica | OOMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| McElroy | Debra | AES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| McKinley | Christina | OSMS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Meyyappan | Meenakshi | ACES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Mohamed | Amira | ISES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Mohamed | Haidy | OOMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Mongold | Jennifer | OSMS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Moore | Julie | OLHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Murphy | Desiree | SRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Nagabhiru | Spandana | OBKMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Niemeyer | Stephanie | HES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Ortman | Jeremy | OOHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Osterholt | Lauren | OBLMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Paliwal | Deepali | ISES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Palmer | Teresa | OOMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Parker | Ashley | OLHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Parker | Karen | WRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Patel | Krishna | HES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Patel | Pratima | OHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Pittroff | Catherine | GOES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Purssord | Beverly | SMES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Ramirez | Ana | GOES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Ranalli | Amy | TRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Ransburgh | Stephanie | OOMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Rasmussen | Joy | OOMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Rayburn | Emily | OMES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Reed | Erin | FTES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Reed | Lisa | AES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Rellinger | Melanie | OOHS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Richards | Colby | SRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Robinson | Sharone | OOHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Rockwell | Shari | WRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Saravanan | Sangeetha | OMES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Scharf | Radulka | WCES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Settipani | Tracey | OHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Sexton | Amy | GOES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Sharma | Archana | AES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Sherazee | Bouchra | LTES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Shetty | Chetana | ACES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Shicks | April | OA | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Shultz | Erin | SMES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Singh | Sushma | JCES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Sivanandam | Durga | JCES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Smith | Jennifer | OOHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Spiegel | Cassie | CES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Steward | Malinda | WRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Stuart | Betsy | FTES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Sundaresan | Sathya | OOMS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Swain | Mary | JCES | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Thasari Pandurangadu | Mohanapriya | WCES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Tudor Stegner | Kari | SRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Vaidyanathan | Jayasree | CES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Wanek | Erica | ACES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Ward | Shellaina | OA | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Webb | Hailey | SRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| White | Amanda | WRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Whitt | Sarah | ISES | Attendee | CPI Training | | 1.00 | 3.50 | Current Rate* |
| Wieland | Rebecca | OA | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Wiemels | William | OLMS | Attendee | CPI Training | | 1.00 | 7.00 | Current Rate* |
| Williams | Amanda | OOHS | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |

| Wolfe | Skylar | CES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Yacovone | Deb | TRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Zamilski | Sarah | TRES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Zynda | Rachael | GOES | Attendee | CPI Training | | 0.50 | 3.50 | Current Rate* |
| Conrad | Maria | OBHS | Student Support | OBHS Homecoming Dance | | | 7.00 | Current Rate* |
| Douglas | Leah | OBHS | Student Support | OBHS Homecoming Dance | | | 7.00 | Current Rate* |
| Stribling | Gabrielle | OBHS | Student Support | OBHS Homecoming Dance | | | 7.00 | Current Rate* |
| Stults | Mara | OBHS | Student Support | OBHS Homecoming Dance | | | 7.00 | Current Rate* |

* "Current Rate" reflects the employee's hourly rate of pay at the time of service based on the current contract year (i.e., July 1 through June 30).

** Instructors are compensated at $45 per hour per occurrence through memorandum billing (administrator to specify total billable hours).

## Motion & Voting

Motion to approve Specific Human Resource Items-Classified

Motion by LIZETT SCHREIBER, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | C. Specific Human Resource Items-Classified Substitutes |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 13. Superintendent Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to approve Specific Human Resource Items-Classified Substitutes |

# Public Content

### Classified Substitutes

Approve classified substitute workers for the 2024-25 school year, specifically conditioned on and subject to successful background checks, receipt and final administrative review of all application records, and receipt of all other necessary documentation:

| Last Name | First Name | Location | Position |
|---|---|---|---|
| Arunkumar | Ramya | DIST | Aide, Intervention |
| Bagum | Jarina | OHS | Aide |
| Bowen | Lisa | SRES | Aide, Intervention |
| Clark | Noah | TRANS | Driver |
| Druckenbroad | Kelly | DIST | Food Service Worker |
| Farabee | Wendy | WCES | Aide, Intervention |
| | | | |

| Fratianne | Jeffrey | TRANS | Driver |
|---|---|---|---|
| Gerald | Sheryl | OAO | Technology |
| Jefferson | Kim | TRANS | Driver |
| Pettijohn | Erika | DIST | Aide, Intervention |
| Sharp | Phillip | DIST | Custodian |
| Sockrider | Julie | WCES | Aide |
| Surapaneni | Meghana | PCES | Intervention |
| Synarong | Amber | JCES | Aide |
| Tummala | Hamsika | OAO | Technology |
| Viers | Justin | TRANS | Driver |
| Weber | Evan | OAO | Technology |

## Motion & Voting

Motion to approve Specific Human Resource Items-Classified Substitutes

Motion by LIZETT SCHREIBER, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | D. Specific Human Resource Items-Supplemental |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 13. Superintendent Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to approve Specific Human Resource Items-Supplemental |

# Public Content

### Resignations

Accept the following supplemental resignations:

| Last Name | First Name | Location | Position | Contract Type | Season | Effective Date |
|---|---|---|---|---|---|---|
| Beal | Amy | OLMS | MS Washington, DC Coordinator | Half Contract | All Year | 09/01/24 |
| Gonzales | Luis | OHS | HS Drama Instrumental Director - Fall | Full Contract | Fall | 09/01/24 |
| Harris | Brennan | OOHS | HS Vocal Music Accompanist | Full Contract | All Year | 09/01/24 |
| Nafziger | Adam | OLMS | MS Washington, DC Coordinator | Half Contract | All Year | 09/01/24 |

### Revised Supplemental Contracts

Approve revised certified and/or pupil activity supervisor supplemental contract employment for the 2024-25 school year/season, specifically conditioned on and subject to successful background checks, receipt and final administrative review of all application records and receipt of all other necessary documentation. Employment also is specifically conditioned on and subject to the activity/season occurring, with proration in the event of partial performance as determined by the administration and the supplemental committee:

