No. 23-3630

# In the
# United States Court of Appeals
## for the Sixth Circuit

PARENTS DEFENDING EDUCATION,

*Plaintiff-Appellant,*

v.

OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus, No. 2:23-cv-01595.
The Honorable Algenon L. Marbley, Judge Presiding.

## *AMICUS CURIAE* BRIEF OF FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

ROBERT CORN-REVERE
   *Counsel of Record*
ARLEIGH P. HELFER
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION
510 Walnut Street
Suite 900
Philadelphia, PA 19106
(215) 717-3473
bob.corn-revere@thefire.org
arleigh.helfer@thefire.org

*Counsel for Amicus*

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 23-3630    Case Name: PDE v. Olentangy Local School District

Name of counsel: Robert Corn-Revere

Pursuant to 6th Cir. R. 26.1, Foundation for Individual Rights and Expression (FIRE)
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

### CERTIFICATE OF SERVICE

I certify that on December 18, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Robert Corn-Revere

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

                       **Page**

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF *AMICUS CURIAE* ........................................................... 1

INTRODUCTION ...................................................................................... 1

ARGUMENT .............................................................................................. 2

  I. THE FIRST AMENDMENT BARS SCHOOLS FROM COMPELLING STUDENT SPEECH ..................................... 2

  II. *TINKER* DOES NOT JUSTIFY THE DISTRICT'S MANDATORY PRONOUN POLICY ....................................... 6

CONCLUSION ......................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*303 Creative LLC v. Elenis,*
   600 U.S. 570 (2023) ................................................................................ 4

*Blackwell v. Issaquena County Board of Education,*
   363 F.2d 749 (5th Cir. 1966) .................................................................... 8

*Bowler v. Town of Hudson,*
   514 F. Supp. 2d 168 (D. Mass. 2007) ...................................................... 9

*Glowacki ex rel. D.K.G. v. Howell Pub. Sch. Dist.,*
   No. 2:11-CV-15481, 2013 WL 3148272
   (E.D. Mich. June 19, 2013) ...................................................................... 9

*Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy,*
   594 U.S. 180 (2021) ................................................................................ 7

*Meriwether v. Hartop,*
   992 F.3d 492 (6th Cir. 2021) .................................................................... 5

*Parents Defending Educ. v. Olentangy Local Sch. Dist.,*
   109 F.4th 453 (6th Cir. 2024) ........................................................ *passim*

*Saxe v. State College Area School District,*
   240 F.3d 200 (3rd Cir. 2001) ............................................................. 8, 9

*Terminiello v. Chicago,*
   337 U.S. 1 (1949) .................................................................................... 7

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
   393 U.S. 503 (1969) ...................................................................... *passim*

*W. Va. Bd. of Educ. v. Barnette,*
   319 U.S. 624 (1943) ...................................................................... *passim*

**U.S. Constitution:**

   Amend. I ....................................................................................... *passim*

# INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization dedicated to defending the rights of all Americans to the freedoms of speech, expression, and conscience—the essential qualities of liberty. Given our decades of experience combating censorship in academic environments, FIRE is all too familiar with the constitutional, pedagogical, and societal problems that arise when public school administrators attempt to compel conformity with their preferred viewpoints. As a defender of the First Amendment right to freedom of expression, FIRE is dedicated to ensuring that government-compelled speech does not become an accepted norm.

# INTRODUCTION

It has long been understood that neither students nor teachers "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). *Tinker* upheld the right to student self-expression over five decades ago, but students' First Amendment rights have both a longer

---

[1] No counsel for a party authored this brief in whole or part. Further, no person, other than *amicus*, its members, or its counsel contributed money intended to fund the preparation or submission of this brief.

1

and even broader pedigree. Over eighty years ago, the Supreme Court confirmed that "[i]f there is any fixed star in our constitutional constellation" it is that the government cannot compel schoolchildren to speak words they do not believe. That case involved the Pledge of Allegiance, but as the Court observed at the time, "[i]f there are any circumstances which permit an exception, they do not now occur to us." *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

This case does not present an exception: The Olentangy Local School District's forced use of pronouns is foreclosed by *Barnette*'s rule that "no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion, or force citizens to confess by word or act their faith therein." *Id.* Separately, nothing in *Tinker* empowers the school to violate students' First Amendment rights to freedom of expression and freedom of conscience.

