# In the
# United States Court of Appeals
## for the Sixth Circuit

PARENTS DEFENDING EDUCATION,

*Plaintiff-Appellant,*

v.

OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION,
et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus, No. 2:23-cv-01595.
The Honorable Algenon L. Marbley, Judge Presiding.

**BRIEF OF *AMICUS CURIAE* THE DEFENSE OF FREEDOM INSTITUTE IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL**

DONALD A. DAUGHERTY, JR.
MARTHA A. ASTOR
Defense of Freedom Institute
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004
Don.Daugherty@dfipolicy.org
Martha.Astor@dfipolicy.org
(414) 559-6902

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Movants have no parent companies, subsidiaries, or affiliates, and do not issue shares to the public.

Dated: December 18, 2024
Washington, D.C.

*/s/ Donald A. Daugherty, Jr.*
Donald A. Daugherty, Jr.
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF CONTENTS ...........................................................ii

TABLE OF AUTHORITIES ......................................................iii

STATEMENT OF INTEREST ................................................... 1

SUMMARY OF ARGUMENT ................................................... 2

ARGUMENT ......................................................................... 5

I. BOTH THE POLICIES AND NEW RULES MAKE INTENTIONAL MISPRONOUNING BY A STUDENT SANCTIONABLE CONDUCT. ...................................... 5

II. THE NEW RULES LITIGATION COURTS HAVE RECOGNIZED THE FREE SPEECH PROBLEMS ARISING OUT OF SECTION 106.2'S PROHIBITION ON MISGENDERING. ............................ 7

    A. The Supreme Court Unanimously Affirmed Preliminary Injunctions of Sections 106.2 and 106.10 From This Circuit and the Fifth.............................................. 8

    B. Sections 106.2 and 106.10 Have Been Preliminarily Enjoined In This Circuit Based In Part On Their Unconstitutional Effect On Free Speech............................................ 9

    C. The Eleventh Circuit and Western District of Oklahoma Preliminarily Enjoined Sections 106.2 and 106.10 Based In Part On the Supreme Court's Recognition of Tension Between Speech Restrictions Under Title IX and the First Amendment .......................................................... 17

    D. All Other New Rules Litigation Courts Have Also Preliminarily Enjoined Section 106.2................................. 21

CONCLUSION ................................................................... 23

CERTIFICATE OF COMPLIANCE....................................... 24

CERTIFICATE OF SERVICE................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Alabama v. Cardona,*
No. 7:24-cv-533-ACA, 2024 U.S. Dist. LEXIS 137759 (N.D. Ala. July
30, 2024) ...................................................................................... 27

*Alabama v. U.S. Sec'y of Ed.,*
No. 24-12444, 2024 U.S. App. LEXIS 21358 (11th Cir. argued
December 18, 2024) .................................................................... *passim*

*Ams. For Prosperity Found. v. Bonta,*
594 U.S. 595 (2021). ............................................................................ 12

*Arkansas v. U.S. Dep't of Educ.,,,*
No. 4:24-CV-636-RWS, 2024 U.S. Dist. LEXIS 130849 (E.D. Mo. July
24, 2024), *appeal docketed*, No. 24-2921 (Sept. 23, 2024) ..................... 27

*Beard v. Falbreath,*
97 F.4th 1109 (8th Cir. 2024) ............................................................. 22

*Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.,*
No. 4:24-CV-00461-O, 2024 U.S. Dist. LEXIS 122716 (N.D. Tex. July
11, 2024), *appeal docketed*, No. 24-10824 (Sept. 10, 2024) ..................... 3

*Davis v. Monroe Cnty. Sch. Bd.,*
526 U.S. 629 (1999) .................................................................... *passim*

*Kansas v. United States Dep't of Educ.,*
No. 24-4041-JWB, 2024 U.S. Dist. LEXIS 116479 (D. Kan. July 2,
2024), *appeal docketed*, No. 24-3097 (July 11, 2024) ........................ 2, 4

*Louisiana v. U.S. Dep't of Educ.,*
No. 24-30399, 2024 U.S. App. LEXIS 17886 (5th Cir. 2024 argued
Nov. 4, 2024) .................................................................................. 1, 3

