No. 23-3630

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PARENTS DEFENDING EDUCATION,
*Plaintiff-Appellant*,
v.

OLENTANGY LOCAL SCHOOL DISTRICT
BOARD OF EDUCATION, ET AL.,
*Defendants-Appellees*.

On Appeal from the United States District Court for the Southern District of Ohio
(Case No. 2:23-cv-01595)

## BRIEF OF GLBTQ LEGAL ADVOCATES & DEFENDERS AND
## LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
## AS *AMICI CURIAE* SUPPORTING DEFENDANT-APPELLEES

GARY D. BUSECK
MARY L. BONAUTO
GLBTQ Legal Advocates
 & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
617-426-1350
gbuseck@glad.org
mbonauto@glad.org

KAREN L. LOEWY
Lambda Legal Defense
 and Education Fund, Inc.
111 K Street N.E., 7th Floor
Washington, DC 20002
202-804-6245
kloewy@lambdalegal.org

KENNETH D. UPTON, JR.
Lambda Legal Defense
 and Education Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
312-663-4413
kupton@lambdalegal.org

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ................................... vii

INTEREST OF AMICI CURIAE ............................................................... viii

ARGUMENT ........................................................................................1

I.  THE PANEL DECISION OF THIS COURT IN *MERIWETHER v. HARTOP* INVOLVED FUNDAMENTALLY DIFFERENT ISSUES AND DOES NOT CONTROL THIS CASE. ....................................1

    A.  This Is Not A Speech Code Case...........................................1

    B.  This Is Not An Academic Freedom Case. ...............................4

    C.  This Is Not A Compelled Speech Case. .................................6

    D.  This Is Not An Individual Claim For Relief...........................8

II. OLENTANGY'S POLICIES PROTECT ALL STUDENTS FROM BULLYING AND HARASSMENT THAT LEAD TO POOR MENTAL HEALTH AND EDUCATIONAL OUTCOMES.........................10

CONCLUSION .....................................................................................13

CERTIFICATE OF COMPLAINCE ...........................................................14

CERTIFICATE OF SERVICE ...................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*B.L. by & through Landdeck v. Tonasket Sch. Dist.*,
   No. 2:18-CV-00085-SMJ, 2018 WL 2670031 (E.D. Wash. June 4, 2018)............11

*Bethel Sch. Dist. No. 403 v. Fraser*,
   478 U.S. 675 (1986) ............................................................................................ 5-6

*Bonnell v. Lorenzo*,
   241 F.3d 800 (6th Cir. 2001) ..............................................................................4, 5

*C.N. v. Ridgewood Bd. of Educ.*,
   430 F.3d 159 (3rd Cir. 2005)..................................................................................7

*Copeland v. Georgia Dep't of Corr.*,
   97 F.4th 766 (11th Cir. 2024) ..............................................................................11

*Corder v. Lewis Palmer Sch. Dist. No. 38*,
   566 F.3d 1219 (10th Cir. 2009) ..............................................................................6

*Dawson v. Bumble & Bumble*,
   246 F.Supp.2d 301 (S.D.N.Y. 2003) ....................................................................10

*Doe v. Casino*,
   381 F.Supp.3d 425 (E.D. Pa. 2019) ....................................................................10

*Doe v. Gavins*,
   No. 22-CV-10702-ADB, 2023 WL 6296398 (D. Mass. Sept. 27, 2023)..............11

*Duren v. Byrd*,
   No. 1:18-cv-00084, 2021 WL 3848105 (M.D. Tenn., Aug. 26, 2021) ...................7

*Eller v. Prince George's Cnty. Pub. Sch.*,
   580 F.Supp.3d 154 (D. Md. 2022) ................................................................. 11-12

*Fleming v. Jefferson Cnty. Sch. Dist. R-1*,
   298 F.3d 918 (10th Cir. 2002) ................................................................................6

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949) .............................................................................13

