No. 23-3630

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PARENTS DEFENDING EDUCATION

*Plaintiff-Appellant*,

v.

OLENTANGY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
Southern District of Ohio, No. 2:2-cv-01595 (Marbley, J.)

## REPLY IN SUPPORT OF SUPPLEMENTAL EN BANC BRIEF OF
## PLAINTIFF-APPELLANT PARENTS DEFENDING EDUCATION

Emmett E. Robinson
ROBINSON LAW FIRM LLC
6600 Lorain Ave. #731
Cleveland, OH 44102
Telephone: (216) 505-6900
Facsimile: (216) 649-0508
erobinson@robinsonlegal.org

J. Michael Connolly
Cameron T. Norris
Thomas S. Vaseliou
Paul R. Draper
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for Plaintiff-Appellant*

February 5, 2025

# TABLE OF CONTENTS

Table of Authorities...................................................................................ii

Introduction...........................................................................................1

Argument...............................................................................................1

    I.     The school's cursory jurisdictional arguments fail. ...........................2

        A.    PDE likely has standing. ...................................................2

        B.    Nothing is moot..............................................................4

    II.    The bans on non-preferred pronouns violate the First Amendment. ...........5

        A.    Viewpoint discrimination ................................................5

        B.    Compelled speech...........................................................6

        C.    *Tinker* ........................................................................7

        D.    Overbreadth ...............................................................10

    III.   PDE is entitled to a preliminary injunction....................................12

Conclusion ..........................................................................................12

Certificate of Compliance .......................................................................13

Certificate of Service.............................................................................13

Addendum

# TABLE OF AUTHORITIES

## Cases

*303 Creative v. Elenis*,
   600 U.S. 570 (2023).................................................................11

*Alabama v. U.S. Sec'y of Educ.*,
   2024 WL 3981994 (11th Cir. Aug. 22)...........................................12

*Barr v. AAPC*,
   591 U.S. 610 (2020)...................................................................6

*Barr v. Lafon*,
   538 F.3d 554 (6th Cir. 2008)........................................................6

*Boone Cnty. GOP v. Wallace*,
   116 F.4th 586 (6th Cir. 2024).......................................................3

*Castorina v. Madison Cnty. Sch. Bd.*,
   246 F.3d 536 (6th Cir. 2001)........................................................6

*Dambrot v. CMU*,
   55 F.3d 1177 (6th Cir. 1995)......................................................11

*Fischer v. Thomas*,
   52 F.4th 303 (6th Cir. 2022).....................................................2, 4

*G&V Lounge v. MLCC*,
   23 F.3d 1071 (6th Cir. 1994)......................................................12

*Golden v. Columbus*,
   404 F.3d 950 (6th Cir. 2005)........................................................4

*Holloman v. Harland*,
   370 F.3d 1252 (11th Cir. 2004).....................................................6

*Iancu v. Brunetti*,
   588 U.S. 388 (2019).................................................................10

*Kareem v. Cuyahoga Cnty. Bd. of Elections*,
   95 F.4th 1019 (6th Cir. 2024).......................................................3

*Knox v. SEIU*,
   567 U.S. 298 (2012)...................................................................5

*Kuhlmeier v. Hazelwood S.D.*,
   795 F.2d 1368 (8th Cir. 1986).......................................................9

*L.M. v. Middleborough*,
   103 F.4th 854 (1st Cir. 2024)......................................................11

*L.W. v. Skrmetti*,
   83 F.4th 460 (6th Cir. 2023) .................................................................. 8

*Mahanoy A.S.D. v. B.L.*,
   594 U.S. 180 (2021) ............................................................................... 8

*Meriwether v. Hartop*,
   992 F.3d 492 (6th Cir. 2021) ......................................................... 7-8, 11

*Moody v. NetChoice*,
   603 U.S. 707 (2024) ............................................................................. 10

*Morse v. Frederick*,
   551 U.S. 393 (2007) ............................................................................... 9

*Ne. Fla. Chapter of AGCA v. Jacksonville*,
   508 U.S. 656 (1993) ........................................................................... 4-5

*Norris v. Cape Elizabeth S.D.*,
   969 F.3d 12 (1st Cir. 2020) ................................................................... 7

*Online Merchants Guild v. Cameron*,
   995 F.3d 540 (6th Cir. 2021) ................................................................. 3

*PDE v. Linn Mar*,
   83 F.4th 658 (8th Cir. 2023) ................................................................. 9

*Saxe v. State Coll. Area S.D.*,
   240 F.3d 200 (3d Cir. 2001) ............................................................. 9, 11

*Self-Ins. Inst. of Am. v. Snyder*,
   827 F.3d 549 (6th Cir. 2016) ................................................................. 9

*SFFA v. Harvard*,
   600 U.S. 181 (2023) ............................................................................... 2

*Sisters for Life v. Louisville-Jefferson Cnty.*,
   56 F.4th 400 (6th Cir. 2022) ............................................................... 12

*Speech First v. Fenves*,
   979 F.3d 319 (5th Cir. 2020) ................................................................. 3

*Speech First v. Schlissel*,
   939 F.3d 756 (6th Cir. 2019) ............................................................. 3, 5

*Sypniewski v. Warren Hills Regional BOE*,
   307 F.3d 243 (3d Cir. 2002) ............................................................... 11

*Tennessee v. Cardona*,
   2025 WL 63795 (E.D. Ky. Jan. 9) ........................................................ 1

*Tinker v. Des Moines Indep. Cmty. S.D.*,
  393 U.S. 503 (1969) ................................................................... 1, 6-9

*W.Va. BOE v. Barnette*,
  319 U.S. 624 (1943) ......................................................................... 6

*Zamecnik v. Indian Prairie S.D.*,
  636 F.3d 874 (7th Cir. 2011) .......................................................8, 10

## Statutes

O.R.C. §3313.473 .................................................................................. 1

O.R.C. §3313.5320 ............................................................................... 1

O.R.C. §3313.666 ............................................................................... 11

O.R.C. §3319.90 ...............................................................................1, 9

## Other Authorities

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Exec. Order §5 (Jan. 20, 2025), perma.cc/U3NM-XY2A ....................... 1

*Olentangy Schs., Bd. of Educ. 9.26.24*, YouTube, bit.ly/42yM07b ................................... 4-5

**INTRODUCTION**

Though Olentangy wants to do right by the law and its students, its pronoun policies do wrong by both. Olentangy invokes Title IX. OSD-Br. (Doc.204-1) 18. But the regulation that required preferred pronouns has been vacated, *Tennessee v. Cardona*, 2025 WL 63795 (E.D. Ky.), and the government now respects students' "freedom to express the binary nature of sex," E.O. §5 (Jan. 20, 2025), perma.cc/U3NM-XY2A. Olentangy invokes state law. OSD-Br.12-13. But Ohio is here *opposing* Olentangy, States-Br. (Doc.160), and state law rejects the notion that students' stated gender identity should be uncritically affirmed, *see* O.R.C. §3319.90 (bathrooms); §3313.5320 (sports); §3313.473 (parental notice, as of Apr. 2025). Olentangy invokes *Tinker*. But it refuses to make a case under *Tinker* or this circuit's precedent. And its pronoun diktats deprive all students of *Tinker*'s lesson: "The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth out of a multitude of tongues, rather than through any kind of authoritative selection." 393 U.S. 503, 512 (1969) (cleaned up).

This Court should reverse. Olentangy should be barred from punishing students for "purposefully referring to another student by using gendered language they know is contrary to the other student's identity." Emails, R.7-2, PageID#356.

**ARGUMENT**

The key question for this Court, Olentangy seems to agree, is whether public schools can ban students from using non-preferred pronouns. OSD-Br.23, 2-3. Because

PDE's members want to intentionally and repeatedly use biological pronouns and Olentangy still bans that speech, the school's jurisdictional arguments are puzzling. Its merits arguments would require radical changes to the law. And the equities follow the merits.

## I.    The school's cursory jurisdictional arguments fail.
### A.    PDE likely has standing.

Associational standing requires a member with standing, germaneness, and non-individualized relief. *SFFA v. Harvard*, 600 U.S. 181, 199 (2023). The last two are conceded and met. PI-Order, R.28, PageID#820 n.1. As for the first, PDE's members have standing if they "intend to engage" in speech the Constitution "arguably protects," their speech is "arguably proscribed" by the policies, and there's a "credible threat of enforcement." *Fischer v. Thomas*, 52 F.4th 303, 307 (6th Cir. 2022). The district court found this standard satisfied. R.28, PageID#819-25; *accord* MTD-Op., R.35. Olentangy doesn't call those factual findings clearly erroneous, and it didn't even raise standing to the panel. Its perfunctory paragraph now makes no developed argument. *See* OSD-Br.7-8.

PDE's members meet the first two requirements for preenforcement standing. As the district court found based on their undisputed declarations, these students "wish to engage" in "misgendering." R.28, PageID#821. That speech is arguably protected. Panel-Maj.13; Panel-Dis.26-28, 36-51. And Olentangy's policies arguably ban it. Though Olentangy suggests misgendering must "ris[e] to the level of bullying or harassment," OSD-Br.8, that point is semantic. As the district court found based on the emails, Olentangy deems misgendering *to be* harassment "in violation of the Policies." R.28, PageID#821. It also deems misgendering "discrimination" under "the code of

conduct." Emails, R.7-2, PageID#356. And on their face, the policies arguably ban that speech. The discriminatory-language policy bans "derogatory" speech based on "transgender identity," with no required showing of targeting, bullying, or harassment. PDE-Br. (Doc.134) 4. And the harassment policies ban "severe … *or* pervasive" speech that merely "interfer[es]" with a student's education. PDE-Br.4-7. So while PDE's members don't think their speech *should be* labeled discrimination or harassment, *cf.* OSD-Br.8, their speech is chilled because the school and the policies say otherwise.

PDE's members also face a credible threat of enforcement. Though the school's *lawyers* say no student has been punished for "intentiona[l] misgender[ing]," OSD-Br.8, Olentangy submitted no "evidence" of nonenforcement. *Speech First v. Fenves*, 979 F.3d 319, 335-37 & n.14 (5th Cir. 2020). And "past enforcement is not necessary." *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1025-27 (6th Cir. 2024). No "discipline against students" occurs, after all, when "speech has already been chilled." *Speech First v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019). And here, the district court found that Olentangy's policies are chilling students from using non-preferred pronouns—the "'most important'" factor for a credible threat. R.28, PageID#821. The school's emails formally opine that this speech violates the policies. PageID#821; *see Boone Cnty. GOP v. Wallace*, 116 F.4th 586, 595 (6th Cir. 2024). Olentangy both "refus[es] to disavow" that position, *id.* at 596; PageID#821, and "vigorously" defends its legality, *Online Merchants Guild v. Cameron*, 995 F.3d 540, 551 (6th Cir. 2021). And the threat is exacerbated

because anyone, including "students" and "third parties," can easily report violations and initiate complaints. R.7-1, PageID#126, 217-22, 200-01; *see Fischer*, 52 F.4th at 308.

### B.    Nothing is moot.

Though Olentangy says PDE's challenge to the original policies is "moot," the school admits that the parties' dispute about pronouns remains "left" for this Court. OSD-Br.23. Immaterial amendments to challenged policies moot nothing. *Ne. Fla. Chapter of AGCA v. Jacksonville*, 508 U.S. 656, 662 (1993). And Olentangy never denies that its amendments are immaterial. PDE-Br.9-10. As the district court found and Olentangy concedes, each of the original policies bans non-preferred pronouns. R.28, PageID#821; Panel-Maj.18. Olentangy made no changes to the Board's operative definitions of "harassment." *Compare* R.7-1, PageID#121, *with* Add.61; *see Olentangy Schs., Bd. of Educ. 9.26.24*, at 1:44:58-45:03, YouTube, bit.ly/42yM07b (admitting the harassment definition was "not changed"). And it made no changes at all to the code's ban on "discriminatory language." *Compare* R.7-1, PageID#150, *with* Add.15.[1]

---

[1] Olentangy says its changes to the Board policies "effectively changed" the code of conduct, since the code says to consult "'the current'" version of any Board policies "'referenced herein.'" OSD-Br.5-6. Olentangy is not claiming that the code's ban on "discriminatory language" has been changed. That argument would be forfeited: The school never raised it when opposing rehearing and discusses it now only in two background sentences. *Golden v. Columbus*, 404 F.3d 950, 962 n.10 (6th Cir. 2005). And it would be wrong. The quoted language means only that, when the code incorporates Board policies by reference, it incorporates the most recent version. Add.7. But the discriminatory-language policy incorporates no Board policy (explicitly or implicitly), is a standalone offense, and remains intact today. Add.15; *see* R.7-1, PageID#136 (code violations independently punishable).

4

Because all agree that PDE's tailored request for a preliminary injunction is live, this Court shouldn't decide whether PDE's challenges to the original policies are moot. It's unnecessary, since the current policies still illegally ban non-preferred pronouns. *Jacksonville*, 508 U.S. at 662. And PDE can challenge the original policies under the voluntary-cessation exception. Olentangy hasn't come close to carrying its "'heavy'" burden of proving mootness. *Schlissel*, 939 F.3d at 767. Though it says the new policies were approved by the Board, it never says (let alone gives sworn testimony) that "it does not intend to reenact" the originals. *Id.* at 769. It never concedes that the originals were overbroad, and it defended them through several rounds of litigation. *Knox v. SEIU*, 567 U.S. 298, 307 (2012). Its amendments were also "designed to insulate [the panel's] decision." *Id.* The Board, acting on advice of "legal counsel" in response to this case, invoked its emergency procedures to bypass public comment and rush these changes through before its opposition to rehearing was due. *See Bd. Mtg.* at 1:47:37-49:15.

## II.   The bans on non-preferred pronouns violate the First Amendment.
### A.   Viewpoint discrimination

Olentangy doesn't explain why its pronoun policies are not viewpoint discriminatory. They are—on their face, by design, and under *Meriwether*. PDE-Br.16-17. Olentangy doesn't ask this Court to overrule *Meriwether*, or claim that viewpoint discrimination means something different for K-12 schools. Under a long line of circuit precedent *about K-12 schools*, viewpoint discrimination is fatal. PDE-Br.16. Per those cases, "schools' regulation of student speech must be consistent with both the *Tinker* standard and *Rosenberger*'s prohibition on viewpoint discrimination." *Barr v. Lafon*, 538 F.3d 554,

571 (6th Cir. 2008) (discussing *Castorina v. Madison Cnty. Sch. Bd.*, 246 F.3d 536, 543 (6th Cir. 2001)). Nothing about that rule is limited to "clothing"; contra Olentangy, the Constitution doesn't protect students' t-shirts more than their actual words. OSD-Br.15-16.

Though Olentangy now says this Court's precedents misread *Tinker*, OSD-Br.15-16, that argument fails. Higher courts don't overrule precedent without a clear request from a party and briefing on the stare-decisis factors. *Barr v. AAPC*, 591 U.S. 610, 621 n.5 (2020) (lead op.). Olentangy offers neither. This Court's precedents have protected K-12 students for a quarter-century. Though some circuits think *Tinker* allows viewpoint discrimination, OSD-Br.15, others agree that viewpoint discrimination is separately barred, *e.g.*, *Holloman v. Harland*, 370 F.3d 1252, 1279-80 (11th Cir. 2004). The latter better harmonizes *Tinker* with more recent precedents, which draw ever-harder lines against viewpoint discrimination. *See id.* at 1279-82; *Barr*, 538 F.3d at 570-71. *Tinker* itself requires speech restrictions to be "necessary" to prevent disruption, 393 U.S. at 511, but viewpoint discrimination is never necessary, *Holloman*, 370 F.3d at 1279-80.

### B.    Compelled speech

Even if *Tinker* let schools discriminate by viewpoint, not even Olentangy claims that *Tinker* lets schools compel speech. It does not. PDE-Br.18-19; Panel-Maj.12; Panel-Dis.36. West Virginia couldn't force students to say the pledge by claiming that their refusal disrupted other students. *See W.Va. BOE v. Barnette*, 319 U.S. 624, 640-42, 635-36 & n.16 (1943). And while *Meriwether* distinguishes "'the in-class curricular speech of teachers'" in K-12 schools, this case doesn't involve teachers or their curricular speech.

992 F.3d 492, 504 n.1 (6th Cir. 2021). Students are not employees, Panel-Dis.38; HLLI-

Br. (Doc.143) 5-9, and Olentangy bans misgendering everywhere, Panel-Maj.12 n.6.

Olentangy's pronoun policies compel speech. Though the school repeats that

students can use no pronouns, OSD-Br.17, it responds to none of PDE's arguments

against this faux compromise, PDE-Br.19. And besides, Olentangy offered only to "dis-

cuss" this option with students who have "religious" objections. Emails, R.7-2,

PageID#355. Students want to use biological pronouns for non-religious reasons too.

*E.g.*, D-Decl., R.7-6, PageID#387; C-Decl., R.7-5, PageID#378.

## C.    *Tinker*

Despite spending most of its brief arguing that *Tinker* is a defense to everything,

Olentangy spends no time justifying its failure of proof under *Tinker*. Even if Olentangy

were right that "the *burden is on PDE* to show that OLSD failed to meet its burden,"

OSD-Br.23, PDE did that: It proved that non-preferred pronouns are protected speech,

and it argued that Olentangy failed to submit any "evidence" that its bans are "neces-

sary" to prevent substantial disruption, *Tinker*, 393 U.S. at 511, 513; *see* PDE-Br.13-15.

Without evidence, courts cannot assess whether Olentangy's "forecast" of substantial

disruption was "reasonable"—or even whether it *made* a forecast. OSD-Br.23. And the

question is what *the school* forecast *at the time* it banned non-preferred pronouns. *Norris*

*v. Cape Elizabeth S.D.*, 969 F.3d 12, 25-28 (1st Cir. 2020). That question can't be an-

swered with post-hoc research by the district court, Panel-Dis.34, 51; or by misreading

PDE's declarations, Panel-Dis.33.

Even if Olentangy had submitted the district court's research about the harms of non-preferred pronouns, that evidence wouldn't satisfy *Tinker*. (And this Court should say so, since future schools won't repeat Olentangy's "election not to submit evidence on substantial disruption." OSD-Br.21.) PDE's members want to respectfully and calmly use biological pronouns. *E.g.*, A-Decl., R.7-3, PageID#363-64. Unlike bullying a boy by falsely calling him a girl, OSD-Br.1-2, using pronouns that embrace biology over gender identity expresses a viewpoint on a matter of public concern, *Meriwether*, 992 F.3d at 506; *see Mahanoy A.S.D. v. B.L.*, 594 U.S. 180, 205 (2021) (Alito, J., concurring) (speech on matters of public concern is "almost always beyond the regulatory authority of a public school"). Olentangy can't ban that viewpoint because some students react to it unreasonably. *Zamecnik v. Indian Prairie S.D.*, 636 F.3d 874, 879 (7th Cir. 2011). Substantial disruption is not a reasonable response to hearing an "unpopular viewpoint." *Tinker*, 393 U.S. at 509. Otherwise a school could ban students from *using* preferred pronouns too. *Meriwether*, 992 F.3d at 506.

The district court's reasoning would have the federal judiciary take a side in the ongoing "debates over this issue." *L.W. v. Skrmetti*, 83 F.4th 460, 471 (6th Cir. 2023); *see* Panel-Dis.43-44. Non-preferred pronouns are not "'dehumanizing,'" for example, unless gender identity both exists and is essential to what makes someone human. OSD-Br.13. Olentangy can promote that view through its own speech, or support students who are hurt by non-preferred pronouns; but it has no evidence that banning dissent is

"necessary" to prevent disruption. *Tinker*, 393 U.S. at 511. It's not even sufficient. According to Olentangy, the school will descend into "chaos" if students must hear pronouns that match their biology. OSD-Br.22. But the school will be fine if students must use the facilities that match their biology. *See* O.R.C. §3319.90. And the school will be fine if students must hear viewpoints like "transgender females are really males." OSD-Br.14. Such inconsistent positions fail under *Tinker*. 393 U.S. at 510.

Other than "substantial disruption" under *Tinker*, OSD-Br.4, Olentangy has no defense. It cites cases about *Tinker*'s "rights of others" prong. OSD-Br.11. But that prong is likely limited to "'tortious speech.'" Panel-Dis.51 n.10; *accord Kuhlmeier v. Hazelwood S.D.*, 795 F.2d 1368, 1376 (8th Cir. 1986), *rev'd on other grounds*, 484 U.S. 260 (1988). Whatever it means, it "certainly" doesn't let schools ban speech because it's "offensive to some listener." *Saxe v. State Coll. Area S.D.*, 240 F.3d 200, 217 (3d Cir. 2001); *accord PDE v. Linn Mar*, 83 F.4th 658, 667 (8th Cir. 2023); FIRE-Br. (Doc.60) 9-14. Students have no right to be free from speech they deem "disparaging," "derogatory," "deeply offensive," or even "directed" at them. *Saxe*, 240 F.3d at 206, 217.[2]

---

[2] Some of Olentangy's amici compare non-preferred pronouns to students speaking lewdly about sex or promoting drugs. Karlan-Br. (Doc.214). PDE's members are not speaking lewdly or promoting drugs. *See Morse v. Frederick*, 551 U.S. 393, 422 (2007) (Alito, J., concurring) (distinguishing that speech from "commenting on any political or social issue"). And amici cannot assert new defenses that a party fails to argue. *Self-Ins. Inst. of Am. v. Snyder*, 827 F.3d 549, 560 (6th Cir. 2016).

### D.    Overbreadth

Olentangy agrees with PDE on the key question "left" for this Court to decide: whether the school can constitutionally enforce the ban on non-preferred pronouns revealed in its emails. PDE-Br.23-24, 9; OSD-Br.10, 23. If the answer is no, then Olentangy agrees that the policies can be held facially unconstitutional to that extent. PDE-Br.2, 10, 24; OSD-Br.3. And Olentangy seems to prefer a preliminary injunction that bars it from punishing students for using non-preferred pronouns, rather than one that bars it from enforcing the challenged policies at all. PDE-Br.24, 10; OSD-Br.25. This Court could enter that narrower injunction without reaching overbreadth, except to hold that the district court's reasoning on pronouns "g[o]t wrong at least one significant input into the facial analysis." *Moody v. NetChoice*, 603 U.S. 707, 744 (2024).

But this Court could enjoin the policies in full. Olentangy responds to none of the cross-cutting defects that make them overbroad. It ignores that, by requiring the speech to be negative toward a protected class, every application discriminates by viewpoint. PDE-Br.22; *see Iancu v. Brunetti*, 588 U.S. 388, 395, 398-99 (2019). It ignores that—given the school's many other policies that ban conduct, unprotected speech, and disruption—the policies' *main* function is covering protected speech. PDE-Br.23. And it ignores that none of the policies have guardrails that ensure narrow tailoring, like requiring a disruption that's substantial or a reaction that's objectively reasonable. *Zamecnik*, 636 F.3d at 879; *see* PDE-Br.22. That K-12 schools have more authority to regulate speech under *Tinker* doesn't justify policies that make little attempt to adhere to

*Tinker. Cf.* OSD-Br.18 (citing *Sypniewski v. Warren Hills*, 307 F.3d 243 (3d Cir. 2002)).

Olentangy never asks for a limiting construction. Though its lawyers claim the school wouldn't apply these policies to "student speech disapproving of gender identity," OSD-Br.3, those evidence-free "representations of … counsel" are not rooted in the policies' "text," *Dambrot v. CMU*, 55 F.3d 1177, 1183 (6th Cir. 1995). The policies *do* cover that speech, since Olentangy admits they're broad enough to cover the mere intentional use of non-preferred pronouns. Nearly identical policies have been used to punish not only pronouns, *e.g.*, *Meriwether*, 992 F.3d at 507-11, but also the silent expression of controversial views like "There Are Only Two Genders," *L.M. v. Middleborough*, 103 F.4th 854, 860 (1st Cir. 2024). Olentangy's discriminatory-language policy is particularly egregious: Its "applications to otherwise protected expression" are "'practically limitless.'" ACLU-Br. (Doc.156) 6-7, 9; *see* PDE-Br.20-22.

The school's analogies to "state" and "federal" definitions of harassment only prove the problem. OSD-Br.14, 18. Even if compliance with statutes were a defense under the Constitution, *but see 303 Creative v. Elenis*, 600 U.S. 570, 592 (2023), these statutes don't help because Olentangy's policies exceed them, *see Saxe*, 240 F.3d at 217. Though Ohio has a viewpoint-neutral definition of harassment, O.R.C. §3313.666, Olentangy's Board policies and its discriminatory-language policy do *not* use that definition, *see* PDE-Br.5-7, 20-22. And all its policies are broader, add viewpoint discrimination, and—apparently unlike Ohio's statute, *see* States-Br.4-10—cover non-preferred pronouns. *E.g.*, Add.8, 23. As for federal law, Olentangy has a *separate* policy that bans

the sex-based conduct covered by Title IX, adopting verbatim the Supreme Court's definition of harassment from *Davis*. PDE-Br.23; *see* Add.73-87 (Policy 2266). Contra Olentangy, the Supreme Court crafted that definition with the First Amendment in mind, ensuring it covered only unprotected harassing conduct. *Alabama v. U.S. Sec'y of Educ.*, 2024 WL 3981994, at *5-6 (11th Cir.). Policies that blow past those limits impose viewpoint-based bans on too much protected speech. *Id.* at *6.

## III.  PDE is entitled to a preliminary injunction.

The other factors follow the merits in First Amendment cases, PDE-Br.23, and Olentangy offers no reason why this case is the exception. It doesn't defend the panel's invocation of delay, forfeiting the issue a fourth time. PDE-Br.25. Though it says no student will be imminently punished, OSD-Br.24, the irreparable injury is chilled speech—an injury that's "present" and "ongoing," *G&V Lounge v. MLCC*, 23 F.3d 1071, 1076-78 (6th Cir. 1994). Olentangy's argument would mean that courts can never enter preliminary injunctions in preenforcement cases. *But see*, *e.g.*, *Sisters for Life v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 409 (6th Cir. 2022). Olentangy further concedes that, if PDE is likely to prevail, then the other factors "'merge'" and favor an injunction. OSD-Br.24. It never explains why an injunction would be a "free pass" for bullying and harassment, OSD-Br.22, or stop Olentangy from punishing anything other than protected speech, PDE-Br.23-24; OSBA-Br. (Doc.207) 11-12. The ultimate *parens patriae* of Ohio's children—the State of Ohio—is here supporting that relief. States-Br.11.

## CONCLUSION

This Court should reverse.

Respectfully submitted,

Dated: February 5, 2025                    */s/ Cameron T. Norris*
                                           J. Michael Connolly
Emmett E. Robinson                         Cameron T. Norris
ROBINSON LAW FIRM LLC                      Thomas S. Vaseliou
6600 Lorain Ave. #731                      Paul R. Draper
Cleveland, OH 44102                        CONSOVOY MCCARTHY PLLC
Telephone: (216) 505-6900                  1600 Wilson Blvd., Ste. 700
Facsimile: (216) 649-0508                  Arlington, VA 22209
erobinson@robinsonlegal.org                (703) 243-9423
                                           cam@consovoymccarthy.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's briefing letter because its body does not exceed 12 pages. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: February 5, 2025                    */s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

I e-filed this brief with the Court, which will email everyone requiring notice.

Dated: February 5, 2025                    */s/ Cameron T. Norris*

**ADDENDUM**

2024-2025 High School Code of Conduct.................................................................. Add.1

Amended Policy 5517....................................................................................... Add.61

Amended Policy 5136....................................................................................... Add.71

Policy 2266 ...................................................................................................... Add.73



# HIGH SCHOOL
# STUDENT HANDBOOK
## 2024-2025



Presented to the Board of Education on April 11, 2024.