| | | | | Staff/ | | | |
|---|---|---|---|---|---|---|---|

| Last Name | First Name | Location | Position | Non-Staff | Group | Step | Amount | Season |
|---|---|---|---|---|---|---|---|---|
| **Certified** | | | | | | | | |
| Butler | Sarah | OBHS | HS Visual Arts/Industrial Tech Bldg Dept Chair - From | | 1/2 of 7 | 6 | $1,847.00 | All Year |
| | | | HS Visual Arts/Industrial Tech Bldg Dept Chair - To | | 1/2 of 7 | 6 | $1,902.50 | All Year |
| Clark | Tiffany | OCES | ES Building Leadership Team - From | | 7 | 6 | $3,085.00 | All Year |
| | | | ES Building Leadership Team - To | | 7 | 6 | $3,805.00 | All Year |
| Cornett | James | OBHS | HS Visual Arts/Industrial Tech Bldg Dept Chair - From | | 1/2 of 7 | 6 | $1,847.00 | All Year |
| | | | HS Visual Arts/Industrial Tech Bldg Dept Chair - To | | 1/2 of 7 | 6 | $1,902.50 | All Year |
| Crandall | Linda | OLHS | HS Senior Class Advisor - From | | 9 | 0 | $1,427.00 | All Year |
| | | | HS Senior Class Advisor - To | | 9 | 11 | $2,616.00 | All Year |
| Green | David | OOMS | MS Washington, DC Coordinator - From | | 1/2 of 7 | 11 | <!--td {border: 1px solid #cccccc;}br {mso-data-placement: same-cell;}-->$2,378.50 | All Year |
| | | | MS Washington, DC Coordinator - To | | 2/3 of 7 | 11 | $3,171.33 | All Year |
| Helline | Todd | OHMS | MS Mathematics Bldg Dept Chair - From | | 7 | 9 | $4,387.00 | All Year |
| | | | MS Mathematics Bldg Dept Chair - To | | 7 | 9 | $4,519.00 | All Year |
| Hoelzer | Riley | OHMS | MS Enrichment Programs - From | | 1/2 of 8 | 7 | $1,427.00 | All Year |
| | | | MS Enrichment Programs - To | | 1/2 of 8 | 7 | $1,367.50 | All Year |
| Knott | Katherine | FTES | ES Building Leadership Team - From | | 7 | 1 | $2,540.00 | All Year |
| | | | ES Building Leadership Team - To | | 7 | 1 | $2,616.00 | All Year |
| Ralph | Ashlee | DIST | MS Foreign Language District Dept Chair - From | | 7 | 6 | $3,805.00 | All Year |
| | | | MS Foreign Language District Dept Chair - To | | 7 | 18 | $4,757.00 | All Year |
| Rambo | Lisa | OOMS | MS Washington, DC Coordinator - From | | 1/2 of 7 | 11 | $2,378.50 | All Year |
| | | | MS Washington, DC Coordinator - To | | 1/3 of 7 | 11 | $1,585.67 | All Year |

## Supplemental Contracts

Approve certified and/or pupil activity supervisor supplemental contract employment for the 2024-25 school year/season, specifically conditioned on and subject to successful background checks, receipt and final administrative review of all application records and receipt of all other necessary documentation. Employment also is specifically conditioned on and subject to the activity/season occurring, with proration in the event of partial performance as determined by the administration and the supplemental committee:

| Last Name | First Name | Location | Position | Staff/Non-Staff | Group | Step | Amount | Season |
|---|---|---|---|---|---|---|---|---|
| **Certified** | | | | | | | | |
| **Advisor** | | | | | | | | |
| Borders | Bobbi | OBHS | HS Senior Class Advisor | | 1/2 of 9 | 0 | $713.50 | All Year |
| Fischer | Nikki | OBHS | HS Senior Class Advisor | | 1/2 of 9 | 0 | $713.50 | All Year |
| Hackworth | Timothy | OBKMS | MS Model United Nations Advisor | | 11 | 0 | $476.00 | All Year |

**Diversity Liaison**

| Noday | Franchesca | OHS | HS Diversity Liaison | | 1/2 of 7 | 1 | $1,308.00 | All Year |
|---|---|---|---|---|---|---|---|---|
| Nelson | Erin | OHS | HS Diversity Liaison | | 1/2 of 7 | 0 | $1,189.00 | All Year |

**Enrichment**

| Howell | Brooklynn | GOES | ES Music Enrichment | | 11 | 2 | $571.00 | All Year |
|---|---|---|---|---|---|---|---|---|
| Hoehn | Amanda | ISES | ES Music Enrichment | | 1/2 of 11 | 0 | $238.00 | All Year |
| Leonardi | Caroline | ISES | ES Music Enrichment | | 1/2 of 11 | 0 | $238.00 | All Year |
| Szakacs Sigler | Frances | OMES | ESEnrichment Programs | | 1/3 of 8 | 1 | $674.00 | All Year |
| King | Sarah | OMES | ES Music Enrichment | | 11 | 3 | $618.00 | All Year |
| King | Sarah | OMES | ES Music Enrichment | | 11 | 3 | $618.00 | All Year |
| Gillman | Desiree | PCES | ESEnrichment Programs | | 1/3 of 8 | 0 | $634.33 | All Year |
| Hyme | Krista | PCES | ESEnrichment Programs | | 1/3 of 8 | 0 | $634.33 | All Year |
| Rietschlin | Angela | PCES | ESEnrichment Programs | | 1/3 of 8 | 1 | $674.00 | All Year |
| Stadelman | Tiffany | PCES | ESEnrichment Programs | | 1/3 of 8 | 0 | $634.33 | All Year |

**Washington, DC**

| Callif | Holly | OBKMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
|---|---|---|---|---|---|---|---|---|
| Dills | Scott | OBKMS | MS Washington, DC Chaperone | | 11 | 5 | $713.00 | Fall |
| Emrich | Justin | OBKMS | MS Washington, DC Chaperone | | 11 | 13 | $951.00 | Fall |
| Lillich | Alexander | OBKMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| Morelli | Christopher | OBKMS | MS Washington, DC Chaperone | | 11 | 2 | $571.00 | Fall |
| Neer | Kyle | OBKMS | MS Washington, DC Chaperone | | 11 | 0 | $476.00 | Fall |
| Ogletree-Crawford | Girard | OBKMS | MS Washington, DC Chaperone | | 11 | 0 | $476.00 | Fall |
| Schutte | Morgan | OBKMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| Smith | Travis | OBKMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| Tuttle | William | OBKMS | MS Washington, DC Chaperone | | 11 | 4 | $666.00 | Fall |
| Barone | Angela | OBLMS | MS Washington, DC Chaperone | | 11 | 2 | $571.00 | Fall |
| Ebersole | Jennifer | OBLMS | MS Washington, DC Chaperone | | 11 | 11 | $951.00 | Fall |
| Harris | Allison | OBLMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| Haskins | Jenna | OBLMS | MS Washington, DC Chaperone | | 11 | 6 | $761.00 | Fall |
| Hill | Eric | OBLMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| McKibben | Amy | OBLMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| | | | MS Washington, DC | | | | | |