## ARGUMENT

### I. THE FIRST AMENDMENT BARS SCHOOLS FROM COMPELLING STUDENT SPEECH.

Olentangy School District employs a web of interconnected antiharassment policies to compel all students to use another student's chosen pronouns. Students are required obey the policy even if they have

2

a religious, moral, or philosophical objection to doing so. Parents Defending Education represents children who hold beliefs based on both religious and scientific teaching that there are only two biological genders. *See* Supp. En Banc Br. of Plaintiff-Appellant (6th Cir. Doc. No. 134) at 7. There is no dispute in this case that issues of transgender rights and whether to use preferred pronouns are matters of public importance that relate to core religious and philosophical beliefs. *Id.* at 11. Accordingly, the Constitution prohibits the school district from enforcing policies mandating use of preferred pronouns. *See generally* Br. of Amici Curiae FIRE & Manhattan Institute at 6–9 (6th Cir. Doc. No. 60).

The now-vacated panel decision does not question the rule in *Barnette*, but instead claims the school district has provided an acceptable "compromise." There is no compulsion here, it reasoned, because students "who do not want to use their transgender classmates' preferred pronouns may permissibly use no pronouns at all, and refer to their classmates using first names," or "students may elect to not refer to their transgender classmates at all." *Parents Defending Educ. v. Olentangy Local Sch. Dist.*, 109 F.4th 453, 466–67 (6th Cir. 2024). Accordingly, the panel majority

concluded, this case did not present "*Barnette*-like unconstitutional compulsion." *Id*. at 467.

But, in fact, the compelled speech problem presented by this case is worse. True, it does not involve a brief state-mandated pledge at the beginning of the day as in *Barnette*. Instead, it imposes a mandate that hangs over students throughout the day, both in and out of class, and threatens punishment if they happen to use pronouns the state has not approved. The students' option is to use the language the state demands or remain silent. While the Bill of Rights does provide a right to remain silent, this is not what the Founders had in mind. The First Amendment prevents the government not just from canceling student free speech rights, it bars "compromising" those rights as well. *303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023) (the government may not "affect a speaker's message by forcing her to accommodate other views; no government may alter the expressive content of her message; and no government may interfere with her desired message").

Dissenting from the panel decision, Judge Batchelder recognized that the school district's policies violate the Constitution because they impermissibly compel speech: "*Barnette* tells us what we must ask about

4

the District's speech restriction: Does forcing students to use others' self-selected or 'preferred' pronouns compel these students to convey a message with which they do not agree (namely that biology does not determine gender)?" *Id.* at 482 (Batchelder, CJ, dissenting). She correctly determined that the District's policies require "affirmation of a belief and an attitude of mind—something the First Amendment prohibits." *Id.* at 483 (citing *Barnette*, 319 U.S. at 633) (internal quotation marks omitted).

Judge Batchelder's dissent is consistent with this Court's holding that a public university professor may not be compelled to use preferred pronouns when such use conflicted with his personal religious and philosophical beliefs. That decision correctly recognized that government policies compelling use of preferred pronouns violate the fundamental rights of those whom they compel. *Meriwether v. Hartop*, 992 F.3d 492, 510 (6th Cir. 2021). "Purportedly neutral non-discrimination policies cannot be used to transform institutions of higher learning into enclaves of totalitarianism." *Id.* The Court determined that the university's pronoun policies violated the professor's free speech rights. *Id.* at 511–12.

Although the panel majority here described *Meriwether*'s university setting as an "imperfect analogy" for K-12 grades, it nevertheless agreed

that even for younger students "intentional use of preferred or non-preferred pronouns … represents speech protected by the First Amendment." *Parents Defending Educ.*, 109 F.4th at 466. Consequently, it is impossible to reconcile with *Barnette*'s presumption that there is no exception to the rule that neither high nor petty officials may prescribe what speech shall be orthodox. *Barnette*, 319 U.S. at 642. By requiring all students to use preferred pronouns, the District's policies unavoidably clash with the First Amendment rights of PDE's clients, and the School District may not compel them to comply. *See Barnette*, 319 U.S. at 633; *Parents Defending Educ.*, 109 F.4th at 485.

## II. *TINKER* DOES NOT JUSTIFY THE DISTRICT'S MANDATORY PRONOUN POLICY.

Contrary to the panel decision, nothing in *Tinker* authorizes, let alone encourages, schools to compel students to speak contrary to their beliefs. *Tinker* stands for the proposition that students enjoy First Amendment rights to freedom of expression in public schools, and it deviates from this rule only for two narrow exceptions: schools may restrict student speech that administrators reasonably forecast will cause substantial disruption of the school's classwork and discipline, or speech

6

and attendant actions that invade the rights of others. 393 U.S. at 513–14. Neither exception applies here.