*Louisiana v. U.S. Dep't of Educ.*,
No. 3:24-cv-563-TAD, 2024 U.S. App. LEXIS 17866 (W.D. La. June 13, 2024) ........................................................................................... 1, 4, 22

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ........................................................ 14, 16

*Oklahoma v. Cardona*,
No. CIV-24-00461-JD, 2024 U.S. Dist. LEXIS 135314 (W.D. Ok. July 31, 2024) ........................................................................................ *passim*

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) ................................................................................ 16

*Tennessee v. Cardona*,
No. 2:24-cv-072-DCR, 2024 U.S. Dist. LEXIS 106559 (E.D. Ky. June 17, 2024). ........................................................................... 2, 14, 15, 16

*Tennessee v. Cardona*,
No. 24-5588, 2024 U.S. App. LEXIS 17600 (6th Cir. argued Oct. 30, 2024) ................................................................................................. 3, 7, 9

*Texas v. United States*,
No. 2:24-CV-86-Z, 2024 U.S. Dist. LEXIS 121812, (N.D. Tex. July 11, 2024), *appeal docketed*, No. 24-10832 (Sept. 13, 2024); ........................ 2

*U.S. Dep't of Educ. v. Louisiana*,
144 S. Ct. 2507 (2024) ...................................................................... 3, 8, 9

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624, 642 (1943) .............................................................. 10, 15, 16

*Wilkins v. Daniels*,
744 F.3d 409 (6th Cir. 2014) ............................................................... 13

*Wooley v. Maynard*,
430 U.S. 705 (1977) ....................................................................... 10, 15

## Other Authorities

34 C.F.R. § 106.10 .................................................................... 7, 8

34 C.F.R. § 106.2 ........................................................... *passim*

34 C.F.R. § 106.31 .......................................................................8

Dep't of Educ., *Final Rule, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 97 Fed. Reg. 30026 (May 19, 2020) ................................... 20

Dep't of Educ., *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,* 89 Fed. Reg. 33,474 (Apr. 29, 2024) .......................................... 1, 6, 7

Human Rights Campaign, *Understanding Neopronouns,* https://tinyurl.com/5nh9bbae .............................................. 12

## STATEMENT OF INTEREST[1]

DFI is a national nonprofit organization dedicated to defending and advancing freedom and opportunity for every American family, student, entrepreneur, and worker and to protecting the civil and constitutional rights of Americans at school and in the workplace. DFI envisions a republic where freedom, opportunity, creativity, and innovation flourish in our schools and workplaces. As part of its mission, DFI is co-counsel for Mississippi, Louisiana, Montana, and Idaho, along with the Attorneys General for those four states, in *Louisiana v. U.S. Dep't of Educ.*, No. 24-30399, 2024 U.S. App. LEXIS 17886 (5th Cir. 2024), which challenges new regulations under Title IX published by the United States Department of Education (the "Department") on April 29, 2024, *see Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,* 89 Fed. Reg. 33,474 (Apr. 29, 2024) (the "New Rules"). In that case, and the similar challenges discussed, *infra*, federal courts have squarely considered First

_____

[1] No counsel for any party authored this brief in whole or in part, and no person or entity, other than amicus curiae or its counsel, contributed money to fund the brief's preparation or submission.

Amendment issues arising out of preferred pronoun policies in schools, like those at the heart of this case.

<div align="center">**SUMMARY OF ARGUMENT**</div>

The policies (the "Policies") of the Olentangy Local School District ("Olentangy") at issue here bear fundamental similarities to the New Rules promulgated by the Department and published last April. Most relevant is that both the Policies and the New Rules provide that students who intentionally do not use pronouns that match another student's preferred gender identity but not that student's biology engage in sanctionable sexual harassment.