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020) ..................12

*Hazelwood Sch. Dist. v. Kuhlmeier*,
  484 U.S. 260 (1988) ...............................................................................6

*K.S-A v. Hawaii, Dep't of Educ.*,
  Civ. No. 16-00115 ACK-KJM, 2018 WL 2144143 (D. Haw. May 9, 2018).........11

*Kowalski v. Berkeley Cnty. Schs.*,
  652 F.3d 565 (4th Cir. 2011) .................................................................10

*Mahanoy Area Sch. Dist. v. B.L.*,
  594 U.S. 180 (2021) ...............................................................................4

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021) ........................................................ 1, 2, 4, 5, 6, 8

*Morrison v. Bd. of Educ.*,
  521 F.3d 602 (6th Cir. 2008) ...................................................................7

*Nichols v. Azteca Rest. Enters.*,
  256 F.3d 864 (9th Cir. 2001) .................................................................10

*Norris v. Cape Elizabeth Sch. Dist.*,
  969 F.3d 12 (1st Cir. 2020) .....................................................................9

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*,
  83 F.4th 658 (8th Cir. 2023) ................................................................3-4

*Pratt v. Indian River Cent. Sch. Dist.*,
  803 F.Supp.2d 135 (N.D.N.Y. 2011) ......................................................10

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
  547 U.S. 47 (2006) ...............................................................................13

iv

*Saxe v. State College Area Sch. Dist.*,
 240 F.3d 200 (3rd Cir. 2001)...................................................................4

*Shively v. Green Loc. Sch. Dist. Bd. of Educ.*,
 579 F.App'x 348 (6th Cir. 2014)............................................................10

*Soule v. Conn. Ass'n of Schs., Inc.*,
 90 F.4th 34 (2d Cir. 2023)......................................................................12

*Sypniewski v. Warren Hills Reg'l Bd. of Educ.*,
 307 F.3d 243 (3rd Cir. 2002)....................................................................9

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
 393 U.S. 503 (1969).................................................................................5

*Ward v. Polite*,
 667 F.3d 727 (6th Cir. 2012)................................................................5, 6

*Wilkins v. Daniels*,
 744 F.3d 409 (6th Cir. 2014)...................................................................7

**Statutes**

Ohio Rev. Code Ann. §3313.666 ..............................................................3

**Other Authorities**

Didier Jourdan, et al., *Supporting Every School to Become a Foundation for
 Healthy Lives*, 5(4) LANCET CHILD & ADOLESCENT HEALTH 295 (2021) ...........12

Joseph G. Kosciw, et al., GLSEN, *The 2021 National School Climate Survey:The
 Experiences of LGBTQ+ Youth in Our Nation's Schools* 74 (2022),
 https://bit.ly/4hwuTqX.........................................................................12

Lateefah Jean-Baptiste, *Height Shaming: Tall Women Tell Us Their Experiences*,
 REFINERY29 (May 22, 2018), https://www.refinery29.com/en-gb/height-
 shaming#slide-2 ....................................................................................11

Ohio Dep't. of Educ., *Anti-Harassment, Anti-Intimidation or Anti-Bullying Model Policy*, (Oct. 9, 2012), https://tinyurl.com/j8k66rky ............................................3

Olentangy Schs., *Personal Communication Devices*, PO 5136 (Sept. 26, 2024), perma.cc/3LA4-LTEE ....................................................................... 2, 7-8

Olentangy Schs., *Anti-Harassment*, PO 5517 (Sept. 26, 2024), perma.cc/LK9F-WSMM.................................................................................................................2

Susan Tebben, *Shawnee State Professor Settles Case, Won't Be Required to Use Identified Pronouns*, OHIO CAPITAL JOURNAL (Apr. 21, 2022), https://tinyurl.com/2ndmt7t4 ...............................................................................8

The Trevor Project, *2023 U.S. National Survey on the Mental Health of LGBTQ Young People*, 4 (2023), https://bit.ly/4ge70DG...................................................12

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amici curiae* are nonprofit entities operating under § 501(c)(3) of the Internal Revenue Code. Amici are not subsidiaries or affiliates of any publicly owned corporations and do not issue shares of stock. No publicly held corporation has a direct financial interest in the outcome of this litigation due to amici's participation.