# OLENTANGY SCHOOLS

Administrative Offices

7840 Graphics Way

Lewis Center, OH 43035

740-657-4050

http://www.olentangy.k12.oh.us

## BOARD OF EDUCATION

| | |
|---|---|
| Mr. Brandon Lester | Board President |
| Dr. Kevin Daberkow | Board Vice President |
| Mr. Kevin O'Brien | Board Member |
| Dr. Elizabeth Wallick | Board Member |
| Ms. Lizett Schreiber | Board Member |

## HIGH SCHOOLS

**Olentangy Berlin High School**
3140 Berlin Station Road
Delaware, OH 43015
740-657-5900

**Olentangy High School**
675 Lewis Center Road
Lewis Center, OH 43035
740-657-4100

**Olentangy Liberty High School**
3584 Home Road
Powell, OH 43065
740-657-4200

**Olentangy Orange High School**
2840 East Orange Road
Lewis Center, OH 43035
740-657-5100

## PROGRAMS

**OASIS**
814 Shanahan Road
Lewis Center, OH 43035
740-657-4331

**Olentangy Academy**
774 Lewis Center Road
Lewis Center, OH 43035
740-657-5800

**Academy for Community Transition (ACT)**

**STEM Academy (science, technology, engineering, and math)**

Add.2

# Table of Contents

TITLE PAGE ......................................................................................................................... 1

INTRODUCTION ................................................................................................................... 7

    FOREWORD ..................................................................................................................... 7

    MISSION STATEMENT ...................................................................................................... 7

    VISION STATEMENT ......................................................................................................... 7

    DISTRICT INFORMATION SOURCES ................................................................................... 7

    EQUAL EDUCATION OPPORTUNITY/PROHIBITION AGAINST DISCRIMINATION ................... 8

    ONLINE ACCESS TO STUDENT INFORMATION ................................................................... 8

    SCHOOL CLOSINGS AND DELAYS ...................................................................................... 9

ATTENDANCE ...................................................................................................................... 9

    HIGH SCHOOL HOURS ..................................................................................................... 9

    PARENTAL CONTACT REGARDNG STUDENT ABSENCES ...................................................... 9

    ABSENCES, TARDINESS, AND TRUANCY ............................................................................ 9

        EXCESSIVE ABSENCES ............................................................................................... 10

        HABITUAL TRUANCY ................................................................................................ 10

    EXCUSED ABSENCES ...................................................................................................... 10

    UNEXCUSED ABSENCES ................................................................................................. 11

    ILLNESS WHILE AT SCHOOL ........................................................................................... 11

    EARLY DISMISSAL OF STUDENTS .................................................................................... 12

    EXTRA AND CO-CURRICULAR DAY PARTICIPATION .......................................................... 12

    COLLEGE VISITATION PROCEDURES ............................................................................... 12

    SPECIAL ABSENCES ....................................................................................................... 12

    WITHDRAWAL FROM SCHOOL ...................................................................................... 13

CODE OF CONDUCT ........................................................................................................... 14

    IMPORTANT NOTICES ................................................................................................... 14

    CODE OF CONDUCT VIOLATIONS ................................................................................... 15

    ALCOHOL, TOBACCO, AND DRUG PREVENTION GUIDELINES ........................................... 18

        STATEMENT OF POLICY REGARDING STUDENTS ........................................................ 18

        STUDENT RESPONSIBILITY ...................................................................................... 19

        PARENT RESPONSIBILITIES ..................................................................................... 19

        STAFF RESPONSIBILITIES ........................................................................................ 19

**Add.3**

SCHOOL OFFICIALS' RESPONSIBILITIES ......................................................................... 20

OFFENSES AND DISCIPLINARY ACTION ...................................................................... 21

HAZING, HARASSMENT, INTIMIDATION, BULLYING, AND SEXUAL HARASSMENT ............................. 22

DRESS CODE ........................................................................................................ 24

CAFETERIA RULES ................................................................................................. 25

DISCIPLINE OPTIONS ............................................................................................. 26

DETENTION ..................................................................................................... 26

LUNCHTIME DETENTION ..................................................................................... 26

SATURDAY OR WEDNESDAY SCHOOL ...................................................................... 26

IN-SCHOOL DETENTION (ISD) .............................................................................. 26

SUSPENSION ALTERNATIVE PROGRAM (SAP) ........................................................... 26

OUT-OF-SCHOOL SUSPENSION (OSS) ..................................................................... 27

EMERGENCY REMOVAL ...................................................................................... 27

PERMANENT EXCLUSION .................................................................................... 28

EXPULSION ..................................................................................................... 29

DUE PROCESS AND RIGHT OF APPEAL ....................................................................... 29

DANCES ............................................................................................................. 29

DRIVING REGULATIONS ......................................................................................... 30

HALL PASSES ...................................................................................................... 31

QUESTIONING OF STUDENTS BY LAW ENFORCEMENT ..................................................... 31

SCHOOL'S RIGHT TO SEARCH .................................................................................. 31

TRANSPORTATION .................................................................................................... 32

BUS RULES ......................................................................................................... 32

BUS PASSES ........................................................................................................ 35

CURRICULUM, INSTRUCTION, AND ASSESSMENT ............................................................... 36

ALTERNATE EDUCATION PROGRAMS .......................................................................... 36

CLASS SCHEDULES ................................................................................................ 36

SCHOOL COUNSELOR SERVICES ............................................................................... 37

COLLEGE CREDIT PLUS (CCP) .................................................................................. 37

CREDIT FLEXIBILITY .............................................................................................. 37

EQUITY AND INCLUSION PROGRAM ........................................................................... 38

FIELD TRIPS ........................................................................................................ 38

GIFTED SERVICES ................................................................................................. 38

## Add.4

5

LIBRARY/MEDIA CENTER................................................................................................38

PE WAIVER................................................................................................................38

WORK PERMITS..........................................................................................................39

TECHNOLOGY USAGE POLICY.........................................................................................39

GRADING.......................................................................................................................45

CLASS RANK...............................................................................................................45

GRADE CLASSIFICATION...............................................................................................45

GRADING INFORMATION..............................................................................................45

GRADING SCALE..........................................................................................................45

HIGH SCHOOL CREDIT BELOW THE NINTH GRADE..............................................................46

NATIONAL HONOR SOCIETY..........................................................................................47

REPORT CARDS...........................................................................................................47

GRADUATION.................................................................................................................47

DIPLOMA DEFERRAL.....................................................................................................47

EARLY GRADUATION.....................................................................................................47

GRADUATION REQUIREMENTS.......................................................................................48

GRADUATE ACADEMIC RECOGNITION.............................................................................48

POLICY ON ACADEMIC ACCELERATION, EARLY ENTRANCE TO KINDERGARTEN, AND EARLY HIGH SCHOOL GRADUATION....................................................................................................48

TRANSCRIPTS.............................................................................................................49

HEALTH AND SAFETY.......................................................................................................49

HEALTH REGULATIONS.................................................................................................49

ANIMALS IN SCHOOLS AND ON DISTRICT PROPERTY..........................................................50

CONTROL OF CASUAL-CONTACT COMMUNICABLE DISEASES................................................50

DISTRICT SAFETY PLAN.................................................................................................51

HEALTH SCREENINGS...................................................................................................51

HOMEBOUND INSTRUCTION..........................................................................................51

ILLNESS/INJURY..........................................................................................................51

MEDICAL CONCERNS...................................................................................................51

NON-SMOKING / VAPING POLICY...................................................................................52

STAY SAFE. SPEAK UP!.................................................................................................52

SUICIDE PREVENTION AND MENTAL HEALTH RESOURCES...................................................52

GENERAL INFORMATION.................................................................................................53

# Add.5

COPYRIGHT INFRINGEMENT ................................................................................................................. 53

FEES ............................................................................................................................................................. 53

FEE COLLECTIONS AND FEE WAIVERS ................................................................................................... 54

FOOD SERVICE .......................................................................................................................................... 54

FUNDRAISING ACTIVITIES ....................................................................................................................... 55

INTRADISTRICT TRANSFERS .................................................................................................................... 55

LOCKER ASSIGNMENTS ............................................................................................................................ 55

LOST AND FOUND ..................................................................................................................................... 55

POSTERS / COMMUNITY ANNOUNCEMENTS ....................................................................................... 55

PROCEDURES TO RESOLVE PARENT-TEACHER DISAGREEMENTS ...................................................... 56

    Step 1 – Direct Conversation .............................................................................................................. 56

    Step 2 – Fact and Possible Resolution ............................................................................................... 56

    Step 3 – Formal Process ...................................................................................................................... 56

RELEASE OF STUDENT PHOTOS AND WORK ONLINE .......................................................................... 56

RELEASE OF STUDENT PHOTOS AND MEDIA INTERVIEWS ................................................................. 57

RELEASE OF STUDENT RECORDS ............................................................................................................ 57

RIGHTS REGARDING SURVEYS ................................................................................................................ 58

UNAUTHORIZED USE OF THE BUILDING .............................................................................................. 59

VALUABLE PERSONAL PROPERTY .......................................................................................................... 59

CO- AND EXTRA-CURRICULAR ACTIVITIES .............................................................................................. 60

EXTRA-CURRICULAR ACTIVITIES ............................................................................................................. 60

ATHLETIC ELIGIBILITY .............................................................................................................................. 60

PAY TO PARTICIPATE ............................................................................................................................... 60

SCHOOL CLUBS AND ORGANIZATIONS ................................................................................................. 60

**Add.6**

# INTRODUCTION

## FOREWORD

The Student Handbook was developed to provide specific information about certain policies and procedures relevant to being a student in Olentangy. Please take time to become familiar with the important information contained in this handbook and keep the handbook available for reference. Please note that the majority of information in our handbooks is standardized and applies to all students K-12. If you have any questions that are not addressed in this handbook, you are encouraged to talk to your teachers or the building principal. This handbook replaces all prior handbooks and other written material on the same subjects. If any of the policies or administrative guidelines referenced herein are revised, the language in the most current policy or administrative guideline prevails. Current board policies and administrative guidelines are available on the district's website.

## MISSION STATEMENT

Our mission is to facilitate maximum learning for every student

## VISION STATEMENT

To be the recognized leader for high performance and efficiency in education

## DISTRICT INFORMATION SOURCES

The Olentangy Local School District offers a variety of ways to keep up with important news and information from our district:

**Website** – The district's website offers a wealth of information about Olentangy, including building information, district policies, school closings and delays, kindergarten registration, top news, the district strategic plan, and curriculum maps. Regularly visit the website.

**Email Notification System** – Parents/guardians will receive news, announcements, and updates via email from the district and the schools their children attend. Parents / guardians of Olentangy Schools students are automatically registered for email notifications based on their PowerSchool account information. To learn more, visit the Email Notification System webpage.

**Calling System** – Parent/guardian calling, email and text message contact information is based on their PowerSchool account. For instructions on how to update your PowerSchool account information, please view the Back-to-School Forms and PowerSchool Update Instructions.

**Social Media** – Follow the district on the following social media channels:  Facebook, Twitter, Instagram, and, Linkedin.

**Mobile App** – The district's free mobile app makes it easy to receive customizable school news, school building and district calendars, push notifications, texts messages, phone calls and more – all sent directly to your smartphone and mobile devices. The Olentangy Schools app is available for download for iPhone and Android users in the app store (iTunes, Google Play).

**Add.7**

## EQUAL EDUCATION OPPORTUNITY/PROHIBITION AGAINST DISCRIMINATION

This district provides an equal educational opportunity for all students. The Olentangy Local School District is committed to having an environment free from all discrimination, including harassment, intimidation, or bullying on the basis of race, color, national origin, sex (including sexual orientation and transgender identity), disability, age, religion, ancestry, or genetic information. The district prohibits harassment, intimidation, or bullying in the school environment, including all academic, extracurricular, and school-sponsored activities. A student who violates this prohibition will be subject to the potential penalties set forth in the Code of Conduct Discipline section of this handbook.

 A staff member, any student or student's parent or legal custodian who believes that a student has been subjected to harassment, intimidation, or bullying on the basis of race, color or national origin, sex (including sexual orientation and transgender identity), disability, age, religion, ancestry, or genetic information may seek resolution of their complaint through the district's complaint procedures.

The district employees responsible for receiving and/or investigating reports of harassment are:

Anna Damceski, Assistant Director, Human Resources, email: anna_damceski@olsd.us, 740-657-4050

Peter Stern, Assistant Director, Equity and Inclusion, email: peter_stern@olsd.us, 740-657-4050

For more information about the district's prohibition against bullying, harassment, and discrimination, please see Board Policies 2266, 5517, and 5517.01.

Furthermore, Olentangy Local School District complies with federal laws that prohibit discrimination in programs and activities receiving federal assistance. Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color or national origin. The Americans with Disabilities Act (A.D.A.) and Section 504 of the Rehabilitation Act of 1973 prohibits discrimination on the basis of handicap. Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex. The Age Discrimination Act of 1975 prohibits discrimination on the basis of age. Olentangy Local Schools also complies with the Family Education Rights and Privacy Act of 1994 and grants parents/guardians the right to examine children's official school records. Inquiries regarding unlawful discrimination may be directed to the building principal or the district compliance officer.

## ONLINE ACCESS TO STUDENT INFORMATION

Students and parents are able to access information via a web-based system:

Students use their myOLSD account to access curriculum resources, report cards, and additional individual student information. Students can access myOLSD from the Students dropdown menu on the district website.

Parents can access student lunch accounts and transportation information via their PowerSchool account. In addition, parents can access student courses, class materials, online assignments, and course calendar information via their Schoology account. Parents can access Schoology and PowerSchool from the Parents dropdown menu on the district website.

The district website can be found at https://www.olentangy.k12.oh.us.

**Add.8**

## SCHOOL CLOSINGS AND DELAYS

In the event of inclement weather, school delays and closings will be posted on the district website. Delay and closing information will also be reported using an automated phone system, text message, social media, the email notification system, local television stations (Channels 4, 6, 10 and 28), radio stations (FM Channels 92.3, 94.3, 94.7, 97.9, 99.7, 103.9, 103.5/104.3, 104.9, 105.7 and 107.9 and AM Channels 610, 920, 1490 and 1550), and the district's mobile app. There may be times when it is necessary to dismiss school during the day because of an emergency. In such instances, parents will be contacted using the district's automated phone system. Parents are urged to make arrangements with a neighbor or friend so that their child will have a place to go in case of an emergency if a parent/adult is not home.

# ATTENDANCE

## HIGH SCHOOL HOURS

The high school is in session from 7:20 a.m. until 2:35 p.m. Students arriving before 7:10 a.m. are to wait in either the commons or main lobby areas. No student should be in any other area of the building without permission prior to 7:10 a.m. Students not involved in extra-curricular activities or not supervised by a school staff member must leave the building by 3:00 p.m.

## PARENTAL CONTACT REGARDNG STUDENT ABSENCES

If a student is absent from school, a parent or guardian must notify the office to inform the school of their student's absence. Without this notification, Ohio law requires that, within 120 minutes after the beginning of each school day, the school shall make at least one attempt to contact a student's parent, guardian, or other person having care of the student. Contact shall be made through one of the following methods:

- A telephone call placed in person;
- An automated telephone call;
- A notification sent through the school's automated student information system;
- A text-based communication;
- A notification sent to the electronic mail address of the parent, guardian, or other person's wireless communication device;
- A visit, in person, to the student's residence of record.

## ABSENCES, TARDINESS, AND TRUANCY
**ABSENCES AND TARDIES**

The following definitions determine how student absences from school are recorded. See Board Policy 5200 for additional rules regarding student absences.

**Tardy** – Students who arrive within 90 minutes of the school starting time will be considered tardy.

**Half-Day Absence** – Students who are in school for more than 90 minutes, but less than 3 hours and 20 minutes will be considered a half-day (1/2 day) absent.

**Full-Day Absence** – Students who are in school for less than 3 hours and 20 minutes will be considered a full-day absent.

**Early Departure** – Students who leave within 90 minutes of the end of the day will be considered a p.m. tardy.

After school begins, students are required to report to the attendance office immediately upon arrival to obtain an Admit Slip.

Each student will be permitted one tardy per quarter.

On the second, third and fourth unexcused tardies in a quarter, a detention may be issued, and a parent conference may be requested.

On the fifth and subsequent unexcused tardies in a quarter, a Wednesday or Saturday School, or a similar consequence, may be issued and a parent conference may be requested.

**Special note regarding students 18 years of age and older:** If, during the school year, the student accumulates 21 or more unexcused absences, the school may proceed with a recommendation to withdraw the student from school for non-attendance.

## EXCESSIVE ABSENCES
Per Ohio law, the school will notify, in writing, a student's parent/guardian whenever a student is absent from school with combined nonmedical excused absences and unexcused absences in excess of

- thirty-eight (38) or more hours in one (1) school month or
- sixty-five (65) or more hours in one (1) school year.

## HABITUAL TRUANCY
Students shall arrive at school and be in the classroom for each of their assigned classes at the properly scheduled time. Per Ohio law, a student will be considered habitually truant if the student is absent without a legitimate excuse

- for thirty (30) or more consecutive hours, or
- for forty-two (42) or more hours in one (1) school month, or
- for seventy-two (72) or more hours in one (1) school year.

When a student is habitually truant, the district will convene an Absence Intervention Team, to which the student's parent/guardian will be invited. The team will develop an Absence Intervention Plan to improve the students' attendance. If the student fails to make progress on the plan the district will report the student to juvenile court (Ohio Revised Code §3321.19).

## EXCUSED ABSENCES
The following are typical conditions that may excuse a student from school attendance:

- Personal illness or injury (a medical verification note may be required by the school principal);
- Family illness - an emergency situation requiring the student to be absent from school;
- Quarantine of the home by local health officials;
- Death of a relative (limited to three days unless reasonable cause can be shown for a longer absence);
- Observance of a religious holiday consistent with student's established creed or belief;
- Good cause approved by the superintendent;

- Emergency circumstances approved by the principal.

Students returning to school after an absence may bring a written note from their parents or guardian stating:

- the dates of absences,
- the reason for the absences,
- the parent or guardian signature, and
- the parent or guardian phone number.

The student should report to the attendance office the day they return to school. All students must obtain an Admit Slip the day of return. Absences documented with medical verification notes for each date absent will be excused.

## UNEXCUSED ABSENCES

Any student absences that cannot be confirmed with a medical note or parent contact upon or prior to the student's return to school may be subject to the following consequences:

On the first offense a student may be issued a detention.

On the second offense a student may be issued a Wednesday or Saturday School.

On the third offense a student may be issued In-School Detention.

On the fourth or subsequent offenses a student may be issued Out-of-School Suspension.

Any of the above consequences may be waived upon the submission of a written excuse for the absence(s) in question.  Students may be permitted to complete/submit work missed due to an unexcused absence for full credit.  Students leaving school because of illness or other excused reason still require parent confirmation. After repeated absences, a doctor's note may be required to excuse future absences. Parent and or doctor's notes may be accepted by fax or email in the main office. Admit slips for absences should be obtained before the start of the school day. Failure to follow Attendance Guidelines may result in school discipline. It is the responsibility of the school to report all attendance concerns to the Juvenile Court. A court officer will follow procedures to ensure the regular attendance of all students.

## ILLNESS WHILE AT SCHOOL

If a student should become ill or injured during school, they must ask their teacher for a pass to the clinic.  The school must obtain parental permission in order for a student to be released from school due to illness. Prior to leaving the clinic for home, students and/or parents must sign out in the attendance office.

If the student is sent home from school by the clinic staff for medical reasons, the absence for that school day will be counted as excused. Parents are requested to report all communicable diseases to the clinic.  Being ill in the restroom for any extended period of time will not be accepted as an excuse to miss class.  If a student is too ill to report to the clinic, notify the school office as soon as possible.

**Add.11**

## EARLY DISMISSAL OF STUDENTS

Middle and high school students seeking an early dismissal should report to the attendance office before first period with a parent note stating the reason and time to be excused. The student will be given a pass that is to be shown to the classroom teacher before signing out. The reason for early dismissal must be explicit in order to be considered excused. In case of a medical appointment, the student should turn in a doctor's note upon their return to school in order for it to be excused. Students must never leave the school building without permission and/or without signing out in the attendance office with custodial parent(s) or guardian approval. Failure to follow this procedure may result in school discipline.

## EXTRA AND CO-CURRICULAR DAY PARTICIPATION

In order to participate in a school day extra-curricular/co-curricular activity, students must be in attendance four periods of the school day (or the half-day equivalent), not including lunch. A block scheduled class is equal to two regular class periods. Field trips, Alternate Learning Experiences, concurrent enrollment, medical/dental appointments, and special family situations may be excused by an administrator.

## COLLEGE VISITATION PROCEDURES

Submit a College Visitation Request form to the attendance office in advance. College visitation days are limited to three days total per year and are only for 11th and 12th grade students.

## SPECIAL ABSENCES

**Alternate Learning Experience (ALE) and Student Vacations During the School Year**

The Olentangy Board of Education recognizes that educational experiences are not limited to those taking place within the building. It is desirable to afford students the opportunity to take advantage of an unusual opportunity to learn, provided those experiences have obvious educational benefits. Students may be required to submit a report or journal of their experience. Students are also permitted to take vacation with their family during the school year. ALE and student vacation absence days count as absences and state laws about excessive absences still apply in these circumstances.

If approved, school absences due to an ALE or vacation will be considered excused and schoolwork missed during the experience may be made up. Teachers will not be required to give homework assignments prior to the absence. Upon receiving an ALE or vacation request, the building administrator will do one of the following: approve the request, give conditional approval to the request, or deny the request.

Requests that would cause a student significant academic risk may be conditionally approved by the building administrator pending the student satisfactorily achieving relevant academic expectations. It should be noted that additional days absent, beyond the ALE or vacation could negatively impact the student academically (including but not limited to Third Grade Guarantee, district assessments, grade level promotion, and access to academic and/or behavior supports). An ALE will not be approved for longer than 10 days. Absences that are not approved for an ALE or vacation may be marked as unexcused.

**To be granted an Alternate Learning Experience or vacation request, the student will meet the following criteria:**

**Add.12**

- Submit an Alternate Learning Experience/Student Vacation Application one week prior to the proposed absence;
- Document a valid learning content to the alternate experience, if applicable;
- Demonstrate satisfactory attendance history; and
- The ALE or vacation request must not fall within district testing windows.

An ALE or vacation request will not be approved for applications submitted after the experience, if there are academic concerns, or for experiences that fall within district testing windows. An ALE or vacation request may be denied at the discretion of the building principal. Multiple ALEs and vacation requests are discouraged from being submitted in the same academic year.

## WITHDRAWAL FROM SCHOOL

When withdrawing from Olentangy Local Schools, a parent or guardian must be present, sign the Withdrawal Notice, and the following must be met:

- All fees are paid, including library fines, etc.;
- Books are returned in satisfactory condition; and
- Assigned work is completed.

You must provide the address of the new school and your family's forwarding address. Your child's records will be sent within 14 days of our receiving a request for records from the new school.

The superintendent is required to report those students who drop out of school to the Bureau of Motor Vehicles. The Bureau of Motor Vehicles may revoke the driver's license of the student.

## CODE OF CONDUCT

Olentangy Local Schools' Code of Conduct seeks to foster self-discipline in all students and maintain an appropriate educational atmosphere. First and foremost, the district is committed to implementing a system of Positive Behavioral Interventions and Supports (PBIS) to promote school safety and good behavior. All students are expected to be responsible citizens and to conduct themselves properly and in accordance with Federal, State, and local laws, Board policies and Administrative Guidelines, and in a way that respects the rights and safety of others (Policy 5500-Student Conduct).

The Board believes that students should assume responsibility for their behavior and the consequences of their actions. The Board has zero tolerance of violent, disruptive, or inappropriate behavior by its students. (Policy 5600-Student Discipline)

Because the Board believes that students, staff members, and visitors are entitled to function in a safe school environment, students are required to report knowledge of dangerous weapons or threats of violence to the principal. Failure to report such knowledge may subject the student to discipline. In addition, sexual harassment of a student may reasonably be considered child abuse that must be reported to the proper authorities.

This Code of Conduct is in effect while students are under the authority of school personnel or involved in any school activity. This includes but is not limited to school buses and property under the control of school authorities, and while at interscholastic competitions, extracurricular events, or other school activities or programs.

In addition, this Code of Conduct includes 1.) Misconduct by a student that occurs off school district but is connected to activities or incidents that have occurred on school district property; and 2.) Misconduct by a student that, regardless of where it occurs, is directed at a district official or employee or the property of an official or employee.

Furthermore, participation in extra-curricular activities, including interscholastic sports, is a privilege and not a right. Students may be prohibited from all or part of their participation in such activities for offenses or violations of the Student Code of Conduct or Athletic Code of Conduct. Students prohibited from participation in all, or part of any extra-curricular activity are not entitled to further notice, hearing and/or appeal rights (see Policies 2431 – Interscholastic Athletics and 5610.05 – Prohibition from Extra-Curricular Activities).

Violation of the Code of Conduct may result in: verbal or written warning or reprimand, parental contact or conference, after-school, morning or lunch detention, referral to school counselor, in-school detention, out-of-school suspension, emergency removal, referral to law enforcement agencies, expulsion, permanent exclusion, compensatory payment of damages, loss of bus privileges, loss of credit for assigned work or tests, assigned work relation to the offence, or loss of other privileges.

## IMPORTANT NOTICES

**Discipline of Students with Disabilities** – Students with disabilities are entitled to the rights and procedures afforded by the Individuals with Disabilities Education Improvement Act (I.D.E.I.A.), and, where applicable, the Americans with Disabilities Act (A.D.A.), and/or Section 504 of the Rehabilitation Act of 1973 (Policy 5610).

**Notification of Criminal Activity** – School staff may report suspected criminal misconduct by a student to law enforcement. Law enforcement officers will be permitted to carry out necessary law enforcement functions in the schools, including the removal of a student from school grounds in appropriate circumstances.

**Video Surveillance** – For student safety and welfare, video surveillance cameras are placed throughout the district in buildings, on school grounds, and on buses. Actions recorded on these cameras may be used as evidence in disciplinary action and these records will remain in the possession of the school/district.

## CODE OF CONDUCT VIOLATIONS

1. **Disruption of School** – Students shall not cause disruption or obstruction to the normal operation of this school or any other school or school district.
2. **Harassment, Sexual Harassment/Violence, Bullying and/or Retaliation** – Students or groups of students shall not harass, sexually harass, bully and/or retaliate against other students, school employees, persons that are guests of the school or persons conducting business for the school. This applies to but not limited to act or acts that create a hostile environment when it interferes with or limits a student's ability to participate in or benefit from the school's program.  (Refer to Hazing, Harassment, Intimidation, Bullying, and Sexual Harassment/Violence section below)
3. **Intimidation and/or Threats** – Students shall not, through verbal, written, technological or any other means, make statements that state that physical or emotional harm may come to another person or to an institution. Bomb threats will result in a recommendation of expulsion from school.
4. **Use of Obscene or Discriminatory Language/Materials/Actions/Gestures** – Students shall not use obscene, vulgar, profane, or discriminatory language, make inappropriate gestures / actions or possess vulgar materials. Note: Discriminatory language is defined as verbal or written comments, jokes, and slurs that are derogatory towards an individual or group based on one or more of the following characteristics: race, color, national origin, sex (including sexual orientation and transgender identity), disability, age, religion, ancestry, or genetic information.
5. **Attendance** – No student shall fail to comply with state attendance laws including, but not limited to, truancy or tardiness from a specific class or school. No student shall leave school property or an assigned educational location once they have come under the supervision of a school employee, prior to specified dismissal times, without official permission.
6. **Forgery** – Students shall not misrepresent a signature on any document.
7. **Damage of Property** – Students shall not cause or attempt to cause damage of school property, including buses and bus seats, or personal property. Students shall not touch or handle another person's property without their authorization. Students must pay for any damages they cause to school equipment, materials or facilities and may be subject to additional disciplinary action. Anything, such as fire, that endangers school property, and its occupants will not be tolerated. Arson is a felony.
8. **Assault** – Students shall not act or threaten to act in such a way as to cause physical injury to other students, any school employee, or other persons. Specific violations include but are not limited to: **fighting/violence, serious bodily injury, threats or intentions of fighting, violence, or**

## Add.15

**serious bodily injury (see #3 – Threats), unauthorized touching, pushing, shoving, slapping, snapping and/or hands on or threats to put hands on**.

9. **Failure to Obey Instructions/Insubordination/Disrespect** – No student shall fail to comply with any lawful instructions or requests of teachers, student-teachers, principals, or other authorized personnel during any period of time when they are properly under the authority of such school personnel. No student shall fail to provide information, or supply false information, when it is requested.