| Walker | Katherine | OBLMS | Chaperone | | 11 | 0 | $476.00 | Fall |
|---|---|---|---|---|---|---|---|---|
| Williams | Christina | OBLMS | MS Washington, DC Chaperone | | 11 | 2 | $571.00 | Fall |
| Zeller | Christina | OBLMS | MS Washington, DC Chaperone | | 11 | 6 | $761.00 | Fall |
| Benesh | Charles | OHMS | MS Washington, DC Chaperone | | 11 | 10 | $951.00 | Fall |
| Clark | Connor | OHMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| Hoelzer | Riley | OHMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| King | Matthew | OHMS | MS Washington, DC Chaperone | | 11 | 2 | $571.00 | Fall |
| Meyer | Elizabeth | OHMS | MS Washington, DC Chaperone | | 11 | 0 | $476.00 | Fall |
| Moss | Jacob | OHMS | MS Washington, DC Chaperone | | 11 | 6 | $761.00 | Fall |
| Muntean | Nicole | OHMS | MS Washington, DC Chaperone | | 11 | 5 | <!--td {border: 1px solid #cccccc;}br {mso-data-placement:same-cell;}--> $713.00 | Fall |
| Ortman | Kristen | OHMS | MS Washington, DC Chaperone | | 11 | 5 | $713.00 | Fall |
| Roberts | Meghan | OHMS | MS Washington, DC Chaperone | | 11 | 2 | $571.00 | Fall |
| Vicars | Jessica | OHMS | MS Washington, DC Chaperone | | 11 | 5 | $713.00 | Fall |
| Voss | Samantha | OHMS | MS Washington, DC Chaperone | | 11 | 1 | $523.00 | Fall |
| **Basketball** | | | | | | | | |
| Farmer | William | OBLMS | MS7th Grade Basketball Coach – Boys | | 6 | 15 | $5,232.00 | Winter |
| Freese | Halle | OBLMS | MS8th Grade Basketball Coach – Girls | | 6 | 1 | $3,092.00 | Winter |
| Nicolosi | Richard | OBLMS | MS7th Grade Basketball Coach – Girls | | 6 | 16 | $5,232.00 | Winter |
| Ramirez | Nathan | OBKMS | MS8th Grade Basketball Coach – Boys | | 6 | 7 | $4,519.00 | Winter |
| Mills | Jared | OLMS | MS7th Grade Basketball Coach – Girls | | 6 | 2 | $3,330.00 | Winter |
| Houston | Joshua | OOMS | MS8th Grade Basketball Coach – Boys | | 6 | 1 | $3,092.00 | Winter |
| Johnson | Joshua | OOMS | MS8th Grade Basketball Coach – Girls | | 6 | 11 | $5,232.00 | Winter |
| Tingley | Tyler | OSMS | MS8th Grade Basketball Coach – Boys | | 6 | 24 | $5,232.00 | Winter |
| Langel | Laura | OSMS | MS8th Grade Basketball Coach – Girls | | 6 | 13 | $5,232.00 | Winter |
| Stoan | Krista | OSMS | MS7th Grade Basketball Coach – Girls | | 6 | 7 | $4,519.00 | Winter |
| **Cheerleading** | | | | | | | | |
| Knowles | Casey | OBKMS | MS 8th Grade Basketball Cheer Coach | | 7 | 2 | $2,854.00 | Winter |
| Fankhauser | Allissa | OBKMS | MS 7th Grade Basketball Cheer Coach | | 7 | 0 | $2,378.00 | Winter |
| Ranney | Kelsey | OSMS | MS 8th Grade Basketball Cheer Coach | | 7 | 2 | $2,854.00 | Winter |
| | | | MS 7th Grade | | | | | |

| Marcarello | Alyssa | OSMS | Basketball Cheer Coach | | 7 | 1 | $2,616.00 | Winter |
|---|---|---|---|---|---|---|---|---|
| **Faculty Manager** | | | | | | | | |
| Little | Tyler | OBKMS | MS Faculty Manager-Winter | | 6 | 1 | $3,092.00 | Winter |
| Meta | James | OHMS | MS Faculty Manager-Winter | | 1/2 of 5 | 4 | $2,140.50 | Winter |
| Oracewski | Megan | OLMS | MS Faculty Manager-Winter | | 6 | 2 | $3,330.00 | Winter |
| Beckstedt | Lana | OOMS | MS Faculty Manager-Winter | | 6 | 11 | $4,043.00 | Winter |
| **Wrestling** | | | | | | | | |
| Williams | Ehrick | OBLMS | MS Asst Wrestling Coach | | 7 | 12 | $4,757.00 | Winter |
| Guerrero | Johnathan | OOMS | MS Asst Wrestling Coach – Boys | | 7 | 7 | $4,043.00 | Winter |
| **Gymnastics** | | | | | | | | |
| Baldwin | Megan | OBHS | HS Asst GymnasticsCoach | | 6 | 0 | $2,854.00 | Winter |
| **Pupil Activity Permit (Classified and/or Non-Staff)** | | | | | | | | |
| **Advisor** | | | | | | | | |
| Rose | Carrie | OBHS | HS Teen Advocate | Staff | 10 | 0 | $951.00 | All Year |
| **Enrichment** | | | | | | | | |
| Palmer | Claire | ISES | ES Music Enrichment | Non-Staff | 11 | 10 | $951.00 | All Year |
| **Washington, DC** | | | | | | | | |
| Koon | Lindley | OBLMS | MS Washington, DC Chaperone | Staff | 11 | 0 | $476.00 | Fall |
| Henry | Derek | OHMS | MS Washington, DC Chaperone | Non-Staff | 11 | 0 | $476.00 | Fall |
| **Basketball** | | | | | | | | |
| Nossaman | Nicklaus | OLHS | HS Asst Basketball Coach –Booster Donation | Non-Staff | 1/2 of 3 | 3 | $2,735.00 | Winter |
| Macbride | Nicholas | OBKMS | MS 8th Grade BasketballCoach - Girls | Staff | 6 | 1 | $3,092.00 | Winter |
| Cole | Thomas | OHMS | MS 8th Grade BasketballCoach - Boys | Non-Staff | 6 | 17 | $5,232.00 | Winter |
| Mccort | Mark | OHMS | MS 7th Grade Basketball Coach - Boys | Non-Staff | 6 | 12 | $5,232.00 | Winter |
| Mahan | James | OHMS | MS 8th Grade Basketball Coach - Girls | Non-Staff | 6 | 7 | $4,519.00 | Winter |
| Boerger | Grace | OHMS | MS 7th Grade Basketball Coach - Girls | Staff | 6 | 6 | $4,043.00 | Winter |
| Fogg III | Edmund | OLMS | MS 8th Grade Basketball Coach - Boys | Staff | 6 | 14 | $5,232.00 | Winter |
| Krafty | Samuel | OLMS | MS 7th Grade Basketball Coach - Boys | Non-Staff | 6 | 9 | $4,994.00 | Winter |
| Estep | Paul | OLMS | MS 8th Grade Basketball Coach - Girls | Non-Staff | 6 | 1 | $3,092.00 | Winter |
| Rieger | Thaddeus | OOMS | MS 7th Grade Basketball Coach - Boys | Non-Staff | 6 | 12 | $5,232.00 | Winter |
| Dennis | Scott | OOMS | MS 7th Grade Basketball Coach - Girls | Staff | 6 | 4 | $3,805.00 | Winter |
| Johnson | Gregory | OSMS | MS 7th Grade Basketball Coach - Boys | Non-Staff | 6 | 1 | $3,092.00 | Winter |