First, the panel majority misapplied Tinker's "substantial disruption" exception. It relied on the possibility of "psychological and physiological harms" to transgender students if they are subjected to hearing "non-preferred pronouns" from other students, *Parents Defending Educ.*, 109 F.4th at 465, but that is not what *Tinker* suggested might constitute disruption. It is not enough that another student might be offended, or even deeply offended. As the Court explained, "[a]ny departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on campus, that deviates from the views of another person may start an argument or cause a disturbance. *But our Constitution says we must take this risk*." 393 U.S. at 508 (citing *Terminiello v. Chicago*, 337 U.S. 1 (1949)) (emphasis added); *see also Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 185 (2021) (holding that the fact some students were "visibly upset" by another's speech fell short of the *Tinker* standard).

Second, the school district's policy cannot be justified under the *Tinker* exception to restrict speech that "invades the rights of others." As

7

*Tinker* and other cases make clear, this exception does *not* allow the government to elevate the rights of others over a student's own First Amendment right to speak in ways that align with his own conscience.

In articulating this narrow exception, the *Tinker* Court cited a Fifth Circuit case, *Blackwell v. Issaquena County Board of Education*, 363 F.2d 749 (5th Cir. 1966), as the origin of the "invasion of the rights of others" concept. *See Tinker*, 393 U.S. at 513. That case involved a situation where certain students tried to force others to wear "freedom buttons" against their will. It was this forcible pinning of buttons on "other students who did not wish to participate" that constituted "a collision with the rights of others," and that the Supreme Court was referring to by "invasion of the rights of others" in *Tinker*. *Blackwell*, 363 F.2d at 751–54.

Subsequent decisions have recognized the narrowness of this exception. As then-Judge Alito explained in *Saxe v. State College Area School District*, 240 F.3d 200, 217 (3rd Cir. 2001) (Alito, J.), "it is certainly not enough that the speech is merely offensive to some listener." *Saxe* involved a challenge to a school district's anti-harassment policy, which was alleged to violate students' First Amendment rights to express their Christian views, including their belief that homosexuality is a sin. *Id.* at

203. The court held that the policy was not permissible under *Tinker*'s invasion of the rights of others prong. *Id.* at 217.

The Third Circuit held that to survive First Amendment review, an anti-harassment policy must require some "threshold showing of severity or pervasiveness"; otherwise, "it could conceivably be applied to cover any speech about some enumerated personal characteristics the content of which offends someone." *Id.* The court held that under *Tinker*, absent that showing of severity or pervasiveness, offensive speech that "does not pose a realistic threat of substantial disruption, is within a student's First Amendment rights." *Id. Saxe* also noted that some courts had held the invasion of the rights of others prong to be so narrow as to cover "only independently tortious speech like libel, slander or intentional infliction of emotional distress." *Id.*; *see also, e.g.*, *Glowacki ex rel. D.K.G. v. Howell Pub. Sch. Dist.*, No. 2:11-CV-15481, 2013 WL 3148272, at *8 (E.D. Mich. June 19, 2013); *Bowler v. Town of Hudson*, 514 F. Supp. 2d 168, 177–78 (D. Mass. 2007).

The panel decision here ignores the limitations of *Tinker*'s "invasion of the rights of others" exception. While the district court had leaned on this exception to justify the school district policy, the appellate panel

collapsed the two exceptions and assumed that unwanted use of disfavored pronouns and the feelings they engender necessarily would be disruptive. *Parents Defending Educ.*, 109 F.4th at 462–64. But as Judge Batchelder observed in dissent, *Tinker* and Sixth Circuit precedent "requires more than that." *Id.* at 476 (Batchelder, J., dissenting). It is the government's burden to "'show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.'" *Id.* at 487 (quoting *Tinker*, 393 U.S. at 509). The panel's approach misapplied the law and should be reversed.

## CONCLUSION

For these reasons and those in the parties' briefs, this Court should reverse the judgment of the District Court and remand with instructions to proceed in accordance with the Court's opinion.

Respectfully submitted,

 */s/ Robert Corn-Revere*
ROBERT CORN-REVERE
ARLEIGH P. HELFER
FOUNDATION FOR
INDIVIDUAL RIGHTS AND
EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
(215) 717-3473
bob.corn-revere@thefire.org
arleigh.helfer@thefire.org

10

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f): this document contains 5,356 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated:   December 18, 2024

*/s/ Robert Corn-Revere*
ROBERT CORN-REVERE
Counsel for *Amicus Curiae*

# CERTIFICATE OF SERVICE

The undersigned certifies that on December 18, 2024 an electronic copy of the *Amicus Curiae* Brief was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users and that service of the brief will be accomplished by the CM/ECF system.

                                          */s/ Robert Corn-Revere*
                                          ROBERT CORN-REVERE