Like the claims by Parents Defending Education ("PDE") against the Policies now before this Court, challenges have been brought against the New Rules since they were first published, resulting in preliminary injunctions against them in the federal district and circuit courts (including the Sixth) hearing those cases. *See*; *Kansas v. United States Dep't of Educ.*, No. 24-4041-JWB, 2024 U.S. Dist. LEXIS 116479 (D. Kan. July 2, 2024), *appeal docketed*, No. 24-3097 (July 11, 2024); *Texas v. United States*, No. 2:24-CV-86-Z, 2024 U.S. Dist. LEXIS 121812, (N.D. Tex. July 11, 2024), *appeal docketed*, No. 24-10832 (Sept. 13, 2024);

*Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, No. 4:24-CV-00461-O, 2024 U.S. Dist. LEXIS 122716 (N.D. Tex. July 11, 2024), *appeal docketed*, No. 24-10824 (Sept. 10, 2024); *Louisiana*, No. 24-30399, 2024 U.S. App. LEXIS 17886, (6th Cir. argued Nov. 4, 2024); *Tennessee v. Cardona*, No. 24-5588, 2024 U.S. App. LEXIS 17600 (6th Cir. argued Oct. 30, 2024); *Arkansas v. U.S. Dep't of Educ.*, No. 4:24-CV-636-RWS, 2024 U.S. Dist. LEXIS 130849 (E.D. Mo. July 24, 2024), *appeal docketed*, No. 24-2921 (Sept. 23, 2024); *Oklahoma v. Cardona*, No. CIV-24-00461-JD, 2024 U.S. Dist. LEXIS 135314 (W.D. Ok. July 31, 2024); *Alabama v. U.S. Sec'y of Ed.*, No. 24-12444, 2024 U.S. App. LEXIS 21358 (11th Cir. argued Dec. 18, 2024) (collectively, "the New Rules Litigation"). Even the United States Supreme Court has reviewed the New Rules in denying an application to stay preliminary injunctions granted in this Circuit and the Fifth. *See U.S. Dep't of Educ. v. Louisiana*, 144 S. Ct. 2507 (2024). The analysis by these courts of the First Amendment deficiencies in the New Rules – particularly, the broad definition of "hostile environment harassment" in 34 C.F.R. § 106.2 -- is instructive here.

PDE presents four theories for declaring the Policies unconstitutional on their face under the First Amendment. This brief focuses on PDE's claim that the Policies compel students to speak in a manner that is inconsistent with their good faith, deeply-held views, and in violation of the First Amendment, which is the primary theory implicated both in this case and the New Rules Litigation.[2] *See, e.g., Louisiana v. U.S. Dep't of Educ.*, No. 3:24-CV-00563, 2024 U.S. Dist. LEXIS 105645, at *32-36 (W.D. La. June 13, 2024); *Tennessee v. Cardona*, No. 2:24-cv-072-DCR, 2024 U.S. Dist. LEXIS 106559, at *58-65 (E.D. Ky. June 17, 2024); *Arkansas*, 2024 U.S. Dist. LEXIS 130849, at *51-52; *Oklahoma*, 2024 U.S. Dis. LEXIS 135314, at *17-21.

Federal courts have found that the New Rules preferred pronoun provision in Section 106.2 infringed on students' constitutionally-protected speech. Here, the panel majority (the "Panel") also found that students' use of pronouns consistent with their beliefs regarding gender

---

[2]New Rules Litigation plaintiffs also often allege that the New Rules are unconstitutionally overbroad. *See, e.g., Alabama*, 2024 U.S. App. LEXIS 21358, at *16-18; *Kansas*, 2024 U.S. Dist. LEXIS 116479 at *46-47. Because the Panel concluded unanimously that the Policies did not suffer from that infirmity, *see* Panel Opinion, at 23, 22 n. 9, 51-53, however, the decisions discussing that theory are of little use here.

identity was protected speech under the First Amendment. Panel Opinion (CA6-DOC.89-2) at 12. However, unlike the New Rules Litigation courts, the Panel concluded that the existence of an "option" to use first names instead of preferred pronouns saved the Policies because, according to the Panel, this meant the use of pronouns was not compelled. Panel Opinion, at 13-14.

Forcing someone to express in one of two ways an opinion they do not agree with is hardly giving them an option. Furthermore, this "option" is an artificial constraint on proper speech that will inhibit students' efforts to engage in conversation and develop intellectually. Thus, like the New Rules Litigation courts, this Court *en banc* should find that the Policies' preferred pronoun mandate violates students' freedom of speech under the First Amendment.