## INTEREST OF AMICI CURIAE[1]

*Amicus curiae* **GLBTQ Legal Advocates & Defenders** (GLAD Law) is New England's leading public interest legal organization dedicated to creating a just society free of discrimination based on gender identity and expression, HIV status, and sexual orientation. GLAD Law's federal court litigation to advance the rights of LGBTQ people and people living with HIV includes *Bragdon v. Abbott*, 524 U.S. 624 (1998); *Gill v. Office of Pers. Mgmt.*, 682 F.3d 1 (1st Cir. 2012); *Rosa v. Park W. Bank*, 214 F.3d 213 (1st Cir. 2000); *Abbott v. Bragdon*, 107 F.3d 934 (1st Cir. 1997); and *Brown v. Hot Sexy, & Safer Prods., Inc.*, 68 F.3d 525 (1st Cir. 1995). GLAD Law also advocates for strong, safe and positive school environments to advance student learning and well-being. GLAD Law has represented parties in, *e.g.*, *Doe v. RSU 26*, 2014 ME 11; *Doe v. Brockton Sch. Comm.*, No. 2000-J-638, 2000 Mass. App. LEXIS 1128 (Nov. 30, 2000); *Walker v. Merrimack Sch. Dist.*, No. 1:96-cv-87 (D.N.H. dismissed Jun. 17, 1996); and *Hot, Sexy & Safer Prods.*, and amicus in, *e.g.*, *Doe v. Manchester Sch. Dist.*, 2024 NH 48; *L.M. v. Town of Middleborough*, 103 F.4th 854 (1st Cir. 2024); *Foote v. Town of Ludlow*, No. 22-

---

[1] The parties have consented to the filing of this *amicus curiae* brief. *Amici* confirm that no party or counsel for any party authored this brief in whole or in part; that no party or counsel for any party contributed any money to fund the preparation or submission of this brief; and that no person other than *amici* or their counsel made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E); Local Rule 29(a)(4).

30041, 2022 U.S. Dist. LEXIS 236102 (D. Mass. Dec. 14, 2022), appeal docketed, No. 23-1069 (1st Cir. argued Sep. 13, 2023); *Doe v. Hopkinton Pub. Schs*., 19 F.4th 493 (1st Cir. 2021); and *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008).

*Amicus curiae* **Lambda Legal Defense and Education Fund, Inc.** ("Lambda Legal") is the nation's oldest and largest legal organization working for the full civil rights of lesbian, gay, bisexual, and transgender people and everyone living with HIV through impact litigation, education, and policy advocacy. *See, e.g., Lawrence v. Texas*, 539 U.S. 558 (2003); *Romer v. Evans*, 517 U.S. 620 (1996). Throughout its history, Lambda Legal has worked to ensure that students are not deprived of equal educational opportunity as a result of discrimination because of their sexual orientation or transgender status. *See*, *e.g.*, *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660 (8th Cir. 2024); *B.P.J. by Jackson v. W. Virginia State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024); *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622 (4th Cir. 2023), *cert. denied sub nom. Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 144 S. Ct. 2560 (2024); *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022); *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996); *L.E. by Esquivel v. Lee*, 728 F.Supp.3d 806 (M.D. Tenn. 2024); *Evancho v. Pine-Richland Sch. Dist.*, 237 F.Supp.3d 267 (W.D. Pa. 2017); *Pratt v. Indian River Cent. Sch. Dist.*, 803 F.Supp.2d 135 (N.D.N.Y. 2011); *Henkle v. Gregory*, 150 F.Supp.2d 1067 (D. Nev. 2001).

ix

*Amici curiae* have a strong interest in the robust and consistent application of anti-bullying policies and nondiscrimination protections to ensure that LGBTQ young people can learn and grow freely and equally in school settings. This includes protecting students from all forms of discriminatory harassment at the hands of their peers. *Amici* offer their expertise to the Court to underscore the inapplicability of *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021), to a pre-enforcement challenge by primary and secondary school students and parents to a district's anti-harassment requirements and to highlight the prevalence of misgendering as a form of harassment faced by a wide range of people who defy sex-based stereotypes.