10. **Dangerous Weapons and Instruments** – Students shall not possess, handle, transmit or conceal any dangerous weapon or instrument on school property, in a school vehicle or at any school-sponsored activity. Bringing a firearm (as defined in the Federal Gun-Free Schools Act of 1994) onto school property, competition, extracurricular event, or other school sponsored event, regardless of where it occurs, will result in a mandatory one (1) year expulsion under Ohio law. This expulsion may be reduced on a case-by-case basis by the superintendent. Firearms (including starter pistols), objects that are indistinguishable from and/or represented as firearms, explosives, incendiary devices, and knives (any object with a blade and a handle) are considered dangerous weapons. Other instruments/devices may also be defined as dangerous weapons depending on their use or intended use.  Should a student have knowledge of a weapon or dangerous instrument on school property, in a school vehicle or at a school-sponsored activity and not report it to a school employee, the student may be held to the same disciplinary measures as that of the perpetrator. (Refer to Ohio Revised Code §2923.122.) Specific violations include but are not limited to:

    a. Use, possession, sale, distribution, or knowledge of a firearm

    b. Firearm is defined as any weapon (including a starter gun) that will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; or destructive device (as defined in the Feral Gun-Free Schools Act of 1994). Firearms include any unloaded firearm and any firearm that is inoperable but that can be readily operated.

    c. Students are prohibited from knowingly possessing an object on school premises, in a school or a school building, at a school activity or on a school bus that is indistinguishable from a firearm, whether or not the object is capable of being fired, and indicating they are in possession of such an object and that it is a firearm or knowingly displaying or brandishing the object and indicating it is a firearm.

    d. Use, possession, sale, distribution, or knowledge of any explosive, incendiary or poison gas

    e. Use, possession, sale, distribution, or knowledge of a dangerous weapon other than a firearm or explosive, incendiary or poison gas (including knives and any other object with a blade and a handle)

    f. A weapon is any device that may be used for offensive or defensive purpose, including but not limited to conventional objects such as guns, pellet guns, knives, or club type implements. It may also include any toy that is presented as a real weapon or reacted to as a real weapon.  Possession and/or use of a weapon may subject a student to expulsion and possible permanent exclusion.

# Add.16

    g. A knife is defined as any cutting instrument consisting of a sharp blade fastened to a handle, a razor blade or any similar device that is used for, or is readily capable of, causing death or serious bodily injury.

    h. Any object that is used to threaten, harm, or harass another may be considered a weapon. This includes but is not limited to padlocks, pens, pencils, laser pointers, and jewelry.

    i. Use, possession, sale, distribution, or knowledge of objects that are indistinguishable from and/or represented as firearms, explosives, incendiary devices, and knives.

11. **Narcotics, Alcoholic Beverages and Drugs** – Students shall not possess, use, transmit, conceal, make arrangements to sell or purchase, or use the aforementioned items immediately prior to or during school or a school function. Look-alike drugs and drug paraphernalia are included and will be dealt with accordingly. (See Alcohol, Tobacco and Drug Prevention Guidelines in the Code of Conduct section.) Specific violations include but are not limited to:

    a. Use, possession, sale, distribution, or knowledge of intoxicating alcoholic beverages

    b. Use, possession, sale, distribution, or knowledge of drugs other than tobacco or alcohol

12. **Tobacco** – Possession, consumption, distribution, purchase or attempt to purchase, and/or use of tobacco products or electronic cigarettes or similar devices in school, on school grounds, and at any interscholastic competition, extracurricular event, or other school-sponsored event is prohibited. Tobacco products include, but are not limited to cigarettes, clove cigarettes, cigars, pipe tobacco, chewing tobacco, snuff or any other matter or substance that contains tobacco. Paraphernalia used for the consumption of tobacco products is prohibited including e-cigarettes and vaping devices. Per Senate Bill 218, administrators may refer violators of the tobacco policy to the Delaware Juvenile Court.

13. **Theft** – Students shall respect the personal ownership rights of others. Students shall not take ownership of items of others. The principal may exercise the prerogative of reporting thefts to local authorities.

14. **Academic Dishonesty** – Students shall not obtain work products by fraudulent or deceptive means, present work as their own when it is not a product of their own mind, misrepresent the results of researched or laboratory assignments, or give or receive unauthorized assistance on assignments. Use of electronic translators without permission is a violation of this rule. Repeated violations may result in failure of academic subjects.

15. **Driving (applicable to High School only)** – Students driving a vehicle on school property shall follow the rules and regulations established for this privilege.

16. **Dress Code** – Refer to the Dress Code, in the Code of Conduct section.

17. **Inappropriate Display of Affection** – Students shall refrain from displays of affection. Students are not to hold hands, hug, kiss or demonstrate other similar acts of affection. In unusual circumstances involving sorrow or extreme joy, hugging is natural and acceptable.

18. **Unauthorized or Unsupervised Areas** – Students may not be in areas for which they have not been authorized or areas that are unsupervised.

19. **Hazing (Initiations)** – Initiations of any sort are prohibited. Initiations and/or hazing are those activities into which students are coerced in order to become part of a group or activity or to avoid harm.

20. **Technology Misuse/Abuse** – Computers/technology are provided for student use for teacher assigned work in courses or programs at the elementary school. Students may not use cell

phones or other electronic devices, except in designated areas and at designated times. (Refer to the Technology Usage Policy.)
21. **Violation of Bus Rules** – Students must follow all bus rules as outlined in the Bus Rules Code of Conduct section.
22. **General Misconduct** – Students shall refrain from throwing objects, being abusive, or excessively disruptive in their behavior. Respect the rights and feeling of others.
23. **Gross Misconduct** – Repeated violations of the Code of Conduct.
24. **Other violations** – Other conduct violations not covered in the above rules.

## ALCOHOL, TOBACCO, AND DRUG PREVENTION GUIDELINES

The Board prohibits the use, possession, concealment, or distribution of any drug or any drug-related paraphernalia as defined by law, on school grounds, on school vehicles, or at any school-sponsored event. It further establishes a drug-free zone within 1000 feet of any facility used by the district for educational purposes (Policy 5530-Drug Prevention).  It is the primary objective of Olentangy Local Schools to assure that the education of all students proceeds in an efficient, orderly, and non-disruptive manner. Possessing, using, actual or attempted transmitting, buying, selling, or supplying of mood-altering chemicals or look-alike substances or paraphernalia on school premises is an obstacle to that objective and an interference with the rights of other students to receive quality academic instruction. While student drug education and referral to counseling resources will continue to be made available, such measures should be viewed as instructional or rehabilitative and will not ordinarily be considered as an alternative to the disciplinary measures specified in Section 9.

## STATEMENT OF POLICY REGARDING STUDENTS

Students of Olentangy Local Schools, while on school property or at a school-sponsored activity, shall not possess, use, transmit, buy, sell, supply, or attempt to do so with a mood-altering chemical of any kind prior to or during the school day, at any school-sponsored activity or event or at any time while on school premises.

**Definitions**

"Possession" includes, without limitation: holding in the student's hand, retention on the student's person or in purses, wallets, lockers, desks or any other personal possessions, or vehicles parked on school property or at school functions.

"Use of mood-altering chemical" is defined as manifesting signs of chemical misuse such as staggering, reddened eyes, odor of chemicals, nervousness, restlessness, memory loss, abusive language, falling asleep in class or any other behavior not normal for that particular student, or a preponderance of evidence that a student has used a mood-altering chemical.

"Tobacco" includes any product containing tobacco or nicotine that is smoked, chewed, inhaled, or placed against the gums.

"Mood-altering chemical" includes, without limitation, alcohol, marijuana, inhalants, ecstasy or other club drugs, depressants, stimulants, hallucinogens, narcotics, over-the-counter medications (including any over-the-counter pain medications containing aspirin, acetaminophen, ibuprofen, or any other pain relievers, any cough, or cold medications, etc.), substances such as Betel Nut, Wite-Out, glue, toxic markers, and caffeine pills. Prescription drugs are included, unless authorized by a medical prescription

from a licensed physician and kept in the original container that states the student's name and directions for proper use, according to Policy 5330-Use of Medications.  See also Medication section of this policy. This list is intended for example only and not as a comprehensive list.

"Counterfeit controlled substance" or look-alike drug is (Ohio Revised Code §2925.01(O)) means any of the following:

Any drug that bears, or whose container or label bears a trademark, trade name or other identifying mark used without authorization of the owner of rights to such trademark, trade name or identifying mark.

Any unmarked or unlabeled substance that is represented to be a controlled substance/mood-altering chemical, manufactured, processed, packed, or distributed by a person other than the person that manufactured, processed, packed, or distributed it.

Any substance that is represented to be a controlled substance/mood-altering chemical but is not a controlled substance/mood-altering chemical or is a different controlled substance/mood-altering chemical.

Any substance other than a controlled substance/mood-altering chemical that a reasonable person would believe to be a controlled substance/mood-altering chemical because of its similarity in shape, size and color or its markings, labeling, packaging, distribution, or the price for which it is sold or offered for sale.

**Jurisdiction**

This policy extends to use of the above:

On or in close proximity to any property owned, leased by or under the control of the Olentangy Board of Education, including vehicles used for the transportation of students.

During normal school hours, including recess, lunch and class changes, and summer school.

At any school-sponsored or sanctioned activity or event away from or within the school district.

## STUDENT RESPONSIBILITY
Students are responsible for understanding the Olentangy Alcohol, Tobacco, and Drug Prevention Guidelines and the counseling services available to them.

## PARENT RESPONSIBILITIES
The Olentangy Board of Education recognizes that parents are primarily responsible for their children. The link between school and parents is the child. The effectiveness of these Alcohol, Tobacco, and Drug Prevention Guidelines will be assisted by the cooperative effort of the family, the school officials, and the board.

## STAFF RESPONSIBILITIES
All Olentangy staff members have the responsibility to report all suspected cases of drug and/or alcohol use, misuse, or abuse by students to the appropriate school officials. Staff members will report to the building official alleged possession, use, actual or attempted transmitting, buying, selling, or supplying of

mood-altering chemicals, counterfeit or look-alike substances or paraphernalia. Staff will immediately notify the principal or designee and may be required to submit a written report at a later time.

## SCHOOL OFFICIALS' RESPONSIBILITIES

It is the responsibility of the school officials to inform students, staff, and parents about the drug and alcohol abuse policy of this school district and to share with these audiences any available pertinent information regarding the extent of the drug and alcohol problem in the school. Except for the persons directly involved in the students' education and except as otherwise provided herein, all matters concerning reports of drug or alcohol abuse shall be and remain confidential. When a school official has reason to believe that a student is in violation of the drug/alcohol code of conduct, the following action will be taken:

The student will be informed of the alleged offense, the evidence to support the allegations and the disciplinary action that may apply.

If the student is in need of medical attention, the school nurse and/or the local emergency squad will be notified to give medical attention.

The parent or guardian of the student will be notified and asked to meet with the school officials. Only in the case of medical emergency or if the parent(s) cannot be reached will the person on the student's emergency call list be notified.

School officials will cooperate fully with law enforcement agencies and report to them any information that would be considered beneficial in their efforts to stem the use of drugs and alcohol.

Notification to the local law enforcement agency shall be in accordance with the provisions under each offense. When reported, a written record shall be made of the incident to the law enforcement official who, at their discretion, may conduct an investigation.

## MEDICATION

The Olentangy Board of Education wishes to cooperate fully with students, parents, and the medical profession to ensure that students receive any required medication during the normal school day at the time that it is required. It is preferred that medications be administered to students at home; however, it is also recognized that certain circumstances may necessitate administering medications during school hours. Guidelines have been established to maintain control of authorized drugs within the schools and to ensure the health and welfare of students.  In accordance with Ohio Revised Code §3313.713, all medications must be kept in a locked storage place and administered by school personnel unless medically prescribed to self-carry. Only employees of the Board who are licensed health professionals or who have completed a drug administration training program conducted by a licensed health professional and considered appropriate by the Board may administer to a student a drug prescribed for the student.

## DRUG PARAPHERNALIA

Drug paraphernalia or instruments such as pipes, roach clips, syringes, pacifiers, hypodermic needles, cocaine spoons or kits, nitrous oxide paraphernalia, rolling papers, water pipes, and any other items normally or actually used for the packaging, conveyance, dispensation or use of mood-altering substances will not be permitted on any school property or (student and/or district) vehicles and will be

subject to confiscation. Possession of drug paraphernalia will be treated the same as possession of a mood-altering substance. Addiction to an illegal substance may not be used as an excuse for a violation.

**SEARCHES** – See School's Right to Search

OFFENSES AND DISCIPLINARY ACTION

The actions set forth below will be considered routine disciplinary measures for each category and occurrence of offense. The penalties delineated below shall be considered the standard penalty to be imposed for the offenses described. In incidents where extreme violations occur, the specified actions may be waived by the school official in favor of stronger measures such as longer suspensions (not to exceed ten days), expulsion or other appropriate action. At the hearing, the school official may consider matters in mitigation of the routine disciplinary measures. School officials will follow the process below when handling level II & III offenses:

The rapid eye movement test may be administered for screening purposes.  If the screening is positive, it will be recommended that the parents seek professional guidance with a certified chemical dependency counselor. Also, an investigation will be conducted by the legal authorities as to the source of the drug.

Parents will be notified as soon as practicable, and the student may be removed from classes or the school event.

Law enforcement officials may be notified and, at their discretion, conduct an investigation. In any instance in which it is illegal for a school official to possess or dispose of a mood-altering drug, law enforcement will be notified. School officials will notify law officials in the jurisdiction in which the offense occurs. School officials may file charges in the appropriate court.

Parents will consult with the principal or designee.

Detailed below are the levels of prohibited offenses and the consequences that will result from the student's decision not to abide by the school policy. Violations are cumulative within grades 7-12.

The following are levels of prohibited offenses and the consequences that will result from the student's decision not to abide by the school policy.

Tobacco/Vaping: Use or possession of tobacco, nicotine or paraphernalia used to consume tobacco products including e-cigarettes/vaping devices

- First Offense – three days out of school suspension
- Second Offence – three days out of school suspension
- Third and Subsequent Offences – five days out of school suspension

Level I Drug & Alcohol Offense: Possession, use or application of any mood-altering chemical, as defined above

- First Offence – ten days out of school
- Second and Subsequent Offences– ten days out of school suspension with an expulsion recommendation

**Add.21**

Level II Drug & Alcohol Offense: Actual or attempted transmitting, selling, supplying, or purchasing of mood-altering chemicals, counterfeit or look-alike substance or paraphernalia.

- First Offence and Subsequent Offences – ten days out of school suspension with an expulsion recommendation

**Suspension/Discipline Reduction Options**

Three (3) days Out-of-School Suspension may be reduced to one (1) day at the discretion of the administrator if student/parent agrees to enroll in and complete a required education program and an assessment with a certified chemical dependency counselor or district approved resource.

Ten (10) days Out-of-School Suspension may be reduced to five (5) days at the discretion of the administrator if student/parent agrees to enroll in and complete a required education program and an assessment with a certified chemical dependency counselor or district approved resource.

**SELF-REFERRAL**

Students have the opportunity for a voluntary referral procedure to seek information, guidance, counseling and/or assessment in regard to the use or possession of tobacco, alcohol and other controlled or non-controlled substances. The student or their immediate family may make voluntary referrals.

For an alcohol and/or controlled substances/mood-altering chemicals referral, the student must have, within five days, an appointment for an assessment with a certified chemical dependency counselor and/or district approved resource and notify the principal or designee of the appointment. The student must participate in the assessment process (the cost of any and all assessment will be the responsibility of the student and/or parents). The student must waive their rights of confidentiality so that verification of the assessment can be made and/or provide proof of a completed assessment to the principal or designee.

For a tobacco referral, the student must, within five days, provide verification of enrollment in an out-of-school tobacco education/cessation program approved by the principal or designee. Parents must sign a release of information to the principal or designee so that the student's progress in the program can be followed and written verification of completion given to the principal or designee. The student must complete the program or receive the original discipline.

Voluntary referrals will not carry violation consequences on the first offense only.  Voluntary referral must occur prior to any report of violations. Involvement by law enforcement officials negates the option of voluntary referral. The student may use the option of voluntary referral once in their career at Olentangy Local Schools.

Any subsequent violations will be enforced as a second or subsequent violation. If the student requesting the voluntary referral opportunity does not complete the required education and assessment, the violation consequence will be put into effect immediately.

## HAZING, HARASSMENT, INTIMIDATION, BULLYING, AND SEXUAL HARASSMENT

Hazing, harassment, intimidation, bullying, and sexual harassment are strictly prohibited and will not be tolerated. This applies to all activities in the district, including activities on school property, on a school

bus, or while en route to or from school, as well as activities occurring off school property if the activity is school-sponsored, school-approved, or school-related activity or function, such as field trips or athletic events.

Hazing is defined as doing any act or coercing another, including the victim, to do any act of initiation into any class, team, or organization that causes or creates a substantial risk of causing mental or physical harm to any person.

Harassment, intimidation, or bullying is any intentional written, verbal, electronic, or physical act that a student has exhibited toward another particular student or students more than once and the behavior causes mental or physical harm to the other student(s) and is sufficiently severe, persistent or pervasive that it creates an intimidating, threatening or abusive educational environment for the other student(s).

Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal or physical conduct of a sexual nature.  Sexual harassment may involve the behavior of a person of either gender against a person of the same or opposite gender. It would include, but not be limited to, unwelcome propositions, unwanted physical and/or sexual contact, verbal expressions, patterns of conduct intended to create discomfort and/or humiliation, boundary invasions, and sexual violence. Sexual harassing creates a hostile environment when it interferes with or limits a student's ability to participate in or benefit from the school's program. It may be a single or isolated incident. Title IX protects against retaliation of reporting such acts. For more information about the district's Sexual Harassment and Sexual Violence procedures, see Board Policy 5517.

Permission, consent, or assumption of risk by an individual subjected hazing, harassment, intimidation, bullying, or sexual harassment does not lessen the prohibition contained in this policy. Prohibited activities of any type including those activities engaged in via computer and/or electronic communications devices are inconsistent with the educational process and are prohibited at all times. No administrator, teacher, or other employee of the district shall encourage, permit, condone or tolerate any of these behaviors. No student, including leaders of student organizations, may plan, encourage, or engage in any of these behaviors.

Administrators, teachers, and all other district employees are particularly alert to possible conditions, circumstances or events that might include these behaviors. If any of these behaviors are discovered, involved students will be informed by the discovering district employee of the prohibition contained in this policy and are required to end the behavior(s) immediately. All hazing, harassment, intimidation, bullying, and sexual harassment incidents are reported immediately to the building administrator or other appropriate administrator. An investigation will result and shall include documentation of the event, response, and strategy for protecting the victim.

If the investigation finds an instance of hazing, harassment, intimidation, bullying, and/or sexual harassment, by an electronic act or otherwise, has occurred, it will result in prompt and appropriate remedial and disciplinary action. This will include suspension or up to expulsion for students. Furthermore, racist, sexist, or abusive comments or actions directed at others will not be tolerated and will result in suspension or up to expulsion.

If, during the investigation, the principal or appropriate administrator believes the reported misconduct may have created a hostile learning environment and may have constituted unlawful discriminatory

**Add.23**

harassment, said will report the act of to one of the Anti-Harassment Compliance Officers so that it may be investigated in accordance with the procedures set forth in Policy 5517.

A victim of sexual harassment has the right to file criminal and/or Title IX complaints simultaneously. A student does not need to wait until the Title IX investigation is completed before filing a criminal complaint or may also be filed with the U.S. Department of Education's Office for Civil Rights. The district respects students' privacy and will only disclose information regarding alleged sexual violence to individuals who are responsible for handling the school's response, the student's parents (if the student is a minor or dependent under Section 152 of the Internal Revenue Code), or otherwise required by law. Students or parents may ask that the student's name not be disclosed to the alleged perpetrators or that no investigation or disciplinary action be pursued to address the alleged sexual violence which may limit the district's ability to respond fully to the incident, including pursuing disciplinary action against the alleged perpetrator. For more information about the district's Sexual Harassment and Sexual Violence procedures, see Board Policy 2260.

Retaliation against any person who reports or is thought to have reported or otherwise participates in an investigation/inquiry related to a complaint of hazing, harassment, intimidation, bullying, sexual harassment, and violence is prohibited. Deliberately making false reports for the purpose of getting someone in trouble is similarly prohibited and will not be tolerated. Deliberately making false reports or retaliation may result in disciplinary action.

The Superintendent/designee must provide the Board President with a semiannual written report of all reported incidents of bullying and post the report on the district's website. For more information, please refer to board policy 5517, 5517.01. The district's policy and consequences for violations of the policy shall be sent annually to each student's custodial parent or guardian. The statement may be delivered electronically.

The student athlete may be denied participation in athletics for violation of this policy and may be subject to Code of Conduct violation.

<u>DRESS CODE</u>
The Olentangy Local School District is committed to providing a safe, friendly learning environment for its students. No article of clothing shall be worn that distracts from the educational process. Building administrators have the final decision as to the appropriateness of all clothing and attire.

- The following are guidelines for students:
- Clothing must cover areas from one armpit across to the other armpit, down to the thighs.
- Tops must have shoulder straps.
- Shorts and skirts must reach the mid-thigh.
- Appropriate footwear must be worn at all times and should be safe for the school environment.
- See-through or mesh garments must not be worn without appropriate coverage underneath that meets the minimum requirements of the dress code.
- Any clothing or statement that may cause a hostile, intimidating, degrading, offensive, harassing, or discriminatory environment, or promotes vulgar, illegal (including alcohol, drugs, tobacco), or lewd behavior is prohibited.

- Sunglasses will not be permitted in school unless worn for medical purposes or approved by the principal.
- Head coverings are only permitted for religious or medical purposes, unless approved by a principal.
- Accessories featuring spikes or other sharp or dangerous objects are prohibited.

Some school programs, such as industrial arts, laboratory activities, physical education and interscholastic athletics may require special hair care, clothing, footwear, or restrictions on jewelry to ensure the health and safety of all students.

Failure to comply with the Dress Code guidelines is considered to be an insubordinate act and will be treated as such. Following are the procedures for violations of the school Dress Code:

**First Offense:** The student will be sent to the main office. Student will change clothes or will be sent home to change their clothes. Inappropriate accessories will be confiscated. If the student is sent home, this absence will be treated as an unexcused absence. Any class work missed during an unexcused absence may be made up for full credit. Student may be placed in ISD until appropriate clothing can be obtained.

**Second Offense:** Same as 1st offense. In addition, the student may be assigned to detention. Parents will be contacted.

**Third Offense:** Same as 1st and 2nd offense. In addition, the student may be assigned to Saturday/Wednesday School.

**Further Offenses:** The student may be suspended from school.

## CAFETERIA RULES
The following common courtesies are expected of our students during lunch:

- Moving ahead of others in the lunch line is unacceptable.
- Loud talk and noise are not appropriate behavior.
- Throwing food, paper or other items is unacceptable.
- All trash/trays in your area must be disposed of properly.
- Treat everyone with respect.
- Pay for all food.
- Ask permission to leave your seat (elementary and middle school).
- A signed pass must be presented to leave the cafeteria (high school).

At the discretion of the cafeteria duty teacher, high school seniors (only) may eat on the patio during their lunch periods. Students are not permitted in unauthorized areas. Failure to obey this rule may result in school discipline.

Students may use designated restrooms during lunches.  Designated restrooms will be different in each building.  Students will be permitted in the school store during lunch periods to purchase items. After visiting the store, students are to return to the commons.

**Add.25**

## DISCIPLINE OPTIONS
### DETENTION
Detention could be served after school for a duration of 30-45 minutes. At times, detention can be served in the morning if arrangements are made. Students are notified of the infraction and are to serve the detention on the "to be served" date listed on the detention slip.  The parents will receive a copy of the detention slip, which will be sent home with the student. Transportation home after detention is the responsibility of the student/parent. All school rules apply while serving detention. Failure to serve assigned detention may result in further disciplinary action.

### LUNCHTIME DETENTION
Occasionally it becomes necessary to discipline a student for violating the established school rules or Code of Conduct. In an effort to deter such actions and hold students accountable for their behavior, detention during lunchtime may be assigned. Students are to report to the assigned room for the entire lunch period. Failure to return the signed detention slip or failure to serve the detention may result in the assignment of an After-School Detention.

### SATURDAY OR WEDNESDAY SCHOOL
Students may be assigned to a Saturday or Wednesday School. Please refer to the Saturday or Wednesday School form for specific times and directions. Saturday and Wednesday School guidelines follow:

Absence from an assigned Saturday or Wednesday School, without prior approval of an administrator, may result in a suspension.

Students are to sign in upon arrival.

Students are to bring schoolwork.

Talking is not permitted.

Appropriate breaks will be determined by the monitor.

Parents will be notified of assigned Saturday or Wednesday School and students are also to inform parents.

No sleeping will be permitted.

### IN-SCHOOL DETENTION (ISD)
Students serving In-School Detention shall be permitted to make up and receive credit for assignments during In-School Detention.

Students are to bring schoolwork.

Parents will be notified of In-School Detention.

Guidelines for ISD will be issued and discussed upon assignment of the student to this detention.

### SUSPENSION ALTERNATIVE PROGRAM (SAP)
Suspension Alternative Programs may be assigned for students in lieu of Out-of-School Suspension.

**Add.26**

Students must successfully complete each full day, including community service work in area parks or other designated areas, and any other program components.

Besides work (e.g., picking up litter in the parks) students will have a short break, lunch, and a study session.

Upon completing the program, students will have earned the right to make up work missed while serving SAP.

The Delaware Area Career Center (DACC) bus will take students from their home school at about 7:10 a.m. and drop them off at the pick-up point at DACC to be picked up by Juvenile Court personnel. At the completion of the day, students will be dropped off at DACC and take the Olentangy bus back to their home school. The bus will arrive at the student's home school prior to the student's normal dismissal time.

The program supervisor will transport the students to the work area.

Students will receive credit for participation based on their work performance and overall behavior.

Students may be required to repeat any segment of the program if they only earn partial credit.

The supervisor will report the student's behavior to the school and to the probation counselor, if applicable.

Students must dress appropriately for the weather and wear hard shoes. Students should bring their own lunch, including a drink.

Students must follow all school and juvenile court policies.

## OUT-OF-SCHOOL SUSPENSION (OSS)
The principal or designee may suspend a student from school for a period of up to ten (10) days for violation(s) of the Code of Conduct.

Parents will be notified of the suspension and may be asked to take the student home. The student may not attend school through the length of the suspension.

Students will be permitted to make up class work, quizzes, tests, papers, and/or major projects missed while serving Out-of-School Suspension for full credit.

Parents will be notified of the student's rights to appeal.

Students may not attend any school functions, home or away, while serving Out-of-School Suspension.

Students serving Out-of-School Suspension may not be present on school property, participate or attend any school activities or contests, or be present at activities or on property controlled by the school, unless an exception is made by the school administrator.

## EMERGENCY REMOVAL
If a student's presence poses a continuing danger to persons or property, or an ongoing threat of disrupting the academic process, then the superintendent, principal or assistant principal, or personnel employed to directly supervise or coach a student activity, may remove the student from the school

premises. If school personnel make an emergency removal, reasons will be submitted to the principal in writing as soon after the removal as practical. In all cases of normal disciplinary procedures where a student is removed from a curricular or extracurricular activity for less than 24 hours and is not subject to suspension or expulsion, the due process requirements do not apply.

If either suspension or expulsion is contemplated, then a due process hearing will be held within three school days after the removal is ordered. Written notice of the hearing and the reason for removal and any intended disciplinary action will be given to the student as soon as practical prior to the hearing. The student will have the opportunity to appear at an informal hearing before the principal, assistant principal, superintendent, or designee and has the right to challenge the reasons for the intended suspension or otherwise explain their actions. The person who ordered or requested the removal will be present at the hearing. Within one school day of the decision to suspend, written notification will be given to the parent, guardian or custodian of the student and treasurer of the Board of Education. This notice will include the reasons for the suspension and the right of the student or parent to appeal to the superintendent or their designee.

If the superintendent or principal reinstates a student prior to the hearing for emergency removal, the teacher may request and will be given written reasons for the reinstatement. The teacher cannot refuse to reinstate the student.

In an emergency removal, a student can be kept from class until the matter of their misconduct is disposed of either by reinstatement, suspension, or expulsion.

## PERMANENT EXCLUSION

In accordance with the law, the Board of Education may seek to permanently exclude a student, 16 years of age or older, who has been convicted of or adjudicated delinquent for the reason of the following offenses:

Carrying a concealed weapon or conveying or possessing a deadly weapon or dangerous ordnance on property owned or controlled by a board of education or at an activity held under the auspices of this Board;

Possessing, selling, or offering to sell controlled substances on property owned or controlled by a board of education or at an activity under the auspices of this board; and/or

Complicity to commit any of the above offenses, regardless of where the complicity occurred.

In accordance with law, any student, 16 years of age or older, who has been convicted or adjudicated delinquent for committing the following offenses may be subject to permanent exclusion:

Rape, gross sexual imposition or felonious sexual penetration;

Murder, manslaughter, felonious or aggravated assault;

Complicity to commit offenses described in paragraphs A and B, regardless of where the complicity occurs.

**Add.28**

EXPULSION

If all other attempts to modify student behavior are unsuccessful, or a serious violation of the Code of Conduct is committed, the student may be recommended for expulsion from school. If a student is expelled, the length of the expulsion may be up to eighty (80) school days, and in some cases for an entire year. Expulsions may extend into the following semester or school year. Schoolwork missed as a result of expulsion may not be made up.