| | | | **Cheerleading** | | | | | |
|---|---|---|---|---|---|---|---|---|
| Francisco | Hannah | OLMS | MS 8th Grade Basketball Cheer Coach | Non-Staff | 7 | 2 | $2,854.00 | Winter |
| Smelker | Sabrina | OLMS | MS 7th Grade Basketball CheerCoach | Non-Staff | 7 | 0 | $2,378.00 | Winter |
| Gullick | Erika | OOMS | MS 7th Grade Basketball Cheer Coach | Non-Staff | 7 | 0 | $2,378.00 | Winter |
| | | | **Faculty Manager** | | | | | |
| Grunenwald | Joseph | OOHS | HS Faculty Manager - Winter | Non-Staff | 1/3 of 4 | 1 | $1,347.67 | Winter |
| Horstman | Richard | OOHS | HS Faculty Manager- Winter | Non-Staff | 1/3 of 4 | 1 | $1,347.67 | Winter |
| Burgan | Donna | OHMS | MS Faculty Manager- Winter | Staff | 1/2 of 5 | 12 | $2,854.00 | Winter |
| Griffith | Chase | OSMS | MS Faculty Manager - Winter | Staff | 6 | 0 | $2,854.00 | Winter |
| | | | **Wrestling** | | | | | |
| Whitson | Ross | OHMS | MS Wrestling Coach | Staff | 6 | 14 | $5,232.00 | Winter |
| Slingsby | Joshua | OLMS | MS Wrestling Coach | Non-Staff | 6 | 1 | $3,092.00 | Winter |
| Martin | Jeffrey | OOMS | MS Wrestling Coach - Girls | Non-Staff | 6 | 0 | $2,854.00 | Winter |
| | | | **Volunteer** | | | | | |
| Cox | Andrea | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Dolan | Patrick | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Henkle | Emma | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Playko | Shan-ni | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Potter | Nikki | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Tingley | Tyler | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Vyrostek | Michael | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Walter | Sarah | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Whiteside | Jeffrey | OBKMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| | | | MS Washington, DC | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---:|---|
| Boroff | Holly | OBLMS | Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Donahue | Lauren | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Graver | Matthew | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Link | Margaret | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Nagy | Keely | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Oberroither | Veronika | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Purlee | Jenna | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Ritter | Andrew | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Srivastava | Jenna | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Thomson | Margaret | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Wakeland | Megan | OBLMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Brown | Alannah | OHMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Hite | Kimberly | OHMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Newman | Maxwell | OHMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Waltz | Elizabeth | OHMS | MS Washington, DC Volunteer | Staff | N/A | N/A | $0.00 | Fall |
| Mahan | Morgan | OHMS | MS Basketball Coach - Volunteer | Non-Staff | N/A | N/A | $0.00 | Winter |
| Bagliano | Melissa | OLMS | MS Basketball CheerCoach - Volunteer | Non-Staff | N/A | N/A | $0.00 | Winter |

# Motion & Voting

Motion to approve Specific Human Resource Items-Supplemental

Motion by LIZETT SCHREIBER, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | E. Recommend Approval of Student(s) for Graduation, Pending Certification of Completion of All District, State, and Local Requirements |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 13. Superintendent Consent Action Items |

| Type : | Action |
|---|---|
| Recommended Action : | Motion to approve student(s) for graduation, pending certification of completion of all district, state, and local requirements |

# Public Content

Recommend approval of student(s) for graduation, pending certification of completion of all district, state, and local requirements:

Berlin High School: Mouch, Andrew John

Orange High School: Perez, Ryan Mateo

## Motion & Voting

Motion to approve student(s) for graduation, pending certification of completion of all district, state, and local requirements

Motion by LIZETT SCHREIBER, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| Subject : | F. Business Management and Facilities Items |
|---|---|
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 13. Superintendent Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to approve item(s) as listed. |

# Public Content

1. Declare transportation as impractical for students in accordance with the resolution by the Board of Education on November 29, 2005.

## File Attachments

Impractical Transportation Exhibit 9.26.2024.pdf (201 KB)

## Motion & Voting

Motion to approve item(s) as listed.

Motion by LIZETT SCHREIBER, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

| | |
|---|---|
| Subject : | G. Recommend Approval of Superintendent Consent Action Items A-F |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 13. Superintendent Consent Action Items |
| Type : | Action |
| Recommended Action : | Motion to Approve Superintendent Consent Action Items A-F |

# Public Content

Recommend Approval of Superintendent Consent Action Items A-F by one single vote. Our adopted rules of Parliamentary Procedure, Roberts Rules, provide for the use of a consent agenda, which is one agenda item that lists several items for Board approval by a single motion. Documentation relevant to these items is generally provided to all Board members and the public by way of published meeting agendas in advance of the meeting to ensure the opportunity for thorough review. Items may be removed from the consent agenda for separate discussion and voting at the request of any board member.

## Motion & Voting

Motion to Approve Superintendent Consent Action Items A-F

Motion by LIZETT SCHREIBER, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT SCHREIBER

# 14. Superintendent Action Item(s)

| | |
|---|---|
| Subject : | A. Recommend Approval of Superintendent Action Item(s) |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 14. Superintendent Action Item(s) |
| Type : | Action |
| Recommended Action : | Motion to approve Superintendent Action Item(s) |

# Public Content

Recommend Approval of Superintendent Action Item(s)

# 15. Adjournment

| | |
|---|---|
| Subject : | A. Adjourn |
| Meeting : | Sep 26, 2024 - Regular Board Meeting |
| Category : | 15. Adjournment |

Type :                                    Action, Procedural

Recommended Action :                      Motion to adjourn

## Motion & Voting

Motion to adjourn

Motion by KEVIN DABERKOW, second by ELIZABETH WALLICK.
Final Resolution: Motion Carried
Yes: BRANDON LESTER, KEVIN DABERKOW, ELIZABETH WALLICK, KEVIN OBRIEN, LIZETT
SCHREIBER

 **OLENTANGY SCHOOLS**™

## BOARD POLICY

**Policy Updates – FY25 No. 1**

Reference: District Requested

First Reading and Second Reading : September 26, 2024

| po5136 | Personal Communication Devices | Students | District Requested |
|--------|-------------------------------|----------|--------------------|
| po5517 | Anti-Harassment | Students | District Requested |

9/24/24DAG



**OLENTANGY SCHOOLS™**

| | |
|---|---|
| Book | Policy Manual |
| Section | FY25 No. 1 - Policy |
| Title | PERSONAL COMMUNICATION DEVICES |
| Code | po5136_Revise |
| Status | |
| Adopted | May 25, 2011 |
| Last Revised | June 27, 2024 |

## 5136 - **PERSONAL COMMUNICATION DEVICES**

Students may possess personal communication devices (PCDs) in school, on school property, and on school buses or other Board-provided vehicles during school hours and after school activities (e.g. extra-curricular activities) and at school-related functions. Building administrators and teachers will have the authority to modify this allowance.

For purposes of this policy, "personal communication device" includes computers, tablets (e.g., iPads and similar devices), electronic readers ("e-readers"; e.g., Kindles and similar devices), cell phones (e.g., mobile/cellular telephones, smartphones (e.g., BlackBerry, iPhone, Android devices, Windows Mobile devices, etc.)), and/or other web-enabled devices of any type. Students may not use PCDs on school property or at a school-sponsored activity to access and/or view Internet web sites that are otherwise blocked to students at school. Students may use PCDs while riding to and from school on a school bus or other Board-provided vehicles or on a school bus or Board-provided vehicle during school-sponsored activities, at the discretion of the bus driver, classroom teacher, or sponsor/advisor/coach. Distracting behavior that creates an unsafe environment will not be tolerated.

Also, during after school activities, PCDs shall be powered completely off (not just placed into vibrate or silent mode) and stored out of sight when directed by the administrator or supervising adult~~sponsor~~.

Under certain circumstances, a student may keep their PCD "On" with prior approval from the building principal.

Except as authorized by a teacher, administrator or IEP team, students are prohibited from using PCDs during the school day, including while off-campus on a field trip, to capture, record and/or transmit the words or sounds (i.e., audio) and/or images (i.e., pictures/video) of any student, staff member or other person. Using a PCD to capture, record and/or transmit audio and/or pictures/video of an individual without proper consent is considered an invasion of privacy and is not permitted. Students who violate this provision and/or use a PCD to violate the privacy rights of another person may have their PCD confiscated and held until a parent/guardian picks it up, and may be directed to delete the audio and/or picture/video file while the parent/guardian is present. If the violation involves potentially illegal activity the confiscated-PCD may be turned-over to law enforcement.