## ARGUMENT

### I. BOTH THE POLICIES AND NEW RULES MAKE INTENTIONAL MISPRONOUNING BY A STUDENT SANCTIONABLE CONDUCT.

The three Policies challenged by PDE are (1) **Policy 5517 – The Anti-Harassment Policy,** which prohibits "discriminatory harassment" based on "gender identity;" (2) **Policy 5136 – The Personal**

**Communication Devices (PCD) Policy**, under which students may not use PCD's either on or off campus to "transmit material that . . . can be construed as harassment or disparagement of others based upon . . . sexual orientation/transgender identity;" and (3) t**he Code of Conduct**, which prohibits both the use of discriminatory language, verbal or written, that is "derogatory towards an individual or group based on . . . sex (including sexual orientation and transgender identity)," and "harassment, intimidation, or bullying." Policy Manual R. 24-1, PageID ##536, 549, 565. There is no dispute that, taken together, the Policies prohibit students from intentional mispronouning. Panel Opinion, at 15.

Similarly, as this Court has recognized, the definition of "hostile environment harassment" in Section 106.2[3] of the New Rules also prohibits misgendering, especially when considered with 34 C.F.R. §

---

[3]Section 106.2 defines "hostile environment harassment" as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (*i.e.*, creates a hostile environment). Whether a hostile environment has been created is a fact-specific inquiry that includes consideration of" various factors, such as "[t]he degree to which the conduct affected the complainant's ability to access the recipient's education program or activity" and "[t]he type, frequency, and duration of the conduct." 89 Fed. Reg. 33,844.

106.10 of the New Rules, which expands the definition of "sex" to include gender identity.[4]  Reviewing the Department's application to stay the preliminary injunction of the New Rules, this Court stated, "In view of the new scope of sex-based discrimination under § 106.10, this addition to § 106.2 covers the refusal to use a student's preferred pronoun." *Tennessee*, 2024 U.S. App. LEXIS 17600, at *4 (citing 89 Fed. Reg. 33,516).  As discussed, *infra*, that supported this Court's finding that, at least at the preliminary injunction stage, Section 106.2 was likely unconstitutional.

## II.  THE NEW RULES LITIGATION COURTS HAVE RECOGNIZED THE FREE SPEECH PROBLEMS ARISING OUT OF SECTION 106.2'S PROHIBITION ON MISGENDERING.

Although Section 106.2 prohibits failure to use an individual's "preferred pronouns" in the same way as Olentangy's Policies, the First Amendment issue here is slightly different from the one presented by the New Rules.  Unlike the Policies, the New Rules go beyond the free speech rights of students, as Title IX also covers teachers, administrators, and

---

[4]Section 106.10 states that under Title IX, "[d]iscrimination on the basis of sex includes discrimination on the basis of . . . gender identity." 89 Fed. Reg. 33,886.

any others for whom recipients of federal funds under the statute have responsibility. Regardless, this expanded definition of harassment has been roundly rejected as infringing on free speech by federal courts that have considered Section 106.2 in the New Rules Litigation, and this Court should conclude that the Policies infringe similarly.

## A. The Supreme Court Unanimously Affirmed Preliminary Injunctions of Sections 106.2 and 106.10 From This Circuit and the Fifth.

Although the Supreme Court considered Section 106.2 only in passing, and did not discuss specifically its prohibition on mispronouning, it upheld preliminary injunctions on the New Rules from this Circuit and the Fifth. *See Louisiana*, 144 S. Ct. at 2509-10. Reviewing the Department's applications to stay preliminary relief, the Court stated, "Importantly, all Members of the Court today accept that the plaintiffs were entitled to preliminary injunctive relief as to" Sections 106.2 and 106.10.[5] *Id.* at 2509. The Court described Section 106.10 as "the central provision that newly defines sex discrimination to include

---

[5]The Court also agreed unanimously that a third provision in the New Rules, 34 C.F.R. § 106.31(a)(2), had been properly enjoined. *Id.* at 2510. Section 106.31(a)(2) would require schools to permit transgender students access to certain sex-separated spaces (e.g., bathrooms, locker rooms) based on their gender identity.

discrimination on the basis of sexual orientation and gender identity."
*Id.* at 2510. (On the issue of the scope of relief, five justices voted to uphold injunctions on the New Rules in their entirety, while four would have narrowed relief so that it did not go beyond the three provisions unanimously agreed upon. *Id.* at 2511.)