**ARGUMENT**

**I.    THE PANEL DECISION OF THIS COURT IN *MERIWETHER v. HARTOP* INVOLVED FUNDAMENTALLY DIFFERENT ISSUES AND DOES NOT CONTROL THIS CASE.**

Appellant categorically asserts that *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021), controls this case and requires a ruling in its favor. *See, e.g.,* Compl., R. 1, PageID#4, ¶10 (*Meriwether* "compels the conclusion" that the school policies violate the First Amendment); *Id.*, PageID#40, ¶154 (same, referring to school policy as a "similar preferred pronoun requirement"); Pl.'s Mot. for a Prelim. Inj., R. 7, PageID#96 (same); *id.*, PageID#104 (same); Pl.'s Panel Br., p. 23 (school policies violate the First Amendment "[j]ust as in *Meriwether*").

Nothing could be further from the truth. This case, involving the Olentangy primary and secondary schools' policies on harassment, bullying and intimidation, differs—factually and legally—in myriad ways from *Meriwether*. Amici explicate those outcome-determinative variations below.

**A.    This Is Not A Speech Code Case.**

In *Meriwether*, a university professor received a faculty-wide email advising him that faculty "had to refer to students by their 'preferred pronoun[s].'" *Meriwether*, 992 F.3d at 498. The professor alleged that the university rejected all compromises and accommodations and required him to address a transgender student in his class "in the same manner 'as other students who identify themselves

1

as female.'" *Id.* at 500. While this university directive has the trappings of a "speech code," directing a professor as to exactly what he must say, the same certainly cannot be said about the Olentangy policies.

Here, the plaintiff challenges two school policies and a portion of the Code of Conduct. Policy 5517 is titled "Anti-Harassment." Vaseliou Decl., R. 7-1, PageID#121. Its stated purpose is to "maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment." *Id.* Its definition of harassment centers on conduct directed at a student that: (a) places a student in reasonable fear of harm; (b) substantially interferes with a student's educational performance, opportunities or benefits; or (c) substantially disrupts the orderly operation of a school. *Id.*, PageID#123. Bullying is also defined, requiring "unwarranted and repeated behavior" that is "severe or pervasive enough" to create a hostile environment or to interfere with a student's school performance. *Id.*, PageID#122. (The definition was modified in September 2024. *See* Olentangy Schs., PO 5517 (Sept. 26, 2024), perma.cc/LK9F-WSMM.

Policy 5136 addresses "Personal Communication Devices" (PCD's). *Id.*, PageID#133. It prohibits in-school use of a PCD "in a way that is threatening or otherwise constitutes bullying or harassment under Board Policy 5517 (Anti-Harassment) or Board Policy 5517.01 (Bullying and Other Forms of Aggressive Behavior)." Olentangy Schs., PO 5136 (Sept. 26, 2024), perma.cc/3LA4-LTEE.

Finally, the Code of Conduct addresses "Hazing, Harassment, Intimidation, Bullying and Sexual Harassment." Vaseliou Decl., R. 7-1, PageID#157. Within that context, it also can be read to prohibit misgendering *Id.*, at PageID#150.