## DUE PROCESS AND RIGHT OF APPEAL

When a student is being considered for an Out-of-School Suspension by the superintendent, principal, or other administrator:

The student will be informed in writing of the potential suspension and the reasons for the proposed action.

The student will be afforded an opportunity for an informal hearing to challenge the reason for the intended suspension and to explain their actions.

An attempt will be made to notify parents or guardians by telephone if a suspension is issued.

Students may be permitted to make up class work, tests, papers, and/or major projects missed while serving Out-of-School Suspension for full credit. If the assigned school discipline is served entirely in the school setting, it will not require any notice or meeting or be subject to appeal.

The pupil, parent, guardian, or legal custodian may file an appeal of the administrative decision to suspend or expel a pupil to the Board of Education or designee by filing a notice of appeal in writing with the treasurer within 14 calendar days of the formal written notice of suspension or expulsion to the parent, guardian, or custodian of the pupil. Failure to timely file an appeal in this manner waives any right to appeal the suspension or expulsion.

## DANCES

For high school, dances are open to district students only with the exception of prom and homecoming(s). All dances are open to students in grades 9-12 only. All other guests must be pre-approved by the administration. Some dances may be designated as advance ticket sales only.

The sponsoring organization is expected to assist with cleanup after the dance. Expectations for both middle and high school students include appropriate dancing (administration has a right to determine what is appropriate or not), beverages and food are not permitted in the gym, once students leave, they are not permitted to return, and chaperones are required at all school dances.

High school students and their guests attending dances will acknowledge the following:

Dance admission fees are non-refundable.

Use or possession of tobacco, drugs, alcohol, and any mind-altering substances are not permitted for the protection and safety of everyone.

The parking lot is off-limits unless students are entering or leaving the dance. Loitering will not be permitted.

There are no re-entries. Once the student leaves the dance, they may not return.

**Add.29**

Students will be required to demonstrate good character, maintain high community standards, follow all dance rules, and be courteous to all students and chaperones.

Sexually explicit or dangerous dancing will not be permitted at any time. Sexually explicit dancing includes: freaking, grinding, inappropriate or vulgar backside dancing or any other type of dancing which could be construed as provocative or vulgar. Dangerous dancing includes violent or "mosh pit" style dancing.

Any deviation from these rules may lead to removal from the dance and/or appropriate school consequences. The purpose of this code of conduct is to promote healthy, safe, and enjoyable dances for all students. The above behavior expectations are designed to ensure a positive dance environment.

## DRIVING REGULATIONS

In the interest of student safety, provisions have been made to provide bus transportation for all students to and from school. Those students granted permission to operate a vehicle should understand that driving their vehicles to school is a privilege that may be revoked by the school authorities in the event a student violates any of the guidelines pertaining to the Driving Regulations. In order to obtain a parking permit, students may be placed in the random drug testing pool. The Olentangy Local Schools assumes no responsibility or liability for injuries to persons or for damage to or loss of contents from any vehicle while on school property.

- Any student wishing to drive to school must abide by all applicable state laws and the following rules:
- Students with a probationary license must obey all applicable restrictions.
- Students must observe a proper speed while on the school grounds.
- Students must park only in the designated parking spots within the proper student parking lot.
- Students may not park in faculty or visitor parking lots.
- Students are not to drive on the grass.
- School buses have the right-of-way at all times.
- Driving privileges may be denied for violation of Attendance Policies (to include absences, tardies and/or leaving school without permission).
- To be issued a parking permit, students are to complete a Pupil Driving Permit Registration and Agreement form. A parking fee will be charged. The permit must be displayed from the front mirror of the car that is being driven to school.
- Violation of these rules may result in suspension of driving privileges for a period of time to be determined by the principal or designee.

Loss of Driving Privileges: The superintendent of the school district may revoke driving privileges if a student of compulsory school age has:

Been absent without legitimate excuse for more than ten consecutive days or a total of at least fifteen school days;

Withdrawn from school for a reason other than a change of residence and is not enrolled in and attending an approved program to obtain a diploma or its equivalent;

**Add.30**

Been suspended or expelled from school and the reason for the suspension or expulsion is the use or possession of alcohol and/or drugs; or,

Been suspended or expelled from school pursuant to Ohio Revised Code 2923.122 (A), (B), (D) and (E) (1), knowingly conveying, or attempting to convey, a deadly weapon or dangerous ordnance, knowingly possessing a deadly weapon or dangerous ordnance on school premises, in a school or school building, at a school activity or on a school bus.

The superintendent may be required to notify the registrar of motor vehicles and the juvenile judge of the county. The registrar of motor vehicles is required to suspend the temporary instruction permit or driver's license of the student who is the subject of the notice. If a temporary permit or license has not been issued for that student, the registrar is prohibited from issuing a temporary permit or a license.

Denial of privileges will remain in effect until the student reaches age 18, or until the denial is terminated for another reason allowed by law. The student will have an opportunity to present evidence that they have not been habitually absent without legitimate excuse.

## HALL PASSES
No student may be out of his assigned classroom without an approved pass.

## QUESTIONING OF STUDENTS BY LAW ENFORCEMENT
The school is committed to protecting students from harm that may be connected with the school environment and also recognizes its responsibility to cooperate with law enforcement and public child welfare agencies. While the school believes these agencies should conduct their investigations off school property if possible, investigations can take place at school in emergency situations or if the violation being investigated occurred on school property.

Before students are questioned by law enforcement or child welfare agencies as witnesses or suspects in an alleged criminal violation, the building administrator will attempt to contact a parent prior to questioning and shall remain in the room during questioning.

If a student is questioned as the subject of alleged child abuse or neglect, the building administrator will attempt to contact a parent prior to questioning, and the parent (or a designated guidance counselor) will remain in the room during questioning. If the agency investigating the alleged child abuse or neglect suspects the parent is the perpetrator, neither parent will be contacted prior to questioning, but the building administrator (or a designated guidance counselor) will remain in the room during questioning. If law enforcement or children's services agency removes a student from school, the building administrator will notify a parent.

## SCHOOL'S RIGHT TO SEARCH
Lockers supplied by the school and used by the students are the property of the Board of Education. Therefore, student lockers and the contents of the lockers are subject to random search at any time without regard to whether there is a reasonable suspicion that any locker or its contents contains evidence of a violation of a school rule or criminal statute. Random searches of lockers may include the assistance of dogs trained to detect the presence of drugs.

Search of a student and the possessions of a student may be conducted at any time the student is under the jurisdiction of the Board of Education if there is a reasonable suspicion that the student is in

## Add.31

violation of school rules. A search may also be conducted to protect the safety of others. In addition, the contents of a cell phone or other electronic devices may be searched if there is a reasonable suspicion that it may have been used in an activity prohibited by the Code of Conduct. Failure to comply with a reasonable search will be considered insubordination.

## TRANSPORTATION

### BUS RULES

Notice to students: Buses are equipped with video and audio surveillance equipment that may be used in the investigate Code of Conduct violations. Please refer to the Security Recording section of this handbook for additional details. Students may receive discipline as a result of what is recorded.

The following bus regulations are considered recommended guidelines to correct behaviors that could create an unsafe environment. Administrative responsibility prior to the first written conduct report: Building administrators will assure that each student receives a copy of the Student Handbook (with Bus Rules included) at the beginning of each school year or upon enrollment of a new student.

It is our privilege and pleasure to furnish students with the safest transportation possible as they travel between home and school and on school-related trips. To protect all students riding Olentangy school buses, safety precautions are a must! Your help is needed because safety is everyone's responsibility!

All students are to understand that the bus driver is in charge of the bus at all times. Any student who repeatedly violates the safety precautions and/or conduct rules may be denied the privilege of riding the bus and is subject to other disciplinary action to be determined by the principal and/or transportation director.

To that end, the following conduct rules comply with Ohio Administrative Code 3301-83-08 and are called to your attention:

- To provide maximum safety, district procedure requires all students to arrive at the bus stop five (5) minutes before the bus is scheduled to arrive. If a student is not at the designated place of safety (at least 20 or more steps away from the bus stop), the bus is not required to wait.
- Students must wait quietly in a location clear of traffic and away from the bus.
- Student behavior at bus stops must not threaten life, limb, or property of any individual.
- Each pupil shall be assigned a designated place of safety on the residence side of the roadway on which the vehicle is scheduled to stop: The driver must account for each pupil at the designated place of safety before leaving. Pupils are not to proceed to their residence until the school bus has departed the area.
- The driver must use an approved hand signal and eye contact with students outside the bus at any stop where students must cross the roadway in front of the bus.
- Students must go directly to an available or assigned seat.
- Students must remain seated, keeping aisles and exits clear.
- Students must observe classroom conduct.  All school rules apply on the bus.  Obey the driver promptly and respectfully.
- Students must be courteous and respectful to fellow students and to the bus driver.
- Students must not engage in loud talking or laughing, excessive horseplay, or fighting.

- Unnecessary confusion diverts the driver's attention and might result in a serious accident.
- Students must not use profane or abusive language.
- Students must refrain from chewing gum, eating, and drinking on the bus except as required for medical reasons.
- Students must not use tobacco in any form or alternative nicotine product. This includes any vaping device. (Ohio Administrative Code 3301.83.08 and Ohio Revised Code §2151.87).
- Students must not have alcohol or drugs in their possession on the bus except for prescription medication required for student.
- Students must not throw or pass objects on, from or into the bus.
- Students may carry on the bus only objects that can be held in their laps. No living creatures are permitted.
- Students must treat bus equipment as one would treat valuable furniture in their home. Vandalism will not be tolerated. Keep the bus clean and sanitary.
- Students must not extend any part of their bodies out of the bus windows.
- Students are to remain absolutely quiet at railroad crossings until the bus has completely crossed and the driver says it is OK to talk.
- Students must leave or board the bus at locations to which they have been assigned unless they have written parental and administrative authorization to do otherwise.

Using cellular phones, wearable technology, or electronic devices on an Olentangy school bus will be determined at the driver's discretion. Students permitted to use their cellular phones or electronic devices will do so for personal use only. Students are not permitted to share the content of cellular phones or electronic devices and taking photographs or videos is strictly forbidden. When a student is listening to audio content, headphones or earbuds are required. The use of an external speaker is prohibited. In the case of driver distraction, the driver is authorized to confiscate the cellular phone or electronic device until arrival at the school or the student's bus stop.

Driver's responsibility prior to the first written conduct report:

Drivers will confer with the student.

Drivers will confer with the student, change the student's seating assignment, and call the parents.

**Level I (Minor Infractions):** Level I behaviors are those that disrupt the driver's concentration, or behavior that may cause harm to the student or others.

Examples of Level I infractions are: loud talking (at any time), or talking at railroad crossings, moving around the bus/out of the seat, pushing/touching/disrupting others, repeated tardiness to the bus, disrespect to other students or the driver, harassment of other students, not following the reasonable request of the driver, use of profanity, possession of a match or lighter, eating or drinking (food or gum) on the bus, tampering with emergency equipment or doors, littering/throwing objects form the bus and/or any other infraction of the building's student behavior code.

**Recommended Consequences for Level I infractions**

First Written Report – principal action

Second Written Report – 3 days off the bus

Third Written Report – 5 days off the bus

Forth Written Report – 10 days off the bus

**Level II (Major Infractions)**: Level II behaviors are those that are severe in nature or that directly or indirectly endanger the student or other students, the driver, or the public.

Examples of Level II infractions are: the threat of violence to the driver or other school employees, the use of profanity directed to the bus driver, igniting a match or lighter, possession of an incendiary device (smoke bomb, firecracker, cherry bomb, sparkler, etc.), fighting/assault, possession of a weapon, vandalism or arson, theft, inappropriate physical contact, and/or any action resulting in injury of treat of injury.

**Recommended Consequences for Level II infractions**

First Written Report – principal action

Second Written Report – 5 days off the bus

Third Written Report – 10 days off the bus

Fourth Written Report – expelled

**FOLLOW-UP COMMUNICATION**

Following the disciplinary action taken with a student, it is the administrator's responsibility to inform the parent, the transportation supervisor and/or transportation specialist of the disciplinary action taken. It is then the transportation supervisor or transportation specialist's responsibility to inform the driver of that action.

**DESIGNATED PLACE OF SAFETY**

All students who ride a school bus are assigned a designated place of safety on the street's residence side of the street. The reason for this is by law, the driver must account for each student upon arriving and departing the bus stop. In order to do that, students must be at their place of safety before the bus arrives and must remain there until the bus departs after dropping them off. Each year the bus driver will notify your student about their designated place of safety. We ask for your support in helping us teach your student to adhere to the driver's instructions. Below is a description of how a student should approach a school bus from their driver assigned designated place of safety.

**IF YOUR STUDENT CROSSES THE STREE TO APPROACH A BUS**

Please use these instructions to help your student stay safe while catching the bus.

**Morning Pick Up**

**WAIT** for the bus at the designated place of safety, at least 10 feet away from the bus.

**WATCH** for the driver's hand signal.

When the driver gives signal, **CHECK** for traffic then walk straight across the road 10 feet away from the bus to allow the driver to see students at all times.

**Add.34**

**ENTER** the bus and promptly sit in assigned seat safely.

**Afternoon Drop Off**

**STOP** alongside the roadway, 10 feet from the front of the bus. LOOK for the driver's hand signal.

**STOP** at the front edge of the bus. **LOOK** for cars: left, right, left.

**STOP** at your designated place of safety.

**WAIT** for the bus to depart, then proceed to residence.

**IF YOUR STUDENT DOES NOT CROSS THE STREE TO APPROACH A BUS**

**Morning Pick Up**

**WAIT** for the bus at the designated place of safety, at least 10 feet away from the roadway.

**WAIT** for the bus to stop completely, door to open and for the driver's hand signal to board the bus.

**ENTER** the bus and promptly sit in assigned seat safely.

**Afternoon Drop Off**

**WALK** to designated place of safety, at least 10 feet away from roadway.

**WAIT** for the bus to depart, then proceed to residence.

## BUS PASSES

A request from a parent/guardian is required in order for a student to ride a different bus or get off at a different stop. The request must be submitted at the beginning of the school day to the appropriate designated party. The student will receive a prepared pass before the end of the school day.  If a student does not have a Bus Pass, they cannot ride home on a different bus or get off at a different stop. Students will not be dropped off at other than board-approved bus stops. Bus passes will be approved contingent upon available seating, timeliness of request, and/or discretion of the building administrator or designee.

## CURRICULUM, INSTRUCTION, AND ASSESSMENT

Olentangy Local Schools offers many services to ensure equal opportunity for all children, including enrichment services, early childhood education, academic intervention, reading support programs, services to support English language learners, home instruction, special education, and related services such as speech and language therapy, physical therapy, occupational therapy, adapted physical education services, psychological services, mental health services, and transportation. Support is also available through our school counselors, school nurses, social services, and alternative education opportunities.

The Board of Education furnishes all necessary instructional materials. However, there may be a fee associated with some courses as identified in the course guide and fee schedule. Each student is responsible for all instructional materials loaned to them and is expected to return all instructional materials at the end of participation in the course. Students will be responsible to pay for any instructional materials that are lost, destroyed, stolen or damaged.

## ALTERNATE EDUCATION PROGRAMS

**Olentangy Academy: Supporting Individualized Success (OASIS)**

The Olentangy Local Schools is proud to offer OASIS, a unique, student-centric educational program for families who are looking for an alternative option to the traditional school setting. OASIS provides students with customized online learning experiences, academic support in a setting with low student-to-teacher ratio, intensified career and college preparation, readily available adult mentoring, and individualized service-learning opportunities. OASIS uses best practices, including research-based methods of connecting with and supporting students in their academic and developmental growth.

**Olentangy Academy: Science, Technology, Engineering, and Mathematics (STEM)**

The STEM program at Olentangy Academy is focused on an integrated, transdisciplinary approach to teaching and learning. Students will be working with local business and industry on design challenges to provide authentic, hands-on learning experiences that are directly connected to what they are learning in their math, science, English, and engineering course. Students will start their day at Olentangy Academy and in the afternoon will be transported back to their home high school for lunch and three additional periods. Applications for Olentangy Academy are due at the end of January and are available on all middle school and high school websites.

## CLASS SCHEDULES

Schedules are provided to each student at the beginning of the school year or upon enrollment. Schedules are based on the student's needs and available class space. Any changes in a student's schedule should be handled through the guidance office provided they follow the regulations listed below. Students may be denied course enrollment due to lack of available space or the need for the student to pass prerequisite courses.  Students are expected to follow their schedules. Any variation must be approved with a pass or schedule change.

**Due to commitments for staff employment/assignments and the ordering of textbooks and other supplies, no schedule changes can be made after June 1st except for the following reasons:** mechanical error changes, changes necessitate by failures, class balancing (guidance and administrative), subject-

level changes (teacher recommendations), addition of class in lieu of study hall same period, and/or administrative (teacher/guidance) recommendation.

**If a student wishes to appeal the schedule change, the following steps will be adhered to:**

- Appeal Form must be obtained from the student services office.
- Teachers, parents, and students must properly sign the Appeal Form.
- The form must be returned to the student services office for consideration by the Appeal Committee.
- The school counselor will then notify the student of the committee's decision.
- Schedule change appeals must be submitted by the end of the 25th day of the school year.

**If a student is permitted to withdraw from a course after the beginning of the school year, the student may receive a Withdraw Pass "WP" or withdraw fail "WF" on his/her transcript.**

## SCHOOL COUNSELOR SERVICES

Should a student desire to talk with a school counselor, they should make an appointment with Student Services in advance. Students will be given appointments during study halls only. No student should miss a scheduled class unless they do not have any study halls, or an emergency exists. Student Services will also designate office hours for walk-in students during lunch.

The school counselor offices are located in Student Services in the high school. A student might want to see a school counselor concerning the following: schedule changes, career information, college information, test information, study help, job opportunities, personal problems, high school program, summer school, transcript requests, financial and other.

## COLLEGE CREDIT PLUS (CCP)

Students in grades 7-12 may enroll full- or part-time in a post-secondary institution to take courses for high school and/or college credit. A post-secondary institution or college is defined as any state-assisted college or university described in the Ohio Revised Code or any nonprofit institution holding a certificate of authorization. The Board will approve participation by students who apply to the participating college or university (institute of higher education or IHE) and meet the IHE's and relevant academic program's established standards for admission, enrollment, and course placement.  For more information regarding College Credit Plus (CCP), visit our website and refer to the Olentangy Local Schools High School Course Planning Guide. Click on the following link to read additional College Credit Plus information:  Department of Higher Education College Credit Plus.

Student Code of Conduct in CCP Settings: Students enrolled in CCP courses remain responsible for their behaviors like traditionally enrolled students according to Olentangy policy. In addition, CCP students are also accountable to the code of conduct of the post-secondary institution in which they are enrolled. Olentangy recognizes that an effective educational program is one that provides opportunities for all students to customize aspects of their learning around needs and interests.

## CREDIT FLEXIBILITY

The district's Credit Flexibility Plan offers options to students to earn high school credit by: testing out or showing mastery of course content; pursuing an educational option and/or an individually approved option; and/or any combination of the above.

**Add.37**

If a student is using Credit Flexibility to receive equivalent graduation credit, they must apply for and receive approval from the school district in advance. Approved credit awarded through this policy will be posted on the student's transcript and count toward a student's grade point average (GPA), class rank and as graduation credit in the related subject areas or as an elective. The school district will include details of the Credit Flexibility policy and program on the district website.

## EQUITY AND INCLUSION PROGRAM

Our equity and inclusion program supports students, families, and teachers by educating and promoting understanding, exposure, and acceptance of individual differences. Every school in our district has a diversity liaison who runs an open student group focused on these principles, as well as helping students understand their identity, build friendships across cultures, and provide service to others. If you are interested in becoming involved with the program or if you would like assistance in this area, please reach out to your school's diversity liaison or contact Peter Stern, Assistant Director of Equity and Inclusion at peter_stern@olsd.us.

## FIELD TRIPS

The Board of Education recognizes that field trips, when used for teaching and learning integral to the curriculum, are an educationally sound and important ingredient in the instructional program of the schools (Policy 2340-Field and Other District –Sponsored Trips). In order for your child to benefit from these activities, appropriate behavior from all students is necessary. Olentangy Local Schools reserves the right to prohibit students from attending field trips because of disruptive behavior.

Parent permission is required in advance of field trips. Students will travel by school vehicles, but the Board of Education authorizes the use of incidental transportation by private vehicle when necessary. Students will only be released during the course of the trip to parents or guardians. These releases should be arranged in advance by submitting a written request to the teacher or adviser in charge of the trip. In addition, parents will be asked to sign out their child at the time of departure.

## GIFTED SERVICES

The state of Ohio requires school districts to identify students for potential areas of giftedness.  Students are identified as gifted in cognitive ability, specific academic achievement areas, and/ or visual/ performing arts areas through state approved assessment procedures and creative thinking through state approved assessment procedures. Olentangy Local Schools provides a continuum of services to support the varying instructional and social emotional needs of gifted learners.  For additional information, visit Olentangy's Gifted Services webpage.

## LIBRARY/MEDIA CENTER

Each school has a library/media center to develop students' information literacy, media literacy, and technology literacy. Library materials which are borrowed by students should be returned in good condition in a timely manner and lost materials should be paid for so that they can be replaced.

## PE WAIVER

In accordance with Section 3313.603 of the Ohio Revised Code, students in grades 9-11 may be excused from all physical education course requirements by participating in district-sponsored interscholastic athletics, marching band, cheerleading, show choir, or JROTC for at least two seasons (or two full years for JROTC). Students in grade 12 who have not completed the waiver requirements or taken a physical

education course will be automatically enrolled in physical education their senior year. The Olentangy Local Board of Education shall not require the student to participate in a physical education course as a condition to graduate. However, the student shall be required to complete one half-unit, consisting of at least 60 hours of instruction, in another course of study.

## WORK PERMITS

All working students are required by the State of Ohio to have a work permit up to the age of 18. You may obtain information and an Application for Minor Work Permit from the school office. The Application for Minor Work Permit is to be filled out by the student and signed by a parent or guardian. The employer will complete the Pledge of Employer portion of the permit application. The Physician's Certificate for Minor Work Permit must be completed and signed by a physician. If the student has a sports physical on file for the current school year, a copy will be accepted in lieu of a physician's signature. Once the form has been completed by the student, employer, and physician, the student will return the form to the school office where they will process the application and provide the student with a valid work permit signed by a school official. Students working without permits place their employers in jeopardy of legal action by state authorities.

## TECHNOLOGY USAGE POLICY

Students are encouraged to use the school's computers, network, internet connection, and their assigned student account(s) for teacher assigned, educational work. All references to schools in this section will mean any school in the Olentangy Local School District. The term computer or computer equipment includes but is not limited to electronic devices, personal or school owned, that are used on school property (including on district-owned vehicles) or during district-sponsored trips. Student accounts are defined as accounts provided for student use by the district or a teacher to access resources or materials to complete educational work either within a school building or while at an offsite location.

Students are responsible for their behavior and communication on the network and while using any student account regardless of location. Transmission of any material in violation of any State or Federal law or regulation, or Board policy is prohibited. Unauthorized or inappropriate use of the network or student accounts, including any violation of these rules, may result in cancellation of privilege, disciplinary action consistent with the Student Code of Conduct, and/or civil or criminal liability.

Parents or guardians and students are advised that the Board makes every effort but may not be able to technologically limit access to only those services that have been authorized for the purpose of instruction, study, and research related to the curriculum. Use of student accounts or equipment which takes place on an internet connection other than the Board's will not inherently contain equivalent protections. It is impossible to guarantee students will not gain access to information and communications that they and/or their parents or guardians may find inappropriate, offensive, objectionable, or controversial regardless of internet connection used. No privacy in communication over the internet and the network is to be expected.

Student use of the district's computers, network, accounts, resources, and internet services (Network) are governed by district Policies and Administrative Guidelines 7540.00 (Technology), 7540.02 (Web Content, Services, and Apps), 7540.03 (Student Education Technology Acceptable Use and Safety) as

well as the Student Code of Conduct. Student-created web content, services and apps are subject to Policy 5722 - School-Sponsored Student Publications and Productions.

The use of Artificial Intelligence (AI) or Natural Language Processing (NLP) sites or services by students is governed by Board Policy 7540.03 Student Acceptable Use and Safety.  Students should be aware of the guidelines for the appropriate use of these services and the expectations for academic integrity.

In order to verify compliance with these guidelines, the Board reserves the right to monitor, review, and inspect any (not all encompassing): directories, files, documents, messages, and/or network activity.

If these items are residing on, sent through, or created using the network or a student account. Messages relating to or in support of illegal activities will be reported to the appropriate authorities.

Students using computers are expected to abide by the following rules:

Students shall only access district resources by using their assigned account. Use of another person's account or password is prohibited. Students may not allow others to utilize their password.  Students will log out of their accounts when they are finished using a device.  If a previous session is found logged in under another student's account, it is expected that the previous account is logged off and the next student will properly log in under their own account.

Students shall not intentionally seek out, obtain copies of, or modify data, or passwords belonging to other users. Students may not portray or imitate other user's accounts.

Students are permitted to use networked software and school-supplied software. Programs written by the student, which are part of an assignment in a school's course of study, may be ran, as required, for that course of study's requirements with teacher supervision.

Students shall not download programs from the internet, nor may they copy programs from any removable device or other outside media. Students may not install or delete programs, extensions, or apps on the school's computers without express permission.

Students shall not use the internet or network to engage in hacking or other unlawful activities. These activities may include but are not limited to privilege escalation, exploitation of system vulnerabilities, data harvesting, or user impersonation.

Students are not permitted to perform security or penetration testing on the district network for any reason without explicit permission from the technology department. This can include network mapping, scans, vulnerability scanning or other forms of reconnaissance.

Students who discover flaws or vulnerabilities in the district network or systems will utilize responsible reporting practices and notify the district technology department. Use of discovered vulnerabilities for malicious or unauthorized activities is prohibited.

Students shall not create keyboard macros in Microsoft Word or any other program. Macros written by the student which are part of an assignment in a school's course of study may be run, as required, for that course of study's requirements with teacher supervision.

Students should only use computer programs or websites approved by the classroom teacher.

The district staff may review computer files, messages, or other communications that are created by the student. Material may be reviewed for grading, appropriate content, or misuse. It may also be reviewed for any harassing or threatening material (e.g., cyber bullying), trade secret protection and/or any vulgar or obscene content.

Students may utilize district technology to participate in online learning or related group discussion as directed by teachers. This may include the use of district-approved technology, such as Microsoft Teams, to chat or communicate with staff and other students. Students will utilize applications as directed and should practice proper digital citizenship including not disrupting other students, participating in cyberbullying, using profanity, or making transient threats of harm.

A teacher may authorize the copying of student-created work to a removable device or other outside media. The use of a removable device or other outside media is not permitted without permission from a teacher.

Students may not have food or drink when working on school computers.

All copyright laws are to be enforced. Illegally downloading, displaying, or sharing copyrighted works such as movies, songs, books, or games is prohibited.

Students are not to unplug or change any computer device or network connections.

Students are not to change any display screen settings.

Students are not to change any program's toolbars or settings.

Students are not to add or delete any program icons on the desktop or Start Menu.

Students are not to modify or remove any identifying labels on computer equipment.

Students are not to modify or remove any printer settings.

Students are not to remove, disassemble, modify, damage, or destroy any components of a computer, networking device, or other piece of technology.

Students will not remove technology resources from their assigned building without recorded permission from building leadership or the technology department. Any equipment approved to be used offsite will adhere to all aspects of this technology usage policy and the device should only be used for classwork or designated needs. Systems should not be considered a replacement device through which to conduct personal activities.

Malicious use of computers or the school's network to develop programs that harass other users or infiltrate any other computer system and/or damage the software components of a computing system is prohibited. Students may not use computers or the school's network in such a way that would disrupt the network's use by others.

Students are to advise school staff when they observe any violation of the school's policy for the use of the school's computers.

Students are to advise school staff when a school's computer malfunctions in any way (example: a program is not opening or closing properly) the teacher will notify the technical support staff so that the computer can be repaired.

The possession of; or the taking, disseminating, transferring, or sharing content including but not limited to nude, obscene, pornographic, lewd, or otherwise illegal images or photographs, whether by electronic data transfers or other means (commonly called texting, emailing, sexting, etc.) may constitute a crime under state and/or federal law. Any person possessing, taking, disseminating, or sharing nude, obscene, pornographic, lewd, or otherwise illegal images or photographs may be punished under this code of conduct and may be reported to the appropriate law enforcement agencies.

Students should practice proper digital citizenship and digital civility while interacting with others on the network. Communication on the network that threatens, harasses, or bullies others should be reported to the building administrator or another trusted adult.

Students should not make transient threats of harm using district technology, applications, or accounts. Any threat of harm may be reviewed, and disciplinary actions taken.