PCDs, including but not limited to those with cameras, may not be activated or utilized at any time in any school situation where a reasonable expectation of personal privacy exists. These locations and circumstances include, but are not limited to classrooms, gymnasiums, locker rooms, shower facilities, rest/bathrooms, and any other areas where students or others may change clothes or be in any stage of disrobing or changing clothes. The Superintendent and building principals are authorized to determine other specific locations and situations where use of a PCD is absolutely prohibited.

Students are expressly prohibited from using covert means to listen-in or make a recording (audio or video) of any meeting or activity at school.  This includes placing recording devices, or other devices with one - or two-way audio communication technology (i.e., technology that allows a person off-site to listen to live conversations and sounds taking place in the location where the device is located), within a student's book bag or on the student's person without express written consent of the Superintendent. Any requests to place a recording device or other device with one- or two-way audio

communication technology within a student's book bag or on a student's person shall be submitted, in writing, to the principal. The District representative shall notify the parent(s), in writing, whether such request is denied or granted within five (5) days.

Students shall have no expectation of confidentiality with respect to their use of PCDs on school premises/property.

In-School Speech

Students may not use a PCD on school property or in connection with a school activity in a way that is threatening or otherwise constitutes bullying or harassment under Board Policy 5517 (Anti-Harassment) or Board Policy 5517.01 (Bullying and Other Forms of Aggressive Behavior), that has the effect of substantially interfering with a student's educational performance, or that has the effect of substantially disrupting the orderly operation of the school. Students likewise are prohibited from using a PCD to transmit speech that is indecent, obscene, lewd, sexually-explicit or vulgar, that appears school-sponsored, or that promotes illegal drug use. Students are further prohibited from engaging in "sexting" - i.e., sending, receiving, sharing, viewing, or possessing pictures, text messages, e-mails, or other materials of a sexual nature in electronic or any other form. Violation of these prohibitions may result in disciplinary action. in any way that might reasonably create in the mind of another person an impression of being threatened, humiliated, harassed, embarrassed or intimidated. See Policy 5517.01 – Bullying and Other Forms of Aggressive Behavior. In particular, students are prohibited from using PCDs to: (1) transmit material that is threatening, obscene, disruptive, or sexually explicit or that can be construed as harassment or disparagement of others based upon their race, color, national origin, sex (including sexual orientation/transgender identity), disability, age, religion, ancestry, or political beliefs; and (2) engage in "sexting" – i.e., sending, receiving, sharing, viewing, or possessing pictures, text messages, e-mails or other materials of a sexual nature in electronic or any other form. Violation of these prohibitions shall result in disciplinary action. Furthermore, such actions will be reported to local law enforcement and child services as required by law.

Speech Outside of School or School Activities

When off school grounds and not participating in a school-sponsored activity, students are prohibited from using a PCD in a way that constitutes serious or severe harassment of school employees or students, or that has the effect of materially disrupting classwork or the order of the school, or invades the rights of others. Violation of these prohibitions may result in disciplinary action.

This policy is not intended to and shall not be interpreted to infringe upon the First Amendment rights of students (i.e., to prohibit a reasoned and civil exchange of opinions, or debate, that is conducted at appropriate times and places during the school day and is protected by State or Federal law).

Students are also prohibited from using a PCD to capture, record, and/or transmit test information or any other information in a manner constituting fraud, theft, cheating, or academic dishonesty. Likewise, students are prohibited from using PCDs to receive such information.

Possession of a PCD by a student at school during school hours and/or during extra-curricular activities is a privilege that may be forfeited by any student who fails to abide by the terms of this policy, or otherwise abuses this privilege.

Violations of this policy may result in disciplinary action and/or confiscation of the PCD. The building principal will also refer the matter to law enforcement or child services if the violation involves an illegal activity (e.g., child pornography, sexting). Discipline will be imposed on an escalating scale ranging from a warning to an expulsion based on the number of previous violations and/or the nature

of or circumstances surrounding a particular violation. If the PCD is confiscated, it will be released/returned to the student's parent/guardian after the student complies with any other disciplinary consequences that are imposed, unless the violation involves potentially illegal activity in which case the PCD may be turned-over to law enforcement. A confiscated device will be marked in a removable manner with the student's name and held in a secure location until it is retrieved by the parent/guardian or turned-over to law enforcement. School officials will not search or otherwise tamper with PCDs in District custody unless they reasonably suspect that the search is required to discover evidence of a violation of the law or other school rules. Any search will be conducted in accordance with Policy 5771 – Search and Seizure. If multiple offenses occur, a student may lose their privilege to bring a PCD to school for a designated length of time or on a permanent basis.

A person who discovers a student using a PCD, recording device, or other device with one- or two-way audio communication technology in violation of this policy is required to report the violation to the building administration.

Students are personally and solely responsible for the care and security of their PCDs. The Board assumes no responsibility for theft, loss, or damage to, or misuse or unauthorized use of, PCDs brought onto its property.

Revised 12/13/12
Revised 11/9/17
T.C. 6/27/24

**© Neola 2017**



| | |
|---|---|
| Book | Policy Manual |
| Section | FY25 No. 1 - Policy |
| Title | ANTI-HARASSMENT |
| Code | po5517_Revise |
| Status | |
| Adopted | May 25, 2011 |
| Last Revised | January 12, 2024 |

5517 - **ANTI-HARASSMENT**

**General Policy Statement**

It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.

The Board will vigorously enforce its prohibition against discriminatory harassment based on race, color, national origin, sex (including sexual orientation and gender identity), disability, age (except as authorized by law), religion, ancestry, or genetic information (collectively, "Protected Classes") that are protected by Federal civil rights laws (hereinafter referred to as unlawful harassment), and encourages those within the School District community as well as Third Parties, who feel aggrieved to seek assistance to rectify such problems. The Board will investigate all allegations of unlawful harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action.

**Other Violations of the Anti-Harassment Policy**

The Board will also take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts:

    A. Retaliating against a person who has made a report or filed a complaint alleging unlawful harassment, or who has participated as a witness in a harassment investigation.

    B. Filing a malicious or knowingly false report or complaint of unlawful harassment.

    C. Disregarding, failing to investigate adequately, or delaying investigation of allegations of unlawful harassment, when responsibility for reporting and/or investigating harassment charges comprises part of one's supervisory duties.

**Definitions**

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Complainant** is the individual who alleges, or is alleged, to have been subjected to unlawful harassment, regardless of whether the person files a formal complaint or is pursuing an informal resolution to the alleged harassment.

**Respondent** is the individual who has been alleged to have engaged in unlawful harassment, regardless of whether the Reporting Party files a formal complaint or is seeking an informal resolution to the alleged harassment.

**School District community** means students and Board employees (i.e., administrators, and professional and classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Third Parties** include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with, the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Day(s):** Unless expressly stated otherwise, the term "day" or "days" as used in this policy means a business day(s) (i.e., a day(s) that the Board office is open for normal operating hours, Monday – Friday, excluding State-recognized holidays).

### Bullying

Bullying rises to the level of unlawful harassment when one (1) or more persons systematically and chronically inflict physical hurt or psychological distress on one (1) or more students or employees and that bullying is based upon one (1) or more Protected Classes, that is, characteristics that are protected by Federal civil rights laws. It is defined as any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult or student, that is severe or pervasive enough to create an intimidating, hostile, or offensive educational or work environment; ~~cause discomfort or humiliation;~~ or unreasonably interfere with the individual's school or work performance or participation~~; and may involve:~~

- A. ~~teasing;~~
- B. ~~threats;~~
- C. ~~intimidation;~~
- D. ~~stalking;~~
- E. ~~cyberstalking;~~
- F. ~~cyberbullying;~~
- G. ~~physical violence;~~
- H. ~~theft;~~
- I. ~~sexual, religious, or racial harassment;~~
- J. ~~public humiliation; or~~
- K. ~~destruction of property.~~

### Harassment

Harassment means any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that:

- A. places a student or school employee in reasonable fear of harm to their person or damage to their property;
- B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or
- C. has the effect of substantially disrupting the orderly operation of a school.