Similarly, preliminary injunctions on Section 106.2 (and the remainder of the New Rules) have been upheld in every Circuit to review them, including this one.

### B. Sections 106.2 and 106.10 Have Been Preliminarily Enjoined In This Circuit Based In Part On Their Unconstitutional Effect On Free Speech.

Although this Court has concluded that, like the Policies, Section 106.2 covers mispronouning, *see Tennessee*, 2024 U.S. App. LEXIS 17600 at *4, it has not yet discussed specifically the related First Amendment issues. However, in the decision enjoining the New Rules that this Court affirmed, the Eastern District of Kentucky considered at length whether Section 106.2 unconstitutionally compelled the use of preferred pronouns. *See Tennessee*, 2024 U.S. Dist. LEXIS 106559, at *58-67.

The Kentucky district court stated, "[i]ndividuals cannot be coerced into affirming messages with which they fundamentally disagree."

*Tennessee*, 2024 U.S. Dist. LEXIS 106559, at *58 (citing *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) and *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). Furthermore, "[i]n addition to compelling affirmation of gender identity through policy, [the New Rules] compel[] silence of opposing viewpoints." *Id.* at 59. Ultimately, the court concluded that Section 106.2 represented "a tacit endorsement of a content-based heckler's veto. So long as the offended individuals complain with sufficient vigor, the refusal to abide by preferred pronouns can be deemed harassment" under Section 106.2. *Id.* at 64.

By contrast, the Panel affirmed the District Court's finding that the preferred pronoun mandate in the Policies did not compel speech.[6] Although it concluded that "[t]he intentional use of preferred or non-preferred pronouns . . . represent speech protected by the First

---

[6] Although the Panel affirmed, it noted two flaws in the District Court's compelled speech analysis. First, the District Court justified the Policies on the basis of Olentangy's pedagogical interests, Dist. Ct. Opinion R. 28, PageID ## 839-40; however, such interests "justify regulation of speech only in 'school-sponsored expressive activities,'" and the Policies extended to non-sponsored activities. Panel Opinion, at 12 & n. 6 (citations omitted). In addition, the Panel implicitly rejected the District Court's distinction between *Meriwether* and the instant case, as the evidence showed that like the professor, PDE students "intend[ed] to communicate a message by using non-preferred pronouns to refer to their classmates." *Id.* at #13.

10

Amendment", the Panel based its affirmance on the purported "option" available to students – namely, to never refer to transgender students by any pronouns, preferred or not. Panel Opinion, at 13. The Panel believed that having to use first names instead of pronouns did not require "a tangible, material sacrifice" by students, and the existence of this "option" meant that, contrary to PDE's claim, there was no actual compulsion. *Id.*

However, contrary to the Panel's conclusion, the "option" to use first names unnecessarily and significantly burdens students' ability to speak freely, and is not a real alternative. Again, PDE simply wants students to be able to speak consistent with their deeply-held, good faith belief that sex is rooted in biology, not gender identity, and the "option" compels them to use language in a way that affirms the direct opposite of what they believe.

Besides causing students to violate their beliefs, the supposed solution also would force them to self-consciously monitor their words and develop strange, stilted speaking patterns. Pronouns allow speakers to make their sentences more concise and sound less repetitive; depriving students of the ability to use pronouns in certain situations will result in

11

clunky, annoying grammar, as well as retard students' ability to think and express themselves as they try to make sure they do not give offense to transgender students. This requirement runs contrary to the pedagogical goal of teaching children how to read, write, and speak clearly and with confidence. And given Olentangy's expressed interest in deterring "harassment" of transgender students, it seems inevitable that the Policies will eventually force students into a similar "option" regarding the use of preferred "neo-pronouns," *see, e.g.,* Human Rights Campaign, *Understanding Neopronouns,* https://tinyurl.com/5nh9bbae, (last accessed Dec. 16, 2024), further burdening and inhibiting their speech. Such proscriptions do not allow for the breathing space needed by First Amendment activity. *Tennessee*, 2024 U.S. Dist. LEXIS 106559 at *68 (quoting *Ams. For Prosperity Found. v. Bonta*, 594 U.S. 595, 609 (2021)).