In sum, the Olentangy policies focus on the unlawful mistreatment of students and not on policing speech that does not rise to the level of illegal harassment, bullying, or intimidation. Moreover, they never mention misgendering. Indeed, misgendering only arose because one of plaintiff's members asked defendants whether their child would be "forced to use the pronouns that a transgender child identified with or be subject to reprimand from the district if they refuse to do so." Neily Decl., R. 7-2, PageID#347, 357. The school's attorney responded, by citing the Anti-Harassment Policy and the Code of Conduct, *Id.* at PageID#356, and noting that Board Policy "does not require any student to affirm or deny any individual religious beliefs, but students must comply with Board Policy and school rules." *Id.*

Indisputably, primary and secondary schools can—and, indeed, must—protect their students from severe or pervasive harassment and bullying that interferes with their right and ability to learn, creating a hostile educational environment. Such policies do not violate the First Amendment.

First, Ohio state law requires such policies. Ohio Rev. Code Ann. §3313.666; *see also* Ohio Dep't. of Educ., *Anti-Harassment, Anti-Intimidation or Anti-Bullying Model Policy*, (Oct. 9, 2012), https://tinyurl.com/j8k66rky; *Parents Defending Educ.*

*v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 671-72 (8th Cir. 2023) (Kelly, concurring) (policy designed to ensure safe environment for all students is not only within the school district's proper educational mission; it is "mandated by law").

Second, the Supreme Court has expressly endorsed the power of schools to regulate "serious or severe bullying or harassment targeting particular individuals." *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 188 (2021); *id.* at 200 (Alito, concurring) ("During the entire school day, a school must have authority to protect everyone on its premises, and therefore schools must be able to prohibit threatening and harassing speech").[2]

Finally, this circuit recognizes that "speech that rises to the level of harassment—whether based on sex, race, ethnicity or other invidious purpose—and which creates a hostile learning environment that ultimately thwarts the academic process, is speech that a learning institution has a strong interest in preventing." *Bonnell v. Lorenzo*, 241 F.3d 800, 824 (6th Cir. 2001); *cf. Meriwether*, 992 F.3d at 511 (difficult to see a hostile environment "on the allegations in this complaint").

## B.    This Is Not An Academic Freedom Case.

*Meriwether* turned on the academic freedom the university professor plaintiff

---

[2]  In *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200 (3rd Cir. 2001), then-Judge Alito wrote that schools have a compelling interest in "preventing discrimination" and "promoting an educational environment that is safe and conducive to learn." *Id.* at 209, 217.

enjoyed in his classroom, with the panel noting that his rights "are paramount in the academic setting." *Meriwether*, 992 F.3d at 505, quoting *Bonnell*, 241 F.3d at 823. Thus, in applying the applicable balancing test, that panel found that academic freedom, "potentially compelled speech," the nature of the college classroom, and the importance of controversial speech to a university's "efficient provision of services" provided powerful interests on the side of the professor. *Id.* at 509-10. Those interests plainly outweighed what the court saw, on the face of the complaint, on the other side of the ledger: a "win-win" compromise rejected by the university and a student that had not been denied equal access to an education. *Id.* at 510-11.

The balance looks completely different in the present case. As this court has recognized, the First Amendment must be "applied in light of the special characteristics of the school environment." *Ward v. Polite*, 667 F.3d 727, 733 (6th Cir. 2012) quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *Meriwether*, 992 F.3d at 507 (same). In the primary and secondary school context, student speech that "substantially interfere[s] with the work of the school or impinge[s] upon the rights of other[s]" to be secure and to be let alone may be regulated by schools. *Tinker*, 393 U.S. at 508-09. More particularly, it is proper for these schools to teach the "fundamental values of 'habits and manners of civility,'" taking into account the "sensibilities of fellow students" such that the advocacy of "unpopular and controversial views must be balanced against the society's interest

in teaching students the boundaries of socially appropriate behavior." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 681 (1986). Schools can insist "that certain modes of expression are inappropriate and subject to sanctions." *Id.* at 683.