The use of electronic devices for recording purposes must have prior approval.

Students may not send unsolicited or unwanted documents, messages, images, or data to other students or staff. Receiving unsolicited or unwanted content should be reported to staff or building leadership. Content found to violate the Student Code of Conduct may result in disciplinary actions being taken.

Students are permitted to use their cellular phones or electronic devices in designated areas during designated times only. Designated times and areas will be determined at the discretion of the building administration. Students using their cellular phones, wearable technology, or electronic devices at times other than designated or in locations other than designated may be subject to school discipline. Contents of cell phones, wearable technology, or electronic devices may be searched if there is a reasonable suspicion that it may have been used in an activity prohibited by the Code of Conduct. At the building leadership's discretion, students confiscated cellular phones, wearable technology, or electronic devices may only be returned to their parent or guardian.

Wearable devices such as smartwatches, fitness trackers, or devices with similar functionality should only be used in designated areas or during designated times as determined by building administration. Staff may ask students to remove or disable wearable technology depending on classroom or building activities or if the device serves as a distraction/disruption to learning activities. If parents or guardians feel they need to contact or communicate with the student while class is in session, contact should go through the building's main office as opposed to messaging or calling directly to a wearable device.

Olentangy will provide access to filtered wireless internet and the myOLSD (Schoology, PowerSchool, Google Drive, district email, etc.) for personally owned computing devices for educational purposes. The Technology Usage Policy fully applies to personal computing devices. Configuration changes, installed software, or tools which violate the Code of Conduct or negatively impact the network may result in the loss of privilege to utilize a personal device. This privilege may be restored when the device is determined to no longer violate this policy or negatively impact the network.

**Add.42**

District computers should not be used for playing games unless sanctioned through a classroom or club activity and only during times directed by a club advisor or teacher. If gaming activities are disruptive or negatively impact the learning environment, they may be blocked.

Students are not allowed to circumvent the internet filter or click-through warnings. This includes through the use of Virtual Private Network (VPN) providers or internet proxies. Personal computing devices are not to be attached to the Olentangy network other than the wireless network provided for student use. Computing devices that have been determined to be a threat to network integrity will be immediately removed from the network and will not be allowed to connect until the technology department is assured that the cause for removal has been resolved.

As a condition to using Olentangy's wireless network, students should have no expectation of privacy in their use of the network, and by agreeing to the handbook awareness statement specifically understand that their personal computing device may be confiscated and searched anytime school officials have reasonable suspicion of violations of the Technology Usage Policy or any other Board policies, guidelines, or laws.

Violations of these rules may result in disciplinary action, including but not limited to detention, Wednesday School, Saturday School, Suspension Alternative Program and/or suspension. Violations also may result in removal from the wireless network, confiscation of equipment, notification to the appropriate legal authorities and/or other legal action may be pursued.

Student speech online is a protected right; however, this right is not unlimited. Student speech which occurs on school grounds or through the use of district technology should adhere to the Student Code of Conduct. Statements of cyberbullying, threats, harassment, or other speech that impacts the schooling environment or violates the Code of Conduct can be addressed by the district.

Student speech that takes place outside of school grounds and utilizes personal accounts or technology are the responsibility of the parent or guardian to monitor or address. Student speech which occurs off school grounds but creates a severe disruption to the school environment can also be addressed by school administration or applicable law enforcement.

Parents and guardians should discuss proper and appropriate use of social media or other services with their students and be aware of their student's actions online. Student speech that occurs on public social media or other sites or services falls under that platform's terms of service. The district does not have direct control over the public speech of its students and cannot directly remove content from public services. If the district becomes aware of inappropriate accounts or content, the content may be reported to the social network or site, but this does not guarantee the removal of the content in a timely fashion or at all.

Use of the internet and any information procured from the internet is at the student's own risk. The Board makes no warranties of any kind, either express or implied, that the functions or the services provided by or through the network will be error-free or without defect. The Board is not responsible for any damage a user may suffer, including, but not limited to, loss of data, service interruptions, or exposure to inappropriate material or people. The Board is not responsible for the accuracy or quality of information obtained through the internet. Information (including text, graphics, audio, video, etc.) from internet sources used in student papers, reports, and projects should be properly cited as a source or

reference material. The Board will not be responsible for financial obligations arising through the unauthorized use of the network. Students, parents, or guardians will indemnify and hold the Board harmless from any losses sustained as the result of misuse of the network by the student. Use of the network by students may be limited to those students whose parents or guardians have acknowledged the Student Handbook and this Technology Usage Policy.

The use of technology outside of the district network (for example a home internet connection or cellular network or hotspot) may not provide the same levels of filtering, monitoring, or protections as outlined in this handbook. Parents and guardians should be aware of these limitations and ensure adequate expectations are established for the responsible use of technology outside of the district network.

Please note Olentangy will not be able to provide technical support for personal computing devices. The district will not be responsible for lost, stolen, or damaged property whether it be by accidental or malicious means including but not limited to other users, viruses, malware, spyware, or bot traffic.

Technology Usage Agreement: If you do NOT desire for your child to use district-provided technology while at school, please submit a letter to your building principal. In the event that we do not receive this information, ALL students will be permitted to use district-provided technology according to the provisions listed in the Technology Usage Policy.

## GRADING

Olentangy High Schools have a standard grading procedure, as well as additional notations that indicate work in progress or incomplete work. In general, students are assigned grades based upon test results, homework, projects, and classroom participation. Each teacher may place a different emphasis on these areas in determining a grade and will so inform the students at the beginning of the course work. If a student is not sure how their grade will be determined, they should ask the teacher.

## CLASS RANK

The Board of Education authorizes a system of class ranking by grade point average, for students in grades 9-12. At the end of each semester of the freshman, sophomore, junior, and senior years, students will be ranked scholastically. The final grade will be used in specific subjects to calculate average.

## GRADE CLASSIFICATION

Assignments to grade level classifications are made on the basis of credits accumulated as follows:

Freshman must have completed 8th grade

Sophomore must have five credits

Junior must have ten credits

Senior must have fifteen credits

## GRADING INFORMATION

A student should receive a grade if enrolled for three or more weeks of the grading period.

Students receiving an "incomplete" must make up the work with a reasonable time or credit may be denied for the course. It is suggested the student be granted the same amount to time to make up the work, as they were absent from school. The time of the grading period may influence this guideline.

Counting each quarter letter grade as 2/5 and the exam letter grade as 1/5 of the total grade determine semester grades. (Example: first quarter = 2/5; second quarter = 2/5; exam = 1/5.). The final grade is determined by averaging the first and second semester letter grade.

Transfer credit – Only those grades on transcripts for AP courses and College Credit Plus courses will be converted to the weighted scale and quality points.

## GRADING SCALE
**High School Regular Grading Scale**

**Letter Grade = A**; Percentage = 93-100%; Point value = 4.0

**Letter Grade = A minus**; Percentage = 90-92%; Point value = 3.67

**Letter Grade = B+**; Percentage = 87-89%; Point value = 3.33

**Letter Grade = B**; Percentage = 83-86%; Point value = 3.00

**Letter Grade = B minus**; Percentage = 80-82%; Point value = 2.67

**Letter Grade = C+**; Percentage = 77-79%; Point value = 2.33

**Letter Grade = C**; Percentage = 73-76%; Point value = 2.00

**Letter Grade = C minus**; Percentage = 70-72%; Point value = 1.67

**Letter Grade = D+**; Percentage = 67-69%; Point value = 1.33

**Letter Grade = D**; Percentage = 63-66%; Point value = 1.00

**Letter Grade = D minus**; Percentage = 60-62%; Point value = 0.67

**Letter Grade = F**; Percentage = 0-59%; Point value = 0.00

**High School Weighted Grading Scale (AP & CCP Course Only)**

**Letter Grade = A**; Percentage = 93-100%; Point value = 5.0

**Letter Grade = A minus**; Percentage = 90-92%; Point value = 4.67

**Letter Grade = B+**; Percentage = 87-89%; Point value = 4.33

**Letter Grade = B**; Percentage = 83-86%; Point value = 4.00

**Letter Grade = B minus**; Percentage = 80-82%; Point value = 3.67

**Letter Grade = C+**; Percentage = 77-79%; Point value = 3.33

**Letter Grade = C**; Percentage = 73-76%; Point value = 3.00

**Letter Grade = C minus**; Percentage = 70-72%; Point value = 2.67

**Letter Grade = D+**; Percentage = 67-69%; Point value = 2.33

**Letter Grade = D**; Percentage = 63-66%; Point value = 2.00

**Letter Grade = D minus**; Percentage = 60-62%; Point value = 1.67

**Letter Grade = F**; Percentage = 0-59%; Point value = 0.00

## HIGH SCHOOL CREDIT BELOW THE NINTH GRADE

Olentangy Local Schools will award credit for all high schools courses taken prior to the ninth grade. In most instances, a grade of "P" (passing) benefits a student's cumulative grade point average. Therefore, students will receive a grade of "P" on their high school transcript for each high school course taken. If, prior to the end of the first semester of the student's senior year, the student and parent wish to change the "P" grade into an academic letter grade, the student and parent must request this change in writing. Upon written request, the "P" grade will be replaced with the final grade issued on the student's 8th grade report card.

Per Ohio law, students new to the district desiring such credit must provide their respective counselor the following documentation on their previous school's letterhead:  1) that the course which credit is being pursued was a high school course; and 2) that the course was taught by a teacher who held the appropriate secondary teaching license/certificate for the course.  Students electing to re-take any course will not receive high school credit or a grade for the course below the ninth grade.

**Add.46**

## NATIONAL HONOR SOCIETY

Qualifications:

Students must have attained 11th or 12th grade standing.

Students should secure an application from the National Honor Society (NHS) adviser.

Students applying to NHS must have attended an Olentangy high school at least two semesters prior to application.

Cumulative GPA must be 3.5 or better for membership eligibility and must be maintained to remain eligible.

Selection for membership is by a faculty council and is based on outstanding scholarship, character, leadership, and service. Once selected, members have the responsibility to continue to demonstrate these qualities.

## REPORT CARDS

All student report cards will be made available electronically to parents and students for quarterly grade reporting. A paper copy will not be mailed home unless specifically requested. Grade progress is available through PowerSchool. Dates are posted on the school calendar.

# GRADUATION

Typically, students will complete graduation requirements in four (4) years. In order to receive a diploma and graduate, a student must pass all assessment tests required by the Ohio Department of Education and Workforce (DEW) for graduation or the State-approved alternative pathway, meet the school requirements for basic course work, and earn the total number of minimum credits. For students enrolled in special education, the criteria for graduation and the extent of participation in the State-mandated assessment tests will be determined by their IEP team.

## DIPLOMA DEFERRAL

Social graduation is an opportunity for students with individualized education programs (IEPs) to participate in high school graduation ceremonies without obtaining an official diploma. Students with IEPs who have completed all academic requirements for high school graduation, but who have not yet completed their transition-related IEP goals may be eligible for social graduation. Students may participate in social graduation only upon the recommendation of their respective IEP teams. If social graduation is recommended, the student may engage in all aspects of the graduation celebration (e.g., wearing a cap and gown; sitting with the graduating class; having their name printed in the program and read aloud at the ceremony; walking across the stage to receive a faux diploma). Instead of receiving an official diploma, however, the student will receive an unsigned diploma or a certificate of participation.

## EARLY GRADUATION

Students desiring to accelerate their four-year high school academic program should contact the principal for approval. An Academic Acceleration Form obtained from Student Services should be completed prior to the parent/counselor/administrative conference.

**Add.47**

Requirements for early graduation include: scheduling accordingly in the spring of the sophomore year, plans to attend an institution of higher learning after graduation, a cumulative grade point average of 3.0 or higher, a required four credits of English.

## GRADUATION REQUIREMENTS

A diploma shall be awarded to students meeting the curriculum credit requirements and who achieve one of the following three options: a cumulative passing score with the required number of points in each area on end of course exams, earn the required points on the WorkKeys assessment and an approved industry-recognized credential, or earn a remediation-free score in English language arts and mathematics on the ACT or SAT.   Specific information regarding graduation requirements is available in the Course Planning Guide, which is posted on each high school's website.

## GRADUATE ACADEMIC RECOGNITION

Because of the competitive nature of the Olentangy high schools, students are not ranked for college admission purposes. The high schools will instead honor students based upon the following standards of achievement.

Students will be honored at commencement based on the following cumulative GPA scale:

- Summa Cum Laude        4.000 GPA and above
- Magna Cum Laude        3.800 to 3.999
- Cum Laude              3.670 to 3.799

Beginning with the class of 2020, the high schools will recognize as valedictorian(s) at the end of seven or eight semesters anyone who achieves the highest cumulative GPA in the class.  In order to be eligible, a student must have attended an Olentangy high school for their entire fifth through eighth semesters.

This ranking is used for certain senior honors.

Class rank shall be computed by the final grade in specific subjects.

The rank of the student will be determined by grade point average. All students receiving the same GPA shall receive the same class rank.

In recognition of the heavier burden of Advanced Placement classes, grade point averages shall be weighted by awarding up to 1.0 extra unit.

A student's grade point average and rank in class shall be entered only on their record and shall be subject to Board Policy 8330 on release of student records. A student's class rank is used for internal purposes and is not released to colleges and/or other institutions or agencies without prior written consent from the individual or their parents/legal guardians if the student is less than eighteen (18) years of age.

## POLICY ON ACADEMIC ACCELERATION, EARLY ENTRANCE TO KINDERGARTEN, AND EARLY HIGH SCHOOL GRADUATION

The degree to which academic content standards are met and the time it takes to reach the standards will vary from student to student. The Olentangy Board of Education believes that all students, including advanced learners, should be challenged, and supported to reach their full potential. For some advanced

learners, this can best be achieved by affording them access to curriculum, learning environments, and instructional interventions more commonly provided to older peers. The Olentangy Acceleration Policy 5408 provides students with opportunities for possible accelerated placement through early admission to kindergarten, individual subject acceleration, whole-grade acceleration, and early graduation from high school.

A teacher, administrator, gifted education specialist, school counselor, school psychologist, or parent/ legal guardian of the student may submit referrals for possible accelerated placement to the school principal. A student may refer themselves, or a peer through a district staff member who has knowledge of the abilities of the student. Accelerated placement is a team decision and includes a review of classroom performance and standardized testing history, information regarding student work habits, motivation and desire for acceleration, and possible additional assessments as needed. The acceleration process evaluates the academic, social, and emotional readiness of students in order to determine a placement to best meet the needs of the whole child.  Copies of referral forms for evaluation for possible early entrance, whole-grade acceleration and individual subject acceleration are available to district staff and parents at each school building and on the district website.

## TRANSCRIPTS
Students desiring a copy of their transcript should complete a Transcript Request Form available from Student Services. Please allow one week to process transcripts, scholarships, college applications, recommendations, etc.

# HEALTH AND SAFETY
## HEALTH REGULATIONS
Your child must meet county and state health regulations for entrance to school, including compliance with state immunization laws. The school nurse checks health records each year and will send you a reminder of the required immunizations your child still needs.

 Students will be excluded from school if the immunization schedule is not completed within 14 calendar days after the student's first day of school. Written statements of objection to immunizations due to parent's or guardian's philosophical or religious reasons are filed in the student's health folder. Medical exemption for immunization must be signed by the child's physician.

Parents are required by state law to fill out an Emergency Medical Authorization Form. The Emergency Medical Authorization form is online and should be completed at the time of enrollment and checked for accuracy at the beginning of each school year. A complete Emergency Medical Authorization Form must be on file with the school in order for a student to participate in any activity off school grounds, including field trips, spectator trips, athletic and other extracurricular activities, and co-curricular activities.

The Olentangy Board of Education wishes to cooperate fully with students, parents, and the medical profession to ensure that students receive any required medication during the normal school day at the time that it is required. It is preferred that medications be administered to students at home; however, it is also recognized that certain circumstances may necessitate administering medications during school hours. Guidelines have been established to maintain control of authorized drugs within the schools and to ensure the health and welfare of students.  In accordance with Ohio Revised Code §3313.713, all

medications unless medically prescribed to self-carry must be kept locked in a storage place and administered by school personnel. Only employees of the Board who are licensed health professionals or who have completed a drug administration training program conducted by a licensed health professional and considered appropriate by the Board may administer to a student a drug prescribed for the student.

A Physician's Medication Procedure Request Form and Parent's Medication Procedure Request Form must be completed, signed and on file in the office before any medication, including over the counter and essential oils will be given by the clinic staff. Children are NOT permitted to transport any medication to school. All medications must be brought to school by a parent or guardian and must be locked in a storage place unless medically prescribed to self-carry. This is critical to the health and safety of all children. In rare instances, a student may be allowed to carry certain prescription medications (e.g., asthma inhalers). If the physician deems it medically necessary for the student to carry a medication, the Physician's Medication Procedure Request Form must be signed and contain those instructions.

Middle and high school students are permitted to carry a one-day's supply of non-prescription medication, including essential oils, to self-administer if a Parent's Non-Prescription Medication Request form is signed by the parent and on file in the school office.

A parent note is required for elementary students to use cough drops at school. Cough drops must be supplied by the parent or guardian, kept in the clinic, and administered by the clinic staff. Medication forms are available in the school office and on the district website and expire at the end of each school year.

## ANIMALS IN SCHOOLS AND ON DISTRICT PROPERTY

Animals permitted in schools and elsewhere on district property shall be limited to those necessary to support specific curriculum-related projects and activities, those that provide assistance to a student or staff member due to a disability, those that serve as service animals as required by Federal and State law, or those that conduct random searches for illegal substances. All animals must meet veterinary requirements set forth in the State law and County regulation/ordinance.

The student's need for and use of a service animal must be documented in the student's individual education plan (IEP) or Section 504 Plan. A service animal is the personal property of the student and/or parents. The Board of Education does not assume responsibility for training, daily care, health care, or supervision of service animals. The Board of Education does not assume responsibility for personal injury or property damage arising out of or relating to the presence or use of service animals on district property or at district-sponsored events. For more information, please refer to board policy 8390- Animals on District Property.

## CONTROL OF CASUAL-CONTACT COMMUNICABLE DISEASES

Because a school has a high concentration of people, it is necessary to take specific measures when the health or safety of the group is at risk. The school's professional staff may remove or isolate a student who has been ill or has been exposed to a communicable disease or highly transient pest, such as lice (Policy 8450).

Specific communicable diseases include diphtheria, scarlet fever, strep infections, whooping cough, mumps, measles, rubella, and other conditions indicated by the Local and State Health Departments. Any removal will be limited to the contagious period as specified by the Delaware General Health District and the Ohio Department of Health).

In cases of communicable disease, a letter may be sent home and/or a notice may be passed on to the school community via email notification informing parents that a situation exists in their child's classroom. Because of the contagious nature of these conditions, it is important that you call the office if you find your child has been diagnosed with a communicable disease. If your child has head lice, it will be necessary for you to bring the student to be checked in at the clinic to verify that they have no live lice before they can be readmitted to school. The school nurse or designee will make the final decision on re-admittance to school.

## DISTRICT SAFETY PLAN
In case of an emergency, district personnel will follow the district's Safety Plan. This plan specifies steps to be followed should an emergency arise that threaten the well-being of students, staff and the public while utilizing school property. In addition to the steps outlined in the district's Safety Plan, our staff routinely trains on many of these procedures.

To ensure that the district has accurate contact information, please review the Back-to-School Forms and PowerSchool Update Instructions and update your account as needed.

## HEALTH SCREENINGS
In accordance with Ohio Department of Health requirements and guidelines, school health staff conducts periodic health screenings to detect abnormalities in hearing, and vision. Health screenings may also be conducted when a concern arises. A permission slip will not be sent home for parent permission in advance of the screening. Parents may opt out by completing and submitting the Vision and Hearing Waiver form each school year.

## HOMEBOUND INSTRUCTION
The school may arrange for individual instruction at home for students who are unable to attend school because of an accident, illness, or disability. Such instruction may be arranged upon receipt of documentation of the student's condition from a physician (Policy 2412-Homebound Instruction). For more information, contact the building administrator or guidance counselor.

## ILLNESS/INJURY
It is important that students are not sent to school if they experience(d) a fever (100.4°F or above), vomiting, diarrhea and/or a persistent cough within the last 24 hours. It is advisable to keep a child home until the child is symptom-free for 24 hours without benefit of any medication. If a child returns to school and remains ill, parents will be called. If you and the other people on your emergency contact list are unavailable, and therefore unable to be reached, please designate a person we can call temporarily in the event of an illness or accident and notify the office of this change in writing.

## MEDICAL CONCERNS
Notify the school nurse of any health concerns that impact your child's school day.  If your student is transported to school by bus, the bus drivers should also be provided with this information. Each year Food Service must have an updated statement from your physician documenting the specific food

**Add.51**

allergy and acceptable substitutes in order to make accommodations within the National School Breakfast and/or Lunch Program.

## NON-SMOKING / VAPING POLICY

The Ohio Department of Health prohibits smoking in all enclosed public places within the state. Olentangy Local Schools is committed to providing students, staff, and visitors with a smoke-free environment. Smoking and vaping is expressly prohibited in all Olentangy buildings, on school property, on a school bus, and at events occurring off school property if the student is at any school-sponsored, school-approved, or school-related activity or function, such as field trips or athletic events.

This non-smoking/vaping policy applies to staff, students, contractors, and visitors. Evidence of indoor smoking/vaping, including the ashes of cigarettes, cigars, pipes, other smoking equipment or products, or vaping paraphernalia (e.g., electronic cigarettes and vape pens) will result in disciplinary action. Additionally, the sale and/or marketing of cigarettes, tobacco products, e-cigarettes, vape pens, and all e-cigarette and vape pen paraphernalia, is prohibited.

## STAY SAFE. SPEAK UP!

Stay Safe. Speak Up! is a resource available to students to anonymously report bullying and other safety concerns. The link to Stay Safe. Speak Up! is in the student myOLSD portal, under Quicklinks on the home page of the district's website, and in the Student Resources section on the district website.

## SUICIDE PREVENTION AND MENTAL HEALTH RESOURCES

If you or someone you know is in crisis, please reach out to someone who can help. Don't wait, contact any staff member or administrator (see AG 5350).

The resources below are available to you if you feel you or someone in your household may harm themselves or someone else.

**Olentangy Stay Safe. Speak Up! hotline**

Website link: https://staysafespeakup.app/Welcome/district/OLSD

Call Hotline: 1-866-547-8362

**988 Suicide & Crisis Lifeline**

Website link: https://988lifeline.org/

Call Lifeline: Dial 988

**Toll-free number 1-800-273-TALK (1-800-273-8255)**

**988 Suicide & Crisis Lifeline Chat and Text**

You will be connected to a skilled, trained counselor in your area.

Website link: https://988lifeline.org/chat/

**National Domestic Violence Hotline**

Website link: https://www.thehotline.org/

# Add.52

Call Hotline: 1-800-799-7233 and TTY 1-800-787-3224

The resources below are available if you are feeling overwhelmed with emotions like sadness, depression, or anxiety.

**Disaster Distress Helpline**

Website link: https://www.samhsa.gov/find-help/disaster-distress-helpline

 Call Helpline: 1-800-985-5990 or text TalkWithUs to 66746

Find Treatment or Mental Health Providers in Your Area

**HelpLine**

Website link: https://helplinedelmor.org/

Call: 800-684-2324 or 740-369-3316

**Substance Abuse and Mental Health Services Administration (SAMHSA) Find Treatment**

Website link: https://www.samhsa.gov/find-help

**Mental Health Resources**

American Psychological Association – Website link: www.apa.org

National Alliance on Mental Illness – Website link: https://www.nami.org/Home

Mental Health America of Ohio – Website link: https://mhaohio.org/

NAMI Ohio – Website link: https://namiohio.org/

# GENERAL INFORMATION

## COPYRIGHT INFRINGEMENT

Email claims of copyright infringement to olswebmaster@olsd.us mail claims to the Communications Department: 7840 Graphics Way, Lewis Center, Ohio 43035.

## FEES

According to Policy 6152-Students Fees, Fines, and Charges, and as authorized by Ohio Revised Code §3313.642, the Board may need to levy certain charges to students to facilitate the utilization of other appropriate materials for curricular as well as co-curricular and extra-curricular activities. Any waiver of fees shall be made pursuant to Policy 6152.01. A list of course and workbook fees is available on the district's website. You may log into PowerSchool to view/pay your student's fee accounts and any outstanding fees.

Payments should be made in full by credit card online or by cash/check/money order to the school office. To view your fee account and make payments online, please go to your PowerSchool parent account and select Lunch and Fee Payments. If you are paying by check, please make it payable to Olentangy Local Schools. We appreciate your prompt attention to school fees.

Students with delinquent fees of any kind from a previous school year, or with delinquent fees of any kind during the current school year, are precluded from participation in extracurricular activities. Eligibility will be restored once all fees have been paid, or a payment plan has been established and the first payment has been received.

All delinquent fee balances must be paid in full in order for a student to receive a parking pass. In addition, transcripts of grades and credit may not be sent to another school system or to any institution of continuing education for a student with unpaid fees; and any such student will not be permitted to attend the graduation ceremony of Olentangy Local Schools per (Policy 6152). In addition, the student diploma will be withheld until all fees are paid in full.

## FEE COLLECTIONS AND FEE WAIVERS

If you are financially unable to pay your fees, you may obtain a fee waiver application in the school office.  Eligibility for the fee waiver is determined by the number of adult wage earners in the family and their combined income. This information, along with adult family members' social security numbers, must be given in writing to the school office in order to be considered for fee waiver.

The Olentangy Local School District outsources the collection of Non-Sufficient Fund (NSF) checks to the CheckRedi service. The district is happy to accept checks as payment, but every check must include your name, address, and phone number. Please keep in mind that when a check is provided as payment, it is an authorization by the check writer to either make a one-time electronic transfer from the account or to process the payment as a check transaction. In doing so, the check writer also authorizes CheckRedi to collect a $35.00 fee through an electronic fund transfer from the check writer's account if the payment is returned unpaid.  If you receive a notice from your bank about a non-sufficient funds check, contact CheckRedi at 800-239-1222.

## FOOD SERVICE

Olentangy schools participate in the National School Lunch Program, providing nutritious, well-balanced lunches meeting the Federal and state guidelines including but not limited to the current USDA Dietary Guidelines for Americans and the USDA Smart Snacks in School nutrition standards. The lunch program provides meals at free or reduced prices for qualified students. Applications are available on the district website or at any school office. You may apply at any time during the school year. For additional information, please refer to Policy and Administrative Guidelines 8500-Food Service & 8531-Free and Reduced-Price Meals.  Olentangy also participates in the School Breakfast Program, and the free and reduced-price program applies to breakfast as well.

Information regarding the breakfast and lunch program, including menus and prices, is available on the district website. Information can be found by selecting Food Service under the Department heading.

Students may pay with cash, check or they may utilize the debit card system which allows parents to put money on their child's account in advance to pay for meals. Deposits may be made online through the Lunch and Fee Payment section of PowerSchool parent accounts. Please refer to Administrative Guideline 8500D, Meal Charge Procedures, for current charging procedures.

If your child has a medically documented food allergy/disability, Olentangy Food Service will work with you to make the necessary accommodations. Please contact the cafeteria manager at your school or the Food Service Department at 740-657-4053.

## FUNDRAISING ACTIVITIES

Student fundraising by approved school organizations, (those whose funds are managed by the treasurer) may be permitted in school as approved by the principal according to Policy 5830-Student Fundraising. Any fund-raiser that involves the sale of food items and/or beverages to students that will be consumed on the school campus during the school day to thirty (30) minutes after the end of the day must comply with the current USDA Dietary Guidelines set forth in Policy 8550-Competitive Foods. Fundraisers also include giving away goods or services but suggesting a monetary donation. Student fundraising by approved school organizations off school grounds may be permitted under administrative guidelines of the superintendent.

## INTRADISTRICT TRANSFERS

The Board of Education will permit any student (grades K - 12) to apply for attendance at their school of choice based upon criteria established by the school administration (Policy 5113.01-Intra-District Open Enrollment). The specific criteria shall be consistent with state law and shall include:

- application procedures, including deadlines for application and for notification of acceptance or rejection of students;
- establishing district capacity limits by grade level, school building, staffing levels and educational program;
- student safety in one building as opposed to another can be a basis for transfer;
- the process must ensure that proper racial balance is maintained;
- notification that parents must provide transportation for their students;
- students entering Grades 9 - 12 will forfeit athletic eligibility for one year.

Complete information about intradistrict transfers is available by contacting the district offices at 740-657-4050 or by visiting the Olentangy Local Schools website https://www.olentangy.k12.oh.us.