### Sexual Harassment

For purposes of this policy and consistent with Title VII of the Civil Rights Act of 1964, "sexual harassment" is defined as:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:

A. Submission to such conduct is made either implicitly or explicitly a term or condition of an individual's employment, or status in a class, educational program, or activity.

B. Submission or rejection of such conduct by an individual is used as the basis for employment or educational decisions affecting such individual.

C. Such conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity.

Sexual harassment may involve the behavior of a person of any gender against a person of the same or another gender.

Sexual Harassment covered by Policy 2266 - Nondiscrimination on the Basis of Sex Education Programs or Activities is not included in this policy. Allegations of such conduct shall be addressed solely by Policy 2266.

Prohibited acts that constitute sexual harassment under this policy may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:

A. Unwelcome sexual propositions, invitations, solicitations, and flirtations.

B. Unwanted physical and/or sexual contact.

C. Threats or insinuations that a person's employment, wages, academic grade, promotion, classroom work or assignments, academic status, participation in athletics or extra-curricular programs, activities, or events, or other conditions of employment or education may be adversely affected by not submitting to sexual advances.

D. Unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, profanity, jokes or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls.

E. Sexually suggestive objects, pictures, graffiti, videos, posters, audio recordings or literature, placed in the work or educational environment, that may reasonably embarrass or offend individuals.

F. Unwelcome and inappropriate touching, patting, or pinching; obscene gestures.

G. Asking about, or telling about, sexual fantasies, sexual preferences, or sexual activities.

H. Speculations about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history.

I. Giving unwelcome personal gifts such as lingerie that suggests the desire for a romantic relationship.

J. Leering or staring at someone in a sexual way, such as staring at a person's breasts, buttocks, or groin.

K. A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another.

L. Inappropriate boundary invasions by a District employee or other adult member of the School District community into a student's personal space and personal life.

M. Verbal, nonverbal or physical aggression, intimidation, or hostility based on sex or sex stereotyping that does not involve conduct of a sexual nature.

Not all behavior with sexual connotations constitutes unlawful sexual harassment. Sex-based or gender-based conduct must be sufficiently severe, pervasive, and persistent such that it adversely affects, limits, or denies an individual's employment or education, or such that it creates a hostile or abusive employment or educational environment, or such that it is intended to, or has the effect of, denying or limiting a student's ability to participate in or benefit from the educational program or activities.

**Race/Color Harassment**

Prohibited racial harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's race or color and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's race or color, such as racial slurs, nicknames implying stereotypes, epithets, and/or negative references relative to racial customs.

### Religious (Creed) Harassment

Prohibited religious harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's religion or creed and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's religious tradition, clothing, or surnames, and/or involves religious slurs.

### National Origin/Ancestry Harassment

Prohibited national origin/ancestry harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's national origin or ancestry and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's national origin or ancestry, such as negative comments regarding customs, manner of speaking, language, surnames, or ethnic slurs.

### Disability Harassment

Prohibited disability harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's disability and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's disability, such as negative comments about speech patterns, movement, physical impairments or defects/appearances, or the like.

### Anti-Harassment Compliance Officers

The following individual(s) shall serve as the District's Anti-Harassment Compliance Officer(s) (hereinafter, "the Compliance Officer(s)"):

James Kim
Assistant Director of Compliance
7840 Graphics Way
Lewis Center, OH 43035
740-657-4050
james_kim@olsd.us

Anna Damceski
Assistant Director of Human Resources
7840 Graphics Way
Lewis Center, OH 43035
740-657-4050
anna_damceski@olsd.us

Peter Stern
Assistant Director of Equity and Inclusion
7840 Graphics Way
Lewis Center, OH 43035
740-657-4050
peter_stern@olsd.us

Josh McDaniels
Assistant Director of Human Resources
7840 Graphics Way
Lewis Center, OH 43035

740-657-4050
josh_mcdaniels@olsd.us

The names, titles, and contact information of these individuals will be published annually on the School District's website.

The Compliance Officer(s) are responsible for coordinating the District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to address in a prompt and equitable manner any inquiries or complaints regarding harassment.

The Compliance Officer(s) will be available during regular school/work hours to discuss concerns related to unlawful harassment, to assist students, other members of the District community, and third parties who seek support or advice when informing another individual about "unwelcome" conduct, or to intercede informally on behalf of the individual in those instances where concerns have not resulted in the filing of a formal complaint and where all parties are in agreement to participate in an informal process.

Compliance Officers shall accept reports of unlawful harassment directly from any member of the School District community or a Third Party or receive reports that are initially filed with an administrator, supervisor, or other District-level official. Upon receipt of a report of alleged harassment, the Compliance Officer(s) will contact the Complainant and begin either an informal or formal complaint process (depending on the request of the Complainant or the nature of the alleged harassment), or the Compliance Officer(s) will designate a specific individual to conduct such a process. The Compliance Officer(s) will provide a copy of this policy to the Complainant and Respondent.  In the case of a formal complaint, the Compliance Officer(s) will prepare recommendations for the Superintendent or will oversee the preparation of such recommendations by a designee. All Board employees must report incidents of harassment that are reported to them to the Compliance Officer within two (2) days of learning of the incident.

Any Board employee who directly observes unlawful harassment is obligated, in accordance with this policy, to report such observations to the Compliance Officer(s) within two (2) days. Additionally, any Board employee who observes an act of unlawful harassment is expected to intervene to stop the harassment, unless circumstances make such an intervention dangerous, in which case the staff member should immediately notify other Board employees and/or local law enforcement officials, as necessary, to stop the harassment. Thereafter, the Compliance Officer(s) or designee must contact the Complainant, if age eighteen (18) or older, or Complainant's parents/guardians if the Complainant is under the age eighteen (18), within two (2) days to advise of the Board's intent to investigate the alleged wrongdoing.

**Reports and Complaints of Harassing Conduct**

Students and all other members of the School District community along with Third Parties are required to report incidents of harassing conduct to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct before it becomes severe, pervasive, or persistent. Any teacher, administrator, supervisor, or other District employee or official who receives such a report shall file it with the Compliance Officer within two (2) days of receiving the report of harassment.

Members of the School District community and Third Parties, which includes students, or third parties who believe they have been unlawfully harassed are entitled to utilize the Board's complaint process that is set forth below. Interference with the rights of a student to pursue a complaint of unlawful harassment or retaliation with the United States Department of Education Office for Civil Rights.

**Informal Complaint Procedure**

The goal of the informal complaint procedure is promptly to stop inappropriate behavior and to facilitate resolution through an informal means, if possible. The informal complaint procedure is provided as a less formal option for a student who believes they have been unlawfully harassed or retaliated against. This informal procedure is not required as a precursor to the filing of a formal complaint. The informal process is only available in those circumstances where the Complainant and the Respondent mutually agree to participate in it.