That the supposed "option" has not been adequately thought through is demonstrated by the District Court's recognition that "[t]he student in a school hallway . . . uses pronouns because it is required by the English language," and that "[t]he use of pronouns in daily conversation is ever-present." Dist. Ct. Opinion R. 28, PageID # 843.

This recognition actually reinforces PDE's contention that any "option" is illusory in light of the necessity and ubiquity of pronouns in ordinary speech. It also shows the District Court and Panel took refuge in a false dichotomy, where the Policies could compel students outside the classroom to act as if gender identity trumps biology as long as they allowed them to discuss transgender-related issues freely in the classroom.

The "cost" to students of having to violate their conscience regarding fundamental issues of human sexuality and being forbidden from using pronouns in certain situations is "'so exorbitantly high as to present an illusory' or 'sham option.'" *Wilkins*, 744 F.3d at 415-16 (internal quotation marks omitted). Because each of the three Policies provides that Olentangy can "'punish, or threaten to punish'" mispronouning "'by governmental action that is regulatory, proscriptive, or compulsory in nature,'"[7] actual compulsion is present. *Id.* at 415 (citations omitted).

---

[7] *See, e.g.,* Policy 5517, Policy Manual R. 24-1, PageID #544 ("The Board shall vigorously enforce its prohibitions against unlawful harassment/retaliation by taking appropriate action reasonably calculated to stop the harassment and prevent further such harassment. . . . [A] violation of this policy may result in disciplinary action up to and

The Panel believed this "option" was like the compromise that had been proposed in *Meriwether* by the plaintiff but rejected by the university. *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021). However, the Kentucky federal court cited *Meriwether* to reach the opposite conclusion.

In *Meriwether*, the plaintiff offered that he would call on a transgender student in class by the student's last name, which the university at first accepted but, when the student still complained, two weeks later rejected. *Meriwether*, 992 F.3d at 499-500. The *Meriwether* court cited this (as well as the university's out-of-hand rejection of the plaintiff's subsequent proposal to use preferred pronouns but include a disclaimer in his syllabus, *see id.* at 500) as evidence of its blatant hostility to his message in enforcing its pronoun policy, *see id.* at 506, 510-11. But, as the Kentucky federal court noted, the plaintiff's "refusal to use preferred pronouns '*was* the message,' one that expressed his belief that 'sex is fixed in each person from the moment of conception, and that it cannot be changed, regardless of any individual's feelings or desires.'"

---

including the discharge of an employee or the suspension/expulsion of a student.")

*Tennessee*, 2024 U.S. Dist. LEXIS 106559 at *57 (quoting *Meriwether*, 992 F.3d at 509). Merely because there is no evidence of similarly open hostility by Olentangy towards PDE's message does not mean the Policies do not compel student speech.

The Panel and the Kentucky federal court also reached different conclusions about compelling preferred pronouns based on their respective readings of *Wooley* and *Barnette*.

While the Kentucky federal court cited *Wooley* for the First Amendment axiom that "[i]ndividuals cannot be coerced into affirming message with which they fundamentally disagree," *Tennessee*, 2024 U.S. Dist. LEXIS 106559, at *58 (citing *Wooley*, 430 U.S. at 714), the Panel relied on the case to support its conclusion that the purported option offered an escape hatch from a compelled speech claim, Panel Opinion, at 13. In *Wooley*, the Supreme Court "explained that a license plate motto compels speech because 'driving an automobile [is] a virtual necessity for most Americans'; the option to stay silent by not driving is no option at all." Panel Opinion, at 13 (quoting *Wooley*, 430 U.S. at 715). Similarly, using pronouns is virtually a necessity for students learning to think and

speak properly, and *Wooley* does not support the constitutionality of the Policies.

The seminal compelled speech case in the K–12 context, *Barnette* held that school officials could not require students with religious objections to say the Pledge of Allegiance or to salute the flag: "'If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Barnette*, 319 U.S. at 642. By plainly favoring the use of preferred pronouns, Olentangy improperly "cast[s] a pall of orthodoxy" over student speech, ignoring *Barnette*'s "fixed star." *See Meriwether*, 992 F.3d at 505.