Primary and secondary schools may limit student speech in "school-sponsored activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988). This standard allows the school "to account for the 'level of maturity' of the student." *Ward*, 667 F.3d at 734. Likewise, "[t]he universe of legitimate pedagogical concerns is by no means confined to the academic for it includes discipline, courtesy and respect for authority." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1228 (10th Cir. 2009) (quoting *Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 925 (10th Cir. 2002)).

In short, nothing about the academic freedom of a university professor in the context of one-on-one in-class communications with students translates into the primary and secondary school context where the school must maintain an environment conducive to the educational advancement of every student.

### C.     This Is Not A Compelled Speech Case.

Assuming, *arguendo*, that *Meriwether* is a compelled speech case, *but see Meriwether*, 992 F.3d at 509-10 (speaking of "potentially compelled speech on a matter of public concern"), this is certainly not such a case. As this court explained:

6

A "general principle of compelled speech jurisprudence … is that a violation of the First Amendment right against compelled speech occurs only in the context of actual compulsion." *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 189 (3rd Cir. 2005). "In order to compel the exercise or suppression of speech, the governmental measure must punish, or threaten to punish, protected speech by governmental action that is 'regulatory, prescriptive, or compulsory in nature.'" [Citations omitted.] "A discouragement that is 'minimal' and 'wholly subjective' does not, however, impermissibly deter the exercise of free speech rights." [Citations omitted.]

*Wilkins v. Daniels*, 744 F.3d 409, 415 (6th Cir. 2014); *id.* at 416 (unwillingness to abide by alternative options does not equal compulsion). *See also Duren v. Byrd*, No. 1:18-cv-00084, 2021 WL 3848105, *18, n.26 (M.D. Tenn., Aug. 26, 2021).

No Olentangy student has been punished—or threatened with punishment—with respect to an asserted desire to use pronouns reflecting another student's birth sex as opposed to pronouns reflecting their gender identity. In this circuit, where a student chose to "chill his own speech [in opposition to homosexuality] based on his perception that he would be disciplined for speaking" and where the court could "only speculate" as to the possibility of punishment, the student failed to establish an injury-in-fact for standing purposes. *Morrison v. Bd. of Educ.*, 521 F.3d 602, 610 (6th Cir. 2008). Under *Morrison*, the anonymous students here would lack standing.[3]

---

[3] The court in *Morrison* referenced the school policy's express repudiation of its application to constitutionally protected speech. *Morrison,* 521 F.3d at 610. Olentangy PCD Policy, No. 5136 does the same: "This policy is not intended to and shall not be interpreted to infringe upon the First Amendment rights of students (i.e. to prohibit a reasoned and civil exchange of opinions, or debate, that is conducted at appropriate times and places during the school day and is protected by State or

7

Standing aside, there can be no finding of compulsion on this record. It is undisputed that, in response to communications from a PDE member/parent, the school's attorney stated that "the District would not discipline your [redacted] for [redacted] religious beliefs. … [I]f you would like to discuss accommodations to avoid using pronouns where doing so would be contrary to [redacted] religious beliefs, the District is happy to discuss those options with [redacted]." Neily Decl., R. 7-2, PageID#355. The record does not indicate that any student or parent chose to explore accommodations. In that posture, a compelled speech claim cannot lie.

### D.    This Is Not An Individual Claim For Relief.

In *Meriwether*, the professor sued after he was the subject of discipline (a written warning in his file) by his university, seeking relief for the alleged denial of various constitutional rights. A panel of this court reinstated certain of the plaintiff's claims dismissed below and remanded for further proceedings. *Meriwether*, 992 F.3d at 492. The parties later settled. *See* Susan Tebben, *Shawnee State Professor Settles Case, Won't Be Required to Use Identified Pronouns*, OHIO CAPITAL JOURNAL (Apr. 21, 2022), https://tinyurl.com/2ndmt7t4 (agreement imbedded therein).