## LOCKER ASSIGNMENTS

Subject to availability, a locker may be assigned to each student at the beginning of the school year. Each student is responsible for cleaning and maintaining their locker. All lockers remain the property of the school and are subject to search at any time. Student must pay for lost or damaged locks, if applicable.  The only locks that may be used are school locks, except in a short-term emergency situation approved by the homeroom teacher or principal.  In order to protect personal belongings, each locker must be kept locked, and the combination numbers used only by the assigned student. Students are advised not to share lockers or combination numbers!  Students violating the locker policy are subject to the Code of Conduct.

## LOST AND FOUND

Found items are kept in a lost and found location. Found items that are identified with the child's name will be returned. With this in mind, please remember to label your child's clothing.  Parents and students are encouraged to check the Lost and Found for missing items. Items not claimed will be given to a charitable organization.

## POSTERS / COMMUNITY ANNOUNCEMENTS

The principal must approve all posters/announcements.

**Add.55**

## PROCEDURES TO RESOLVE PARENT-TEACHER DISAGREEMENTS

Whenever a complaint is made directly to the board as a whole, a board member as an individual, the superintendent, principal or other administrator, it will be referred to the appropriate building administrator. A teacher who is the object of a complaint will be informed promptly.

### Step 1 – Direct Conversation

If a parent or community member (complainant) has a disagreement or misunderstanding with a teacher, the complainant should address the concern to the specific teacher directly involved with the circumstances surrounding the concern. The staff member will meet with them as soon as possible, but in no case longer than five calendar days after the teacher has been notified of the concern (subject to change by mutual agreement).

### Step 2 – Fact and Possible Resolution

If the complainant or the teacher is not satisfied with the outcome of Step 1, or the complainant or teacher is unwilling to meet independent of an administrator, a meeting with the teacher, appropriate administrator, and complainant will be arranged at a mutually convenient time, but in no case more than five calendar days after the meeting in Step 1. This step is to be informal and verbal. No further action will be taken beyond Step 2, unless the complainant submits in writing a signed and dated statement of facts giving rise to this concern, the name of the teacher involved, and the remedy sought.

### Step 3 – Formal Process

If a complainant's concern is not satisfactorily resolved at either the first or second level, the complainant should then refer this concern to the superintendent in writing. At that time another meeting will be arranged at the convenience of the complainant and staff member directly concerned, but in no case more than 10 calendar days (subject to change by mutual agreement). The staff member has the right to be at all meetings with or without a representative as they so determine. Copies of the disposition will be sent to the board.

**Dispositions**

Dispositions at Step 3 will be sent in writing to all parties within 10 calendar days of the meeting with reasons stated.

**Repeat Concerns**

If a complainant believes there has been a repeat of the previous concern, they may go directly to Step 3 – Formal Process.

**Relation to Other Procedures**

This Article does not limit or affect the actions or procedures available to the administration and/or board based on an investigation of alleged misconduct and an administrative or board conclusion based on that investigation that action adverse to the teacher is warranted. Any such action against the teacher is subject to applicable laws and other articles of this Agreement.

## RELEASE OF STUDENT PHOTOS AND WORK ONLINE

Olentangy Schools believes it is important to share accurate and timely information about the district with stakeholders. In addition, many online tools provide educational opportunities for student learning.

**Add.56**

As such, from time to time the district may share student information with the public in a web-based environment such as, but not limited to, the district's website and social media channels. The district's Web Guidelines allow for the following student information to be used online at the elementary school level (unless parents/guardians grant additional permission):

Student's first name only;

Student photographs, accompanied by not more than the first name of the student; and

Student work (such as, but not limited to, artwork, podcasts, blogs, writing samples, videos, etc.).

If you do not want your student's information used in a web-based environment, please submit a written request to the Communications Department. Direct your request to Olentangy Local School District, Attn: Communications Department, 7840 Graphics Way, Lewis Center, Ohio 43035, (740) 657-4050.

## RELEASE OF STUDENT PHOTOS AND MEDIA INTERVIEWS

Olentangy Schools often has the opportunity to film and photograph students in a variety of school-related activities. Student recognition programs, academic and fine arts programs are a few examples of these activities.

As such, videos and photographs may be used in communication tools such as the district newsletter, district website, social media, community publications, and in communications with the media such as interviews or photographs with students. The district reserves the right to deny media requests for student interviews at any time.

Highlighting achievements in our schools is an integral part of reporting responsibly to our community and is a way of sharing in the success of our schools and students. However, it is our primary goal to respect your privacy.

Parents have the right to submit a written request to the Communications Department directing the district not to release directory information, including the information listed above. Direct the written request or any questions to the Communications Department, Olentangy Local School District 7840 Graphics Way, Lewis Center, Ohio 43035, (740) 657-4050.

## RELEASE OF STUDENT RECORDS

Students and parents are hereby notified that administration will forward student records, including disciplinary records with respect to suspensions and expulsions, upon request to a private or public school or school district in which a student of this District is enrolled, seeks, or intends to enroll, or is instructed to enroll, on a full-time or part-time basis.

The Family Educational Rights and Privacy Act (FERPA) affords parents and students 18 years or older certain rights with respect to the student's education records. These rights, which are fully explained in Olentangy Board of Education Policy and Guideline 8330-Student Records include:

The right to inspect and review the student's education records.

The right to request the amendment of the student's education records that are believed to be inaccurate and the right to a hearing if the request is not honored.

The right to file a complaint with the U.S. Department of Education regarding an alleged violation of FERPA.

The right to consent to the disclosure of personally identifiable information within the student's records, unless disclosure is otherwise authorized by law or unless disclosure is made to school officials with legitimate educational interests. A school official is a person employed by the School as an administrator, supervisor, instructor, or support staff member (including health or medical staff and law enforcement unit personnel); a person serving on the school board; a person or company with whom the school has contracted to perform a special task (such as an attorney, auditor, medical consultant or therapist); or a parent or student serving on an official committee, such as a disciplinary or grievance committee, or assisting another school official in performing their tasks. A school official has a legitimate educational interest if the official needs to review an education record in order to fulfill their professional responsibility.

The following is designated as directory information, which may be disclosed without prior written consent: a student's name, mailing address, telephone number, date and place of birth, major field of study, participation in officially recognized activities and sports, height, and weight, if a member of an athletic team, dates of attendance, date of graduation, and awards received.

Parents have the right to submit a written request to the Communications Department, preferably within two weeks after the first day the student is enrolled in a school year, directing the district not to release directory information concerning their child to third parties. Examples of third parties include PTOs, Booster organizations and the media. According to Ohio Revised Code, public schools are prohibited from releasing directory information to third parties who intend to use the information for profit-making ventures. Direct the written request or any questions to the Communications Department, Olentangy Local School District, 7840 Graphics Way, Lewis Center, Ohio 43035, (740) 657-4050.

## RIGHTS REGARDING SURVEYS

The Board of Education respects the privacy rights of parents and their children. No student shall be required, as a part of the school program or the District's curriculum, without prior written consent of the student (if an adult, or an emancipated minor) or, if an unemancipated minor, their parents, to submit to or participate in any survey, analysis, or evaluation that reveals information concerning:

political affiliations or beliefs of the student or their parents;

mental or psychological problems of the student or their family;

sex behavior or attitudes;

illegal, anti-social, self-incriminating or demeaning behavior;

critical appraisals of other individuals with whom respondents have close family relationships;

legally recognized privileged and analogous relationships, such as those of lawyers, physicians, and ministers;

religious practices, affiliations, or beliefs of the student or their parents; or

income (other than that required by law to determine eligibility for participation in a program or receiving financial assistance under such a program).

The Superintendent shall require that procedures are established whereby parents may inspect any materials used in conjunction with any such survey, analysis, or evaluation. Further, parents have the right to inspect, upon request, a survey or evaluation created by a third party before the survey/evaluation is administered or distributed by the school to the student. The parent will have access to the survey/evaluation within a reasonable period of time after the request is received by the building principal.

Additionally, parents have the right to inspect, upon request, any instructional material used as part of the educational curriculum of the student. The parent will have access to the instructional material within a reasonable period of time after the request is received by the building principal. The term instructional material means instructional content that is provided to a student, regardless of its format, including printed and representational materials, audio-visual materials, and materials in electronic or digital formats (such as materials accessible through the Internet). The term does not include academic tests or assessments.

The Board will not allow the collection, disclosure, or use of personal information collected from students for the purpose of marketing or for selling that information (or otherwise providing that information to others for that purpose).

## UNAUTHORIZED USE OF THE BUILDING
Students are not to remain at school after dismissal unless they are part of a school activity supervised by a teacher, adviser, or coach. Any student using the building without authorization and supervision will be referred to the local police authorities. No students will be permitted to use the building when school is not in session without authorization and supervision and will be subject to school disciplinary action. Students who remain after dismissal to use outdoor recreational facilities do so at their own risk. The school district assumes no responsibility for them.

## VALUABLE PERSONAL PROPERTY
The school will NOT accept responsibility for the loss, damage, or theft of personal property. Valuable personal property should be left at home. Electronic items are to be turned off, kept out of sight, and not used during the school day unless authorized by building policy. The use of any personal property that is contrary to building policy may result in disciplinary action and confiscation of the item(s). At the building leadership's discretion, confiscated items may only be returned to a student's parent or guardian.

## CO- AND EXTRA-CURRICULAR ACTIVITIES

### EXTRA-CURRICULAR ACTIVITIES

Extra-curricular activities are available to middle school or community students who meet eligibility requirements. Students should be attentive to announcements of meetings for these activities. Students may be removed from these activities for violations of the Code of Conduct. Participation in these activities is a privilege and not a right, and students may be prohibited from all or part of their participation in such activities by authorized school personnel without further notice, hearing and/or appeal rights in accordance with Board Policy 5610.05-Prohibition from Extra-Curricular Activities.

### ATHLETIC ELIGIBILITY

According to the Ohio High School Athletic Association (OHSAA), for a student to be eligible, they must be passing subjects the preceding nine-week grading period that earn a minimum of five credits or its equivalent toward graduation. All grades must, when combined, result in a GPA of at least 1.5, based on a 4.0 scale. Furthermore, they must be enrolled in 5 classes, not including physical education/activity courses, during the 9 weeks in which they are a participant. An athlete will be eligible or ineligible for the next grading period beginning with the fifth school day after the end of each grading period. Eligibility or ineligibility would remain until the fifth school day after the end of the next grading period. All incoming freshmen need to have passed at least five classes and attained at least a 1.5 GPA during the previous grading period. **Important note:  See the Athletic Handbook or OHSAA for details about athletic rules and regulations.**

### PAY TO PARTICIPATE

Olentangy Local Schools has adopted a policy that requires an $80 fee per sport for participation in interscholastic athletics. Please refer to the Athletic Handbook or on the district's website for the fee structure. There is also a $25 fee for participation in co-curricular or extracurricular activities. The student fees are to defray only a part of the expenses of our activity programs. Fees for activity participation are to be assessed for one full year.  Payments should be made in full by credit card online or by cash, check, or money order to the school office. To view your fee account and make payments online, please go to your PowerSchool parent account and select Lunch and Fee Payments. If you are paying by check, please make it payable to Olentangy Local Schools. We appreciate your prompt attention to school fees.

For athletics, all fees are non-refundable after the first game and paying the fee does not guarantee an athlete's playing time. The payment deadline is before the first scrimmage or game. The athlete may not be allowed to participate until the fee, or any previously owned pay-to-participate fees are paid.  If you receive a notice from your bank about a non-sufficient funds check, contact CheckRedi at 800-239-1222.

### SCHOOL CLUBS AND ORGANIZATIONS

The clubs at Olentangy appeal to a variety of interests and are available to middle school or community students. It is hoped that each student can find an outlet for expression in one or more of these organizations. Students can request information regarding specific clubs and organizations by visiting the main office.



| | |
|---|---|
| Book | Policy Manual |
| Section | 5000 Students |
| Title | ANTI-HARASSMENT |
| Code | po5517 |
| Status | Active |
| Adopted | May 25, 2011 |
| Last Revised | September 26, 2024 |

5517 - **ANTI-HARASSMENT**

**General Policy Statement**

It is the policy of the Board of Education to maintain an education and work environment that is free from all forms of unlawful harassment, including sexual harassment. This commitment applies to all School District operations, programs, and activities. All students, administrators, teachers, staff, and all other school personnel share responsibility for avoiding, discouraging, and reporting any form of unlawful harassment. This policy applies to unlawful conduct occurring on school property, or at another location if such conduct occurs during an activity sponsored by the Board.

The Board will vigorously enforce its prohibition against discriminatory harassment based on race, color, national origin, sex (including sexual orientation and gender identity), disability, age (except as authorized by law), religion, ancestry, or genetic information (collectively, "Protected Classes") that are protected by Federal civil rights laws (hereinafter referred to as unlawful harassment), and encourages those within the School District community as well as Third Parties, who feel aggrieved to seek assistance to rectify such problems. The Board will investigate all allegations of unlawful harassment and in those cases where unlawful harassment is substantiated, the Board will take immediate steps to end the harassment, prevent its reoccurrence, and remedy its effects. Individuals who are found to have engaged in unlawful harassment will be subject to appropriate disciplinary action.

**Other Violations of the Anti-Harassment Policy**

The Board will also take immediate steps to impose disciplinary action on individuals engaging in any of the following prohibited acts:

A. Retaliating against a person who has made a report or filed a complaint alleging unlawful harassment, or who has participated as a witness in a harassment investigation.

B. Filing a malicious or knowingly false report or complaint of unlawful harassment.

C. Disregarding, failing to investigate adequately, or delaying investigation of allegations of unlawful harassment, when responsibility for reporting and/or investigating harassment charges comprises part of one's supervisory duties.

**Definitions**

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Complainant** is the individual who alleges, or is alleged, to have been subjected to unlawful harassment, regardless of whether the person files a formal complaint or is pursuing an informal resolution to the alleged harassment.

# Add.61

**Respondent** is the individual who has been alleged to have engaged in unlawful harassment, regardless of whether the Reporting Party files a formal complaint or is seeking an informal resolution to the alleged harassment.

**School District community** means students and Board employees (i.e., administrators, and professional and classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Third Parties** include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with, the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Day(s):** Unless expressly stated otherwise, the term "day" or "days" as used in this policy means a business day(s) (i.e., a day(s) that the Board office is open for normal operating hours, Monday – Friday, excluding State-recognized holidays).

### Bullying

Bullying rises to the level of unlawful harassment when one (1) or more persons systematically and chronically inflict physical hurt or psychological distress on one (1) or more students or employees and that bullying is based upon one (1) or more Protected Classes, that is, characteristics that are protected by Federal civil rights laws. It is defined as any unwanted and repeated written, verbal, or physical behavior, including any threatening, insulting, or dehumanizing gesture, by an adult or student, that is severe or pervasive enough to create an intimidating, hostile, or offensive educational or work environment; or unreasonably interfere with the individual's school or work performance or participation.

### Harassment

Harassment means any threatening, insulting, or dehumanizing gesture, use of technology, or written, verbal or physical conduct directed against a student or school employee that:

A. places a student or school employee in reasonable fear of harm to their person or damage to their property;

B. has the effect of substantially interfering with a student's educational performance, opportunities, or benefits, or an employee's work performance; or

C. has the effect of substantially disrupting the orderly operation of a school.

### Sexual Harassment

For purposes of this policy and consistent with Title VII of the Civil Rights Act of 1964, "sexual harassment" is defined as:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, when:

A. Submission to such conduct is made either implicitly or explicitly a term or condition of an individual's employment, or status in a class, educational program, or activity.

B. Submission or rejection of such conduct by an individual is used as the basis for employment or educational decisions affecting such individual.

C. Such conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity.

Sexual harassment may involve the behavior of a person of any gender against a person of the same or another gender.

Sexual harassment covered by Policy 2266 - Nondiscrimination on the Basis of Sex Education Programs or Activities is not included in this policy. Allegations of such conduct shall be addressed solely by Policy 2266.

Prohibited acts that constitute sexual harassment under this policy may take a variety of forms. Examples of the kinds of conduct that may constitute sexual harassment include, but are not limited to:

A. Unwelcome sexual propositions, invitations, solicitations, and flirtations.

B. Unwanted physical and/or sexual contact.

# Add.62

C. Threats or insinuations that a person's employment, wages, academic grade, promotion, classroom work or assignments, academic status, participation in athletics or extra-curricular programs, activities, or events, or other conditions of employment or education may be adversely affected by not submitting to sexual advances.

D. Unwelcome verbal expressions of a sexual nature, including graphic sexual commentaries about a person's body, dress, appearance, or sexual activities; the unwelcome use of sexually degrading language, profanity, jokes or innuendoes; unwelcome suggestive or insulting sounds or whistles; obscene telephone calls.

E. Sexually suggestive objects, pictures, graffiti, videos, posters, audio recordings or literature, placed in the work or educational environment, that may reasonably embarrass or offend individuals.

F. Unwelcome and inappropriate touching, patting, or pinching; obscene gestures.

G. Asking about, or telling about, sexual fantasies, sexual preferences, or sexual activities.

H. Speculations about a person's sexual activities or sexual history, or remarks about one's own sexual activities or sexual history.

I. Giving unwelcome personal gifts such as lingerie that suggests the desire for a romantic relationship.

J. Leering or staring at someone in a sexual way, such as staring at a person's breasts, buttocks, or groin.

K. A pattern of conduct, which can be subtle in nature, that has sexual overtones and is intended to create or has the effect of creating discomfort and/or humiliation to another.

L. Inappropriate boundary invasions by a District employee or other adult member of the School District community into a student's personal space and personal life.

M. Verbal, nonverbal or physical aggression, intimidation, or hostility based on sex or sex-stereotyping that does not involve conduct of a sexual nature.

Not all behavior with sexual connotations constitutes unlawful sexual harassment. Sex-based or gender-based conduct must be sufficiently severe, pervasive, and persistent such that it adversely affects, limits, or denies an individual's employment or education, or such that it creates a hostile or abusive employment or educational environment, or such that it is intended to, or has the effect of, denying or limiting a student's ability to participate in or benefit from the educational program or activities.

**Race/Color Harassment**

Prohibited racial harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's race or color and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working, and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's race or color, such as racial slurs, nicknames implying stereotypes, epithets, and/or negative references relative to racial customs.

**Religious (Creed) Harassment**

Prohibited religious harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's religion or creed and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's religious tradition, clothing, or surnames, and/or involves religious slurs.

**National Origin/Ancestry Harassment**

Prohibited national origin/ancestry harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's national origin or ancestry and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's national origin or ancestry, such as negative comments regarding customs, manner of speaking, language, surnames, or ethnic slurs.

# Add.63

## Disability Harassment

Prohibited disability harassment occurs when unwelcome physical, verbal, or nonverbal conduct is based upon an individual's disability and when the conduct has the purpose or effect of interfering with the individual's work or educational performance; of creating an intimidating, hostile, or offensive working and/or learning environment; or of interfering with one's ability to participate in or benefit from a class or an educational program or activity. Such harassment may occur where conduct is directed at the characteristics of a person's disability, such as negative comments about speech patterns, movement, physical impairments or defects/appearances, or the like.

## Anti-Harassment Compliance Officers

The following individual(s) shall serve as the District's Anti-Harassment Compliance Officer(s) (hereinafter, "the Compliance Officer(s)"):

James Kim
Assistant Director of Compliance
7840 Graphics Way
Lewis Center, OH 43035
740-657-4050
james_kim@olsd.us

Anna Damceski
Assistant Director of Human Resources
7840 Graphics Way
Lewis Center, OH 43035
740-657-4050
anna_damceski@olsd.us

Peter SternAssistant Director of Equity and Inclusion7840 Graphics WayLewis Center, OH 43035740-657-4050peter_stern@olsd.usJosh McDanielsAssistant Director of Human Resources7840 Graphics WayLewis Center, OH 43035740-657-4050josh_mcdaniels@olsd.us

The names, titles, and contact information of these individuals will be published annually on the School District's website.

The Compliance Officer(s) are responsible for coordinating the District's efforts to comply with applicable Federal and State laws and regulations, including the District's duty to address in a prompt and equitable manner any inquiries or complaints regarding harassment.

The Compliance Officer(s) will be available during regular school/work hours to discuss concerns related to unlawful harassment, to assist students, other members of the District community, and third parties who seek support or advice when informing another individual about "unwelcome" conduct, or to intercede informally on behalf of the individual in those instances where concerns have not resulted in the filing of a formal complaint and where all parties are in agreement to participate in an informal process.

Compliance Officers shall accept reports of unlawful harassment directly from any member of the School District community or a Third Party or receive reports that are initially filed with an administrator, supervisor, or other District-level official. Upon receipt of a report of alleged harassment, the Compliance Officer(s) will contact the Complainant and begin either an informal or formal complaint process (depending on the request of the Complainant or the nature of the alleged harassment), or the Compliance Officer(s) will designate a specific individual to conduct such a process. The Compliance Officer(s) will provide a copy of this policy to the Complainant and Respondent. In the case of a formal complaint, the Compliance Officer(s) will prepare recommendations for the Superintendent or will oversee the preparation of such recommendations by a designee. All Board employees must report incidents of harassment that are reported to them to the Compliance Officer within two (2) days of learning of the incident.

Any Board employee who directly observes unlawful harassment is obligated, in accordance with this policy, to report such observations to the Compliance Officer(s) within two (2) days. Additionally, any Board employee who observes an act of unlawful harassment is expected to intervene to stop the harassment, unless circumstances make such an intervention dangerous, in which case the staff member should immediately notify other Board employees and/or local law enforcement officials, as necessary, to stop the harassment. Thereafter, the Compliance Officer(s) or designee must contact the Complainant, if age eighteen (18) or older, or Complainant's parents/guardians if the Complainant is under the age eighteen (18), within two (2) days to advise of the Board's intent to investigate the alleged wrongdoing.

## Reports and Complaints of Harassing Conduct

# Add.64

Students and all other members of the School District community along with Third Parties are required to report incidents of harassing conduct to a teacher, administrator, supervisor, or other District official so that the Board may address the conduct before it becomes severe, pervasive, or persistent. Any teacher, administrator, supervisor, or other District employee or official who receives such a report shall file it with the Compliance Officer within two (2) days of receiving the report of harassment.

Members of the School District community and Third Parties, which includes students, or third parties who believe they have been unlawfully harassed are entitled to utilize the Board's complaint process that is set forth below. Interference with the rights of a student to pursue a complaint of unlawful harassment or retaliation with the United States Department of Education Office for Civil Rights.

**Informal Complaint Procedure**

The goal of the informal complaint procedure is promptly to stop inappropriate behavior and to facilitate resolution through an informal means, if possible. The informal complaint procedure is provided as a less formal option for a student who believes they have been unlawfully harassed or retaliated against. This informal procedure is not required as a precursor to the filing of a formal complaint. The informal process is only available in those circumstances where the Complainant and the Respondent mutually agree to participate in it.

Students who believe that they have been unlawfully harassed may initiate their complaint through this informal complaint process, but are not required to do so. The informal process is only available in those circumstances where the parties (alleged target of harassment and alleged harasser(s)) agree to participate in the informal process.

The Complainant may proceed immediately to the formal complaint process and individuals who seek resolution through the informal procedure may request that the informal process be terminated at any time to move to the formal complaint process.

All complaints involving a District employee, any other adult member of the School District community, or a Third Party and a student will be formally investigated.

As an initial course of action, if a Complainant feels comfortable and safe in doing so, the individual should tell or otherwise inform the Respondent that the alleged harassing conduct is inappropriate and must stop. The Complainant should address the allegedly harassing conduct as soon after it occurs as possible. The Compliance Officers are available to support and counsel individuals when taking this initial step or to intervene on behalf of the Complainant if requested to do so. A Complainant who is uncomfortable or unwilling to directly approach the Respondent about the alleged inappropriate conduct may file an informal or a formal complaint. In addition, with regard to certain types of unlawful harassment, such as sexual harassment, the Compliance Officer may advise against the use of the informal complaint process.

A Complainant may make an informal complaint, either orally or in writing: 1) to a teacher, other employee, or building administrator in the school the student attends; 2) to the Superintendent or other District-level employee; and/or 3) directly to one (1) of the Compliance Officers.

All informal complaints must be reported to one (1) of the Compliance Officers who will either facilitate an informal resolution as described below, or appoint another individual to facilitate an informal resolution.

The Board's informal complaint procedure is designed to provide students who believe they are being unlawfully harassed with a range of options designed to bring about a resolution of their concerns. Depending upon the nature of the complaint and the wishes of the Complainant, informal resolution may involve, but not be limited to, one (1) or more of the following:

A. Advising the Complainant about how to communicate the unwelcome nature of the behavior to the Respondent.

B. Distributing a copy of this policy as a reminder to the individuals in the school building or office where the Respondent works or attends.

C. If both parties agree, the Compliance Officer may arrange and facilitate a meeting or mediation between the Complainant and the Respondent to work out a mutual resolution.

While there are no set time limits within which an informal complaint must be resolved, the Compliance Officer/designee is directed to attempt to resolve all informal complaints within fifteen (15) business days of receiving the informal complaint. If the Complainant is dissatisfied with the informal complaint process, the Complainant may proceed to file a formal complaint. And, as stated above, either party may request that the informal process be terminated at any time to move to the formal complaint process.

**Formal Complaint Procedure**

Add.65

1/26/25, 7:00 PM

If a complaint is not resolved through the informal complaint process, if one (1) of the parties has requested that the informal complaint process be terminated to move to the formal complaint process, or the Complainant, from the outset, elects to file a formal complaint, or the CO determines the allegations are not appropriate for resolution through the informal process, the formal complaint process shall be implemented.

The Complainant may file a formal complaint, either orally or in writing, with a teacher, principal, or other District employee at the student's school, the Compliance Officer, Superintendent, or another District official who works at another school or at the district level. Due to the sensitivity surrounding complaints of unlawful harassment, timelines are flexible for initiating the complaint process; however, individuals should make every effort to file a formal complaint within thirty (30) days after the conduct occurs while the facts are known and potential witnesses are available. If a Complainant informs a teacher, principal, or other District employee at the student's school, Superintendent, or other District official, either orally or in writing, about any complaint of harassment, that employee must report such information to the Compliance Officer within two (2) business days.

Throughout the course of the process, the Compliance Officer should keep the parties reasonably informed of the status of the investigation and the decision-making process.

All formal complaints must include the following information to the extent known: the identity of the Respondent; a detailed description of the facts upon which the complaint is based (i.e., when, where, and what occurred); a list of potential witnesses; and the resolution sought by the Complainant.

If the Complainant is unwilling or unable to provide a written statement including the information set forth above, the Compliance Officer shall ask for such details in an oral interview. Thereafter, the Compliance Officer will prepare a written summary of the oral interview, and the Complainant will be asked to verify the accuracy of the reported charge by signing the document.

Upon receiving a formal complaint, the Compliance Officer will consider whether any action should be taken in the investigatory phase to protect the Complainant from further harassment or retaliation, including, but not limited to, a change of work assignment or schedule for the Complainant and/or the Respondent. In making such a determination, the Compliance Officer should consult the Complainant to assess whether the individual agrees with the proposed action. If the Complainant is unwilling to consent to the proposed change, the Compliance Officer may still take whatever actions deemed appropriate in consultation with the Superintendent.

Within two (2) business days of receiving the complaint, the Compliance Officer/designee will initiate a formal investigation to determine whether the Complainant has been subjected to offensive conduct/harassment/retaliation. The Principal will not conduct an investigation unless directed to do so by the Compliance Officer.

Simultaneously, the Compliance Officer will inform the Respondent that a formal complaint has been received. The Respondent will be informed about the nature of the allegations and provided with a copy of any relevant policies and/or administrative guidelines, including the Board's Anti-Harassment policy. The Respondent must also be informed of the opportunity to submit a written response to the complaint within five (5) business days.

Although certain cases may require additional time, the Compliance Officer/designee will attempt to complete an investigation into the allegations of harassment/retaliation within fifteen (15) business days of receiving the formal complaint. The investigation will include:

    A. interviews with the Complainant;

    B. interviews with the Respondent;

    C. interviews with any other witnesses who may reasonably be expected to have any information relevant to the allegations;

    D. consideration of any documentation or other information presented by the Complainant, Respondent, or any other witness that is reasonably believed to be relevant to the allegations.

At the conclusion of the investigation, the Compliance Officer or the designee shall prepare and deliver a written report to the Superintendent that summarizes the evidence gathered during the investigation and provides recommendations based on the evidence and the definition of unlawful harassment as provided in Board policy and State and Federal law as to whether the Complainant has been subjected to unlawful harassment. The Compliance Officer's recommendations must be based upon the totality of the circumstances, including the ages and maturity levels of those involved. In determining if discriminatory harassment or retaliation occurred, a preponderance of evidence standard will be used. The Compliance Officer may consult with the Board's legal counsel before finalizing the report to the Superintendent.