Students who believe that they have been unlawfully harassed may initiate their complaint through this informal complaint process, but are not required to do so. The informal process is only available in those circumstances where the parties (alleged target of harassment and alleged harasser(s)) agree to participate in the informal process.

The Complainant may proceed immediately to the formal complaint process and individuals who seek resolution through the informal procedure may request that the informal process be terminated at any time to move to the formal complaint process.

All complaints involving a District employee, any other adult member of the School District community, or a Third Party and a student will be formally investigated.

As an initial course of action, if a Complainant feels comfortable and safe in doing so, the individual should tell or otherwise inform the Respondent that the alleged harassing conduct is inappropriate and must stop. The Complainant should address the allegedly harassing conduct as soon after it occurs as possible. The Compliance Officers are available to support and counsel individuals when taking this initial step or to intervene on behalf of the Complainant if requested to do so. A Complainant who is uncomfortable or unwilling to directly approach the Respondent about the alleged inappropriate conduct may file an informal or a formal complaint. In addition, with regard to certain types of unlawful harassment, such as sexual harassment, the Compliance Officer may advise against the use of the informal complaint process.

A Complainant may make an informal complaint, either orally or in writing: 1) to a teacher, other employee, or building administrator in the school the student attends; 2) to the Superintendent or other District-level employee; and/or 3) directly to one (1) of the Compliance Officers.

All informal complaints must be reported to one (1) of the Compliance Officers who will either facilitate an informal resolution as described below, or appoint another individual to facilitate an informal resolution.

The Board's informal complaint procedure is designed to provide students who believe they are being unlawfully harassed with a range of options designed to bring about a resolution of their concerns. Depending upon the nature of the complaint and the wishes of the Complainant, informal resolution may involve, but not be limited to, one (1) or more of the following:

A. Advising the Complainant about how to communicate the unwelcome nature of the behavior to the Respondent.

B. Distributing a copy of this policy as a reminder to the individuals in the school building or office where the Respondent works or attends.

C. If both parties agree, the Compliance Officer may arrange and facilitate a meeting or mediation between the Complainant and the Respondent to work out a mutual resolution.

While there are no set time limits within which an informal complaint must be resolved, the Compliance Officer/designee is directed to attempt to resolve all informal complaints within fifteen (15) business days of receiving the informal complaint. If the Complainant is dissatisfied with the informal complaint process, the Complainant may proceed to file a formal complaint. And, as stated above, either party may request that the informal process be terminated at any time to move to the formal complaint process.

**Formal Complaint Procedure**

If a complaint is not resolved through the informal complaint process, if one (1) of the parties has requested that the informal complaint process be terminated to move to the formal complaint process, or the Complainant, from the outset, elects to file a formal complaint, or the CO determines the allegations are not appropriate for resolution through the informal process, the formal complaint process shall be implemented.

The Complainant may file a formal complaint, either orally or in writing, with a teacher, principal, or other District employee at the student's school, the Compliance Officer, Superintendent, or another District official who works at another school or at the district level. Due to the sensitivity surrounding complaints of unlawful harassment, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a formal complaint within thirty (30) days after the conduct occurs while the facts are known and potential witnesses are available. If a Complainant informs a teacher, principal, or other District employee at the student's school, Superintendent, or other District official, either orally or in writing, about any complaint of harassment, that employee must report such information to the Compliance Officer within two (2) business days.

Throughout the course of the process, the Compliance Officer should keep the parties reasonably informed of the status of the investigation and the decision-making process.

All formal complaints must include the following information to the extent known: the identity of the Respondent; a detailed description of the facts upon which the complaint is based (i.e., when, where, and what occurred); a list of potential witnesses; and the resolution sought by the Complainant.

If the Complainant is unwilling or unable to provide a written statement including the information set forth above, the Compliance Officer shall ask for such details in an oral interview. Thereafter, the Compliance Officer will prepare a written summary of the oral interview, and the Complainant will be asked to verify the accuracy of the reported charge by signing the document.

Upon receiving a formal complaint, the Compliance Officer will consider whether any action should be taken in the investigatory phase to protect the Complainant from further harassment or retaliation, including, but not limited to, a change of work assignment or schedule for the Complainant and/or the Respondent. In making such a determination, the Compliance Officer should consult the Complainant to assess whether the individual agrees with the proposed action. If the Complainant is unwilling to consent to the proposed change, the Compliance Officer may still take whatever actions deemed appropriate in consultation with the Superintendent.

Within two (2) business days of receiving the complaint, the Compliance Officer/designee will initiate a formal investigation to determine whether the Complainant has been subjected to offensive conduct/harassment/retaliation. The Principal will not conduct an investigation unless directed to do so by the Compliance Officer.

Simultaneously, the Compliance Officer will inform the Respondent that a formal complaint has been received. The Respondent will be informed about the nature of the allegations and provided with a copy of any relevant policies and/or administrative guidelines, including the Board's Anti-Harassment policy. The Respondent must also be informed of the opportunity to submit a written response to the complaint within five (5) business days.

Although certain cases may require additional time, the Compliance Officer/designee will attempt to complete an investigation into the allegations of harassment/retaliation within fifteen (15) business days of receiving the formal complaint. The investigation will include:

A. interviews with the Complainant;

B. interviews with the Respondent;

C. interviews with any other witnesses who may reasonably be expected to have any information relevant to the allegations;

D. consideration of any documentation or other information presented by the Complainant, Respondent, or any other witness that is reasonably believed to be relevant to the allegations.

At the conclusion of the investigation, the Compliance Officer or the designee shall prepare and deliver a written report to the Superintendent that summarizes the evidence gathered during the investigation and provides recommendations based on the evidence and the definition of unlawful harassment as provided in Board policy and State and Federal law as to whether the Complainant has been subjected to unlawful harassment. The Compliance Officer's recommendations must be based upon the totality of the circumstances, including the ages and maturity levels of those involved. In determining if discriminatory harassment or retaliation occurred, a preponderance of evidence standard will be used. The Compliance Officer may consult with the Board's legal counsel before finalizing the report to the Superintendent.

Absent extenuating circumstances, within ten (10) school days of receiving the report of the Compliance Officer/designee, the Superintendent must either issue a written decision regarding whether the complaint of harassment has been substantiated or request further investigation. A copy of the Superintendent's final decision will be delivered to both the Complainant and the Respondent.

If the Superintendent requests additional investigation, the Superintendent must specify the additional information that is to be gathered, and such additional investigation must be completed within ten (10) school days. At the conclusion of the additional investigation, the Superintendent shall issue a written decision as described above.

The decision of the Superintendent shall be final.

The Board reserves the right to investigate and resolve a complaint or report of unlawful harassment/retaliation regardless of whether the student alleging the unlawful harassment/retaliation pursues the complaint. The Board also reserves the right to have the formal complaint investigation conducted by an external person in accordance with this policy or in such other manner as deemed appropriate by the Board or its designee.

The parties may be represented, at their own cost, at any of the above-described meetings/hearings.

The right of a person to a prompt and equitable resolution of the complaint shall not be impaired by the person's pursuit of other remedies such as the filing of a complaint with the Office for Civil Rights, the filing of charges with local law enforcement, or the filing of a civil action in court. Use of this internal complaint process is not a prerequisite to the pursuit of other remedies.

**Privacy/Confidentiality**

The District will employ all reasonable efforts to protect the rights of the Complainant, the Respondent, and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations. All records generated under the terms of this policy and related administrative guidelines shall be maintained as confidential to the extent permitted by law. Confidentiality, however, cannot be guaranteed. Additionally, the Respondent must be provided the Complainant's identity.