Both the Policies and Section 106.2 "attempt[] to compel speakers to affirm the concept of gender identity, while punishing or silencing those with a different perspective. That is plainly impermissible." *Tennessee*, 2024 U.S. Dist. LEXIS 106559, at *67 (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992) ("[T]he government has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules.")). Those who believe

gender identity determines sex can speak freely, but those who believe biology is determinative must follow restrictive rules like Olentangy's "options."

Olentangy cannot attempt to deter possible sexual harassment of certain students by creating an environment that is hostile to the beliefs of other students. Forcing certain students to speak without being able to use pronouns is as dehumanizing and humiliating to them as being addressed by non-preferred pronouns is to transgender students, as the Panel believed. Panel Opinion, at 10, 13, 17.

Arguably, referring to a transgender student by his or her preferred pronoun is a matter of simple courtesy, and maybe some students who reject non-biological based gender identity will do so voluntarily. However, the government cannot compel polite manners at the expense of the right to free speech.

### C. The Eleventh Circuit and Western District of Oklahoma Preliminarily Enjoined Sections 106.2 and 106.10 Based In Part On the Supreme Court's Recognition of Tension Between Speech Restrictions Under Title IX and the First Amendment.

In the New Rules Litigation, some courts (*see, e.g., Alabama*, 2024 U.S. App. LEXIS 21358; *Oklahoma*, 2024 U.S. Dist. LEXIS 135314) have

looked to *Davis v. Monroe Cnty. Sch. Bd.*, 526 U.S. 629 (1999) in concluding that Section 106.2's preferred pronoun mandate violates free speech rights. In this case, the parties have not raised issues under Title IX, and *Davis* is not implicated directly. However, under Title IX, First Amendment concerns are nested in the nonconstitutional issue of when a school is liable under Title IX for sexual harassment, the standards for which are set forth in *Davis*. Moreover, the identical issue of the restrictions a school can place on student speech for the purpose of deterring sexual harassment appears in *Davis* (and the New Rules Litigation) and this case.

*Davis* defined "discrimination" in the context of a private damages lawsuit under Title IX against a school board, in which one student alleged that another student had sexually harassed her. *See Davis*, 526 U.S. at 632-33. The Supreme Court held that student-on-student "sexual harassment" was "discrimination" for purposes of Title IX, and in order for a private plaintiff to bring a suit for damages for such "discrimination," the behavior must be "so severe, pervasive, and objectively offensive that it denies its victims the equal access to

education that Title IX is designed to protect," and the recipient must be "deliberately indifferent" to it.  *Id.* at 650-52.

Dissenting for himself and four other justices, Justice Kennedy reminded the *Davis* majority that school speech codes must make room for students' free speech rights:

> On college campuses, and even in secondary schools, a student's claim that the school should remedy a sexually hostile environment will conflict with the alleged harasser's claim that his speech, even if offensive, is protected by the First Amendment.  In each of these situations, the school faces the risk of suit, and maybe even multiple suits, regardless of its response.

*Id.* at 682-83 (Kennedy, J., dissenting) (citation omitted).  In the New Rules Litigation, the Eleventh Circuit noted that "in responding to the dissent's concerns that holding schools liable for student-on-student conduct might force them to enact policies that violated the First Amendment," the *Davis* majority "warned against courts 'impos[ing] *more sweeping liability than we read Title IX to require.*'" *Alabama*, 2024 U.S. App. LEXIS 21358, at *15 (quoting *Davis*, at 652); *see also Oklahoma*, 2024 U.S. Dist. LEXIS 135314, at *20-21 (same).

Policies like those at issue here are motivated at least in part by a school district's interest in avoiding exposure to liability under Title IX for sex discrimination.  The Department has stated that under *Davis*,

19

recipients can only limit otherwise constitutionally-protected speech in order to reduce harassment where the *Davis* standard – that is, bullying that was so severe, pervasive, and objectively offensive that it denied equal educational access – was satisfied. *See, e.g.,* Preamble to the 2020 Title IX regulations (Dep't of Educ., *Final Rule, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 97 Fed. Reg. 30026 (May 19, 2020)) ("[t]he *Davis* definition of sexual harassment adopted in these final regulations . . . will help prevent infringement of First Amendment freedoms . . ."). Speech codes like the Policies are specific evidence that a recipient can point to under *Davis* to defend against allegations that it has been deliberately indifferent to sexual harassment.[8]

However, the Policies' preferred pronoun mandate present the exact problem envisioned by the *Davis* majority and dissent: although they may help to protect Olentangy from liability for student-on-student harassment, they also prohibit constitutionally- protected speech.