The present case stands on a completely different footing. Most basically, there has been no discipline—threatened or imposed—that could be challenged. Rather, as originally pled, the plaintiff sought declaratory and injunctive relief to

---

Federal law)." *See* PO 5136, perma.cc/3LA4-LTEE.

take down the entirety of Olentangy's policy structure for addressing harassment, bullying and intimidation. Compl., R. 1, PageID#53-54.[4]

Olentangy can certainly punish such conduct when it rises—as the schools' policies require—to the level of placing a student in reasonable fear of harm, substantially interferes with a student's educational performance, or causes a substantial disruption in the school. As the court said in *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243 (3rd Cir. 2002),

> Intimidation of one student by another, including intimidation by name calling, is the kind of behavior school authorities are expected to control or prevent. There is no constitutional right to be a bully. … Although mere offense is not a justification for suppression of speech, schools are generally permitted to step in and protect students from abuse. … Students cannot hide behind the First Amendment to protect their "right" to abuse and intimidate other students at school.

*Id.* at 264; *see also Norris v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 29 (1st Cir. 2020) ("bullying is the type of conduct that implicates the governmental interest in protecting the invasion of the rights of others, as described in *Tinker*); *Kowalski v. Berkeley Cnty. Schs.*, 652 F.3d 565, 572 (4th Cir. 2011) (*Tinker* supports schools' "compelling interest" in discipline in school, "including discipline for student harassment and bullying").

---

[4] Plaintiff recently changed its requested relief, now preferring an injunction that "bars Olentangy from punishing students for misgendering other students, over one that bars Olentangy from enforcing the challenged policies in full or in part." Suppl. En Banc Br. of Pl.-Appellant, p. 10. Casting misgendering as a totally discipline-free activity however any student seeks to engage in it still reaches beyond legal bounds.

## II.    OLENTANGY'S POLICIES PROTECT ALL STUDENTS FROM BULLYING AND HARASSMENT THAT LEAD TO POOR MENTAL HEALTH AND EDUCATIONAL OUTCOMES.

Plaintiff and many of their *amici* seemingly ask this Court to overlook that the conduct barred by the challenged policies targets other students. Plaintiff's parent members and their children openly seek a broad exemption *to bully* other students by *harassing conduct* that will include misgendering. Such an exemption would directly conflict with Olentangy students' "well established" "right to be free from student-on-student discrimination." *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F.App'x 348, 358 (6th Cir. 2014) (collecting cases).

Misgendering has long been a tool of harassment and discrimination against those who are perceived as gender nonconforming in some way, conveying a person's departure from stereotypes about what "real" men and women are.  Many people who defy those stereotypes have faced harassment via misgendering. *See, e.g.*, *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 874-75 (9th Cir. 2001) ("feminine" male employee harassed by being called "she" and "her"); *Pratt v. Indian River Cent. Sch. Dist.*, 803 F.Supp.2d 135, 152 (N.D.N.Y. 2011) (gay male student with feminine "expressive gestures and manner of speaking" called "girl"); *Doe v. Casino*, 381 F.Supp.3d 425, 427 (E.D. Pa. 2019) (lesbian with masculine gender expression called "sir"); *Dawson v. Bumble & Bumble*, 246 F.Supp.2d 301, 328 (S.D.N.Y. 2003) (Dawn, a masculine-presenting lesbian, called "Donald"). So,

10

too, have people whose bodies or hair do not fit typical sex-based stereotypes. *See, e.g.*, Lateefah Jean-Baptiste, *Height Shaming: Tall Women Tell Us Their Experiences*, REFINERY29 (May 22, 2018), https://www.refinery29.com/en-gb/height-shaming#slide-2 (6'2" woman shared, "I have been called 'sir' to my face more times than therapy could ever erase."); *Doe v. Gavins*, No. 22-CV-10702-ADB, 2023 WL 6296398, at *12 (D. Mass. Sept. 27, 2023) (male student called "Miss" because of long hair and choice of clothing); *B.L. by & through Landdeck v. Tonasket Sch. Dist.*, No. 2:18-CV-00085-SMJ, 2018 WL 2670031, at *1 (E.D. Wash. June 4, 2018) (male student with long hair called "princess"); *K.S-A v. Hawaii, Dep't of Educ.*, Civ. No. 16-00115 ACK-KJM, 2018 WL 2144143, at *6 (D. Haw. May 9, 2018) (male student with long hair called a girl). These varied types of misgendering fall directly within the kind of bullying and harassment Olentangy's policies prohibit.