**Add.66**

Absent extenuating circumstances, within ten (10) school days of receiving the report of the Compliance Officer/designee, the Superintendent must either issue a written decision regarding whether the complaint of harassment has been substantiated or request further investigation. A copy of the Superintendent's final decision will be delivered to both the Complainant and the Respondent.

If the Superintendent requests additional investigation, the Superintendent must specify the additional information that is to be gathered, and such additional investigation must be completed within ten (10) school days. At the conclusion of the additional investigation, the Superintendent shall issue a written decision as described above.

The decision of the Superintendent shall be final.

The Board reserves the right to investigate and resolve a complaint or report of unlawful harassment/retaliation regardless of whether the student alleging the unlawful harassment/retaliation pursues the complaint. The Board also reserves the right to have the formal complaint investigation conducted by an external person in accordance with this policy or in such other manner as deemed appropriate by the Board or its designee.

The parties may be represented, at their own cost, at any of the above-described meetings/hearings.

The right of a person to a prompt and equitable resolution of the complaint shall not be impaired by the person's pursuit of other remedies such as the filing of a complaint with the Office for Civil Rights, the filing of charges with local law enforcement, or the filing of a civil action in court. Use of this internal complaint process is not a prerequisite to the pursuit of other remedies.

**Privacy/Confidentiality**

The District will employ all reasonable efforts to protect the rights of the Complainant, the Respondent, and the witnesses as much as possible, consistent with the Board's legal obligations to investigate, to take appropriate action, and to conform with any discovery or disclosure obligations. All records generated under the terms of this policy and related administrative guidelines shall be maintained as confidential to the extent permitted by law. Confidentiality, however, cannot be guaranteed. Additionally, the Respondent must be provided the Complainant's identity.

During the course of a formal investigation, the Compliance Officer/designee will instruct all members of the School District community and third parties who are interviewed about the importance of maintaining confidentiality. Any individual who is interviewed as part of a harassment investigation is expected not to disclose any information that is learned or provided during the course of the investigation.

**Sanctions and Monitoring**

The Board shall vigorously enforce its prohibitions against unlawful harassment/retaliation by taking appropriate action reasonably calculated to stop the harassment and prevent further such harassment. While observing the principles of due process, a violation of this policy may result in disciplinary action up to and including the discharge of an employee or the suspension/expulsion of a student. All disciplinary action will be taken in accordance with applicable State law and the terms of the relevant collective bargaining agreement(s). When imposing discipline, the Superintendent shall consider the totality of the circumstances involved in the matter, including the ages and maturity levels of those involved. In those cases where unlawful harassment is not substantiated, the Board may consider whether the alleged conduct nevertheless warrants discipline in accordance with other Board policies, consistent with the terms of the relevant collective bargaining agreement(s).

Where the Board becomes aware that a prior remedial action has been taken against a member of the School District community, all subsequent sanctions imposed by the Board and/or Superintendent shall be reasonably calculated to end such conduct, prevent its reoccurrence, and remedy its effects.

**Retaliation**

Retaliation against a person who makes a report or files a complaint alleging unlawful harassment/retaliation or participates as a witness in an investigation is prohibited. Neither the Board nor any other person may intimidate, threaten, coerce or interfere with any individual because the person opposed any act or practice made unlawful by any Federal or State civil rights law, or because that individual made a report, formal complaint testified, assisted or participated or refused to participate in any manner in an investigation, proceeding, or hearing under those laws and/or this policy, or because that individual exercised, enjoyed, aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by those laws and/or this policy.

<h1 style="text-align:center">Add.67</h1>

Retaliation against a person from making a report of discrimination, filing a formal complaint, or participating in an investigation or meeting is a serious violation of this policy that can result in imposition of disciplinary sanction/consequences and/or other appropriate remedies.

Formal complaints alleging retaliation may be filed according to the internal complaint process set forth above.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

### Allegations Constituting Criminal Conduct: Child Abuse/Sexual Misconduct

State law requires any school teacher or school employee who knows or suspects that a child with a disability under the age of twenty-one (21) or that a child under the age of eighteen (18) has suffered or faces a threat of suffering a physical or mental wound, disability or condition of a nature that reasonably indicates abuse or neglect of a child to immediately report that knowledge or suspicion to the county children's services agency. If, during the course of a harassment investigation, the Compliance Officer or a designee has reason to believe or suspect that the alleged conduct reasonably indicates abuse or neglect of the Complainant, a report of such knowledge must be made in accordance with State law and Board Policy.

State law defines certain contact between a teacher and a student as "sexual battery." If the Compliance Officer or a designee has reason to believe that the Complainant has been the victim of criminal conduct as defined in Ohio's Criminal Code, such knowledge should be immediately reported to local law enforcement.

Any reports made to a county children's services agency or to local law enforcement shall not terminate the Compliance Officer or a designee's obligation and responsibility to continue to investigate a complaint of harassment. While the Compliance Officer or a designee may work cooperatively with outside agencies to conduct concurrent investigations, in no event shall the harassment investigation be inhibited by the involvement of outside agencies without good cause after consultation with the Superintendent.

### Allegations Involving Conduct Unbecoming the Teaching Profession/Suspension

The Superintendent will report to the Ohio Board of Education, on forms provided for that purpose, matters of misconduct on the part of licensed professional staff members convicted of sexual battery, and will, in accordance with Policy 8141, suspend such employee from all duties that concern or involve the care, custody, or control of a child during the pendency of any criminal action for which that person has been arrested, summoned and/or indicted in that regard.

### Education and Training

In support of this Anti-Harassment Policy, the Board promotes preventative educational measures to create greater awareness of unlawful discriminatory practices. The Superintendent shall provide appropriate information to all members of the School District community related to the implementation of this policy and shall provide training for District students and staff where appropriate. All training, as well as all information, provided regarding the Board's policy and harassment in general, will be age and content-appropriate.

### Retention of Investigatory Records and Materials

The Compliance Officer(s) is responsible for overseeing retention of all records that must be maintained pursuant to this policy. All individuals charged with conducting investigations under this policy shall retain all documents, electronically stored information ("ESI"), and electronic media (as defined in Policy 8315) created and/or received as part of an investigation, which may include but not be limited to:

A. all written reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

B. any narratives that memorialize oral reports/allegations/complaints/grievances/statements/responses pertaining to an alleged violation of this policy;

C. any documentation that memorializes the actions taken by District personnel or individuals contracted or appointed by the Board to fulfill its responsibilities related to the investigation and/or the District's response to the alleged violation of this policy;

D. written witness statements;

E. narratives, notes from, or audio, video, or digital recordings of witness interviews/statements;

# Add.68

F. e-mails, texts, or social media posts that directly relate to or constitute evidence pertaining to an alleged violation of this policy (i.e., not after-the-fact commentary about or media coverage of the incident);

G. notes or summaries prepared contemporaneously by the investigator in whatever form made (e.g., handwritten, keyed into a computer or tablet, etc.), but not including transitory notes whose content is otherwise memorialized in other documents;

H. written disciplinary sanctions issued to students or employees and other documentation that memorializes oral disciplinary sanctions issued to students or employees for violations of this policy;

I. dated written determinations/reports (including summaries of relevant exculpatory and inculpatory evidence) and other documentation that memorializes oral notifications to the parties concerning the outcome of the investigation, including any consequences imposed as a result of a violation of this policy;

J. documentation of any supportive measures offered and/or provided to the Complainant and/or the Respondent, including no contact orders issued to both parties, the dates the no contact orders were issued, and the dates the parties acknowledged receipt of the no contact orders;

K. documentation of all actions taken, both individual and systemic, to stop the discrimination or harassment, prevent its recurrence, eliminate any hostile environment, and remedy its discriminatory effects;

L. copies of the Board policy and/or procedures/guidelines used by the District to conduct the investigation, and any documents used by the District at the time of the alleged violation to communicate the Board's expectations to students and staff with respect to the subject of this policy (e.g., Student Code of Conduct and/or Employee Handbooks);

M. copies of any documentation that memorializes any formal or informal resolutions to the alleged discrimination or harassment.

The documents, ESI, and electronic media (as defined in Policy 8315) retained may include public records and records exempt from disclosure under Federal (e.g., FERPA, ADA) and/or State law (e.g., R.C. 3319.321) – e.g., student records and confidential medical records.

The documents, ESI, and electronic media (as defined in Policy 8315) created or received as part of an investigation shall be retained in accordance with Policy 8310, Policy 8315, Policy 8320, and Policy 8330 for not less than three (3) years, but longer if required by the District's records retention schedule.

Revised 12/12/13
T.C. 7/13/15
Revised 11/9/17
Revised 11/20/18
Revised 4/25/19
Revised 4/8/21
T.C. 9/28/22
T.C. 4/10/23
T.C. 11/17/23
T.C. 1/12/24

© Neola 2021

Legal                     R.C. 4112.02

                          20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA)

                          20 U.S.C. 1681 et seq.

                          29 U.S.C. 621 et seq., Age Discrimination in Employment Act of 1967

                          29 U.S.C. 794, Rehabilitation Act of 1973, as amended

                          42 U.S.C. 6101, The Age Discrimination Act of 1975

                          42 U.S.C. 2000d et seq.

                          42 U.S.C. 2000e et seq.

**Add.69**

42 U.S.C. 12101 et seq., Americans with Disabilities Act of 1990, as amended

42 U.S.C. 1983

National School Boards Association Inquiry and Analysis - May, 2008

# Add.70



| Book | Policy Manual |
|---|---|
| Section | 5000 Students |
| Title | PERSONAL COMMUNICATION DEVICES |
| Code | po5136 |
| Status | Active |
| Adopted | May 25, 2011 |
| Last Revised | September 26, 2024 |

**5136 - PERSONAL COMMUNICATION DEVICES**

Students may possess personal communication devices (PCDs) in school, on school property, and on school buses or other Board-provided vehicles during school hours and after school activities (e.g. extra-curricular activities) and at school-related functions. Building administrators and teachers will have the authority to modify this allowance.

For purposes of this policy, "personal communication device" includes computers, tablets (e.g., iPads and similar devices), electronic readers ("e-readers"; e.g., Kindles and similar devices), cell phones (e.g., mobile/cellular telephones, smartphones (e.g., BlackBerry, iPhone, Android devices, Windows Mobile devices, etc.)), and/or other web-enabled devices of any type. Students may not use PCDs on school property or at a school-sponsored activity to access and/or view Internet websites that are otherwise blocked to students at school. Students may use PCDs while riding to and from school on a school bus or other Board-provided vehicles or on a school bus or Board-provided vehicle during school-sponsored activities, at the discretion of the bus driver, classroom teacher, or sponsor/advisor/coach. Distracting behavior that creates an unsafe environment will not be tolerated.

Also, during after-school activities, PCDs shall be powered completely off (not just placed into vibrate or silent mode) and stored out of sight when directed by the administrator or supervising adult.

Under certain circumstances, a student may keep their PCD "On" with prior approval from the building principal.

Except as authorized by a teacher, administrator or IEP team, students are prohibited from using PCDs during the school day, including while off-campus on a field trip, to capture, record and/or transmit the words or sounds (i.e., audio) and/or images (i.e., pictures/video) of any student, staff member or other person. Using a PCD to capture, record and/or transmit audio and/or pictures/video of an individual without proper consent is considered an invasion of privacy and is not permitted. Students who violate this provision and/or use a PCD to violate the privacy rights of another person may have their PCD confiscated and held until a parent/guardian picks it up, and may be directed to delete the audio and/or picture/video file while the parent/guardian is present. If the violation involves potentially illegal activity the confiscated PCD may be turned over to law enforcement.

PCDs, including but not limited to those with cameras, may not be activated or utilized at any time in any school situation where a reasonable expectation of personal privacy exists. These locations and circumstances include, but are not limited to classrooms, gymnasiums, locker rooms, shower facilities, rest/bathrooms, and any other areas where students or others may change clothes or be in any stage or degree of disrobing or changing clothes. The Superintendent and building principals are authorized to determine other specific locations and situations where use of a PCD is absolutely prohibited.

Students are expressly prohibited from using covert means to listen in or make a recording (audio or video) of any meeting or activity at school.  This includes placing recording devices, or other devices with one - or two-way audio communication technology (i.e., technology that allows a person off-site to listen to live conversations and sounds taking place in the location where the device is located), within a student's book bag or on the student's person without express written consent of the Superintendent. Any requests to place a recording device or other device with one- or two-way audio

**Add.71**

communication technology within a student's book bag or on a student's person shall be submitted, in writing, to the principal. The District representative shall notify the parent(s), in writing, whether such request is denied or granted within five (5) days.

Students shall have no expectation of confidentiality with respect to their use of PCDs on school premises/property.

**In-School Speech**

Students may not use a PCD on school property or in connection with a school activity in a way that is threatening or otherwise constitutes bullying or harassment under Board Policy 5517 (Anti-Harassment) or Board Policy 5517.01 (Bullying and Other Forms of Aggressive Behavior), that has the effect of substantially interfering with a student's educational performance, or that has the effect of substantially disrupting the orderly operation of the school. Students likewise are prohibited from using a PCD to transmit speech that is indecent, obscene, lewd, sexually explicit or vulgar, that appears school-sponsored, or that promotes illegal drug use. Students are further prohibited from engaging in "sexting" - i.e., sending, receiving, sharing, viewing, or possessing pictures, text messages, e-mails, or other materials of a sexual nature in electronic or any other form. Violation of these prohibitions may result in disciplinary action.

**Speech Outside of School or School Activities**

When off school grounds and not participating in a school-sponsored activity, students are prohibited from using a PCD in a way that constitutes serious or severe harassment of school employees or students, or that has the effect of materially disrupting classwork or the order of the school, or invades the rights of others. Violation of these prohibitions may result in disciplinary action.

This policy is not intended to and shall not be interpreted to infringe upon the First Amendment rights of students (i.e., to prohibit a reasoned and civil exchange of opinions, or debate, that is conducted at appropriate times and places during the school day and is protected by State or Federal law).

Students are also prohibited from using a PCD to capture, record, and/or transmit test information or any other information in a manner constituting fraud, theft, cheating, or academic dishonesty. Likewise, students are prohibited from using PCDs to receive such information.

Possession of a PCD by a student at school during school hours and/or during extra-curricular activities is a privilege that may be forfeited by any student who fails to abide by the terms of this policy, or otherwise abuses this privilege.

Violations of this policy may result in disciplinary action and/or confiscation of the PCD. The building principal will also refer the matter to law enforcement or child services if the violation involves an illegal activity (e.g., child pornography, sexting). Discipline will be imposed on an escalating scale ranging from a warning to an expulsion based on the number of previous violations and/or the nature of or circumstances surrounding a particular violation. If the PCD is confiscated, it will be released/returned to the student's parent/guardian after the student complies with any other disciplinary consequences that are imposed, unless the violation involves potentially illegal activity in which case the PCD may be turned over to law enforcement. A confiscated device will be marked in a removable manner with the student's name and held in a secure location until it is retrieved by the parent/guardian or turned over to law enforcement. School officials will not search or otherwise tamper with PCDs in District custody unless they reasonably suspect that the search is required to discover evidence of a violation of the law or other school rules. Any search will be conducted in accordance with Policy 5771 – Search and Seizure. If multiple offenses occur, a student may lose their privilege to bring a PCD to school for a designated length of time or on a permanent basis.

A person who discovers a student using a PCD, recording device, or other device with one- or two-way audio communication technology in violation of this policy is required to report the violation to the building administration.

Students are personally and solely responsible for the care and security of their PCDs. The Board assumes no responsibility for theft, loss, or damage to, or misuse or unauthorized use of, PCDs brought onto its property.

Revised 12/13/12
Revised 11/9/17
T.C. 6/27/24

**© Neola 2017**

# Add.72



| Book | Policy Manual |
|---|---|
| Section | 2000 Program |
| Title | NONDISCRIMINATION ON THE BASIS OF SEX IN EDUCATION PROGRAMS OR ACTIVITIES |
| Code | po2266 |
| Status | Active |
| Adopted | August 13, 2020 |
| Last Revised | September 26, 2024 |

**2266 - NONDISCRIMINATION ON THE BASIS OF SEX IN EDUCATION PROGRAMS OR ACTIVITIES**

**Introduction**

The Board of Education of the Olentangy Local School District (hereinafter referred to as "the Board" or "the District") does not discriminate on the basis of sex (including sexual orientation or gender identity), in its education programs or activities, and is required by Title IX of the Education Amendments Act of 1972, and its implementing regulations, not to discriminate in such a manner. The requirement not to discriminate in its education program or activity extends to admission and employment. The Board is committed to maintaining an education and work environment that is free from discrimination based on sex, including sexual harassment.

The Board prohibits Sexual Harassment that occurs within its education programs and activities. When the District has actual knowledge of Sexual Harassment in its education program or activity against a person in the United States, it shall promptly respond in a manner that is not deliberately indifferent.

Pursuant to its Title IX obligations, the Board is committed to eliminating Sexual Harassment and will take appropriate action when an individual is determined responsible for violating this policy. Board employees, students, Third-Party vendors and contractors, guests, and other members of the School District community who commit Sexual Harassment are subject to the full range of disciplinary sanctions set forth in this policy. The Board will provide persons who have experienced Sexual Harassment ongoing remedies as reasonably necessary to restore or preserve access to the District's education programs and activities.

**Coverage**

This policy applies to Sexual Harassment that occurs within the District's education programs and activities and that is committed by a member of the School District community or a Third Party.

This policy does not apply to Sexual Harassment that occurs off school grounds, in a private setting, and outside the scope of the District's education programs and activities; such Sexual Misconduct/Sexual Activity may be prohibited by the Student Code of Conduct if committed by a student, or by Board policies and administrative guidelines, applicable State and/or Federal laws and/or Employee/Administrator Handbook(s) if committed by a Board employee.

Consistent with the U.S. Department of Education's implementing regulations for Title IX, this policy does not apply to Sexual Harassment that occurs outside the geographic boundaries of the United States, even if the Sexual Harassment occurs in the District's education programs or activities. Sexual Harassment that occurs outside the geographic boundaries of the United States is governed by the Student Code of Conduct if committed by a student, or by Board policies and administrative guidelines, applicable State and/or Federal laws and/or Employee/Administrator Handbook(s) if committed by a Board employee.

**Definitions**

**Add.73**

Words used in this policy shall have those meanings defined herein; words not defined herein shall be construed according to their plain and ordinary meanings.

**Sexual Harassment:** "Sexual Harassment" means conduct on the basis of sex that satisfies one (1) or more of the following:

   A. A Board employee conditioning the provision of an aid, benefit, or service of the District on an individual's participation in unwelcome sexual conduct (often called "*quid pro quo*" harassment);

   B. Unwelcome conduct determined by a reasonable person to be so severe, pervasive, **and** objectively offensive that it effectively denies a person equal access to the District's education program or activity; or

   C. "Sexual assault" as defined in 20 U.S.C. 1092(f)(6)A(v), or "dating violence" as defined in 34 U.S.C. 12291(a)(10), "domestic violence" as defined in 34 U.S.C. 12291(a)(8), or "stalking" as defined in 34 U.S.C. 12291(a)(30).

   "Sexual assault" means any sexual act directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent, and the "nonforcible" sex offenses of Incest and Statutory Rape. Sexual assault includes rape, sodomy, sexual assault with an object, fondling, incest, and statutory rape.

   1. *Rape* is the carnal knowledge of a person (i.e., penetration, no matter how slight, of the genital or anal opening of a person), without the consent of the victim,  including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

   2. *Sodomy* is oral or anal sexual intercourse with another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

   3. *Sexual Assault with an Object* is using an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. An "object" or "instrument" is anything used by the offender other than the offender's genitalia.

   4. *Fondling* is the touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

   5. *Incest* is nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by State law.

   6. *Statutory Rape* is nonforcible sexual intercourse with a person who is under the statutory age of consent as defined by State law.

   7. *Consent* refers to words or actions that a reasonable person would understand as agreement to engage in the sexual conduct at issue. A person may be incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity. A person who is incapacitated is not capable of giving consent.

   8. *Incapacitated* refers to the state where a person does not understand and/or appreciate the nature or fact of sexual activity due to the effect of drugs or alcohol consumption, medical condition, disability, or due to a state of unconsciousness or sleep.

   D. "Domestic violence" includes felony or misdemeanor crimes of violence committed by:

   1. a current or former spouse or intimate partner of the victim;

   2. a person with whom the victim shares a child in common;

   3. a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner;

   4. a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction in which the crime occurred; or

## Add.74

5. any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction in which the crime occurred.

E. "Dating violence" means violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship shall be determined based on consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

F. "Stalking" means engaging in a course of conduct directed at a specific person that would cause a reasonable person to – 1) fear for the person's safety or the safety of others; or 2) suffer substantial emotional distress.

**Complainant:** "Complainant" means an individual who is alleged to be the victim of conduct that could constitute Sexual Harassment.

**Respondent:** "Respondent" means an individual who has been reported to be the perpetrator of conduct that could constitute Sexual Harassment.

**Formal Complaint:** "Formal Complaint" means a document filed by a Complainant or signed by the Title IX Coordinator alleging Sexual Harassment against a Respondent and requesting that the District investigate the allegation(s) of Sexual Harassment. At the time of filing a Formal Complaint with the District, a Complainant must be participating or attempting to participate in the District's education program or activity. A "document filed by a complainant'' means a document or electronic submission (such as by electronic mail or through an online portal that the Board provides for this purpose) that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the Formal Complaint. Where the Title IX Coordinator signs a Formal Complaint, the Title IX Coordinator is not a Complainant or a party to the Formal Complaint and must not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent.

**Actual Knowledge:** "Actual knowledge" means notice of Sexual Harassment or allegations of Sexual Harassment to the District's Title IX Coordinator, or any District official who has authority to institute corrective measures on behalf of the Board, or any Board employee. The mere ability or obligation to report Sexual Harassment or to inform a student about how to report Sexual Harassment, or having been trained to do so, does not qualify an individual as one who has authority to institute corrective measures on behalf of the District. "Notice" includes, but is not limited to, a report of Sexual Harassment to the Title IX Coordinator. This standard is not met when the only District official with actual knowledge is the Respondent.

**Supportive Measures:** "Supportive measures" means non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent before or after the filing of a Formal Complaint or where no Formal Complaint has been filed. Such measures are designed to restore or preserve equal access to the District's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the District's educational environment or deter Sexual Harassment. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, school/campus escort services, mutual restrictions of contact between the parties, changes in work locations), leaves of absence, increased security and monitoring of certain areas of the campus (including school buildings and facilities), and other similar measures.

**Education Program or Activity:** "Education program or activity" refers to all operations of the District, including but not limited to in-person and online educational instruction, employment, extracurricular activities, athletics, performances, and community engagement and outreach programs. The term applies to all activity that occurs on school grounds or on other property owned or occupied by the Board. It also includes locations, events, and circumstances that take place off-school property/grounds over which the Board exercises substantial control over both the Respondent and the context in which the Sexual Harassment occurs.

**School District community:** "School District community" refers to students and Board employees (i.e., administrators, and professional and classified staff), as well as Board members, agents, volunteers, contractors, or other persons subject to the control and supervision of the Board.

**Third Parties:** "Third Parties" include, but are not limited to, guests and/or visitors on School District property (e.g., visiting speakers, participants on opposing athletic teams, parents), vendors doing business with, or seeking to do business with the Board, and other individuals who come in contact with members of the School District community at school-related events/activities (whether on or off District property).

**Inculpatory Evidence:** "Inculpatory evidence" is evidence that tends to establish a Respondent's responsibility for alleged Sexual Harassment.

# Add.75

**Exculpatory Evidence:** "Exculpatory evidence" is evidence that tends to clear or excuse a Respondent from allegations of Sexual Harassment.

**Day(s):** Unless expressly stated otherwise, the term "day" or "days" as used in this policy means a business day(s) (i.e., a day(s) that the Board office is open for normal operating hours, Monday – Friday, excluding State-recognized holidays).

**Eligible Student:** "Eligible Student" means a student who has reached eighteen (18) years of age or is attending an institution of postsecondary education.

### Title IX Coordinator(s)

The Board designates and authorizes the following individual(s) to oversee and coordinate its efforts to comply with Title IX and its implementing regulations:

Assistant Director of Compliance, Title IX CoordinatorDepartment of Human Resources
7840 Graphics Way
Lewis Center, Ohio 43035
740-657-4050

Olentangy Board Compliance Officers Information Page

The Title IX Coordinator shall report directly to the Superintendent. Questions about this policy should be directed to the Title IX Coordinator.

The Superintendent shall notify applicants for admission and employment, students, parents or legal guardians of elementary and secondary school students, Board employees, and all unions or professional organizations holding collective bargaining or professional agreements with the Board of the following information:

The Board of the Olentangy Local School District does not discriminate on the basis of sex in its education program or activity, and is required by Title IX and its implementing regulations not to discriminate in such a manner. The requirement not to discriminate in its education program or activity extends to admission and employment. The District's Title IX Coordinator(s) is/are:

Assistant Director of Compliance, Title IX CoordinatorDepartment of Human Resources
7840 Graphics Way
Lewis Center, Ohio 43035
740-657-4050

Olentangy Board Compliance Officers Information Page

Any inquiries about the application of Title IX and its implementing regulations to the District may be referred to the Title IX Coordinator(s), the Assistant Secretary for the U.S. Department of Education's Office for Civil Rights, or both.

The Board has adopted a grievance process and procedures that provide for the prompt and equitable resolution of student and employee complaints alleging any action that is prohibited by Title IX and/or its implementing regulations. The grievance process and procedures are included in Policy 2266 – Nondiscrimination on the Basis of Sex in Education Programs or Activities, which is available at Olentangy Local Schools Board of Education Policies. The grievance process and procedures specifically address how to report or file a complaint of sex discrimination, how to report or file a formal complaint of Sexual Harassment, and how the District will respond.

The Superintendent shall also prominently display the Title IX Coordinator's(s') contact information – including name(s) and/or title(s), phone number(s), office address(es), and e-mail address(es) – and this policy on the District's website and in each handbook or catalog that the Board makes available to applicants for admission and employment, students, parents or legal guardians of elementary and secondary school students, Board employees, and all unions or professional organizations holding collective bargaining or professional agreements.

### Grievance Process and Procedures

The Board is committed to promptly and equitably resolving student and employee complaints alleging Sexual Harassment. The District's response to allegations of Sexual Harassment will treat Complainants and Respondents equitably, including providing supportive measures to the Complainant and Respondent, as appropriate, and following this Grievance Process before the imposition of any disciplinary sanctions or other actions, other than supportive measures, against the Respondent.

# Add.76

The Title IX Coordinator(s), along with any investigator(s), decision-maker(s), or any person(s) designated to facilitate an informal resolution process, shall not have a conflict of interest or bias for or against complainants or respondents generally or an individual complainant or respondent.

If a determination of responsibility for Sexual Harassment is made against the Respondent, the Board will provide remedies to the Complainant. The remedies will be designed to restore or preserve equal access to the District's education program or activity. Potential remedies include, but are not limited to, individualized services that constitute supportive measures. Remedies may also be disciplinary or punitive in nature and may burden the Respondent.

**Report of Sexual Discrimination/Harassment**

Any person may report sex discrimination, including Sexual Harassment (whether or not the person reporting is the person alleged to be the victim of conduct that could constitute sex discrimination or Sexual Harassment), in person, by mail, by telephone, or by electronic mail, using the Title IX Coordinator's(s') contact information listed above, or by any other means that results in the Title IX Coordinator receiving the person's oral or written report. Reports may be made at any time (including during non-business hours), by using the telephone number(s) or electronic mail address(es), or by mail to the office address(es), listed for the Title IX Coordinator(s). Anonymous reports may be submitted using the online reporting form posted at Stay Safe, Speak Up! online reporting form, the hotline reporting number 1-866-547-8362.

Students, Board members, and Board employees are required, and other members of the School District community, and Third Parties) are encouraged, to report allegations of sex discrimination or Sexual Harassment promptly to the/a Title IX Coordinator or to any Board employee, who will, in turn, notify the/a Title IX Coordinator. Reports can be made orally or in writing and should be as specific as possible. The person making the report should, to the extent known, identify the alleged victim(s), perpetrator(s), and witness(es), and describe in detail what occurred, including date(s), time(s), and location(s).

If a report involves allegations of Sexual Harassment by or involving the Title IX Coordinator, the person making the report should submit it to the Superintendent, or another Board employee who, in turn, will notify the Superintendent of the report. The Superintendent will then serve in place of the Title IX Coordinator for purposes of addressing that report of Sexual Harassment.