During the course of a formal investigation, the Compliance Officer/designee will instruct all members of the School District community and third parties who are interviewed about the importance of maintaining confidentiality. Any individual who is interviewed as part of a harassment investigation is expected not to disclose any information that is learned or provided during the course of the investigation.

**Sanctions and Monitoring**

The Board shall vigorously enforce its prohibitions against unlawful harassment/retaliation by taking appropriate action reasonably calculated to stop the harassment and prevent further such harassment. While observing the principles of due process, a violation of this policy may result in disciplinary action up to and including the discharge of an employee or the suspension/expulsion of a student. All disciplinary action will be taken in accordance with applicable State law and the terms of the relevant collective bargaining agreement(s). When imposing discipline, the Superintendent shall consider the totality of the circumstances involved in the matter, including the ages and maturity levels of those involved. In those cases where unlawful harassment is not substantiated, the Board may consider whether the alleged conduct nevertheless warrants discipline in accordance with other Board policies, consistent with the terms of the relevant collective bargaining agreement(s).

Where the Board becomes aware that a prior remedial action has been taken against a member of the School District community, all subsequent sanctions imposed by the Board and/or Superintendent shall be reasonably calculated to end such conduct, prevent its reoccurrence, and remedy its effects.

**Retaliation**

Retaliation against a person who makes a report or files a complaint alleging unlawful harassment/retaliation or participates as a witness in an investigation is prohibited. Neither the Board nor any other person may intimidate, threaten, coerce or interfere with any individual because the person opposed any act or practice made unlawful by any Federal or State civil rights law, or because that individual made a report, formal complaint testified, assisted or participated or refused to participate in any manner in an investigation, proceeding, or hearing under those laws and/or this policy, or because that individual exercised, enjoyed, aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by those laws and/or this policy.

Retaliation against a person from making a report of discrimination, filing a formal complaint, or participating in an investigation or meeting is a serious violation of this policy that can result in imposition of disciplinary sanction/consequences and/or other appropriate remedies.

Formal complaints alleging retaliation may be filed according to the internal complaint process set forth above.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

**Allegations Constituting Criminal Conduct: Child Abuse/Sexual Misconduct**

State law requires any school teacher or school employee who knows or suspects that a child with a disability under the age of twenty-one (21) or that a child under the age of eighteen (18) has suffered or faces a threat of suffering a physical or mental wound, disability or condition of a nature that reasonably indicates abuse or neglect of a child to immediately report that knowledge or suspicion to the county children's services agency. If, during the course of a harassment investigation, the Compliance Officer or a designee has reason to believe or suspect that the alleged conduct reasonably indicates abuse or neglect of the Complainant, a report of such knowledge must be made in accordance with State law and Board Policy.

State law defines certain contact between a teacher and a student as "sexual battery." If the Compliance Officer or a designee has reason to believe that the Complainant has been the victim of criminal conduct as defined in Ohio's Criminal Code, such knowledge should be immediately reported to local law enforcement.

Any reports made to a county children's services agency or to local law enforcement shall not terminate the Compliance Officer or a designee's obligation and responsibility to continue to investigate a complaint of harassment. While the Compliance Officer or a designee may work cooperatively with outside agencies to conduct concurrent investigations, in no event shall the harassment investigation be inhibited by the involvement of outside agencies without good cause after consultation with the Superintendent.

**Allegations Involving Conduct Unbecoming the Teaching Profession/Suspension**

The Superintendent will report to the Ohio Board of Education, on forms provided for that purpose, matters of misconduct on the part of licensed professional staff members convicted of sexual battery, and will, in accordance with Policy 8141, suspend such employee from all duties that concern or involve the care, custody, or control of a child during the pendency of any criminal action for which that person has been arrested, summoned and/or indicted in that regard.

**Education and Training**

In support of this Anti-Harassment Policy, the Board promotes preventative educational measures to create greater awareness of unlawful discriminatory practices. The Superintendent shall provide appropriate information to all members of the School District community related to the implementation of this policy and shall provide training for District students and staff where appropriate. All training, as well as all information, provided regarding the Board's policy and harassment in general, will be age and content appropriate.

**Retention of Investigatory Records and Materials**

The Compliance Officer(s) is responsible for overseeing retention of all records that must be maintained pursuant to this policy. All individuals charged with conducting investigations under this policy shall retain all documents, electronically stored information ("ESI"), and electronic media (as defined in Policy 8315) created and/or received as part of an investigation, which may include but not be limited to:

A. all written reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

B. any narratives that memorialize oral reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

C. any documentation that memorializes the actions taken by District personnel or individuals contracted or appointed by the Board to fulfill its responsibilities related to the investigation and/or the District's response to the alleged violation of this policy;

D. written witness statements;

E. narratives, notes from, or audio, video, or digital recordings of witness interviews/statements;

F. e-mails, texts, or social media posts that directly relate to or constitute evidence pertaining to an alleged violation of this policy (i.e., not after-the-fact commentary about or media coverage of the incident);

G. notes or summaries prepared contemporaneously by the investigator in whatever form made (e.g., handwritten, keyed into a computer or tablet, etc.), but not including transitory notes whose content is otherwise memorialized in other documents;

H. written disciplinary sanctions issued to students or employees and other documentation that memorializes oral disciplinary sanctions issued to students or employees for violations of this policy;

I. dated written determinations/reports (including summaries of relevant exculpatory and inculpatory evidence) and other documentation that memorializes oral notifications to the parties concerning the outcome of the investigation, including any consequences imposed as a result of a violation of this policy;

J. documentation of any supportive measures offered and/or provided to the Complainant and/or the Respondent, including no contact orders issued to both parties, the dates the no contact orders were issued, and the dates the parties acknowledged receipt of the no contact orders;

K. documentation of all actions taken, both individual and systemic, to stop the discrimination or harassment, prevent its recurrence, eliminate any hostile environment, and remedy its discriminatory effects;

L. copies of the Board policy and/or procedures/guidelines used by the District to conduct the investigation, and any documents used by the District at the time of the alleged violation to communicate the Board's expectations to students and staff with respect to the subject of this policy (e.g., Student Code of Conduct and/or Employee Handbooks);

M. copies of any documentation that memorializes any formal or informal resolutions to the alleged discrimination or harassment.

The documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal (e.g., FERPA, ADA) and/or State law (e.g., R.C. 3319.321) – e.g., student records and confidential medical records.

The documents, ESI, and electronic media (as defined in Policy 8315) created or received as part of an investigation shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

Revised 12/12/13
T.C. 7/13/15
Revised 11/9/17
Revised 4/25/19
Revised 4/8/21
T.C. 9/28/22
T.C. 4/10/23
T.C. 11/17/23
T.C. 1/12/24

**© Neola 2021**

Legal                R.C. 4112.02

20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA)

20 U.S.C. 1681 et seq.

29 U.S.C. 621 et seq., Age Discrimination in Employment Act of 1967

29 U.S.C. 794, Rehabilitation Act of 1973, as amended

29 U.S.C. 6101, The Age Discrimination Act of 1975

42 U.S.C. 2000d et seq.

42 U.S.C. 2000e et seq.

42 U.S.C. 12101 et seq., Americans with Disabilities Act of 1990, as amended

42 U.S.C. 1983

National School Boards Association Inquiry and Analysis - May, 2008