---

[8] Another of Olentangy's policies (Policy 2266) tracks the *Davis* standard for harassment under Title IX, but Policy 5517 states that it does not cover "Sexual Harassment covered by Policy 2266." Supp. Br. (CA6-Doc.134) at 6. PDE does not challenge Policy 2266 in this case.

The Eleventh Circuit recognized that "the new definition [in Section 106.2] raises First Amendment concerns."[9]  *Alabama*, 2024 U.S. App. LEXIS 21358, at *16-18 (citing *Davis*, 526 U.S. at 652); *see also Oklahoma*, 2024 U.S. Dist. LEXIS 135314, at *20 (taking Sections 106.2 and 106.10 together, "the likelihood of a constitutional violation is apparent") (citing *Davis*, 526 U.S. at 652).  Like those courts, this Court should follow *Davis*'s admonition against imposing such "sweeping" responsibility for alleged harassment that free speech becomes chilled, which would be the result of upholding the Policies' preferred pronoun mandate.

### D. All Other New Rules Litigation Courts Have Also Preliminarily Enjoined Section 106.2.

Although discussion of the First Amendment issues in the rest of the New Rules Litigation decisions have been less extensive than the cases described *supra*, all of them have preliminarily enjoined Section 106.2.  For example, stating that a "speaker has a First Amendment

---

[9] The Northern District of Alabama is the only court to have denied a motion to preliminarily enjoin the New Rules.  *See Alabama v. Cardona*, No. 7:24-cv-533-ACA, 2024 U.S. Dist. LEXIS 137759 (N.D. Ala. July 30, 2024).  However, later the same day as the denial by that court, the Eleventh Circuit granted the requested relief on interlocutory appeal.  *Alabama*, 2024 U.S. App. LEXIS 21358, at *22-23.

right" to even "the misuse of a pronoun," the Eastern District of Missouri concluded that plaintiffs had demonstrated an adequate likelihood "of prevailing on their claim that the Rule violates the First Amendment." *Arkansas*, 2024 U.S. Dist. LEXIS 130849, at \*51 (citing *Beard v. Falbreath*, 97 F.4th 1109, 1117 (8th Cir. 2024)); *see also Louisiana*, 2024 U.S. Dist. LEXIS 105645, at \*32 ((plaintiffs' contention that Section 106.2 "would compel staff and students to use whatever pronouns a person demands, even when those are contrary to grammar rules, reality, or political ideologies, and it further prohibits staff and students from expressing their own views on certain topics" was sufficiently likely to succeed to support preliminary injunction). PDE students similarly have the right not only to "mis-use" pronouns, but to use pronouns in a manner consistent with their beliefs.

## CONCLUSION

For the foregoing reasons, as well as those set forth in PDE's briefs filed with this Court, the decision of the District Court should be reversed.

Dated: December 18, 2024

<div style="margin-left:40%;">

Respectfully submitted,

*/s/ Donald A. Daugherty, Jr.*
Donald A. Daugherty, Jr.
Senior Counsel, Litigation

Martha A. Astor
Counsel, Litigation
Defense of Freedom Institute
for Policy Studies
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004
(414) 559-6902
Don.Daugherty@dfipolicy.org
Martha.Astor@dfipolicy.org

*Counsel for Amicus Curiae*

</div>

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f): this document contains 4,402 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: December 18, 2024
Washington, D.C.

*/s/ Donald A. Daugherty, Jr.*
Donald A. Daugherty, Jr.
One of the Attorneys for Amicus

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 18, 2024, an electronic copy of the Brief of *Amicus Curiae* Defense of Freedom Institute was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

*/s/ Donald A. Daugherty, Jr.*
Donald A. Daugherty, Jr.