And yes, barring Olentangy from acting against misgendering would fall more heavily on transgender students. Deliberate and repeated misgendering is a deeply harmful form of harassment. *See Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 770, 774-80 (11th Cir. 2024) (coworkers created hostile environment for transgender man through "constant and humiliating harassment" including use of female pronouns, calling him "ma'am" and "baby girl"); *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F.Supp.3d 154, 173 (D. Md. 2022) (teacher "repeatedly misgendered"

11

by staff and students has claim of severe or pervasive harassment). "For transgender people, the experience of being misgendered … harms their 'deeply felt, inherent sense' of gender, a core part of what makes each of us human." *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 83 n.8 (2d Cir. 2023) (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020), *as amended* (Aug. 28, 2020).

This reality cannot erase the importance to all students. School policies, practices, and guidelines that protect against student harassment and bullying can dramatically improve students' quality of life, not just during childhood and adolescence but long into adulthood. *See* Didier Jourdan, et al., *Supporting Every School to Become a Foundation for Healthy Lives*, 5(4) LANCET CHILD & ADOLESCENT HEALTH 295 (2021). Even policies that simply ensure students are referred to by their correct name and pronouns correlate with far lower rates of discrimination, psychological distress, and suicide attempts. Joseph G. Kosciw, et al., GLSEN, *The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* 74 (2022), https://bit.ly/4hwuTqX; The Trevor Project, *2023 U.S. National Survey on the Mental Health of LGBTQ Young People*, 4 (2023), https://bit.ly/4ge70DG. Such policies and interventions protect the physical and psychological safety of students so that they can succeed in school and beyond.

Viewed through this lens, any request to exclude misgendering wholly from

Olentangy's bullying policies must be rejected, for "it has never been deemed an abridgement of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)).

## CONCLUSION

This Court should affirm the denial of preliminary injunctive relief.

Dated: January 28, 2025

GARY D. BUSECK
MARY L. BONAUTO
GLBTQ Legal Advocates
  & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
617-426-1350
gbuseck@glad.org
mbonauto@glad.org

Respectfully submitted,

s/ *Karen L. Loewy*

KAREN L. LOEWY
Lambda Legal Defense and Education
  Fund, Inc.
111 K Street N.E., 7th Floor
Washington, DC 20002
202-804-6245
kloewy@lambdalegal.org

KENNETH D. UPTON, JR.
Lambda Legal Defense and Education
  Fund, Inc.
65 E. Wacker Pl., Suite 2000
Chicago, IL 60601
312-663-4413
kupton@lambdalegal.org

*Counsel for Amici Curiae*

13

## CERTIFICATE OF COMPLAINCE

This brief complies with the Court's briefing letter because it is twelve and one half (12-1/2) pages long. This brief also complies with Fed. R. App. P. 32(a)(5)-(6) and 6 Cir. R. 32 because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: January 28, 2025                    Respectfully submitted,

                                           s/ *Karen L Loewy*
                                           Karen L. Loewy
                                           *Counsel for Amici Curiae*


## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2025, I electronically filed this *Amici Curiae* Brief with the Clerk of Court using the CM/ECF system, which will send notifications of such filings to all counsel of record.

Dated: January 28, 2025                    Respectfully submitted,

                                           s/ *Karen L Loewy*
                                           Karen L. Loewy
                                           *Counsel for Amici Curiae*

14