The Board does business with various vendors, contractors, and other Third Parties who are not students or employees of the Board. Notwithstanding any rights that a given vendor, contractor, or Third Party Respondent may have under this policy, the Board retains the right to limit any vendor's, contractor's, or Third Party's access to school grounds for any reason. The Board further retains all rights it enjoys by contract or law to terminate its relationship with any vendor, contractor, or Third Party irrespective of any process or outcome under this policy.

A person may file criminal charges simultaneously with filing a Formal Complaint. A person does not need to wait until the Title IX investigation is completed before filing a criminal complaint. Likewise, questions or complaints relating to Title IX may be filed with the U.S. Department of Education's Office for Civil Rights at any time.

Any allegations of Sexual Misconduct/Sexual Activity not involving Sexual Harassment will be addressed through the procedures outlined in Board policies and/or administrative guidelines, the applicable Student Code of Conduct, applicable collective bargaining agreement, and/or Employee/Administrator Handbook.

Because the Board is considered to have actual knowledge of Sexual Harassment or allegations of Sexual Harassment if any Board employee has such knowledge, and because the Board must take specific actions when it has notice of Sexual Harassment or allegations of Sexual Harassment, a Board employee who has independent knowledge of or receives a report involving allegations of sex discrimination and/or Sexual Harassment must notify the/a Title IX Coordinator within two (2) days of learning the information or receiving the report. The Board employee must also comply with mandatory reporting responsibilities pursuant to R.C. 2151.412 and Policy 8462 – Student Abuse and Neglect, if applicable. If the Board employee's knowledge is based on another individual bringing the information to the Board employee's attention and the reporting individual submitted a written complaint to the Board employee, the Board employee must provide the written complaint to the Title IX Coordinator.

If a Board employee fails to report an incident of Sexual Harassment of which the Board employee is aware, the Board employee may be subject to disciplinary action, up to and including termination.

When a report of Sexual Harassment is made, the Title IX Coordinator shall promptly (i.e., within two (2) days of the Title IX Coordinator's receipt of the report of Sexual Harassment) contact the Complainant (including the parent/guardian if the Complainant is under eighteen (18) years of age or under guardianship) to discuss the availability of supportive measures, consider the Complainant's wishes with respect to supportive measures, inform the Complainant of the availability of supportive measures with or without the filing of a Formal Complaint, and explain to the Complainant the process for filing

**Add.77**

a Formal Complaint. The Title IX Coordinator is responsible for coordinating the effective implementation of supportive measures. Any supportive measures provided to the Complainant or Respondent shall be maintained as confidential, to the extent that maintaining such confidentiality will not impair the ability of the District to provide the supportive measures.

**Emergency Removal:** Subject to limitations and/or procedures imposed by State and/or Federal law, the District may remove a student Respondent from its education program or activity on an emergency basis after conducting an individualized safety and risk analysis. The purpose of the individualized safety and risk analysis is to determine whether the student Respondent poses an immediate threat to the physical health or safety of any student or other individual arising from the allegations of Sexual Harassment that justifies removal. If the District determines the student Respondent poses such a threat, it will so notify the student Respondent and the student Respondent will have an opportunity to challenge the decision immediately following the removal. See Policy 5610 – Removal, Suspension, Expulsion, and Permanent Exclusion of Student, Policy 5610.03 – Emergency Removal of Students, and Policy 5611 – Due Process Rights.

If the Respondent is a non-student employee, the District may place the Respondent on administrative leave during the pendency of the grievance process.

For all other Respondents, including other members of the School District community and Third Parties, the Board retains broad discretion to prohibit such persons from entering onto its school grounds and other properties at any time and for any reason, whether after receiving a report of Sexual Harassment or otherwise.

### Formal Complaint of Sexual Harassment

A Formal Complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail, by using the contact information set forth above. If a Formal Complaint involves allegations of Sexual Harassment by or involving the Title IX Coordinator, the Complainant should submit the Formal Complaint to the Superintendent, who will designate another person to serve in place of the Title IX Coordinator for the limited purpose of implementing the grievance process and procedures with respect to that Formal Complaint.

When the Title IX Coordinator receives a Formal Complaint or signs a Formal Complaint, the District will follow its Grievance Process and Procedures, as set forth herein. Specifically, the District will undertake an objective evaluation of all relevant evidence – including both inculpatory and exculpatory evidence – and provide that credibility determinations will not be based on a person's status as a Complainant, Respondent, or witness.

It is a violation of this policy for a Complainant(s), Respondent(s), and/or witness(es) to knowingly making false statements or knowingly submitting false information during the grievance process, including intentionally making a false report of Sexual Harassment or submitting a false Formal Complaint. The Board will not tolerate such conduct, which is a violation of the Student Code of Conduct and the Employee/Administrator Handbook.

The Respondent is presumed not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process.

### Timeline

The District will seek to conclude the grievance process, including resolving any appeals, within sixty (60) days of receipt of the Formal Complaint.

If the Title IX Coordinator offers informal resolution processes, the informal resolution processes may not be used by the Complainant or Respondent to unduly delay the investigation and determination of responsibility. The timeline, however, may be subject to a temporary delay of the grievance process or a limited extension for good cause with written notice to the Complainant and the Respondent of the delay or extension and the reasons for the action. Good cause may include considerations such as the absence of a party, a party's advisor, or a witness; concurrent law enforcement activity; and the need for language assistance or accommodation of disabilities.

Upon receipt of a Formal Complaint, the Title IX Coordinator will provide written notice of the following to the parties who are known:

    A. Notice of the Board's grievance process, including any informal resolution processes;

    B. Notice of the allegations of misconduct that potentially constitutes Sexual Harassment as defined in this policy, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview. Sufficient details include the identities of the parties involved in the incident if known, the conduct allegedly constituting Sexual Harassment, and the date and location of the alleged incident, if known. The written notice must:

# Add.78

1. include a statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility will be made at the conclusion of the grievance process;

2. inform the parties that they may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review evidence.

3. inform the parties of any provision in the Student Code of Conduct, this policy, and/or Employee/Administrator Handbook that prohibits knowingly making false statements or knowingly submitting false information during the grievance process.

If during the course of the investigation, the investigator becomes aware of allegations about the Complainant or Respondent that are not included in the original notice provided to the parties, the investigator will notify the Title IX Coordinator and the Title IX Coordinator will decide whether the investigator should investigate the additional allegations; if the Title IX Coordinator decides to include the new allegations as part of the investigation, the Title IX Coordinator will provide notice of the additional allegations to the parties whose identities are known.

**Dismissal of a Formal Complaint**

The District shall investigate the allegations in a Formal Complaint *unless* the conduct alleged in the Formal Complaint:

A. would not constitute Sexual Harassment (as defined in this policy) even if proved;

B. did not occur in the District's education program or activity; or

C. did not occur against a person in the United States.

If one of the preceding circumstances exist, the Title IX Coordinator *shall* dismiss the Formal Complaint. If the Title IX Coordinator dismisses the Formal Complaint due to one (1) of the preceding reasons, the District may still investigate and take action with respect to such alleged misconduct pursuant to another provision of an applicable code of conduct, Board policy, and/or Employee/Administrator Handbook.

The Title IX Coordinator *may* dismiss a Formal Complaint, or any allegations therein, if at any time during the investigation or hearing:

A. a Complainant notifies the Title IX Coordinator in writing that the Complainant would like to withdraw the Formal Complaint or any allegations therein;

B. the Respondent is no longer enrolled in the District or employed by the Board; or

C. specific circumstances prevent the District from gathering evidence sufficient to reach a determination as to the Formal Complaint or allegations therein.

If the Title IX Coordinator dismisses a Formal Complaint or allegations therein, the Title IX Coordinator must promptly send written notice of the dismissal and the reason(s) therefore simultaneously to the parties.

**Consolidation of Formal Complaints**

The Title IX Coordinator may consolidate Formal Complaints as to allegations of Sexual Harassment against more than one (1) Respondent, or by more than one (1) Complainant against one (1) or more Respondents, or by one (1) party against the other party, where the allegations of Sexual Harassment arise out of the same facts or circumstances.

Where a grievance process involves more than one (1) Complainant or more than one (1) Respondent, references in this policy to the singular "party," "Complainant," or "Respondent" include the plural, as applicable.

**Informal Resolution Process**

Under no circumstances shall a Complainant be required as a condition of enrollment or continuing enrollment, or employment or continuing employment, or enjoyment of any other right, to waive any right to an investigation and adjudication of a Formal Complaint of Sexual Harassment. Similarly, no party shall be required to participate in an informal resolution process.

If a Formal Complaint is filed, the Title IX Coordinator may offer to the parties an informal resolution process. If the parties mutually agree to participate in the informal resolution process, the Title IX Coordinator shall designate a trained individual to facilitate an informal resolution process, such as mediation, that does not involve a full investigation and adjudication.

**Add.79**

The informal resolution process may be used at any time prior to the decision-maker(s) reaching a determination regarding responsibility.

If the Title IX Coordinator is going to propose an informal resolution process, the Title IX Coordinator shall provide to the parties a written notice disclosing:

     A. the allegations;

     B. the requirements of the informal resolution process including the circumstances under which it precludes the parties from resuming a Formal Complaint arising from the same allegations; and

     C. any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared.

Any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the grievance process with respect to the Formal Complaint.

Before commencing the informal resolution process, the Title IX Coordinator shall obtain from the parties their voluntary, written consent to the informal resolution process.

During the pendency of the informal resolution process, the investigation and adjudication processes that would otherwise occur have stayed and all related deadlines are suspended.

The informal resolution process is not available to resolve allegations that a Board employee or another adult member of the School District community or Third Party sexually harassed a student.

The informal resolution process is not available to resolve allegations involving a sexual assault involving a student Complainant and a student Respondent.

**Investigation of a Formal Complaint of Sexual Harassment**

In conducting the investigation of a Formal Complaint and throughout the grievance process, the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility is on the District, not the parties.

In making the determination of responsibility, the decision-maker(s) is(are) directed to use the preponderance of the evidence standard. The decision-maker(s) is charged with considering the totality of all available evidence, from all relevant sources.

The District is not permitted to access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the party, unless the party provides the District with voluntary, written consent to do so; if a student party is not an Eligible Student, the District must obtain the voluntary, written consent of a parent.

Similarly, the investigator(s) and decision-maker(s) may not require, allow, rely upon or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege in writing.

As part of the investigation, the parties have the right to:

     A. present witnesses, including fact and expert witnesses, and other inculpatory and exculpatory evidence; and

     B. have others present during any grievance proceeding, including the opportunity to be accompanied to any related meeting or proceeding by the advisor of their choice, who may be, but is not required to be, an attorney. The District may not limit the choice or presence of an advisor for either the Complainant or Respondent in any meeting or grievance proceeding.

     Board Policy 2461 – Recording of District Meetings Involving Students and/or Parents controls whether a person is allowed to audio record or video record any meeting or grievance proceeding.

Neither party shall be restricted in their ability to discuss the allegations under investigation or to gather and present relevant evidence.

# Add.80

The District will provide to a party whose participation is invited or expected written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings, with sufficient time for the party to prepare to participate. The investigator(s) and decision-maker(s) must provide a minimum of one (1) day's notice with respect to investigative interviews and other meetings and three (3) days' notice with respect to hearings.

Both parties shall have an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the Formal Complaint, including the evidence upon which the District does not intend to rely in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to the conclusion of the investigation.

Prior to completion of the investigative report, the investigator will send to each party and the party's advisor, if any, the evidence subject to inspection and review in an electronic format or a hard copy, and the parties will have at least ten (10) calendar days to submit a written response, which the investigator will consider prior to completion of the investigative report. The District will make all such evidence subject to the parties' inspection and review available at any hearing to give each party equal opportunity to refer to such evidence during the hearing, including for purposes of cross-examination.

At the conclusion of the investigation, the investigator shall create an investigative report that fairly summarizes relevant evidence and send the report to each party and the party's advisor, if any, for their review and written response. The investigator will send the investigative report in an electronic format or a hard copy, at least ten (10) calendar days prior to the decision-maker(s) issuing a determination regarding responsibility.

**Determination of Responsibility**

The Title IX Coordinator shall appoint a decision-maker(s) to issue a determination of responsibility. The decision-maker(s) cannot be the same person(s) as the Title IX Coordinator(s) or the investigator(s).

After the investigator sends the investigative report to the parties and the decision-maker(s), and before the decision-maker(s) reaches a determination regarding responsibility, the decision-maker(s) will afford each party the opportunity to submit written, relevant questions that a party wants asked of any party or witness, provide each party with the answers, and allow for additional, limited follow-up questions from each party.  The decision-maker(s) must explain to the party proposing the questions any decision to exclude a question as not relevant.

Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent. The decision-maker(s) must explain to the party proposing the questions any decision to exclude a question as not relevant.

After the investigator sends the investigative report to the parties and the decision-maker(s), and prior to the decision-maker(s) issuing a determination of responsibility, the decision-maker(s) may conduct a hearing.

If the decision-maker(s) decides not to conduct a hearing, the decision-maker(s) will state in writing the reason for not conducting a hearing and provide that explanation to the parties. Additionally, before the decision-maker(s) reaches a determination regarding responsibility, the decision-maker(s) will afford each party the opportunity to submit written, relevant questions that a party wants asked of any party or witness, provide each party with the answers, and allow for additional, limited follow-up questions from each party. The decision-maker(s) must explain to the party proposing the questions any decision to exclude a question as not relevant.

If the decision-maker(s) elects to conduct a hearing, the hearing will proceed as follows:

At the hearing, the decision-maker(s) will allow each party or each party's advisor to submit relevant questions to the decision-maker(s) who will ask the questions to the other party and any witnesses. Before a Complainant, Respondent, or witness answers a cross-examination or other question, the decision-maker(s) must first determine whether the question is relevant and explain any decision to exclude a question as not relevant. Only relevant cross-examination and other questions, including follow-up questions and questions challenging credibility, will be permitted. Such cross-examination and questioning at the live hearing shall be conducted orally and in real-time.

Prior to commencing the hearing, the decision-maker(s) will decide whether to allow each party's advisor to ask questions directly of the other party and any witnesses, or instead to have the questions submitted to the decision-maker(s) who will ask the other party and any witnesses the questions.

# Add.81

If the decision-maker(s) permits each party's advisor to ask the other party and any witnesses relevant questions and follow-up questions, including questions challenging credibility, such cross-examination at the hearing will be conducted directly, orally, and in real-time by the party's advisor of choice and never by a party personally. If the decision-maker(s) permit each party's advisor to ask questions directly to the other party and any witnesses, the decision-maker(s) shall not restrict the extent to which advisors may participate in the hearing.

If, on the other hand, the decision-maker(s) decides to have each party's advisor (or the party, if the party does not have an advisor) submit relevant questions to the decision-maker(s), the decision-maker will ask the questions to the other party and any witnesses. Such cross-examination at the hearing will be conducted orally and in real-time by the decision-maker(s) based upon questions submitted by a party's advisor or the party.

Only relevant cross-examination and other questions may be asked of a party or witness. Before a Complainant, Respondent, or witness answers a cross-examination or other question, the decision-maker(s) must first determine whether the question is relevant and explain any decision to exclude a question as not relevant.

If the decision-maker(s) permits the parties' advisors to ask the questions directly, and a party does not have an advisor present at the live hearing, the District will provide, without fee or charge to that party, an advisor of the District's choice, who may be, but is not required to be, an attorney, to conduct cross-examination on behalf of that party.

Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

If a party or witness does not submit to cross-examination at the hearing, the decision-maker(s) must not rely on any statement of that party or witness in reaching a determination regarding responsibility; provided, however, that the decision-maker(s) cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's absence from the hearing or refusal to answer cross-examination or other questions.

Hearings may be conducted with all parties physically present in the same geographic location or, at the discretion of the decision-maker(s), any or all parties, witnesses, and other participants may appear at the hearing virtually, with technology enabling participants simultaneously to see and hear each other. At the request of either party, the decision-maker shall provide for the hearing to occur with the parties located in separate rooms with technology enabling the decision-maker(s) and parties to simultaneously see and hear the party or witness answering questions. The District will create an audio or audiovisual recording, or transcript, of any hearing and make it available to the parties for inspection and review.

**Determination regarding responsibility:** The decision-maker(s) will issue a written determination regarding responsibility. To reach this determination, the decision-maker(s) must apply the preponderance of the evidence standard

The written determination will include the following content:

    A. identification of the allegations potentially constituting Sexual Harassment pursuant to this policy;

    B. a description of the procedural steps taken from the receipt of the Formal Complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, [and] methods used to gather other evidence, and hearings held;

    C. findings of fact supporting the determination;

    D. conclusions regarding the application of the applicable code of conduct to the facts;

    E. a statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the decision-maker(s) is recommending that the District impose on the Respondent(s), and whether remedies designed to restore or preserve equal access to the District's education program or activity should be provided by the District to the Complainant(s); and

    F. the procedures and permissible bases for the Complainant(s) and Respondent(s) to appeal.

The following disciplinary sanctions/consequences may be imposed on a student Respondent who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

    A. Informal Discipline

# Add.82

1. writing assignments;

2. changing of seating or location:

3. pre-school, lunchtime, and after-school detention;

4. in-school discipline;

5. Saturday school;

B. Formal Discipline

1. suspension of bus riding/transportation privileges;

2. removal from co-curricular and/or extra-curricular activity(ies), including athletics;

3. emergency removal;

4. suspension for up to ten (10) school days;

5. expulsion for up to eighty (80) school days or the number of school days remaining in a semester, whichever is greater;

6. expulsion for up to one (1) year;

7. permanent exclusion; and

8. any other sanction authorized by the Student Code of Conduct.

If the decision-maker(s) determines the student Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including disciplinary sanctions/consequences. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so an authorized administrator can consider the recommendation(s) and implement an appropriate remedy(ies) in compliance with Policy 5600 – Student Discipline, Policy 5605 – Suspension/Expulsion of Students with Disabilities, Policy 5610 – Removal, Suspension, Expulsion, and Permanent Exclusion of Students, Policy 5601.01 – Permanent Exclusion of Nondisabled Students, Policy 5610.02 – In-School Discipline, Policy 5610.03 – Emergency Removal of Students, Policy 5610.04 – Suspension of Bus Riding/Transportation Privileges, Policy 5610.05 – Prohibition from Extra-Curricular Activities, and Policy 5611 – Due Process Rights. Discipline of a student Respondent must comply with the applicable provisions of the Individuals with Disabilities Education Improvement Act (IDEA) and/or Section 504 of the Rehabilitation Act of 1972, and their respective implementing regulations.

The following disciplinary sanctions/consequences may be imposed on an employee Respondent who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

A. oral or written warning;

B. written reprimands;

C. performance improvement plan;

D. required counseling;

E. required training or education;

F. demotion;

G. suspension with pay;

H. suspension without pay;

I. termination, and any other sanction authorized by any applicable Employee/Administrator Handbook and/or collective bargaining agreement.

# Add.83

If the decision-maker(s) determines the employee Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including disciplinary sanctions/consequences. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so an authorized administrator can consider the recommendation(s) and implement an appropriate remedy(ies) in compliance with applicable due process procedures, whether statutory or contractual.

Discipline of an employee will be implemented in accordance with Federal and State law, Board policy, and applicable provisions of any relevant collective bargaining agreement.

The following disciplinary sanctions/consequences may be imposed on a non-student/non-employee member of the School District community or Third Party who is determined responsible for violating this policy (i.e., engaging in Sexual Harassment):

  A. oral or written warning;

  B. suspension or termination/cancellation of the Board's contract with the Third-Party vendor or contractor;

  C. mandatory monitoring of the Third Party while on school property and/or while working/interacting with students;

  D. restriction/prohibition on the Third Party's ability to be on school property; and

  E. any combination of the same.

If the decision-maker(s) determines the Third Party Respondent is responsible for violating this policy (i.e., engaging in Sexual Harassment), the decision-maker(s) will recommend appropriate remedies, including the imposition of sanctions. The Title IX Coordinator will notify the Superintendent of the recommended remedies, so appropriate action can be taken.

The decision-maker(s) will provide the written determination to the Title IX Coordinator who will provide the written determination to the parties simultaneously.

In ultimately, imposing a disciplinary sanction/consequence, the Superintendent will consider the severity of the incident, previous disciplinary violations (if any), and any mitigating circumstances.

The District's resolution of a Formal Complaint ordinarily will not be impacted by the fact that criminal charges involving the same incident have been filed or that charges have been dismissed or reduced.

At any point in the grievance process and procedures, the Superintendent may involve local law enforcement and/or file criminal charges related to allegations of Sexual Harassment that involve a sexual assault.

The Title IX Coordinator is responsible for effective implementation of any remedies.

### Appeal

Both parties have the right to file an appeal from a determination regarding responsibility, or from the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein, on the following bases:

  A. Procedural irregularity that affected the outcome of the matter (e.g., material deviation from established procedures);

  B. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and

  C. The Title IX Coordinator, investigator(s), or decision-maker(s) had a conflict of interest or bias for or against Complainants or Respondents generally or the individual Complainant(s) or Respondent(s) that affected the outcome of the matter

The Complainant(s) may not challenge the ultimate disciplinary sanction/consequence that is imposed.

Any party wishing to appeal the decision-maker(s)'s determination of responsibility, or the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein, must submit a written appeal to the Title IX Coordinator within three (3) days after receipt of the decision-maker(s)'s determination of responsibility or the Title IX Coordinator's dismissal of a Formal Complaint or any allegations therein.

# Add.84

Nothing herein shall prevent the Superintendent from implementing appropriate remedies, however, excluding disciplinary sanction, while the appeal is pending.

As to all appeals, the Title IX Coordinator will notify the other party in writing when an appeal is filed and implement appeal procedures equally for both parties.

The decision-maker(s) for the appeal shall not be the same person(s) as the decision-maker(s) that reached the determination regarding responsibility or dismissal, the investigator(s), or the Title IX Coordinator(s). The decision-maker(s) for the appeal shall not have a conflict of interest or bias for or against Complainants or Respondents generally or an individual Complainant(s) or Respondent(s) and shall receive the same training as required of other decision-makers.

Both parties shall have a reasonable, equal opportunity to submit a written statement in support of, or challenging, the outcome.

The decision-maker(s) for the appeal shall determine when each party's written statement is due.

The decision-maker(s) for the appeal shall issue a written decision describing the result of the appeal and the rationale for the result. The original decision-makers(s') determination of responsibility will stand if the appeal request is not filed in a timely manner or the appealing party fails to show clear error and/or a compelling rationale for overturning or modifying the original determination. The written decision will be provided to the Title IX Coordinator who will provide it simultaneously to both parties. The written decision will be issued within five (5) days of when the parties' written statements were submitted.

The determination of responsibility associated with a Formal Complaint, including any recommendations for remedies/disciplinary sanctions, becomes final when the time for filing an appeal has passed or, if an appeal is filed, at the point when the decision-maker(s) for the appeal's decision is delivered to the Complainant and the Respondent. No further review beyond the appeal is permitted.

### Retaliation

Neither the Board nor any other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, its implementing regulations, or this policy, or because the individual made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this policy. Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or Sexual Harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or Formal Complaint of Sexual Harassment, for the purpose of interfering with any right or privilege secured by Title IX, its implementing regulations, or this policy, constitutes retaliation. Retaliation against a person for making a report of Sexual Harassment, filing a Formal Complaint, or participating in an investigation and/or hearing, is a serious violation of this policy that can result in the imposition of disciplinary sanctions/consequences and/or other appropriate remedies.

Complaints alleging retaliation may be filed according to the grievance procedures set forth above.

The exercise of rights protected under the First Amendment of the United States Constitution does not constitute retaliation prohibited under this policy.

Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of a grievance proceeding under this policy shall not constitute retaliation, provided, however, that a determination regarding responsibility, alone, is not sufficient to conclude that any party made a materially false statement in bad faith.

### Confidentiality

The District will keep confidential the identity of any individual who has made a report or complaint of sex discrimination, including any individual who has made a report or filed a Formal Complaint of Sexual Harassment, any Complainant, any individual who has been reported to be the perpetrator of sex discrimination, any Respondent, and any witness, except as may be permitted by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g, or FERPA regulations, 34 C.F.R. part 99, or as required by law, or to carry out the purposes of 34 C.F.R. part 106, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder (i.e., the District's obligation to maintain confidentiality shall not impair or otherwise affect the Complainant's and Respondent's receipt of the information to which they are entitled related to the investigative record and determination of responsibility).

### Application of the First Amendment

# Add.85

The Board will construe and apply this policy consistent with the First Amendment to the U.S. Constitution. In no case will a Respondent be found to have committed Sexual Harassment based on expressive conduct that is protected by the First Amendment.

### Training

The District's Title IX Coordinator, along with any investigator(s), decision-maker(s), or person(s) designated to facilitate an informal resolution process, must receive training on:

A. the definition of Sexual Harassment (as that term is used in this policy);

B. the scope of the District's education program or activity;

C. how to conduct an investigation and implement the grievance process that includes hearings, appeals and informal resolution processes, as applicable; and

D. how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interests, and bias.

All Board employees will be trained concerning their legal obligation to report Sexual Harassment to the Title IX Coordinator. This training will include practical information about how to identify and report Sexual Harassment.

### Recordkeeping

As part of its response to alleged violations of this policy, the District shall create, and maintain for a period of seven (7) calendar years, records of any actions, including any supportive measures, taken in response to a report or Formal Complaint of Sexual Harassment. In each instance, the District shall document the basis for its conclusion that its response was not deliberately indifferent, and document that it has taken measures designed to restore or preserve equal access to the District's education program or activity. If the District does not provide a Complainant with supportive measures, then the District will document the reasons why such a response was not clearly unreasonable in light of the known circumstances. The documentation of certain bases or measures does not limit the District in the future from providing additional explanations or detailing additional measures taken.

The District shall maintain for a period of seven (7) calendar years the following records:

A. each Sexual Harassment investigation including any determination regarding responsibility and any audio or audiovisual recording or transcript that is made of any hearing, any disciplinary sanctions recommended and/or imposed on the Respondent(s), and any remedies provided to the Complainant(s) designed to restore or preserve equal access to the District's education program or activity

B. any appeal and the result therefrom

C. any informal resolution and the result therefrom, and

D. all materials used to train Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process.

The District will make its training materials publicly available on its website. If a person is unable to access the District's website, the Title IX Coordinator will make the training materials available upon request for inspection by members of the public.

### Outside Appointments, Dual Appointments, and Delegations

The Board retains the discretion to appoint suitably qualified persons who are not Board employees to fulfill any function of the Board under this policy, including, but not limited to, Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor.

The Board also retains the discretion to appoint two (2) or more persons to jointly fulfill the role of Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor.

The Superintendent may delegate functions assigned to a specific Board employee under this policy, including but not limited to the functions assigned to the Title IX Coordinator, investigator, decision-maker, decision-maker for appeals, facilitator of informal resolution processes, and advisor, to any suitably qualified individual and such delegation, may be rescinded by the Superintendent at any time.

# Add.86

**Discretion in Application**

The Board retains the discretion to interpret and apply this policy in a manner that is not clearly unreasonable, even if the Board's interpretation or application differs from the interpretation of any specific Complainant and/or Respondent.

Despite the Board's reasonable efforts to anticipate all eventualities in drafting this policy, it is possible unanticipated or extraordinary circumstances may not be specifically or reasonably addressed by the express policy language, in which case the Board retains the discretion to respond to the unanticipated or extraordinary circumstance in a way that is not clearly unreasonable.

The provisions of this policy are not contractual in nature, whether in their own right or as part of any other express or implied contract. Accordingly, the Board retains the discretion to revise this policy at any time, and for any reason. The Board may apply policy revisions to an active case provided that doing so is not clearly unreasonable.

Revised 4/8/21
T.C. 1/31/22
T.C. 11/17/23
T.C. 1/12/24
T.C. 9/26/24

**© Neola 2021**

Legal                    R.C. 3313.207/208/209, 5104

                         20 U.S.C. 1681 et seq., Title IX of the Education Amendments of 1972 (Title IX)

                         20 U.S.C. 1400 et seq., The Individuals with Disabilities Education Improvement Act of 2004 (IDEIA)

                         42 U.S.C. 2000c et seq., Title IV of the Civil Rights Act of 1964

                         42 U.S.C. 2000d et seq.

                         42 U.S.C. 2000e et seq.

                         42 U.S.C. 1983

                         34 C.F.R. Part 106

                         OCR's Revised Sexual Harassment Guidance (2001)

                         20 U.S.C. 1092(F)(6)(A)(v)

                         34 U.S.C. 12291(a)(10)

                         34 U.S.C. 12291(a)(8)

                         34 U.S.C. 12291(a)(30)

# Add.87